[*Submitting counsel on signature page*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

YELP INC.,

                Plaintiff,

v.

GOOGLE LLC,

                Defendant.

Case No. 5:24-cv-06101-SVK

**DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

Date:    December 17, 2024
Time:    10 a.m.
Place:   Courtroom 6, 4th Floor
Judge:  Magistrate Judge Susan van Keulen

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I. YELP'S CLAIMS ARE TIME-BARRED. ..................................................................... 1

    A. Yelp has not pleaded monopolization claims that first accrued within the limitations period. ........................................................................................... 2

    B. Google's failure to revert to a pre-2007 design does not create a timely claim. ................................................................................................................. 5

        1. Yelp does not plead any acts within the limitations period. ................ 5

        2. Yelp mischaracterizes the operative caselaw. ....................................... 7

        3. Yelp is not entitled to amend. ............................................................. 11

    C. Yelp's requests for equitable relief are time-barred. ...................................... 11

II. COUNT IV DOES NOT PLEAD AN UNLAWFUL TYING ARRANGEMENT. ..................................................................................................... 11

    A. Yelp fails to plead two "distinct products." .................................................... 12

    B. Yelp fails to plead coercion. ........................................................................... 12

III. COUNTS V AND VI DO NOT PLEAD CLAIMS FOR MONOPOLY LEVERAGING. ............................................................................................................ 14

IV. YELP FAILS TO STATE COGNIZABLE REFUSAL-TO-DEAL CLAIMS. ................ 14

    A. Yelp cannot evade consideration of its refusal-to-deal claims. ...................... 14

    B. Yelp states no claims for refusal-to-deal. ....................................................... 15

V. COUNT VII DOES NOT PLEAD A SEPARATE CLAIM UNDER THE UCL. ........................................................................................................................... 15

CONCLUSION ....................................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016) ................................12

*AMF, Inc. v. General Motors Corp. (In re Multidistrict Vehicle Air Pollution),* 591 F.2d 68 (9th Cir. 1979)..................................................................................................................8

*Atabakhsh v. JPMorgan Chase Bank, N.A.*, 2018 WL 11434429 (N.D. Cal. Nov. 15, 2018) ................................................................................................................................3

*Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689 (9th Cir.1982)........................................10

*Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988 (N.D. Cal. 2015) ................................................................................................................................10

*Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008) ..................................14

*Columbia Steel Casting Co. v. Portland General Electric Co.,* 111 F.3d 1427 (9th Cir. 1996) .............................................................................................................................8, 9

*Dream Big Media v. Alphabet Inc.,* 2022 WL 16579322 (N.D. Cal. Nov. 1, 2022) .....................13

*Garrison v. Oracle Corp.*, 2015 WL 1849517 (N.D. Cal. Apr. 22, 2015) ......................................9

*Hennegan v. Pacifico Creative Service, Inc.*, 787 F.2d 1299 (9th Cir. 1986) ................................9

*Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380 (9th Cir. 2018).....................9

*In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195 (N.D. Cal. 2015).........................10

*In re Google Digital Advertising*, 721 F. Supp. 3d 230 (S.D.N.Y. 2024) .................................8, 10

*Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743 (N.D. Cal. 2022).......................................................6

*MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095 (N.D. Cal. 2012)............................7

*MetroNet Services Corp. v. Qwest Corp.*, 383 F.3d 1124 (9th Cir. 2004)....................................15

*Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2018 WL 4904918 (N.D. Cal. Oct. 9, 2018) ............3

*Oliver v. SD-3C LLC*, 751 F.3d 1081 (9th Cir. 2014) .......................................................7, 8, 10

*Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234 (9th Cir. 1987)..................................5, 6, 7

*Peterson v. Sutter Med. Found.*, 2022 WL 316677 (N.D. Cal. Feb. 2, 2022) ..............................10

*Red Lion Med. Safety, Inc. v. Ohmeda*, 63 F. Supp. 2d 1218 (E.D. Cal. 1999)...................9, 10, 11

*Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963 (9th Cir. 2008) ..................3

Case 5:24-cv-06101-SVK   Document 36   Filed 11/22/24   Page 4 of 20

*Rumble, Inc. v. Google LLC,* 2022 WL 3018062 (N.D. Cal. July 29, 2022) ............................... 14

*Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199 (9th Cir. 2014) .............................. *passim*

*SaurikIT, LLC v. Apple, Inc.*, 2023 WL 8946200 (9th Cir. Dec. 28, 2023) .............................. 9, 10

*SaurikIT, LLC v. Apple, Inc.*, 2022 WL 1768845 (N.D. Cal. May 26, 2022) ............................... 10

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ................................................ 11

*Staley v. Gilead Sciences, Inc.*, 2020 WL 5507555 (N.D. Cal. July 29, 2020) ............................ 15

*TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 3373914 (N.D. Cal. Aug. 3, 2021) .......................... 14

*United States v. Google LLC*, 687 F. Supp. 3d 48 (D.D.C. 2023) .................................................. 15

*United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001) ............................................................. 13

*Zeleny v. Burge*, 2022 WL 18284878 (C.D. Cal. Dec. 20, 2022) .................................................. 14

## OTHER AUTHORITES

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* (5th ed. 2024) ................................................................ 9, 11

Case No. 5:24-cv-06101-SVK                                      Google's Reply Memorandum

# INTRODUCTION

Yelp's Opposition relies on allegations found nowhere in its Complaint. *Nowhere* did Yelp plead that the 2007 design of Google's SERP did not result in monopoly power in local search until some (unspecified) time within the four years before Yelp filed suit. To the contrary, Yelp pleaded that Google allegedly dominated local search well before the limitations period. *Nowhere* did Yelp plead that although it has been suffering injury since 2007, that injury did not become cognizable until some date within the limitations period. To the contrary, Yelp incorporated into its Complaint (in what it euphemistically describes as "early warnings") its 2011 complaints to the FTC, and what it describes as the FTC staff's 2012 findings thereon. What *is* clear from Yelp's Complaint is that Yelp failed to plead *any* exclusionary conduct by Google in the limitations period, much less new and independent conduct that inflicted new injuries on Yelp. And Yelp did not plead any supposed "tweaks," "changes," or "refinements" to Google Search in the years after 2007, much less within the limitations period. Yelp's claims are thus untimely on their face, and the entire Complaint should be dismissed with prejudice because Yelp does not identify any timely allegations it could add that would be reconcilable with its allegation that it suffered the same injury in 2007.

If the Court allows the Complaint to proceed, it is not, as Yelp argues, a "waste of . . . time" for the Court to determine whether Yelp states claims for tying, leveraging, or refusal to deal. Opp. (ECF 30) at 8. Those claims can and should be dismissed now for failure to plead several required elements of the claims. That would leave only Yelp's claim for monopolization by "self-preferencing." It is not a "waste of time" to pare the case back at Rule 12(b)(6) so that the parties can focus discovery on only that claim to the extent it is timely.

# ARGUMENT

## I.     Yelp's Claims Are Time-Barred.

Yelp does not suggest in its Opposition that it has pleaded tolling of any kind. Nor does Yelp identify any new and independent act by Google that caused a new injury to Yelp after August 2020. The through-line of the Complaint is that Yelp was harmed in 2007 by a design change that Google made at that time. Mot. (ECF 24) at 10.

The Opposition makes two arguments for why the Complaint is nevertheless timely. First, that despite Yelp having been injured in 2007, Yelp's claim did not accrue until some unspecified later point. If so, then by its own reading of its Complaint, Yelp has not pleaded monopolization at any relevant time, and has no claim to pursue. *Infra*, Part I.A. Second, Yelp argues that there were new "overt acts" within the last four years to ground a timely claim. But Yelp points to no allegations of such acts, much less ones that suffice legally. *Infra*, Part I.B.

While Yelp asks for leave to replead, it fails to explain how an amended complaint would reconcile with its allegations of harm from a 2007 design change. *Infra*, Part I.B.3. Finally, Yelp does not dispute that if its claims for damages are untimely, so too are its claims for injunctive relief, under the laches doctrine. *Infra*, Part I.C.

**A. Yelp has not pleaded monopolization claims that first accrued within the limitations period.**

Yelp posits that while it was injured in 2007, its injury did not mature into a monopolization claim until Google achieved monopoly power (or a dangerous probability of it) in local search. Opp. at 10. But the Opposition does not say when Google became a monopolist in local search; that is because there are no allegations in the Complaint from which Yelp could now say it only happened, coincidentally, at some point in the last four years.

All Yelp *is* sure of is that it "does *not* allege . . . that Google had acquired sufficient market power in local search services or local search advertising in 2007, 2011, 2012, or 2013." Yelp Resp. to RJN (ECF 31) at 2 (emphasis added). Yelp also rules out that "2009, 2011, or 2015" could be the "operative date." Opp. at 11. But this is not a game of bingo where Yelp gets to simply announce which squares it has covered—it has to point to well-pleaded *facts in its Complaint* to support its position. That Yelp does not do. Similarly problematic is Yelp's insistence that "any inference that [Google's efforts] . . . *were* successful [in monopolizing local search] at that time [2011] would contradict the allegations in the complaint." ECF 31 at 2. Does that mean Yelp *does* view itself as having pleaded monopolization in 2012, or 2016, or some other date, or is the Court simply to infer (without any pleading) that the threshold was not crossed until the day Yelp brought suit in 2024? The Opposition does not say.

What matters is what was pleaded, not what is argued,[1] and the story the Complaint tries to tell is of monopoly power long *before* the limitations period. Yelp pleaded that:

- In what Yelp describes as "eviden[ce]" of Google's "market power," Google "raise[d] prices without facing competitive consequences" in local search advertising "for the better part *of the last decade*," *i.e.*, as far as back as *2014*. Compl. ¶ 113 (emphasis added).

- According to a Yelp analysis in *2015*, Google's "monopoly power" by that point was "demonstrated" by its supposed ability to offer "lower-quality local search . . . without facing diminished traffic or diminished advertising revenue." *Id.* ¶¶ 86–87.

- Google was still "dominant" in local search as of 2019. *Id.* ¶ 85 & n.28.

- Dating back to *2012*, and again, through 2019, "more than 70% of Yelp U.S. web traffic came through Google[.]" *Id.* ¶ 153; *see also* Opp. at 6.

Google disputes these allegations, but the point for present purposes is that Yelp cannot now shed them to try to resuscitate an untimely claim, because then there would be nothing in the Complaint to support Yelp's monopolization claim. There is no other allegation in the Complaint of any particular point in time, or even range of time, at which Google allegedly obtained monopoly power in markets for local search. (Nor is there any allegation that the threshold of monopoly power was crossed only after August 2020.) If what Yelp means to do by its Opposition is withdraw these allegations and concede that it has *not* pleaded "when Google acquired enough market power for an actionable antitrust violation," Opp. at 1, that would leave a total void in its pleading, requiring dismissal. Power over a relevant market must be pleaded with *facts*, not unsubstantiated characterizations in an opposition. *See Rick-Mik Enterprises, Inc. v. Equilon Enterprises LLC*, 532 F.3d 963, 972 (9th Cir. 2008) ("[O]ther than stating that '[Equilon] rank[s] number one in the industry in branded gasoline stations,' there are no specific allegations at all"); *Hip Hop Beverage Corp. v. Monster Energy Co.*, 733 F. App'x 380, 382 (9th Cir. 2018) (allegations of control over "major percent" of market insufficient); *Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2018 WL 4904918, at *6 (N.D. Cal. Oct. 9, 2018) (dismissing

---

[1] *Atabakhsh v. JPMorgan Chase Bank, N.A.*, 2018 WL 11434429, at *3 (N.D. Cal. Nov. 15, 2018) (a plaintiff "cannot amend his complaint in an opposition to a motion to dismiss").

1   attempted monopolization claim where plaintiff "[did] not adequately define the relevant market,
2   [or] allege what percentage of that market [defendant] ha[d] captured"); Opp. at 10.

3         Yelp's Opposition rhetorically asks, "How could it be, from the face of the Complaint,
4   that by 2007 Google had supposedly attained a monopoly (or a dangerous probability of such),
5   when it was just starting out in local search[?]" Opp. at 11.  The answer is in Yelp's allegations:
6   its theory that as of 2007, Google allegedly had 68% "general search services market share," and
7   that Google allegedly used that monopoly power to attain market share in local search, through
8   its (2007-era) "architecture."  Compl. ¶¶ 42–44, 60.  Yelp pleaded that the FTC staff concluded
9   *in 2012* that "Google's conduct"—including, according to Yelp, that "Google self-preferenced
10  its own inferior vertical search results"— "violated Section 2 of the Sherman Act."  *Id.* ¶ 10.
11  These are not merely documents incorporated into the Complaint—these are Yelp's own
12  allegations.  And to be sure, when it suited Yelp, Yelp embraced its characterization of the "FTC
13  Staff Memo."  Yelp cannot disavow its own pleading of a "violation" in 2012 by proclaiming
14  that "no antitrust violation ha[d] yet occurred," Opp. at 2, and apparently did not occur until
15  some undefined point more than 8 years later.

16        Google of course does not "concede" (Opp. at 1) Yelp's allegations by any stretch.
17  Whether Yelp's allegations of a "violation" would bear out with evidence is not the issue on this
18  motion.  The issue now is whether Yelp can disclaim any specificity or timing in those
19  allegations in order to evade the statute of limitations.  The question Yelp should instead be
20  answering is, how can its allegations be plausible but simultaneously not demonstrate a
21  "violation" until after 2020?  Monopoly power is a required element of Yelp's claims, not of an
22  affirmative defense for the statute of limitations.

23        As it stands, Yelp does not plead any changes in market power in local search before or
24  after 2020, nor does it plead any changes in the alleged markets that would explain the first
25  existence of monopoly power only in the limitations period.  Yelp nevertheless insists that it is
26  "Google [that] overlooks the . . . timing of the antitrust violation." Opp. at 10.  Google did not
27  "overlook" it; nowhere did Yelp plead any such "timing."  Instead, Yelp pleaded only that, when
28  it filed this lawsuit in 2024, it queried Google's Gemini artificial intelligence tool with the

question, "what is Google's market share for local search?" Compl. ¶ 83. To be sure, querying an artificial intelligence chatbot for a *conclusion* is not a substitute for pleading *facts*.[2] But more importantly, that allegation does not answer Yelp's own question about "timing."

In essence, Yelp rests on an argument that because its Complaint does not plead when Google allegedly attained monopoly power, there is no way to know—and so, no way for the Court to evaluate the timeliness of its pleading. So, argues Yelp, by virtue of having failed to plead when Google allegedly attained the monopoly power that harmed Yelp, its claims are timely. This is circular in the extreme: There is no strategic ambiguity exception to the requirement for plausible allegations. Either Yelp's monopolization claims are untimely based on the allegations it pleaded, or Yelp has not pleaded monopolization claims at all.

**B. Google's failure to revert to a pre-2007 design does not create a timely claim.**

Finding itself in the unusual position of disclaiming its allegations of monopolization in years past, Yelp pivots to argue that, regardless, it pleaded "overt acts" by Google within the limitations period. That argument suffers from two problems. First, there are no such allegations in the Complaint. Second, Yelp overextends the caselaw to suggest that it need not plead any act within the limitations period.

**1.    Yelp does not plead any acts within the limitations period.**

The parties agree on this much: "To state a continuing violation of the antitrust laws in the Ninth Circuit, a plaintiff must allege that a defendant completed an overt act during the limitations period that meets two criteria: '1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff.'" Opp. at 11–12 (quoting *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014) (quoting *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 238 (9th

---

[2] Yelp's Complaint did not cite the sources for the AI-generated response it relies upon. *Cf., e.g.*, ABA Formal Opinion 512, *available at* https://www.americanbar.org/content/dam/aba/administrative/professional_responsibility/ethics-opinions/aba-formal-opinion-512.pdf ("As a matter of competence, . . . lawyers should review for accuracy all [generative artificial intelligence] outputs. In judicial proceedings, duties to the tribunal likewise require lawyers, before submitting materials to a court, to review these outputs, including analysis and citations to authority, and to correct errors . . . .").

Cir. 1987))).  But Yelp does not plead any *act* by Google in recent history, much less one that meets these two criteria.

No doubt the Complaint makes vague references to "actions," "worsen[ing]" conduct, and "tweak[s]" to algorithms, while the Opposition adds new terms to the mix like "fine tuning," "refinements," "progression," and "variety."  *See* Opp. at 13 (citing Compl. ¶¶ 8, 9, 42, 76, 125, 128, 156).  These are labels, not facts.  There are no details pleaded; the Court will not find in the cited paragraphs any description of acts within the limitations period.  *See Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 797 (N.D. Cal. 2022) (allegations that "dozens of app developers" entered into anticompetitive data sharing agreements with Facebook were insufficient to restart the statute of limitations because the complaint omitted the "precise number and identity" of the app developers and was "bereft of any dates or details" about whether agreements were entered into during the limitations period (citations omitted)); Opp. at 14.  To the extent Yelp's cited paragraphs plead anything at all, they refer to a study from 2014 (Compl. ¶ 76), a 2012 "FTC staff memorandum" (*id.* ¶ 125), and an unspecified 2015 algorithm change (*id.* ¶ 128).  It is telling that Yelp points to the Complaint's allegation that "there have been *numerous changes* to the SERP since 2007 . . ."[3], **but omits the end of that same sentence**: ". . . including to the names of various Google verticals, [but] *the general architecture concept is the same*."  *Id.* ¶ 42 (emphasis added).  Yelp's bottom line is that nothing material has changed, *i.e.*, there is no "new and independent act that is not merely a reaffirmation of a previous act" *and* which "inflict[s] new and accumulating injury" on Yelp.  *Pace*, 813 F.2d at 238.

As noted, the Opposition repeatedly references changes to unspecified "algorithms." Opp. at 5, 6, 11, 13, 14, 19.  These references are unaccompanied by citation to any pleading of (i) a specific algorithm change (ii) that harmed Yelp, much less one that (iii) occurred in the limitations period.  And, at the same time the Opposition points to an allegation of a 2015 algorithm change, it assures the Court that Yelp suffered no cognizable injury in 2015.  Opp. at 11 (rejecting that "2015 might be the operative date").  The absence of allegations about specific algorithm changes causing antitrust harm is tactically driven to evade the statute of limitations.

---

[3] Opp. at 13 (citing Compl. ¶ 42 (emphasis in original)).

Yelp makes a last-ditch effort to point to a new act satisfying these requirements, arguing that the Court should review its photo capture (Figure 1) of the Google SERP, attached to paragraph 42, to discern "a new design and algorithm shift" that would suffice under *Pace*. Opp. at 13. But what Yelp actually *pleaded* is that the graphic shows that the "general architecture concept is the *same*" today as it has been "since 2007." Compl. ¶ 42 (emphasis added).

If the "larger principle" in the caselaw is, as Yelp puts it, "that subsequent overt actions pursuant to 'mutable policies first put into place outside the limitations period' restart the clock," Yelp must plead such "subsequent overt actions" in its Complaint. Opp. at 16 (quoting *MedioStream, Inc. v. Microsoft Corp.*, 869 F. Supp. 2d 1095, 1105 (N.D. Cal. 2012)). It has not done so. Yelp's failure bears not only on the timeliness of its claim, but on what *conduct* it seeks to state a claim *for*. For example, had an algorithm change within the limitations period inflicted a new antitrust injury on Yelp within the meaning of *Pace*, this case would proceed about that change, not about a SERP design from 2007. *See id.* at 1106 (dismissing despite allegations of recent conduct, because plaintiffs failed to plead whether they were harmed by that recent conduct as opposed to by pre-limitations conduct).

### 2. Yelp mischaracterizes the operative caselaw.

Yelp tries to lower the bar, characterizing a series of cases as permitting claims based on claims more than a decade old. *See* Opp. at 12, 14–16. Yelp's citations to those cases do not hold up. In each of the Ninth Circuit cases that Yelp relies on, the plaintiffs satisfied *Pace*'s "new and independent act" requirement by alleging acts within the limitations period that were *different* from the previous act. Yelp pleads nothing like that here.

Yelp relies heavily on *Samsung Electronics Co.*, but the court there held that defendants restarted the statute of limitations by entering into a *different* licensing agreement within the limitations period in 2006, which covered two new products that were not contemplated by the pre-limitations 2003 agreement. 747 F.3d at 1203–04. And the earlier agreement dated to a point in time when the plaintiff was not yet even a participant in the market, such that its future potential damages were entirely speculative. *Id*. at 1204–05. Yelp's other cited cases follow a similar pattern. The plaintiff in *Oliver v. SD-3C LLC* was a purchaser of the goods at issue since

1   2007, and brought suit in 2011 on the basis of a price-fixing scheme that allegedly dated to 2006.
2   751 F.3d 1081, 1084–85 (9th Cir. 2014).  The limitations period was held to start when the
3   plaintiff began its purchases in 2007, before which "it would have been pure speculation"
4   whether it would be injured.  *Id*. at 1087.  Similarly, in *Columbia Steel Casting Co. v. Portland*
5   *General Electric Co*., when the plaintiff made its first ever request of the defendant in 1990 to
6   switch electricity providers, the defendant's rejection of that request enforced its exclusive
7   service territory agreement from 1972 for the first time in the parties' relationship.  111 F.3d
8   1427, 1434–35, 1444 (9th Cir. 1996).  The "18-year-old anticompetitive contract" that Yelp
9   refers to, Opp. at 14, did not "control[]" the later act because its terms "[were] permissive" and
10  "not approve[d] [for] the allocation of exclusive service territories[,]" so there too, any harm to
11  the plaintiff before the limitations period was speculative, and enforcement for the first time was
12  a new and independent act, *Columbia Steel*, 111 F.3d at 1444–45.

13         The pleaded facts here differ in two ways.  First, in stark contrast to *Samsung* and *Oliver*,
14  Yelp was not a prospective market entrant that could only speculate about its alleged injuries.
15  As Yelp alleges in its Complaint:  It entered the local search market in 2004, Compl. ¶ 3, "wrote
16  directly to a Google executive" in 2007 to complain, *id*. ¶ 118, "protested" to Google again in
17  2010, *id*. ¶ 123, and complained to the FTC and Congress in the 2011, Mot. Ex. A, B.

18         Second, while the defendants in *Samsung*, *Oliver*, and *Columbia Steel* entered into
19  anticompetitive agreements before the limitations periods, the plaintiffs in those cases pleaded
20  distinct acts of enforcement that occurred for the *first* time *during* the limitations period.  There
21  is no such pleading here.  Yelp's allegations are far closer to those in *AMF, Inc. v. General*
22  *Motors Corp*., where the statute of limitations began to run after the first time the defendants
23  refused to consider the plaintiff's "Smog Burner" due to an anticompetitive pact.  591 F.2d 68,
24  70, 72 (9th Cir. 1979).  AMF's subsequent contacts with defendants, and defendants' recurring
25  denials, were no different than the initial 1964 denial, so there could be no continuing violation.
26  *Id*. at 72.  So too here:  The conduct Yelp complains of today—by Yelp's own admission—is
27  "substantially similar" to the prior conduct.  Compl. ¶¶ 39–40.  And Yelp's effort to distinguish
28  *In re Google Digital Advertising*, 721 F. Supp. 3d 230 (S.D.N.Y. 2024), Opp. at 16, falls flat.

Yelp says that case involved a policy change that was "implemented in [its] entirety seven years earlier," but nowhere does Yelp's Complaint plead any respect in which the alleged "self-preferencing" was only recently "implemented," "updated," or anything of the sort.

Yelp attempts to rely on *Hennegan v. Pacifico Creative Service, Inc.*, but omits that the plaintiff there alleged new overt acts, including "payments by the souvenir vendors to the tour operators." 787 F.2d 1299, 1301–02 (9th Cir. 1986). In a conspiracy case like *Hennegan*, the violation continues where the "conspirators continue to meet to fine-tune their cartel agreement." *Samsung Elecs. Co.*, 747 F.3d at 1204. Indeed, the defendants in *Hennegan* engaged in discrete acts of illegal bribery within the limitations period. 787 F.2d at 1301–02. "These cases [*Columbia Steel*, *Hennegan*, and *Red Lion* (*infra*)]" cannot save Yelp's claim when it "has simply failed to allege any facts indicating *when* the supposed continuing violations took place, let alone that they took place" within the limitations period. *Garrison v. Oracle Corp.*, 2015 WL 1849517, at *7 (N.D. Cal. Apr. 22, 2015) (distinguishing the same three cases relied upon by Yelp). Whereas courts are "significantly more likely to restart the statute when the action complained of is conspiratorial[,]" Yelp alleges that Google engaged in essentially the same overt, public, and unilateral conduct from 2007 to present. Areeda & Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles and Their Application* ¶ 320 (2024) ("Areeda & Hovenkamp (2024)") (cited by Opp. at 10).

Realizing its error, Yelp tries to describe unpleaded allegations of supposed algorithmic changes that are notably absent from its Complaint. *Supra* Part B.1. Even if Yelp sufficiently pleaded such allegations in its Complaint, they are far too vague to clear the bar set by the continuing violation cases. Yelp concedes that the Ninth Circuit in *SaurikIT, LLC v. Apple, Inc.* found no continuing violation because the plaintiffs there only offered "a few threadbare allegations about developer contracts." Opp. at 15. Those allegations included claims that the contracts "'have not stayed static over the years,' were 'modified' to 'shore up perceived holes,'" and that changes during the limitations period made the contracts "ever-more-restrictive." *SaurikIT, LLC*, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023). Yelp's conclusory allegations that Google's conduct "worsened in recent years," Compl. ¶ 156, are similarly threadbare.

1    Yelp goes on to argue that every time a user enters a local query on Google and receives results, Google has committed "a new and independent act" restarting the limitations period. Opp. at 13.  But the Ninth Circuit explicitly rejected an analogous argument that Apple "engages in an overt act that resets the statute of limitations every time it sells a new iOS device" subject to a challenged warranty agreement, because the plaintiff had failed to allege any change to that agreement within the limitations period.  *SaurikIT, LLC*, 2023 WL 8946200, at *1.  As the court explained in the decision then under review, a contrary holding would "effectively swallow[] the statute of limitations rule."  *SaurikIT, LLC*, 2022 WL 1768845, at *3 (N.D. Cal. May 26, 2022). So too here.  Yelp is invoking a principle that fits the *purchaser* plaintiff cases, where the statute of limitations does not accrue until the purchaser makes its first purchase.  It would make no sense to import that here, where Yelp is a *competitor* that claimed antitrust harm more than a decade ago.

Finally, Yelp posits that regardless of when the challenged product design was implemented, the statute of limitations could not expire so long as Google could revert to the pre-2007 design.  Opp. at 15.  That approach, which would effectively prevent the statute of limitations from ever running, has not been followed by most courts, even after the 2014 decisions in *Samsung* and *Oliver*.  *See, e.g.*, *Bay Area Surgical Mgmt. LLC v. Aetna Life Ins. Co.*, 166 F. Supp. 3d 988, 999 (N.D. Cal. 2015); *In re Animation Workers Antitrust Litig.*, 87 F. Supp. 3d 1195, 1212–14 (N.D. Cal. 2015); *Peterson v. Sutter Med. Found.*, 2022 WL 316677, at *10 (N.D. Cal. Feb. 2, 2022), *appeal pending*; *SaurikIT, LLC,* 2023 WL 8946200, at *1; *In re Google Digital Advertising*, 721 F. Supp. 3d at 272–73; *see also Aurora Enters., Inc. v. Nat'l Broad. Co.*, 688 F.2d 689, 694 (9th Cir.1982) (fact that defendant continued to "receive a benefit today" as a result of an allegedly illegal agreement "is not enough to restart the statute of limitations.  Any other holding would destroy the function of the statute, since parties may continue indefinitely to receive some benefit as a result of an illegal act performed in the distant past.").

Indeed, the related proposition in *Red Lion Medical Safety, Inc. v. Ohmeda* (Opp. at 14), that implementing an anticompetitive policy (in effect for fifteen years) would never start the statute of limitations if the policy did not "immediately and permanently destroy" or "completely

exclude" plaintiffs' businesses, Opp. at 12, has been explicitly rejected by the same treatise Yelp cites. *Compare Red Lion Med. Safety, Inc.*, 63 F. Supp. 2d 1218, 1224 (E.D. Cal. 1999), *with* Areeda & Hovenkamp (2024) ¶ 320 & n.51 ("We dispute decisions restarting the statute any time the plaintiff remains in the business"). Yelp's treatise cite goes on to explain: "[m]ore than almost any other plaintiff, the victim of a direct refusal to deal knows immediately that it has occurred. Particularly when the legal status of the conduct is ambiguous, as it is in nearly all cases involving unilateral refusals to deal, such plaintiffs should have every incentive to bring their suit in a timely fashion, thus minimizing the social damage of any antitrust violation that is subsequently found." *Id*. That description fits Yelp to a tee.

### 3. Yelp is not entitled to amend.

Yelp now advises that it has "additional allegations of Google's conduct" and unspecified theories of "tolling through the present." Opp. at 16. Google of course recognizes that leave to amend is commonly granted in the first instance, but Yelp studiously avoids saying what "additional allegations" it has that would not conflict with its core theory based on the 2007 redesign. "[A] plaintiff can . . . plead himself out of a claim by including . . . details contrary to his claims." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). That is precisely what Yelp has done.

### C. Yelp's requests for equitable relief are time-barred.

Yelp does not dispute that if its claims at law are untimely, its claims in equity are as well. *See* Opp. at 16–17. It does not dispute prejudice to Google from its 17-year delay; Yelp argues simply that its equitable claims are timely "[f]or the same reasons that [its] damages claims are timely[.]" *Id.* at 17. Google agrees at least that if the damages claims fail, so too do the equitable claims, and those claims should be dismissed.

## II. Count IV Does Not Plead an Unlawful Tying Arrangement.

The Court should not be detained by Yelp's argument that the Court cannot address at 12(b)(6) what Yelp calls mere "characterizations" of Google's conduct as "tying" or "leveraging."[4] Opp. at 20. This is confounding: Yelp pleaded tying as a freestanding cause of

---

[4] Refusal to deal is addressed *infra*, Part IV.

1  action under Count IV, and leveraging under Counts V and VI.  There is no question that the
2  Court has the power to dismiss those counts of Yelp's Complaint.
3        Setting that argument aside, beyond being time-barred, Yelp's tying claim, Count IV,
4  fails to state a claim for two additional reasons, neither of which Yelp resolves in its Opposition.
5        **A.  Yelp fails to plead two "distinct products."**
6        The parties agree that Yelp must plausibly plead that general search services and local
7  search services are "two distinct" products.  Mot. at 9; Opp. at 20.  Yelp says what it has done
8  instead is to plead "significant demand for local search."  Opp. at 21.  Standing alone, that is
9  legally insufficient, for as Yelp itself notes, it must plead "sufficient consumer demand so that it
10 is efficient for a firm to provide the products *separately*," and specifically, "customer requests to
11 offer the products *separately*."  Opp. at 21 (citing cases) (emphases added).  Yelp pleads no such
12 facts about general and local search.  The paragraphs of the Complaint that it cites, *id.* (citing
13 Compl. ¶¶ 19–22 & 77), plead that consumers demand local search, or that they view it as
14 distinct—not that they demand it *separately*, or that it is efficient to provide it separately.  Nor
15 does Yelp plead that Google (or any other general search engine) offers general search and local
16 search results as separate products.  Mot. at 16.  To the contrary, Yelp pleads that general search
17 is essentially inclusive of local search.  *See, e.g.*, Compl. ¶ 49 (alleging that general search
18 engines are "one-stop shops" that can "respond to all types of consumer queries," including
19 queries handled by "SVPs[] such as Yelp" ).
20       **B.  Yelp fails to plead coercion.**
21       Coercion is indisputably a required element of a tying claim.  Mot. at 9.  Google's motion
22 noted two failures in Yelp's pleading of coercion, and the Opposition resolves neither.
23       First, Yelp has not plausibly pleaded that users are actually coerced to use Google's local
24 search results if they want to use Google for general searches.  Mot. at 18.  Yelp responds that its
25 claim is for a "positive tie," rather than a "negative" one (Opp. at 21), but this makes no
26 difference.  As the case that Yelp cites explains, "the common element in both situations is that a
27 seller explicitly or implicitly imposes conditions linking the sale of a tying product with the sale
28 of the tied product."  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir.

-12-

2016). Yelp pleads no such facts. Yelp's Complaint relied on Google's Terms of Service, under which Yelp alleged that "users must take Google's local search product when they use Google's general search product." Compl. ¶ 142 (quoting Mot. Ex. D). But Yelp is unable to engage at all with the actual, incorporated language of the Terms of Service—which say no such thing. *Compare* Mot. at 18 (explaining that the Terms "make no reference to, or distinction between, general search services and local search services"), *with* Opp. at 21 (stating without citation that "per the Terms of Service . . . consumers must take Google's local search product"). Yelp nowhere explains the only basis for the tying claim that it actually pleaded.

Yelp says that "coercion still exists where a small portion of consumers take the tied product from a competitor in the first instance." Opp. at 22. But Yelp pleads no conduct that precludes users from starting a local search wherever they like. A user can search for local information on Yelp, but still search for other types of information on Google. There is no pleading of any coercion whatsoever to search for local information on Google if a user also wants to use Google for other types of online searches. Indeed, on the contrary, Yelp openly admits that users remain free to "go directly to an SVP" with their local and other specialized queries. Compl. ¶ 7.

Second, Yelp has no substantive response to the fact that both the alleged "tied product" and alleged "tying product" are free. Mot. at 16–17. A tabulation of Google's revenues in 2023 (Opp. at 22) is not a substantive response. Neither is a law review article that argues the "law has not kept up"[5]; the law as it stands today is what decides this motion. Under that law, a court in this District held that where a plaintiff paid nothing for Google's services, it states no tying claim. Mot. at 16–17 (citing *Dream Big Media v. Alphabet Inc.*, 2022 WL 16579322 (N.D. Cal. Nov. 1, 2022)). Yelp has no response to such cases. It cites instead *United States v. Microsoft*, 253 F.3d 34 (D.C. Cir. 2001), but that court vacated a finding of tying, and certainly did not hold that free products are subject to a tying claim (Windows operating system licenses are not free).

---

[5] Daniel A. Crane, *Tying Law for the Digital Age*, 99 Notre Dame L. Rev. 821, 860 (2024) (cited by Opp. at 24).

1  Likewise, there were no free services at issue in *Cascade Health Solutions v. PeaceHealth*, 515
2  F.3d 883 (9th Cir. 2008) (cited by Opp. at 23).  Count IV should be dismissed.

3  **III.   Counts V and VI Do Not Plead Claims for Monopoly Leveraging.**

4  Yelp agrees that for a defendant to "use its [alleged monopoly] power [*merely*] to gain a
5  competitive advantage in the second market," there is no claim for monopoly leveraging.  Opp.
6  at 24 (citation omitted, emphasized emendation is Yelp's).  But Yelp is unable to point to any
7  allegation of any separate "predatory conduct" (Opp. at 24) that would support a standalone
8  leveraging claim.  To the contrary, Yelp just points back to the same rote allegation of self-
9  preferencing that is the basis for Counts I–III.  *See* Opp. at 24 (quoting Compl. ¶ 223, identical in
10 relevant part to ¶¶ 175, 186, 198).  Even were they timely, Counts V and VI cannot stand alone,
11 and should be dismissed.

12 **IV.    Yelp Fails to State Cognizable Refusal-to-Deal Claims.**

13 **A. Yelp cannot evade consideration of its refusal-to-deal claims.**

14 Yelp seeks to shield its refusal-to-deal claims from scrutiny on the basis that dismissal of
15 those claims would only be partial, because Yelp tucks that claim into several counts, rather than
16 pleading it as a separate count.  But as this Court has observed, some "courts in this District have
17 dismissed claims 'to the extent that' they rely on certain faulty allegations or theories."
18 *TopDevz, LLC v. LinkedIn Corp.*, 2021 WL 3373914, at *10 (N.D. Cal. Aug. 3, 2021)
19 (ultimately denying partial motion to dismiss turning on a phrase not used in the complaint under
20 review).  This Court should apply here "the common-sense principle" that "[a] party cannot
21 evade the dismissal of a claim by packaging it together with other" claims.  *Zeleny v. Burge*,
22 2022 WL 18284878, at *3 & n.1 (C.D. Cal. Dec. 20, 2022) (citing *Perez v. Banana Republic,*
23 *LLC*, 2014 WL 2918421, at *2 (N.D. Cal. June 26, 2014) ("Under Rule 12(b)(6), a court may
24 dismiss a claim that is grouped together with other claims in a single cause of action, without
25 dismissing the entire cause of action." (citation omitted))).
26 Section 2 claims are not insulated from the split on this issue.  Yelp relies solely on
27 *Rumble, Inc. v. Google LLC*, denying partial dismissal of a Section 2 claim.  2022 WL 3018062,
28 at *3 (N.D. Cal. July 29, 2022).  Opp. at 9, 17–18.  Other courts in this District take the opposite

1  approach. As the court in *Staley v. Gilead Sciences, Inc.* observed, "[o]ften, a plaintiff asserts a single cause of action that is predicated on more than one liability theory, and a court eliminates one theory through a motion to dismiss." 2020 WL 5507555, *11 (N.D. Cal. July 29, 2020). It is hard to see what is gained by shielding only one of Yelp's claims from review on the basis that Yelp did not brand it a "count." As the court Yelp cites in its Complaint held, "[e]ach legal theory must be [independently] examined for its sufficiency and applicability, on the entirety of the relevant facts." *United States v. Google LLC*, 687 F. Supp. 3d 48, 69 (D.D.C. 2023) (citation omitted)). To do this, "the court must 'disaggregate the exclusionary conduct into its component parts before applying the relevant law.'" *Id.* at 70 (citation omitted). The same is true here.

### B. Yelp states no claims for refusal-to-deal.

Yelp does not plead any viable refusal-to-deal claim. It insists its Complaint contains "ample allegations of anticompetitive malice because Google sacrificed short-term profitability," but its citations do not contain such facts. Opp. at 19 (citing Compl. ¶¶ 126, 128, 129, 131, none of which so plead). Nor does Yelp advance the ball by quoting *MetroNet Services Corp. v. Qwest Corp.*'s observation that "[a]n offer to deal with a competitor only on unreasonable terms and conditions can amount to a practical refusal to deal." 383 F.3d 1124, 1132 (9th Cir. 2004). In context, the court was referring to "pricing" that would not be "profitable" for the plaintiff to accept. *Id.* Yelp pleads no such thing, because it pays no price whatsoever to be included in Google's organic search results; that Yelp does not like the design of the page on which those results are listed states no refusal-to-deal claim.

## V. Count VII Does Not Plead a Separate Claim Under the UCL.

Yelp does not point to any factual allegations to support a UCL claim, nor does it argue that if its federal claims fail, the UCL claim could proceed nonetheless. Opp. at 25. This claim, too, should be dismissed.

## CONCLUSION

Yelp's Complaint should be dismissed in its entirety as time-barred. In the alternative, the Court should dismiss Counts IV, V, and VI, along with any claims for refusal to deal, and the corresponding claims under Count VII, for failure to state a claim.

| | | |
|---|---|---|
| 1 | DATED: November 22, 2024 | By: */s/ John E. Schmidtlein* |
| 2 | | John E. Schmidtlein |
| 3 | | Benjamin M. Greenblum (*pro hac vice*) |
| | | WILLIAMS & CONNOLLY LLP |
| 4 | | 680 Maine Avenue SW |
| 5 | | Washington, DC 20024 |
| | | Tel: 202-434-5000 |
| 6 | | jschmidtlein@wc.com |
| | | bgreenblum@wc.com |
| 7 | | |
| 8 | | Amit Gressel |
| | | WILSON SONSINI GOODRICH & ROSATI P.C. |
| 9 | | One Market Plaza, Spear Tower, Suite 3300 |
| | | San Francisco, CA  94105-1126 |
| 10 | | Tel: 415-947-2087 |
| | | agressel@wsgr.com |
| 11 | | |
| 12 | | Franklin M. Rubinstein (*pro hac vice*) |
| | | WILSON SONSINI GOODRICH & ROSATI P.C. |
| 13 | | 1700 K Street NW |
| | | Washington, DC 20006 |
| 14 | | Tel: 202-973-8800 |
| | | frubinstein@wsgr.com |
| 15 | | |
| | | *Attorneys for Defendant Google LLC* |