1 [*Submitting counsel on signature page*]

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **NORTHERN DISTRICT OF CALIFORNIA**

10 **SAN JOSE DIVISION**

11

| | |
|---|---|
| YELP INC., | Case No. 5:24-cv-06101-SVK |
| Plaintiff, | **DEFENDANT GOOGLE'S PARTIAL MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| GOOGLE LLC, | |
| Defendant. | Date:    July 29, 2025<br>Time:    10 a.m.<br>Place:    Courtroom 6, 4th Floor<br>Judge:    Magistrate Judge Susan van Keulen |

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

3        Please take notice that at 10:00 am on July 29, 2025, or as soon thereafter as the matter

4   may be heard by the Court, at the courtroom of Magistrate Judge Susan van Keulen, Courtroom

5   6, 4th Floor, United States District Court, 280 South 1st Street, San Jose, CA 95113, Defendant

6   Google LLC will and hereby does move the Court, pursuant to Rule 12(b)(6) of the Federal

7   Rules of Civil Procedure, for an order dismissing with prejudice Plaintiff Yelp Inc.'s tying

8   claims (Count IV, and inasmuch of Counts I–III and V that rely on that tying claim) as set forth

9   in its Amended Complaint.

10        Google's motion is based upon this Notice of Motion and the Memorandum of Points and

11   Authorities that follows, the pleadings and other papers on file in this action, any reply papers

12   that may be filed, and on the arguments of counsel.

13                    ### STATEMENT OF ISSUES TO BE DECIDED

14        Yelp's tying claims should be dismissed with prejudice because Yelp fails to plausibly

15   plead coercion, and because in any event the claims are time-barred.

16

17   DATED: June 11, 2025                    By: */s/ John E. Schmidtlein*
                                            John E. Schmidtlein
18                                          Benjamin M. Greenblum (*pro hac vice*)
                                            WILLIAMS & CONNOLLY LLP
19                                          680 Maine Avenue SW
                                            Washington, DC 20024
20                                          Tel: 202-434-5000
                                            jschmidtlein@wc.com
21                                          bgreenblum@wc.com

22

23                                          Amit Gressel
                                            WILSON SONSINI GOODRICH & ROSATI P.C.
24                                          One Market Plaza, Spear Tower, Suite 3300
                                            San Francisco, CA  94105-1126
25                                          Tel: 415-947-2087
                                            agressel@wsgr.com

26

27                                          Franklin M. Rubinstein (*pro hac vice*)
                                            WILSON SONSINI GOODRICH & ROSATI P.C.
28                                          1700 K Street NW
                                            Washington, DC 20006

Tel: 202-973-8800
frubinstein@wsgr.com

*Attorneys for Defendant Google LLC*

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD............................................................................................................ 4

ARGUMENT ......................................................................................................................... 4

    I.   YELP STILL FAILS TO PLAUSIBLY PLEAD COERCION. .................................... 4

        A.  Yelp still fails to plausibly plead express coercion................................................. 5

        B.  Yelp still fails to plausibly plead implied coercion. ............................................... 6

    II.  YELP'S AMENDED TYING CLAIMS ARE TIME-BARRED. ................................. 9

        A.  Yelp has not pleaded a basis to toll the statute of limitations................................. 9

        B.  Yelp has not plausibly pleaded a continuing violation. ......................................... 12

        C.  For the same reasons, Yelp's requests for equitable relief based on tying allegations are time-barred. ........................................................................... 15

CONCLUSION..................................................................................................................... 16

1

# TABLE OF AUTHORITIES

2

## CASES

3

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016) ............................4, 5, 8

4

*Affinity Credit Union v. Apple Inc.*, 2023 WL 12064154 (N.D. Cal. Sept. 27,
5
    2023) ...........................................................................................................................................8

6
*Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008)...........................................7

7
*Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84
    (D. Haw. 1985) ....................................................................................................................10, 11

8

9
*Compuware Corp. v. Int'l Bus. Machs. Corp.*, 366 F. Supp. 2d 475 (E.D.
    Mich. 2005)................................................................................................................................7

10

11
*Dream Big Media Inc. v. Alphabet Inc.*, 2022 WL 16579322 (N.D. Cal.
    Nov. 1, 2022) .........................................................................................................................4, 5

12
*Gamboa v. Apple Inc.*, 2025 WL 660190 (N.D. Cal. Feb. 28, 2025) ........................................5, 12

13
*Gray v. Ocwen Mortg. Servicing, Inc.*, 840 F. App'x 185 (9th Cir. 2021)....................................4

14
*In re Coordinated Pretrial Proc. Petroleum Prods. Antitrust Litig.*, 782 F.
    Supp. 481 (C.D. Cal. 1991)........................................................................................................10
15

16
*In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 2021990 (N.D. Cal.
    May 13, 2021)..............................................................................................................................4

17
*Innovation Data Processing, Inc. v. Int'l Bus. Machs., Corp.*, 585 F. Supp.
    1470 (D.N.J. 1984)......................................................................................................................7
18

19
*Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997) .......................................................................13

20
*Leh v. Gen. Petroleum Corp.*, 382 U.S. 54 (1965) ....................................................................10

21
*Moore v. James H. Matthews & Co.*, 550 F.2d 1207 (9th Cir. 1977).........................................5

22
*Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2019 WL 1560460 (N.D. Cal.
    Apr. 10, 2019).............................................................................................................................5
23

24
*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007) ............................................10, 11

25
*Ortho Diagnostic Sys. Inc. v. Abbott Lab'ys Inc.*, 920 F. Supp. 455
    (S.D.N.Y. 1996) ...........................................................................................................................7

26

27
*Paladin Assocs. Inc. v. Mont. Power Co.*, 328 F.3d 1145 (9th Cir. 2003) ....................................4

28
*Rumble, Inc. v. Google LLC*, 2025 WL 1455820 (N.D. Cal. May 21, 2025)...........................12, 14

*Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199 (9th Cir. 2014).......................................12

*SaurikIT, LLC v. Apple Inc.*, 2022 WL 1768845 (N.D. Cal. May 26, 2022)...............................15

*Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594 (6th Cir. 2014) .....................................13

### OTHER AUTHORITIES

15 U.S.C. § 15b..................................................................................................................15

15 U.S.C. § 16.......................................................................................................................9

California Business and Professions Code (Cal. Bus. & Prof. Code § 17200, *et seq.*) .........2, 3, 15

1

**INTRODUCTION**

2      The Court dismissed Yelp's original tying claims because they were deficient and

3  untimely on their face.  The claims were deficient because Yelp failed to plausibly plead that

4  Google Search users were forced to "buy," i.e., to click on, Google's specialized local vertical

5  search results.  Nothing in Google's terms of service required users to do so, and Yelp concedes

6  that most users did not do so.  In fact, Yelp concedes that more than 70% of the clicks on

7  Google's search engine results page ("SERP") go to web results such as Yelp.  That was and

8  remains undisputed on the face of Yelp's pleading, and it defeats any claim of tying.

9      Yelp's tying claims were also deemed untimely, the Court explained, because they were

10  filed seventeen years after the challenged 2007 design change that allegedly tied Google's

11  "local" search results to its "general" search results.  And Yelp had failed to identify any basis

12  for an exception to the statute of limitations.

13      Yelp's Amended Complaint fails to cure these legal deficiencies in its tying claims:

14      *First*, Yelp again relies on Google's terms of service to plead express coercion—but the

15  terms have not changed and neither have the deficiencies in Yelp's allegations.  The Amended

16  Complaint does not alter the fact that there is no provision in the terms requiring Google Search

17  users to click on Google's local search results.

18      *Second*, Yelp continues to concede that 70% of clicks go to web results including Yelp,

19  but now pivots to allege that that figure is irrelevant, and that instead (accounting for searches

20  that result in no click at all), the "correct" figure is not 70%, but 29%.  That 29% represents the

21  percentage of Google Search users who clicked on unpaid search results that appear as traditional

22  text links, including to websites like Yelp, and thus, according to Yelp, were not "coerced" to use

23  Google's local vertical search results when they ran a search.  As an initial matter, 29% of

24  admittedly "non-coerced" consumers still is too high as a matter of law for consumers to

25  plausibly be considered coerced.  In any event, the artificial recalculation from 70% to 29% does

26  not save Yelp's claim:  considering users to have been "coerced" into "buying" Google's local

27  results *where they did not click any result at all* would stretch the concept of coercion beyond

28

recognition, and certainly beyond any definition adopted by the courts or supported by well-pleaded allegations here.

*Third*, Yelp now seeks to use the October 2020 filing of a lawsuit by the Department of Justice against Google (the "DOJ Complaint") to toll the statute of limitations.  Yelp did not so plead in its initial complaint—despite referring repeatedly to that lawsuit—for good reason:  the DOJ Complaint was based on different conduct (distribution agreements, not SERP design) and alleged harm to different markets (general search services, search advertising, and general search text advertising, not local search services), so tolling is unavailable.

*Finally*, Yelp seeks to avoid the statute of limitations by alleging a continuing violation based on a series of purported changes to the Google SERP.  None meets the requirements for a continuing violation, nor does the sum of them yield a timely claim based on a 2007 implementation of a SERP design that Yelp says is "substantially similar" today.

Because Yelp is unable to cure either, *much less both*, of the deficiencies in the coercion allegations and timeliness of its tying claims, Google respectfully submits that they should be dismissed with prejudice.

## BACKGROUND

The Court is familiar from the prior motion to dismiss briefing with Yelp's allegations. *See* ECF 47 ("Op.").  On August 28, 2024, Yelp sued Google under Section 2 of the Sherman Act and California's Unfair Competition Law.  ECF 1 ("Compl.").  Counts I–III alleged monopolization of the putative local search services market and attempted monopolization of the putative local search services and local search advertising markets, and asserted that Google engaged in "exclusionary, anticompetitive" conduct by allegedly "self-preferencing its own inferior local search vertical over its competitors."  *Id.* ¶¶ 175, 186, 198.  Each of Counts I–III also relied on tying, leveraging, and refusal-to-deal claims.  *Id.*  Count IV, for purported "unlawful tying of local search services to general search services," alleged that Google's "prohibit[ing] [users] from modifying any part of Google's service" under Google's terms of service, together with its "designing its SERP so that users are directed towards its own, inferior local search vertical and away from its competitors," constituted an unlawful tie between

1   Google's general search results and its local search results.  *Id.* ¶ 211.  Counts V and VI, for

2   "illegal monopoly leveraging in the [putative] local search services market" and putative "local

3   search advertising market," similarly asserted that Google engaged in "exclusionary,

4   anticompetitive" conduct by allegedly "self-preferencing its own inferior local search vertical

5   over its competitors."  *Id.* ¶ 223, 236.  Finally, Count VII alleged a violation of section 17200 of

6   the California Business and Professions Code based on the same conduct pleaded in the other

7   counts.

8        Google moved to dismiss the entire complaint as untimely and Yelp's tying, leveraging,

9   and refusal-to-deal claims for failure to state a claim.  ECF 24.  On April 22, 2025, the Court

10  granted in part and denied in part that motion, dismissing Yelp's tying, leveraging, and refusal-

11  to-deal claims with leave to amend.  Op. at 33.  The Court found Yelp's tying claims both

12  deficient and barred by the statute of limitations.  *Id.* at 18–21, 26–29.  The claims were deficient

13  because Yelp had not adequately alleged coercion—"the touchstone issue in assessing a claim of

14  illegal tying."  *Id.* at 26–29.  That was because:  (1) for its theory of express coercion, Yelp relied

15  on Google's terms of service, yet nothing in those terms *requires* (i.e., coerces) users to actually

16  *use* Google's local search results, *id.* at 27; and (2) Yelp failed to plausibly plead implied

17  coercion, inasmuch as it was forced to concede that "70% of the clicks (sales) [on Google

18  Search] remain open to competitors (non-Google properties)," *id.* at 28.  And Yelp's tying claims

19  were untimely because they were based on a product design dating to 2007, and Yelp had failed

20  to plausibly plead an exception to the four-year statute of limitations.  *Id.* at 18–21.

21       Yelp filed its Amended Complaint on May 14, 2025, withdrawing its claims for refusal-

22  to-deal (entirely) and leveraging (to the extent it had been asserted as a freestanding claim), and

23  amending certain paragraphs of its complaint with the apparent intention to avoid dismissal of its

24  tying claims.  ECF 50 ("Am. Compl.").  As set forth below, while Yelp adds additional

25  allegations, it does not alter the fundamental deficiencies in its tying claims, and those claims

26  should now be dismissed with prejudice.

27

28

1

**LEGAL STANDARD**

2      The 12(b)(6) standard applies no differently with regards to a motion directed at an

3 amended complaint.  However, to the extent Yelp's Amended Complaint attempts to recast

4 allegations that the Court already considered and held insufficient, it bears emphasis that an

5 amendment is not a vehicle for reconsideration of the Court's prior ruling.  *Gray v. Ocwen*

6 *Mortg. Servicing, Inc.*, 840 F. App'x 185, 186 (9th Cir. 2021).

7

**ARGUMENT**

8 **I.     Yelp Still Fails to Plausibly Plead Coercion.**

9      To plead an unlawful tying arrangement, a plaintiff must plausibly allege "(1) that [the

10 defendant] tied together the sale of two distinct products or services; (2) that [the defendant]

11 possesses enough economic power in the tying product market to coerce its customers into

12 purchasing the tied product; and (3) that the tying arrangement affects a not insubstantial volume

13 of commerce in the tied product market."  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d

14 1171, 1178 (9th Cir. 2016) (citation omitted).  "A tie only exists where 'the defendant

15 improperly imposes conditions that explicitly or practically *require* buyers to take the second

16 product if they want the first one.'"  *Dream Big Media Inc. v. Alphabet Inc.*, 2022 WL

17 16579322, at *2 (N.D. Cal. Nov. 1, 2022) (emphasis added) (citation omitted).  Persuasion is not

18 enough; to state a claim for tying, the plaintiff must plead that "the defendant went beyond

19 persuasion and coerced or forced its customer to buy the tied product in order to obtain the tying

20 product."  *Id.* at *4 (quoting *Paladin Assocs. Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th

21 Cir. 2003)); *see also In re Google Digit. Advert. Antitrust Litig.*, 2021 WL 2021990, at *4 (N.D.

22 Cal. May 13, 2021) (explaining that a plaintiff must plead facts demonstrating that a defendant's

23 "conduct was coercive, as opposed to merely persuasive").

24      Although "tying conditions need not be spelled out in express contractual terms to fall

25 within the Sherman Act's prohibitions," any tying claim nonetheless requires that the defendant

26 "explicitly or implicitly ties or conditions the *sale*" of the product.  *Aerotec Int'l*, 836 F.3d at

27 1179 (emphasis in original) (rejecting plaintiff's attempt to "wav[e] its hands and say[] that the

28 gravamen of its complaint is a 'de facto' or 'implied' tie").  It is insufficient to allege "simply . . .

[that the defendant] make[s] it less desirable to purchase from the third party." *Id.* at 1180. Accordingly, even "an enormous structural advantage" in the market for the tied product for the seller of the tying product is insufficient where "buyers can and do obtain the tying product . . . without buying the tied product." *Gamboa v. Apple Inc.*, 2025 WL 660190, at *1, *5 (N.D. Cal. Feb. 28, 2025). Nor does it suffice to observe simply that "customers buy them both"; courts still "ask whether the two products were tied together," *Nicolosi Distrib., Inc. v. FinishMaster, Inc.*, 2019 WL 1560460, at *8 (N.D. Cal. Apr. 10, 2019) (citation omitted), and consider whether "an appreciable number of buyers have accepted burdensome terms" for the tying product, *Moore v. James H. Matthews & Co.*, 550 F.2d 1207, 1217 (9th Cir. 1977); *see also* Op. at 26–27.

Yelp alleges again that Google *expressly* coerces users to *consume* Google's local unit (referred to in the Amended Complaint as a "OneBox") because, under Google's terms of service, users cannot modify the placement of the unit in relation to other results on the SERP. *See, e.g.*, Am. Compl. ¶¶ 155–56, 230. Yelp also alleges, again, that Google *implicitly* coerces users to *consume* its local unit by displaying local search results at the top of the SERP, "forcing" users to scroll down for other search results. *Id.* ¶¶ 43, 230–31. Yelp's amendments add more words to these theories, but they do not cure the two fundamental defects inherent in them. Ultimately, Yelp still is unable to plausibly plead that users of Google Search are coerced into "purchasing" Google's "local" search results if they choose to "purchase" Google's "general" search results. The tying claims should be dismissed with prejudice.

A.     **Yelp still fails to plausibly plead express coercion.**

As the Court observed, Yelp's coercion theory based on Google's terms of service "is essentially an allegation of express coercion." Op. at 27. And as the Court held, those terms of service plainly "*do not require* users to actually use Google's local search results." *Id.* (emphasis added); *see also Dream Big Media*, 2022 WL 16579322, at *3 (dismissing tying claim based on Google's terms of service where the terms "do not condition the sale of one Google product on the purchase of a second [one]"). Yelp has not overcome that fatal defect. Yelp's Amended Complaint does not, for example, point to any additional provision of the terms of service that imposes such a requirement, or identify a different version of the terms that does. The

1   amendments simply add conclusions and argument, not facts.  Am. Compl. ¶¶ 155–57.  For

2   example, the *conclusion* of the Amended Complaint that "users must take Google's local search

3   product," *id.* ¶ 155, does not advance Yelp's pleading.  As the Court decided, the fact that "users

4   [may] *see options for* [Google's] local search results," among other results, is insufficient to state

5   a tying claim.  Op. at 27–28 (emphasis in original).  The amendments do not change the *fact*,

6   incorporated into the Amended Complaint (*id.* at 2–3), that the terms of service are devoid of any

7   provision mandating users of Google Search to "actually use" or "accept" Google's local unit, *id.*

8   at 27.

9          Because Yelp cannot plead around the language of Google's terms of service, Yelp

10  cannot state tying claims based on them.

11         **B.      Yelp still fails to plausibly plead implied coercion.**

12         Yelp's implied coercion theory fares no better, because ultimately, it cannot escape its

13  own allegations that users "often" "access . . . vertical search platforms" such as Yelp, either

14  through Google Search or by "go[ing] directly to [the] SVP [specialized vertical platform]."  Am

15  Compl. ¶ 7.  That is, despite the challenged design of Google's SERP, only "30% of clicks go

16  to" what Yelp characterizes as "a Google property"—meaning that even under Yelp's theory that

17  "Google's SERP forces users to use Google's local search product," 70.5%[1] of users are *not*

18  forced to do so at all.  Op. at 28 (citing Compl. ¶ 44).  Yelp continues to plead in its Amended

19  Complaint that at least 70% of clicks on Google's search results page go to websites that appear

20  on the SERP separate and apart from Google's specialized local vertical search results.  Am.

21  Compl. ¶ 43.

22         Yelp now, however, attempts to recast the 70%-of-clicks-outside-Google's-local-unit

23  figure, claiming it should be reduced to 29%.  *Id.*  Specifically, Yelp pleads that because the 70%

24  figure is a proportion of searches-that-resulted-in-clicks, the Court should reduce the 70% figure

25  to account for those searches that result in no clicks.  Discounting 70% by the alleged overall

---

26

27  [1] Yelp's prior complaint described the figure as the inverse of 30%, i.e., 70%.  Compl. ¶ 44.  The
    Court accordingly referred to 70% as the operative figure.  Op. at 28.  Yelp's Amended
    Complaint more precisely refers to the 70% figure as 70.5%, before it recasts the figure to be
28  29%.  Am. Compl. ¶ 43.

1  proportion of all searches that result in a click (41.5%), Yelp now claims that the operative

2  statistic is the "29% of all Google *searches* in the United States [that] result in a user click to

3  unpaid, organic search results[.]" *Id.*

4      Yelp's effort to alter these user statistics fails for two reasons.  *First*, even were 29% a

5  plausible allegation of the proportion of users that are *not* coerced, that figure still is far too high

6  to plausibly plead coercion as a matter of law.  As the Court noted, where such a figure was half

7  as much, or 14%, the Ninth Circuit held only that it "*may* indicate some degree of coercion,"

8  meaning the 14% of customers not coerced is at the upper bounds of a sufficiently low figure to

9  plead implied coercion.  Op. at 28 (citing *Cascade Health*).  Indeed, *Cascade Health* relied on a

10  treatise that suggested setting the threshold even lower:  at "less than 10%."  *Cascade Health*

11  *Sols. v. PeaceHealth*, 515 F.3d 883, 915 (9th Cir. 2008) (citing 10 Areeda & Hovenkamp,

12  *Antitrust Law*, ¶ 1758b at 327 (2d ed. 2004) for "suggesting that a less than 10% proportion of

13  separate sales indicates an illegal tie").  Other courts follow the same rule.  *See, e.g.*, *Innovation*

14  *Data Processing, Inc. v. Int'l Bus. Machs., Corp.*, 585 F. Supp. 1470, 1474 (D.N.J. 1984) ("while

15  nearly 85 percent of these orders included the DFDSS program, the option to exclude it was

16  exercised by" the balance of 15 percent of customers); *Ortho Diagnostic Sys. Inc. v. Abbott*

17  *Lab'ys Inc.*, 920 F. Supp. 455, 472 (S.D.N.Y. 1996) (17% too high for coercion).  Thus, even

18  recutting the data, Yelp lands on a figure (29%) that is three times the maximum that the treatise

19  cited by *Cascade Health* endorsed, and double what courts have been willing to bear.  No case

20  finds coercion where at least 29% of customers are concededly not coerced.[2]

21      *Second*, the acrobatics Yelp performs to get the figure from 70% to 29% are implausible

22  in themselves.  For one, Yelp is merely using the figure (and citing to the same article it

23  previously relied on) to allege in another way what it said before:  that many Google searches do

24

25  _____

[2] The only published outlier is *Compuware Corp. v. International Business Machines Corp.*, 366

26  F. Supp. 2d 475, 480–82 (E.D. Mich. 2005), which, apart from being inconsistent with *Cascade Health*, is also readily distinguishable:  the defendant there had selectively bundled the products

27  at a discount in order to target the plaintiff's biggest purchasers.  Yelp pleads nothing of the sort here.

28

1   not result in a click.  Compl. ¶ 44.  The Court previously considered that allegation and,

2   notwithstanding, dismissed Yelp's tying claims for failure to plead coercion.  Op. at 27–28.  That

3   is because the relevant metric is not the percentage of *searches* that result in a click to a third-

4   party site, but the percentage of *clicks* that do.  *Id.*

5          The Court's opinion used clicks as a proxy for sales because Yelp does.  *See, e.g.*, Am.

6   Compl. ¶ 32 ("the first-ranked search result is by far the most likely to receive clicks"); ¶ 45

7   ("competition from SVPs can be intense for commercial clicks"); ¶ 146 (describing European

8   data about "how important search result placements are, with the top search result receiving

9   about 35% of all clicks, and the first result on page 2 of the search results receiving only about

10  1% of clicks").  Yelp's theory of harm remains that it was injured because it allegedly received

11  less "traffic" from Google's SERP, Am. Compl. ¶ 12, 131, *i.e.*, *clicks that send the user from*

12  *Google to Yelp.*  *See also id.* ¶ 32 ("[h]igh placement on Google's SERP . . . is key to driving

13  "traffic"); *id.* ¶ 133 (alleging a "precipitous" drop in "Yelp's organic search clicks").

14         Yelp had its numbers right the first time.  Taking Yelp's new approach and deeming no-

15  click searches as universally reflecting "coercion" would necessarily treat the mere display of

16  search results on the SERP as a "sale"—regardless of how (or if) users interact with the results.

17  Yelp, however, offers no basis to define results as "sold" to Google (and not to Yelp or any other

18  third party) where the user *does not click on any result at all.  See also Affinity Credit Union v.*

19  *Apple Inc.*, 2023 WL 12064154, at *6 (N.D. Cal. Sept. 27, 2023) ("Purchase of Apple Pay cannot

20  be a condition of purchase of an iOS mobile device because consumers do not actually purchase

21  Apple Pay or agree to forego purchase of other tap-and-pay iOS mobile wallets.").

22                                    *       *       *

23          Under the facts as Yelp alleges them, users are not "explicitly or practically require[d]"

24  to consume Google's local unit.  *Aerotec Int'l*, 836 F.3d at 1178 (citation omitted).  Nor, for that

25  matter, are users in any way forced to search for local information on Google, if the user also

26  wants to use Google for other types of online searches.  Rather, users of Google Search remain

27  free to click on links to third-party SVP websites such as Yelp, and also "go directly to [Yelp and

28

other] SVP[s]" with local specialized queries.  Am. Compl. ¶ 7.  Yelp's tying claims should be dismissed with prejudice.

## II.    Yelp's Amended Tying Claims Are Time-Barred.

Yelp's Amended Complaint not only fails to state plausible tying claims, it also fails to state timely ones.  As before, Yelp's tying claims are premised on Google's 2007 launch of universal search, whereby Google allegedly redesigned its SERP to prioritize its specialized local results over web results linking to Yelp and other webpages.  Am. Compl. ¶ 38; Op. at 19.  Such tying claims accrued in 2007 or, as the Court explained, no later than 2013 (by which point Google allegedly attained a 77% share of the "general search services market") and were thus untimely when Yelp sued in August 2024.  Op. at 18–19.

Yelp's Amended Complaint attempts to allege facts to support tolling and continuing violation exceptions to a statute of limitations defense; none of the amended allegations plausibly plead either.  In order for Yelp's tying claims to be timely, the Amended Complaint would need to plausibly allege either (1) tolling based on the filing of the October 20, 2020 "DOJ Complaint," together with "continuous violations" running until four years before the DOJ Complaint was filed (i.e., October 20, 2016); or, alternatively, absent tolling, (2) "continuous violations" running through August 28, 2020, four years before Yelp filed this lawsuit.  Because Yelp's amendments do not establish tolling and do not adequately plead continuous violations, the statute of limitations bars its tying claims.

### A.    Yelp has not pleaded a basis to toll the statute of limitations.

Yelp now asserts tolling on the basis of the filing of the DOJ Complaint on October 20, 2020.  Am. Compl. ¶¶ 171–74.  It is no coincidence that Yelp did not so plead at the outset, despite relying on the DOJ's lawsuit throughout its Complaint.  *See, e.g.*, Compl. ¶¶ 6, 10, 46, 59, 90–91.  The two suits focus on different conduct and alleged harm to different relevant antitrust markets.  The DOJ Complaint thus does not solve Yelp's timeliness problem.

Section 5(i) of the Clayton Act tolls the statute of limitations for a private action only if it is "based in whole or in part on any matter complained of" in a federal government antitrust suit. 15 U.S.C. § 16(i).  The plaintiff asserting tolling must show a "real relation" between the

1    government and private suits.  *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965).  This

2    requires the anticompetitive conduct alleged in the private suit to be "intertwined with and

3    fundamentally the same" as in the government's suit.  *Charley's Tour & Transp., Inc. v.*

4    *Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Haw. 1985).  Whether or not there is a "real

5    relation" between the government and private actions "may only be determined by comparing

6    the two complaints on their face."  *Id.*

7         While "[t]here is no requirement . . . of complete identity of the means, objectives, or

8    statutory violations in the public and private lawsuits," *Novell, Inc. v. Microsoft Corp.*, 505 F.3d

9    302, 320–21 (4th Cir. 2007) (citing *Leh*, 382 U.S. at 59, 65), several courts have held that there is

10   no "real relation" if the two cases involve "different [antitrust] markets," *Charley's Tour &*

11   *Transp.*, 618 F. Supp. at 86; *see also In re Coordinated Pretrial Proc. Petroleum Prods.*

12   *Antitrust Litig.*, 782 F. Supp. 481, 483–86 (C.D. Cal. 1991) (no tolling where government

13   complaint relied on different geographic market from private complaint); *Novell*, 505 F.3d at

14   320–21 (no tolling where government suit relied on different product markets).  Were the rule

15   otherwise, "a defendant doing business in different markets would have the statute of limitations

16   tolled as to all of its markets."  *Charley's Tour & Transp.*, 618 F. Supp. at 86.

17        The Fourth Circuit's decision in *Novell* is illustrative.  There, the court held that a private

18   plaintiff's suit against Microsoft bore no real relation to the government's prior antitrust action

19   because the government complaint had "expressly allege[d] harm to the markets for PC

20   operating systems and for Internet browsers" whereas the private suit alleged harm "to the office-

21   productivity-applications market."  *Id.* at 321.  Although the plaintiff asserted that "the 'core

22   elements' of its claims 'echo[ed] allegations made throughout the government's complaint,'" the

23   court held that the "overlap" in the "subject matter" between the two suits was insufficient to

24   satisfy the real relation test because the private action alleged "harm to a market distinct from

25   those specifically at issue in the DOJ complaint."  *Id.*  The Fourth Circuit rejected the notion that

26   "§ 5(i) of the Clayton Act should be construed to permit private plaintiffs to 'sit on their rights'

27   and to assert, years after the traditional statute of limitations has run, 'claims [different from]

28   those asserted by the government that the [delayed claims] open entirely new vistas of

1  litigation.'" *Id.* at 322.  To permit tolling in such case "would contravene the goals of certainty

2  and predictability in this area, as well as avoidance of the 'undue prolongation of [antitrust]

3  proceedings.'" *Id.* at 322.

4      So too here.  Whereas the DOJ Complaint alleges Google's distribution agreements

5  caused harm in the "markets for general search services, search advertising, and general search

6  text advertising," Am. Compl. ¶ 171; *see also United States v. Google LLC*, 20-cv-3010 (D.D.C.

7  Oct. 20, 2020), ECF 1 ("DOJ Complaint") ¶¶ 173–93, Yelp's tying claims (like its other claims)

8  allege Google's SERP design caused harm only to the purported local search markets.  *See, e.g.*,

9  Am. Compl. ¶ 231 ("Google's tying conduct as described herein is exclusionary vis-à-vis its

10  competitors in local search services[,] [b]y automatically populating and self-preferencing

11  Google's inferior local search vertical in its general search"), *id.* ¶ 232 (alleging "substantial

12  effect on commerce in the tied market for local search services").  Yelp does not plead that it

13  competes in the allegedly separate market for general search.  Indeed, the case for tolling is even

14  weaker than it was in *Novell*, because here, unlike in *Novell*, Yelp does not challenge the

15  conduct—distribution agreements—that was the exclusive focus of the DOJ Complaint.

16  *Compare Novell*, 505 F.3d at 321 (private plaintiff citing significantly overlapping conduct

17  allegations).

18      Yelp instead points to a portion of one sentence of the DOJ's 194-paragraph complaint,

19  making reference to Google allegedly offering lower quality general search services by

20  "demot[ing] organic links of third-party verticals."  DOJ Compl. ¶ 170 (paraphrased in Am.

21  Compl. ¶ 171).  But the quoted language was, on its face, entirely in service of a claim to

22  anticompetitive effects in a market for general search services alone.  In no respect was any

23  alleged tie of local results to general results "complained of" in the DOJ Complaint.  Because the

24  two complaints "involve different markets . . . and [thus] different means of proof," *Charley's

25  Tour & Transp.*, 618 F. Supp. at 86, as well as different alleged exclusionary conduct, tolling

26  does not apply.

27

28

1

**B.    Yelp has not plausibly pleaded a continuing violation.**

2       Yelp's efforts to plead continuing violations also fall short.  *See* Am. Compl. ¶¶ 129–41.

3 For a continuing violation, Yelp had to allege that Google "completed an *overt act* during the

4 limitations period that meets two criteria":  (1) "It must be a new and independent act that is not

5 merely a reaffirmation of a previous act"; and (2) "it must inflict new and accumulating injury on

6 the plaintiff."  Op. at 19 (emphasis added) (citing *Samsung Elecs. Co. v. Panasonic Corp.*, 747

7 F.3d 1199, 1202 (9th Cir. 2014)); *see also Rumble, Inc. v. Google LLC*, 2025 WL 1455820, at *9

8 (N.D. Cal. May 21, 2025).

9       As the Court observed, the continual display of Google's local unit on the SERP in

10 response to user queries, without more, falls within the "merely a reaffirmation" zone of conduct

11 and outside the requirements of an overt act.  *See* Op. at 21.  Otherwise, "[t]o allow Yelp to state

12 a continuing violation" based on the theory that "every time a user uses Google to search, a new

13 violation occurs—'would effectively swallow the statute of limitations rule.'"  *Id.* (quoting

14 *Gamboa*, 2025 WL 660190, at *3, n.1).

15       Yelp tries to assert a continuing violation in the years following 2013, citing various

16 news articles describing purported changes to Google Search.  None of these sufficiently plead a

17 continuing violation with respect to Yelp's asserted claims of tying local search results to general

18 search results.  To the contrary, the sole (and insufficient) data points pleaded in the Amended

19 Complaint regarding the proportion of clicks on results, such as Yelp's, date to 2024—*after* the

20 alleged "continued violations," *see* Am. Compl. ¶ 43, n.15.

21       ***"Pigeon."***  Yelp pleads that Google introduced a search algorithm update called "Pigeon"

22 in July 2014, which allegedly introduced "new parameters based on geographic and contextual

23 factors," and which thus "plac[ed] a stronger emphasis on location and distance as key factors in

24 determining search rankings."  Am. Compl. ¶ 129.  Those allegations do not remotely suggest an

25 unlawful tie of local search results to general search results; rather, they suggest Google making

26 its algorithms more accurate and predictive of user needs.  Accordingly, these allegations cannot

27 support a "continuing violation" with respect to an alleged tie between local and general search

28 results.  Put another way, there is no plausible allegation that "Pigeon" increased the degree to

1  which users who "purchased" Google's general search results were coerced to also purchase its

2  local search results.  *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997) ("overt act" must

3  be "part of the violation" (citation omitted)); *Z Techs. Corp. v. Lubrizol Corp.*, 753 F.3d 594,

4  600–03 (6th Cir. 2014) (conduct that does not violate antitrust laws cannot be the "overt act" that

5  effects a "continuing violation").

6    ***"Doorway pages."***  Yelp alleges that in March 2015, Google "deprioritized sites like

7  Yelp that [themselves] link to other businesses."  Am. Compl. ¶ 131.  As explained in the sole

8  source for this allegation, incorporated into the Amended Complaint, "doorway pages that are

9  created solely for search engines can harm the quality of the user's search experience."[3]  (The

10  Court may appropriately refer here to materials incorporated into the complaint.  *See* Op. at 2–3.)

11  Whether Yelp disagrees with the objective of deprioritizing such pages, what matters for present

12  purposes is that Yelp does not purport to state a claim to a continuing violation of tying local

13  search results to general search results via Google's supposed "doorway pages" update.  To

14  whatever degree Yelp alleges that its pages were deprioritized relative to other local search

15  results, that is not alleged to derive from a tie to general search results.

16    ***"Possum."***[4]  Yelp complains that this alleged 2016 algorithm update increased the

17  percentage of instances in which "Google's local pack" was "deployed," allegedly from 25% of

18  the time to 93% of the time.  Am. Compl. ¶ 132–33.  This does not plead a continued tying

19  violation for two reasons.  *First*, as explained in materials incorporated into the Amended

20  Complaint, this update was unrelated to any alleged tie to general search results, but rather was

21  directed to "meticulously filtering out duplicate or spammy listings from local search results,

22  ensuring that only the most relevant and legitimate businesses appear."[5]  On its face, that is not a

---

[3] *See* Am. Compl. at note 62, citing Google Search Central Blog (Mar. 16, 2015), *An update on doorway pages*, *available at* https://developers.google.com/search/blog/2015/03/an-update-on-doorway-pages.

[4] These are nicknames created by websites that Yelp cites, purporting to report on Google's algorithm changes.  *See, e.g.*, Am. Compl. n.63.

[5] *See* Am. Compl. at note 63, citing Chima Mmeje, *What is Google Possum? [Algorithm Updates] Local SEO*, Moz (December 9, 2024), *available at* https://moz.com/learn/seo/google-possum.

1   plausible pleading of a continuing violation of any sort. *Second*, to the extent that Yelp is

2   focused singlemindedly (to the exclusion of quality) on the frequency with which the alleged

3   change would "demote" one local search result over another, that does not plead a tie of local

4   search results *to general search results*. Yelp is complaining instead about the frequency with

5   which Google's "local listing" appeared on the SERP. Am. Compl. ¶ 133 (complaining of "the

6   introduction and expansion of the 3-pack of Google *local* results" (emphasis added)). Whether

7   that suffices as an allegation of prioritization of Google's *local* results over Yelp's, it does not

8   plausibly allege a *tie* between *general* and local results and is not otherwise the basis for a free-

9   standing antitrust claim.

10       ***"Bedlam."*** Yelp's "Bedlam" allegations are similarly implausible as a basis for a

11   continuing violation. All Yelp pleads is that "[i]n November 2019 . . . commentators noted [a]

12   'significant local update' that shifted Google local search rankings significantly." Am. Compl. ¶

13   136. Missing is both the alleged impact of the ranking update on Yelp and the connection

14   between that ranking update and Yelp's tying claim. *See, e.g.*, *Rumble*, 2025 WL 1455820, at *9

15   ("The Court questions whether the vague allegation that Defendant's search technology

16   'changes' 'over time and over the years,' would be sufficient even to *plead* a continuing

17   violation." (citation omitted) (emphasis in original)). And as above, this allegation does not

18   purport to have anything to do with a purported tie between general and local results.

19       ***"Scraping."*** Yelp also sprinkles allegations of "scraping," dating to 2014 and 2017. *See*

20   ¶¶ 130 & 134–35. As before (Op. at 12), the Court need not decide if these dated allegations

21   state an antitrust claim, because what matters on this motion is whether they plausibly plead a

22   continuing violation of tying local search results to general search results, and Yelp does not

23   even attempt to so plead. The alleged scraping of Yelp's content is not in any respect a

24   continuing tying antitrust violation.

25       ***More recent acts that Yelp pleads within the limitations period are irrelevant.*** Yelp's

26   Amended Complaint alleges two violations after 2020, i.e., in the four years prior to suit. As an

27   initial matter, these allegations—dated in 2021 and 2024—cannot alone plausibly serve as the

28   continuance of a violation dating to 2007.

1    Nor would these allegations state a tying claim in any event.  Yelp pleads that in

2    December 2021, "Google made yet another algorithm change coupled with a SERP redesign,

3    *both focused on local search*."  Am. Compl. ¶ 137 (emphasis added).  Specifically, Yelp alleges

4    that "Google moved its local search and map content up to the top of the SERP, in a more

5    prominent position."  *Id.*  This has nothing to do with any purported tie of local search results to

6    general search results; rather, as above, it complains only of the placement of Google's local

7    search results standing alone.  Whether or not Yelp can state an independent claim under the

8    Sherman Act for Google moving its "local search and map content up to the top of the SERP," in

9    no way saves its untimely tying claim involving local search results and general search results.

10    Yelp also complains that as of May 2024, "AI-generated summaries now appear at the

11    top for many local queries," and that "[t]hese often pull from Google's own review data, maps,

12    and profiles—cutting traffic to SVPs even further."  *Id.* ¶ 138.  It is hard to imagine how the

13    introduction to the SERP of summaries generated by artificial intelligence could state a tying

14    claim, but Yelp has not given the Court anything more on this point.  There is no pleading

15    whatsoever of how this constitutes tying local search to general search, much less how it does so

16    in a fashion that is a continuous violation of the 2007 SERP design.

17    Finally, allegations (*id.* ¶¶ 139–140) about the *number* of supposed algorithm changes

18    Google made to Search over the last decade-and-a-half, or that they are "secret" (which is not

19    probative of any antitrust claim) are irrelevant.  The connection between those changes and any

20    tying claim is wholly unpleaded.  *See* Op. at 20.  As such, those paragraphs have no bearing on

21    Yelp's attempt to plead a continuing violation.

22    **C.    For the same reasons, Yelp's requests for equitable relief based on tying
              allegations are time-barred.**

23

24    Yelp's requests for equitable relief under the Sherman Act and California's Unfair

25    Competition Law are similarly barred by the doctrine of laches to the extent the requests relate to

26    Yelp's tying claims.  Op. at 10–11.  "[T]he four-year statute of limitations in 15 U.S.C. § 15b

27    'furnishes a guideline for the computation of the laches period,' and courts apply the same legal

28    rules to claims for equitable relief[.]"  Op. at 10–11 (quoting *SaurikIT, LLC v. Apple Inc*., 2022

-15-

1  WL 1768845, at *4 (N.D. Cal. May 26, 2022)).  Because the statute of limitations bars Yelp's

2  tying claims, so too must laches bar Yelp's claims in equity concerning the same conduct.  *See

3  also* ECF 24 at 14–15.

4                                  **CONCLUSION**

5          For the foregoing reasons, Yelp's tying claim (Count IV), and its monopolization claims

6  (Counts I–III) and California's Unfair Competition Law claim (Count V) that rely on that tying

7  claim, should be dismissed with prejudice.

8

9

10  DATED: June 11, 2025                    By: */s/ John E. Schmidtlein*
                                            John E. Schmidtlein
11                                          Benjamin M. Greenblum
                                            WILLIAMS & CONNOLLY LLP
12                                          680 Maine Avenue SW
                                            Washington, DC 20024
13                                          Tel: 202-434-5000
                                            jschmidtlein@wc.com
14                                          bgreenblum@wc.com

15
                                            Amit Gressel
16                                          WILSON SONSINI GOODRICH & ROSATI P.C.
                                            One Market Plaza, Spear Tower, Suite 3300
17                                          San Francisco, CA  94105-1126
                                            Tel: 415-947-2087
18                                          agressel@wsgr.com

19
                                            Franklin M. Rubinstein (*pro hac vice*)
20                                          WILSON SONSINI GOODRICH & ROSATI P.C.
                                            1700 K Street NW
21                                          Washington, DC 20006
                                            Tel: 202-973-8800
22                                          frubinstein@wsgr.com

23
                                            *Attorneys for Defendant Google LLC*
24

25

26

27

28