Sathya S. Gosselin (SBN 269171)
Swathi Bojedla (admitted *pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: sgosselin@hausfeld.com
Email: sbojedla@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

(*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| | Case No. 5:24-cv-06101-SVK |
| **YELP INC.,** | **PLAINTIFF YELP'S OPPOSITION TO GOOGLE'S MOTION TO DISMISS THE AMENDED COMPLAINT** |
| Plaintiff, | |
| v. | |
| **GOOGLE LLC,** | Hon. Magistrate Judge Susan van Keulen |
| Defendant. | Date:     July 29, 2025 |
| | Time:     10 a.m. |
| | Place:    Courtroom 6, 4th Floor |

# TABLE OF CONTENTS

I.      INTRODUCTION .................................................................................................. 1

II.     BACKGROUND .................................................................................................... 1

III.    LEGAL STANDARD ............................................................................................ 5

IV.     ARGUMENT ......................................................................................................... 6

      A.      Yelp's Allegations of Unlawful Tying of Local Search Services to General
            Search Services (Count IV) Are Timely. ........................................................ 6

            1.      Google's Algorithm Changes and SERP Redesigns Are Overt Acts
                 Restarting the Clock on Yelp's Tying Claim. ............................................. 6

            2.      The DOJ's October 2020 Complaint Tolled the Statute of Limitations
                 for Yelp's Tying Claims. ............................................................................. 8

            3.      Yelp's Amended Complaint Provides Multiple Allegations Supporting
                 the Timeliness of Its Tying Claim. ........................................................... 10

            4.      For the Same Reasons, Yelp's Request for Equitable Relief Based on
                 Tying Is Timely. ........................................................................................ 11

      B.      Yelp Has Plausibly Alleged that Users Are Coerced into Accepting Google's
            Local Search Services. .................................................................................... 11

            1.      Users Are Forced to Consume Google's Local Search Services on the
                 SERP, Without Clicking on Any Link. ..................................................... 11

            2.      Users Are Expressly and Impliedly Coerced to Take Google's Local
                 Content. ..................................................................................................... 13

V.      CONCLUSION .................................................................................................... 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ASARCO, LLC v. Union Pac. R.R. Co.*,
   765 F.3d 999 (9th Cir. 2014)........................................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 5

*Cascade Health Sols. v. PeaceHealth*,
   515 F.3d 883 (9th Cir. 2008).......................................................................................... 13

*Dream Big Media Inc. v. Alphabet Inc.*,
   2022 WL 16579322 (N.D. Cal. Nov. 1, 2022) ............................................................... 13

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
   885 F. Supp. 2d 617 (S.D.N.Y. 2012) .......................................................................... 8, 9

*In re Lower Lake Erie Iron Ore Litig.*,
   1987 WL 4775 (E.D. Pa. Apr. 13, 1987) ......................................................................... 8

*Leh v. Gen. Petroleum Corp.*,
   382 U.S. 54 (1965) ......................................................................................................... 9

*Novell, Inc. v. Microsoft Corp.*,
   505 F.3d 302 (4th Cir. 2007)...................................................................................... 9, 10

*Samsung Elecs. Co. v. Panasonic Corp.*,
   747 F.3d 1199 (9th Cir. 2014)..................................................................................... 6, 7

*SaurikIT, LLC v. Apple Inc.*,
   2022 WL 1768845 (N.D. Cal. May 26, 2022) ............................................................... 11

*State of N.J. v. Morton Salt Co.*,
   387 F.2d 94 (3d Cir. 1967).............................................................................................. 9

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010)........................................................................................... 5

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*,
   401 U.S. 321 (1971)................................................................................................... 8, 10


**Statutes**

15 U.S.C. § 15 ................................................................................................................... 8, 11

15 U.S.C. § 16 ..................................................................................................................... 8, 9

**Other Authorities**

ABA Section of Antitrust Law, *Antitrust Law Developments* (9th ed. 2022)......................................... 9

## I.    INTRODUCTION

In its April 22, 2025, order largely denying Google's motion to dismiss Yelp's complaint, the Court provided Yelp with the opportunity to amend its tying claim. Yelp's Amended Complaint details many of Google's anticompetitive acts designed to exploit its dominant position in general search and compel users to use its own inferior local search product over those of its competitors, including Yelp. Through a sustained series of product changes and algorithm updates, Google systematically forces users to consume its own content and diverts traffic and revenue from its local search competitors, gaining market share in the local search markets. Based on the Court's prior determinations and Yelp's new allegations reinforcing Google's anticompetitive conduct, Google's renewed partial motion to dismiss should be denied.

## II.    BACKGROUND

On August 28, 2024, Yelp sued Google, alleging violations of Section 2 of the Sherman Act and California's Unfair Competition Law. ECF 1 ("Compl."). Count IV of the Complaint alleged that Google unlawfully ties its local search product to its general search product, using "its monopoly power in general search services (*i.e.,* the tying product) to compel users to use Google's own local search product (*i.e.,* the tied product)." *Id.* ¶ 211. In support of its tying claim, Yelp alleged that Google has designed its search engine results page ("SERP") to direct users towards its own, inferior local search vertical and away from competitors. *Id.* The Complaint alleged that Google does this both through practice (its SERP design) and through its Terms of Service, which prohibit modifying any part of Google's services or software when using Google's general search services. *Id.* As a result of Google's practices and Terms of Service, users are coerced into using Google's local search product.

On April 22, 2025, the Court largely rejected Google's motion to dismiss the Complaint, while granting the motion as to Yelp's tying claims, with leave to amend. ECF 47 ("Order"). The Court's decision on the tying claims was premised on two bases: 1) that Yelp had not yet pleaded enough facts to demonstrate that users were coerced into using Google's local search services, and 2) that additional allegations of Google's changed conduct since 2007 were needed to establish timeliness. *Id.* at 18–21, 26–28. Yelp filed its Amended Complaint on May 14, 2025, with additional allegations addressing

both issues. ECF 50 ("AC"). For purposes of the Court's disposition of Google's instant motion (ECF 53 ("MTD")), the relevant allegations are as follows.

Beginning in the mid-2000s, Google tried unsuccessfully to create its own vertical properties in-house, including a local search vertical. AC ¶ 37. In 2007, to bolster its fledgling products, Google introduced "universal search," including OneBoxes, to put its own search verticals at the top of the SERP, typically placed above organic search results. *Id.* ¶ 38. For example, with respect to local search, Google's search algorithm would detect whether a user evidenced a local intent in their search. If so, the search would trigger Google's local search results, which Google exempted from its own organic search rankings, to populate the top of the SERP. *Id.* ¶ 39. Studies show that users focus on the top of the SERP, or the visible area that users immediately see when they open a webpage without having to scroll down or across, meaning that by pushing Yelp and other competitors far down the page, Google effectively prevented users from seeing those results. *Id.* ¶ 32. In addition to receiving preferential treatment, Google's search verticals also feature other elements (maps, color photographs, product information) that are not available to its competitors and that are designed to attract users towards Google's verticals and push them away from competitors. *Id.* ¶ 40.

Over the next 18 years, Google frequently altered its search algorithms, features, and the design of its SERP to leverage its position as the gateway to the internet to force users to also consume its local search product, to the detriment of competition. In 2014, for example, Google introduced its "Pigeon" search algorithm update, which changed the SERP to more prominently feature and integrate Google's own local search content. *Id.* ¶ 129. One industry site called it "one of the greatest shakeups of Google's local and local organic results to date[,]" noting that it represented a "pivotal shift" in how search rankings for local search were determined. *Id.* Pigeon also accelerated Google's goal of creating "zero-click searches," or searches where users never leave Google's SERP at all. Google accomplished this by scraping information from local businesses' websites and including it at the top of the SERP, reducing traffic to competitors. *Id.* ¶ 130.

In 2015, Google's "doorway" update intentionally deprioritized sites—like Yelp—that linked to other businesses (but not Google's own pages), resulting in Google depressing traffic to its local

search competitors to benefit itself. *Id.* ¶ 131. This algorithm update led to Yelp experiencing its first-ever decline in year-over-year traffic. *Id.*

In August 2016, Google made another significant update to its SERP, nicknamed the "Possum" update. While prior searches demonstrating local intent would return a "7-pack" of results at the top of the SERP, the Possum update replaced that with a 3-pack local listing format, enlarging the font size and prominence and adding a new drop-down category of information. *Id.* ¶ 132. Industry observers noted that the Possum update increased the frequency with which Google's local results were served to users and their visibility in the SERP. *Id.* One study found that "[a]stoundingly, **the new local listing format shows in the #1 rank position 93% of the time** – a HUGE increase from the 25% of time that the old 7 pack used to show in the #1 position." *Id.* In other words, local search providers like Yelp would now be pushed further down, and potentially out of view of users, in 93% of searches. Rolled out slowly into 2017, this update more forcefully coerced users into using Google's local search product—by significantly enlarging the size, prominence, and extent of Google's local search contents—over its competitors' superior products. As a result of the Possum update, a "massive blow" to Yelp and other local search competitors, Yelp's organic clicks dropped precipitously. *Id.* ¶ 133.

Possum was followed by the "Hawk" update, which adjusted the filtering of local businesses introduced by Possum. *Id.* Later in 2017, Yelp discovered that Google was scraping images from Yelp's website to populate its own local search results, including by deploying Yelp's content on Google Maps as a means of keeping users on Google's local search product. *Id.* ¶ 134. Again, Google attempted to perfect its tie-in further: a consumer using Google's general search product and "receiving Google's local search product at the top of the SERP, improved by images scraped from Yelp, was less likely to continue to scroll through the organic search results, further depressing clicks for any non-Google content." *Id.* ¶ 135.

In December 2021, Google introduced another significant algorithm update, coupled with a SERP redesign, both focused on local search. This update moved Google's own local search and map content to the top of the SERP, in a more prominent position, and increased Google's own local content

- 3 -

1    in size as compared to the trailing organic results. *Id.* ¶ 137. Now, users who evinced local intent were

2    served a "mega-map" of Google's own local search results, further driving down organic results and

3    encouraging more zero-click searches. *Id.* Figs. 6 & 7. Here again, Google modified its tying conduct

4    to make its local search content all the more inescapable. Since May 2024, with Google's launch of

5    "AI overviews" in the United States, local search users are now served AI-generated summaries at the

6    top of the SERP, above any competitor content or any clickable content at all, further driving zero-

7    click searches. *Id.* ¶ 138.[1]

8         Today, Google's anticompetitive conduct has succeeded in edging out its competition in local

9    search services through its continuing modifications to its search algorithms and SERP, which tie its

10   own local search services to the use of general search services and force users to consume Google's

11   local search services over any competing products. For example, one recent study found that "at least

12   58.5% of all Google searches" of any kind (i.e., not just local) result in no click at all. *Id.* ¶ 43. That

13   means that just 41.5% of all Google searches result in a click at all, with 28.5% of those clicks going

14   to a Google property. *Id.* That study only minimally included mobile searches, which are more likely

15   to result in zero-click searches. *Id.* n.15. When mobile searches are factored in, "zero-click searches

16   on Google are even more prevalent for searches with *local* search intent[.]" *Id.* ¶ 43 (emphasis added).

17   This is because, to start, Google generates more local searches on mobile than desktop (*Id.* ¶ 176) and

18   "the primacy" of the OneBox "is even more pronounced" on mobile, "where the smaller screen size

19   means that a user must scroll through several screens before even reaching organic search results." *Id.*

20   ¶ 42. Thus, at the outer bound, ***only 29%*** of all Google searches in the United States result in a user

21   click to unpaid, organic search results, and that number is likely far lower for local searches. *Id*. ¶ 43.

22

23   _____

     [1] Google's conduct continues even since the filing of the Amended Complaint with its public launch
24   of AI mode, which has been described as "the biggest change Google Search ever made in its history
     . . . bigger than the universal search change in 2007, bigger than featured snippets and even bigger than
25   AI Overviews." Barry Schwartz, *The future of SEO as the future Google Search rolls out,* Search
     Engine Land (May 23, 2025), https://searchengineland.com/the-future-of-seo-as-the-future-google-
26   search-rolls-out-455954. As the article notes, both AI Mode and AI Overviews "do not send traffic
     organically to websites" like Yelp, and studies "show huge drops in click-through rates and drops in
27   traffic to websites" resulting from Google's recent AI-focused SERP changes. *Id.*

28

1    For these zero-click searches, Google furnishes its own content elevated over all vertical search

2    competitors, without sending a click anywhere. *Id.* ¶ 43. Google's ability to induce zero-click searches,

3    in which a user never leaves Google's SERP, is a key component of Google's achievement of its

4    dominant market share. *Id.* ¶ 84. Far from fulfilling its promise to be the gateway to the internet, Google

5    abuses its dominant share of the general search services market to choke off traffic to its local search

6    competitors, depriving them of the clicks (and revenues, on which they rely to continue operating) they

7    would otherwise receive in a fair market.

8    Amid this conduct, Google's actions in the general search services market caught the eye of

9    government regulators. On October 20, 2020, the U.S. Department of Justice and 11 state attorneys

10    general brought suit against Google under Section 2 of the Sherman Act for unlawfully maintaining

11    monopolies in, among other things, the markets for general search services. The government's

12    complaint challenged Google's anticompetitive conduct, alleging that it insulated Google from

13    competitive pressure to improve its search and search advertising offerings and harmed competition

14    and competitors. The complaint specifically called out the harm to "third-party verticals" like Yelp,

15    whose organic links Google had "demoted . . . further and further down the results page." *Id.* ¶ 171.

16    On August 8, 2024, following a bench trial, Judge Amit Mehta (D.D.C.) issued findings of fact and

17    conclusions of law concluding that Google has monopoly power in the general search services market

18    and that Google had violated Section 2 of the Sherman Act by acquiring or maintaining that monopoly

19    power through exclusionary conduct with widespread anticompetitive effects. *Id.* ¶ 172.

20    **III.    LEGAL STANDARD**

21    As with Google's initial motion to dismiss, to survive a motion to dismiss its tying claim, Yelp

22    need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

23    *Twombly*, 550 U.S. 544, 570 (2007). Yelp's tying claim cannot be dismissed as time-barred unless "the

24    running of the statute is apparent on the face of the complaint" and "it appears beyond doubt that [Yelp]

25    can prove no set of facts that would establish the timeliness of the claim." *Von Saher v. Norton Simon*

26    *Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citations omitted). "If, from the

27    allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises

28

1   disputed issues of fact, dismissal under Rule 12(b)(6) is improper." *ASARCO, LLC v. Union Pac. R.R.*

2   *Co*., 765 F.3d 999, 1004 (9th Cir. 2014) (citation omitted).

3   **IV.    ARGUMENT**

4       **A.    Yelp's Allegations of Unlawful Tying of Local Search Services to General Search Services (Count IV) Are Timely.**

5           **1.    Google's Algorithm Changes and SERP Redesigns Are Overt Acts Restarting the Clock on Yelp's Tying Claim.**

6

7       As the Court recognized in its Order, the "continuing violations doctrine is 'an exception to

8   th[e four-year] time limit' of the statute of limitations." Order at 19 (quoting *Samsung Elecs. Co. v.*

9   *Panasonic Corp*., 747 F.3d 1199, 1202 (9th Cir. 2014)). "[S]mall actions may suffice [as] 'the typical

10  antitrust continuing violation occurs . . . when conspirators continue to meet to fine-tune their cartel

11  agreement.'" Order at 19 (quoting *Samsung*, 747 F.3d at 1204). Similarly, "'acts taken to enforce a

12  [pre-existing] contract' also qualify as 'overt acts that restarted the statute of limitations.'" Order at 19

13  (quoting *Samsung*, 747 F.3d at 1204). While the Complaint broadly alleged that Google continued to

14  change its algorithm and increase triggering of OneBox results, the Court sought more to sustain Yelp's

15  allegations of continuing violations. Order at 20 (noting "the 2015 change to Google's algorithm" and

16  the need for additional allegations of changed conduct). The Court provided Yelp the opportunity to

17  amend in support of its tying claim.

18      Yelp has now done so. While Google is secretive about its local search algorithm changes and

19  does not discuss them publicly (AC ¶ 129), based on limited available information and without the

20  benefit of discovery, Yelp alleged significant local search-focused algorithm and SERP updates in at

21  least July 2014, March 2015, August 2016, August 2017, November 2019, December 2021, and May

22  2024. For example, the August 2016 Possum update, which was ultimately deployed in 2017,

23  fundamentally changed how often Google's local pack of search results was triggered, from 25% of

24  the time to 93% of the time. AC ¶¶ 132–33. Similarly, the December 2021 mega-map reoriented the

25  SERP to increasingly highlight Google's own results and push organic results further down the page.

26  *Id.* ¶ 137. Each of these and other alleged significant, local-search-oriented algorithm and SERP

27  changes are analogous to the 2015 algorithm change that the Court credited as "changed conduct" in

28

- 6 -

its Order.

Google now asks this Court to conclude, as a matter of fact, that these alleged algorithm changes did not increase the degree to which users were coerced to "purchase" Google's local search results. MTD at 12–13. But that reading of the Amended Complaint ignores Yelp's plausible allegations of coercion and fails to draw inferences in Yelp's favor. *See, e.g.,* AC ¶ 133 (in 2017, Possum "increased [Google's] deployment of the local pack by orders of magnitude and kept users from scrolling down to organic search results, choking off traffic to Yelp and other local search competitors"); *id.* ¶ 137 (in December 2021, the "mega-map" update was "designed to avoid any additional scrolling through to organic search results").

Google next argues that these changes do not actually relate to tying. MTD at 13–14. Google apparently misreads Yelp's tying claim, which is based on Google "designing its SERP so that users are forced to consume Google's local search content and results and directed more broadly towards its own additional, and inferior, local search vertical content and away from its competitors . . . ." AC ¶ 230. Allegations buttressing design changes to Google's SERP and algorithm changes relating to local intent are directly related to Yelp's tying claim, as this Court previously noted. *See* Order at 19 (noting that Yelp's tying claim is premised on Google designing its SERP to direct users to Google's local search product and away from competitors); *id.* at 20 (concluding that allegations concerning Google's 2015 "doorway" algorithm update are "sufficient" to demonstrate changed conduct with respect to Yelp's tying claim).

Finally, Google claims that the individual acts alleged are not, standing alone, violative of the antitrust laws. MTD at 14–15. This ignores that "small actions" that fine-tune the original violation and acts taken to enforce a pre-existing contract all count as "'overt acts that restart[] the statute of limitations.'" Order at 19 (quoting *Samsung*, 747 F.3d at 1204). Here, each algorithm change and SERP redesign that modified and refined Google's self-preferencing conduct constitutes a new, overt act for continuing violations purposes. Indeed, Yelp's amended allegations are similar in kind to the allegations that the Court already found indicative of changed conduct supporting application of the continuing violations doctrine. *See* Compl. ¶ 128 (alleging that the 2015 algorithm adjustment had "the

- 7 -

effect of decreasing traffic to [Google's] local search competitors, causing Yelp to have its first ever decline in year-over-year traffic" and "helping Google obtain more market share"); Order at 20 (crediting that allegation for continuing violations purposes). Taken together with Yelp's detailed allegations about the importance of placement on the SERP, the increased prevalence of zero-click searches and the high proportion of user queries that never reach Google's competitors, and the impact of Google's SERP and algorithm change on competitors, Yelp has plausibly alleged how Google's acts constituted continuing violations.

### 2. The DOJ's October 2020 Complaint Tolled the Statute of Limitations for Yelp's Tying Claims.

Beyond the continuing violations doctrine, the DOJ's 2020 lawsuit against Google, which remains ongoing in its remedies phase, tolled the statute of limitations for Yelp's claims, including tying. Section 5(i) of the Clayton Act tolls the statute of limitations during the pendency of any federal government antitrust action (save for those brought under 15 U.S.C. § 15a), and for one year thereafter, for every "private or State right of action arising under" the antitrust laws that is "based in whole or *in part* on *any* matter complained of in said [governmental] proceeding." 15 U.S.C. § 16(i) (emphasis added).

The purpose of this provision is to "enable private litigants to have the benefit of the final judgment in the government's case . . . [and] also to enable the private litigants to have the benefit of whatever clarification of *either* the facts or the law the government's litigation may provide." *In re Lower Lake Erie Iron Ore Litig.,* MDL 587, 1987 WL 4775, at *1 (E.D. Pa. Apr. 13, 1987) (emphasis added); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 630 (S.D.N.Y. 2012) (government tolling "gives effect to the statute's purpose by allowing [plaintiffs] to benefit from the Government proceedings that have preceded their amended claims"). The Supreme Court explained in *Zenith Radio* that "permitting private litigants to await the outcome of Government suits and use the benefits accruing therefrom" is consistent with the "congressional policy" underlying Section 5(i). *Zenith Radio Corp. v. Hazeltine Rsch., Inc*., 401 U.S. 321, 336 (1971). Other cases examining the congressional intent of Section 5(i) note that the provision was "enacted for the benefit of private

- 8 -

parties who were injured" and that "[t]his factor plus Congressional policy suggest most strongly that the tolling provision, if of doubtful meaning, should be interpreted in a way which will permit a determination on their merits of private claims in this area." *State of N.J. v. Morton Salt Co.*, 387 F.2d 94, 97 (3d Cir. 1967). *See also Hinds Cnty.,* 885 F. Supp. 2d at 626 ("[t]he private plaintiff is not required to allege that the same means were used to achieve the same objectives of the same conspiracies by the same defendants" as in the government action) (quoting *Leh v. Gen. Petroleum Corp*., 382 U.S. 54, 59 (1965)); ABA Section of Antitrust Law, *Antitrust Law Developments* 861 (9th ed. 2022) ("Identity of issues between the two proceedings is not required [for government tolling]").

Ignoring the weight of authority urging a broad interpretation of government tolling, Google relies on *Novell* to advance a far narrower application. MTD at 10-11 (discussing *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007)). There, the original government action accused Microsoft of unlawfully maintaining a monopoly in the PC operating-system market. The plaintiff in the following private action sought tolling for harm in an entirely different market, the office-productivity-applications market, which did not overlap "in part" with the subject matter on the face of the government's complaint and was not alleged in the government's complaint. *Novell*, 505 F.3d at 321. *Novell* is easily distinguished, because here, a key element of Yelp's tying claim is Google's market power in the general search services market, the *exact market* at issue in the DOJ litigation. And *Novell* was decided in defendant's favor because the office-productivity-applications market was not implicated on the face of the government's complaint, whereas here, the 2020 DOJ complaint indisputably concerns the general search services market and specifically calls out the harm to "'third-party verticals'—whose organic links Google had 'demoted . . . further and further down the results page.'" AC ¶ 171 (quoting 2020 DOJ complaint).

Google stretches *Novell* to hold that complete overlap is required when the opposite is true: 15 U.S.C. § 16(i) asks whether there is *any* overlap between the two actions. *Id.* (requiring only that the private action be "based in whole or *in part* on *any* matter complained of in said [governmental] proceeding") (emphasis added). And even *Novell* concedes that there "is no requirement, however, of complete identity of the means, objectives, or statutory violations in the public and private lawsuits."

- 9 -

*Novell*, 505 F.3d at 320. *See also id.* (plaintiffs need only demonstrate "a significant overlap of *subject matter* between the two actions") (emphasis added). Indeed, allowing Yelp here to "await the outcome of Government suits and use the benefits accruing therefrom"—i.e., a finding of Google's monopoly power in the general search services market from which Yelp's tying claim flows—is exactly in line with the congressional policy espoused by the Supreme Court in *Zenith*.[2]

     **3.**     **Yelp's Amended Complaint Provides Multiple Allegations Supporting the Timeliness of Its Tying Claim.**

Taken together, Yelp's continuing violations and government tolling allegations provide the Court with multiple plausible avenues supporting the timeliness of Yelp's tying claims. Standing alone, Yelp's allegations concerning the 2021 "mega-map" update, which altered the SERP to increase the prominence of Google's own results and prevent scrolling to organic results from competitors like Yelp, restarted the clock for statute of limitations purposes. AC ¶¶ 137 & Figs. 6–7. The same is true of Google's most recent 2024 SERP redesign to prominently feature its own AI-generated results, which further encourage zero-click searches and deprive Yelp and other competitors of traffic in an entirely new way. *Id.* ¶ 138. Google makes a throwaway argument that more recent actions "cannot alone plausibly serve as the continuance of a violation dating to 2007." MTD at 14. Tellingly, Google cites no authority for that proposition, and Yelp is aware of none. Even if that were the standard, Yelp has cited numerous overt acts from 2007 through 2024 to satisfy its burden on timeliness, a far cry from Google's strained portrayal of a violation in 2007 coupled only with a single act in the last four years.

---

[2] Google's argument is also belied by its own spokesperson, who publicly stated that all of Yelp's claims here were addressed in the DOJ case. *See* Lauren Feiner, *Yelp sues Google for antitrust violations*, The Verge (Aug. 28, 2024), https://www.theverge.com/2024/8/28/24230905/yelp-google-antitrust-lawsuit.

With the benefit of government tolling, the Court could also look to Google's 2016-2017 Possum update, which fundamentally changed local search by increasing the triggering of Google's OneBox results from 25% of the time to 93% of the time (AC ¶¶ 132–33). And the same is true of Google's scraping behavior in 2017 (*id.* ¶¶ 134–35) or its local search-focused Bedlam update in 2019 (*id.* ¶ 136), when combined with government tolling. In short, under any combination of allegations, Yelp has plausibly alleged the timeliness of its tying claim.

### 4. For the Same Reasons, Yelp's Request for Equitable Relief Based on Tying Is Timely.

As the Court previously noted, "the four-year statute of limitations in 15 U.S.C. § 15b 'furnishes a guideline for the computation of the laches period,' and courts apply the same legal rules to claims for equitable relief[.]" Order at 10–11 (quoting *SaurikIT, LLC v. Apple Inc.*, 2022 WL 1768845, at *4 (N.D. Cal. May 26, 2022)). Because Yelp's tying claims are timely, the Court should deny the application of laches to Yelp's equitable claims.

### B. Yelp Has Plausibly Alleged that Users Are Coerced into Accepting Google's Local Search Services.

### 1. Users Are Forced to Consume Google's Local Search Services on the SERP, Without Clicking on Any Link.

The Court previously determined that Yelp had not yet pleaded coercion for its tying claim because, through Google's terms and the way it populates its search page, users "*see options for* local search results" but are not required to "accept the local search results[.]" Order at 27. Yelp's Amended Complaint clarifies that users must "accept" and "consume Google's own local search content and results in the form of the information automatically displayed on the SERP"—without needing to click through to a Google local platform such as Google Maps or on any other link. AC ¶ 156.

The local OneBox that Google automatically serves on the SERP "*is Google's local search content*, akin to the initial results from a user search of Google Maps or Yelp for [the same query]." *Id.* (emphasis added). The local OneBox provides "Google's determination of the top, most relevant local search results in their entirety[,]" and, for each business, information such as "review metrics, review count, contact information, description, contact information, location, and hours of

- 11 -

operation"—all without the user ever leaving the SERP. *See id.* ¶ 156, Figs. 7, 9. This substantial local content is foisted on users in unavoidable placement at the top of the page (which has become more prominent over time), whether they want it or not, and before they might scroll down to actual search result links. "Thus, users of Google's general search are forced to accept, consume, and actually use (i.e., digest the information provided by) Google's local search content." *Id.* ¶ 156. To be sure, users "may also take the additional step of clicking" out of the SERP to Google's local SVP, Google Maps, "but even without doing so, they have already consumed Google's local search content *by design.*" *Id.* ¶ 157. So, contrary to Google's characterization, the OneBox is not a usual search result link to a website that users must click on before they can receive content from that site. *C.f.* MTD at 8 (describing the OneBox as "the mere display of search results on the SERP"). Google skips that user choice entirely for its own local services and automatically serves up its local content before users click on any link.

Yelp's Amended Complaint also makes clear that users meaningfully "use" Google's local content without the need to click. "[A]fter seeing Google's three suggested local businesses in a OneBox at the top of the SERP . . . users frequently identify a local business to contact or patronize and end their search, without clicking on anything or scrolling down to Google's organic search results." AC ¶ 43. It is not just plausible that users "actually use" SERP content without clicking on a link, it is a growing trend—"Google's increased use of features like OneBox . . . has resulted in an increasing volume of searches, including those with local search intent, where users do not leave Google's SERP at all, called zero-click searches." *Id.* If anything, Google's contention here—that there can be no "use" of SERP content without clicking—is *im*plausible given Google's own efforts to "furnish[] its own content [on the SERP] . . . without sending a click anywhere, not even to its own platforms[.]" *Id.* (emphasis removed). This includes Google's increasing use of the OneBox, as well as Google's launch of AI Overviews, in which "AI-generated summaries now appear at the top" of the page to answer many local queries, again without the user needing to click. *Id.* ¶ 138. If this content was wholly unusable, Google would not prioritize it at the top of its SERP.

Rather than grapple with any of Yelp's new allegations on the actual use of Google's local content as it appears on the SERP, Google ignores them entirely, claiming that Yelp "offers no basis" to allege use of Google's local content "where the user *does not click on any result at all*." MTD at 8 (emphasis in original); *id.* (relying on the Court's opinion—based only on Yelp's *original* complaint without consideration of Yelp's amended allegations on this subject—purportedly taking "clicks as a proxy for [use]"). This ignores the detailed allegations concerning the design and use of Google's local OneBox content, zero-click searches, importance of placement on the SERP, and how keeping users from clicking anywhere at all helps Google eliminate competition. All of Google's arguments on coercion fail because they hinge on Google's assumption—directly contrary to Yelp's plausible allegations—that there can be no "use" of Google's local content without clicking.

### 2.    Users Are Expressly and Impliedly Coerced to Take Google's Local Content.

Google's general search services users are expressly and impliedly coerced to take Google's local search services. Under Google's Terms of Service, "users are prohibited from modifying 'any part of [Google's] services or software'" and have no choice but to take the OneBox automatically served on the SERP. AC ¶¶ 155–56. Through these terms, Google expressly refuses to provide the tying product (Google general search services) without the tied product (Google's local search services), which "obviously constitutes coercion[.]" Order at 26–27 (quoting *Dream Big Media Inc. v. Alphabet Inc.*, 2022 WL 16579322, at *4 (N.D. Cal. Nov. 1, 2022)). In arguing that the terms do not require users to accept Google's local content, Google ignores Yelp's allegations that users have already taken local content when it is served on the SERP (as discussed *infra* at 11–12), and are prohibited from using Google Search without that tie-in. *See* MTD at 5–6.

Google's conduct also constitutes implied coercion. As the Court explained, implied coercion requires allegations that "an appreciable number of users have accepted Google's local search results[,]" and "the percentage of sales that remained open to competitors and were not dominated by the alleged monopolist [is low,]" such as 14%. Order at 28 (citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 914 (9th Cir. 2008). Here, *all* Google general search users must accept Google's local search results whenever Google detects local intent and invariably serves up the local

1    OneBox. These searches are dominated by Google, as Google's local OneBox always comes first on

2    Google's SERP and users must take Google's content before they can scroll down to links to competing

3    local search providers. Google's tie is so inescapable that *even when the user expressly requests a*

4    *competitor's content* by entering the query "plumbers san francisco yelp," Google still serves its local

5    OneBox first on the SERP, before the link to Yelp. AC ¶ 164, Fig. 10. Google's capture of *all* searches

6    for which it recognizes local intent, by virtue of triggering its own search results at the top of the SERP,

7    is enough to plead implied coercion on its own.

8         Moreover, after users have already taken Google's local content, very little business for

9    *additional* local results remains open to competitors, as users increasingly do not click out of the SERP

10   at all. *Infra* at 4–5. Here, Google merely argues that 29% is too high a percentage for implied coercion,

11   MTD at 6–8, failing to recognize that number is for all Google searches, not just *local* searches, and

12   ignoring Yelp's plausible allegations that "substantially less than 29% of local search queries on

13   Google remain 'open' to Google's competitors[.]" AC ¶¶ 42–43, 176, 231.

14        Yelp plausibly pleads coercion by alleging Google's refusal under its terms to offer its general

15   search services without the tie-in of its local search services; Google's actual practice of dominating

16   all local searches with its local content before users can even see links to any of Google's competitors;

17   and the small window of clicks that remains for competitors after users have already consumed

18   Google's local content. Together, these allegations warrant denial of Google's motion.

19   **V.     CONCLUSION**

20        For the foregoing reasons, Yelp has plausibly stated a timely claim for unlawful tying, in

21   violation of Section 2 of the Sherman Act, and Google's renewed partial motion to dismiss should be

22   denied.

23

24

25

26

27

28
                                          - 14 -

Dated: June 25, 2025                          **HAUSFELD LLP**

                                              By: */s/ Swathi Bojedla*
                                              Sathya S. Gosselin (SBN 269171)
                                              Swathi Bojedla (admitted *pro hac vice*)
                                              **HAUSFELD LLP**
                                              1200 17th St N.W., Suite 600
                                              Washington, DC 20036
                                              Tel: (202) 540-7200
                                              Fax: (202) 540-7201
                                              sgosselin@hausfeld.com
                                              sbojedla@hausfeld.com

                                              Renner K. Walker (SBN 295889)
                                              **HAUSFELD LLP**
                                              33 Whitehall Street, 14th Floor
                                              New York, NY 10004
                                              Tel: (646) 357-1100
                                              Fax: (212) 202-4322
                                              rwalker@hausfeld.com

                                              Joanne Bui (SBN 340378)
                                              **HAUSFELD LLP**
                                              580 California St, 12th Floor
                                              San Francisco, CA 94104
                                              Tel: (415) 633-1908
                                              Fax: (415) 633-4980
                                              jbui@hausfeld.com

                                              *Attorneys for Plaintiff Yelp Inc.*

- 15 -