[*Submitting counsel on signature page*]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

YELP INC.,

          Plaintiff,

v.

GOOGLE LLC,

          Defendant.

Case No. 5:24-cv-06101-SVK

**DEFENDANT GOOGLE'S REPLY IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS AMENDED COMPLAINT**

Date:    July 29, 2025
Time:   10 a.m.
Place:  Courtroom 6, 4th Floor
Judge:  Magistrate Judge Susan van Keulen

-i-

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ii

INTRODUCTION .......................................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

I.     YELP STILL FAILS TO PLAUSIBLY PLEAD COERCION. ................................... 2

     A.     Yelp has not plausibly pleaded express coercion. ...................................................... 2

     B.     Yelp has not plausibly pleaded implied coercion. ...................................................... 3

II.     YELP'S AMENDED TYING CLAIMS ARE TIME-BARRED. ............................... 5

     A.     Yelp has not pleaded a basis to toll the statute of limitations. ................................. 6

     B.     Yelp has not plausibly pleaded a continuing violation. ............................................. 8

     C.     For the same reasons, Yelp's requests for equitable relief based on tying allegations are time-barred. ................................................................................ 10

CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

## CASES

*Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883 (9th Cir. 2008)..........................................3, 4

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617 (S.D.N.Y. 2012).........................7

*In re Lower Lake Erie Iron Ore Litigation*, 1987 WL 4775 (E.D. Pa. Apr. 13, 1987)....................7

*In re Sentinelone, Inc. Sec. Litig.*, 2024 WL 3297150 (N.D. Cal. July 2, 2024) .............................2

*Leh v. Gen. Petroleum Corp.*, 382 U.S. 54 (1965) .........................................................................7

*Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007) ...........................................2, 6, 7, 8

*State of N.J. v. Morton Salt Co.*, 387 F.2d 94 (3d Cir. 1967) ..........................................................7

*Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321 (1971)..................................................7

## OTHER AUTHORITIES

ABA Section of Antitrust Law, *Antitrust Law Developments* (9th ed. 2022) .................................7

10 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (2d ed. 2004) ...................................3

**INTRODUCTION**

Google's Partial Motion to Dismiss Yelp's Amended Complaint, ECF 53 ("Motion" or "Mot."), is targeted at whether the tying claims in Yelp's Amended Complaint, ECF 50 ("Am. Compl."), should be dismissed with prejudice. To try to keep those tying claims alive, Yelp's Opposition, ECF 54 ("Opp.") seeks to convert its so-called self-preferencing allegations into a tying claim. But antitrust tying has specific legal elements; because Yelp is unable to satisfy those elements despite leave to amend, dismissal of the tying claims with prejudice is appropriate.

Under the Court's order on the prior motion to dismiss, ECF 47 ("Op."), Yelp's tying claims cannot proceed unless the Amended Complaint plausibly pleads *both* (1) coercion, *and* (2) an exception to the four-year statute of limitations. *See* Mot. at 4–16. For the reasons stated in Google's Motion and below, Yelp's amendments do neither.

*First*, Yelp's Opposition continues to argue express coercion based on Google's terms of service. This was insufficient in Yelp's first complaint. Its amendments consist of nothing more than attorney argument, not factual allegations. As such, Yelp fails to overcome the Court's prior ruling that Google's terms of service plainly "do not require users to actually use Google's local search results." Op. at 27.

*Second*, Yelp's Opposition attempts to bury the Amended Complaint's failure to allege implied coercion. Whether the relevant percentage of "non-coerced" consumers is 70% (as the Court held, Op. at 28), or 29% (based on Yelp's dubious math, *see* Mot. at 6–8), both are far too high as a matter of law to plead implied coercion. Yelp does not dispute the figures drawn from its Amended Complaint, nor does it dispute the law. Instead, Yelp obfuscates, articulating a theory that has nothing to do with the use of Google's general search results, or the alleged tying of local search results to them. The Court has already made clear that no coercion is pleaded by "alleging that a store owner requires that a customer, when picking up an item he has purchased, walk through the store and be exposed to other potential products." Op. at 28 n.10. Unable to circumvent that principle, Yelp concedes that its amendments simply add more allegations of self-preferencing, not of tying local to general search results.

*Third*, on tolling, Yelp's Opposition has no meaningful response to the closely analogous facts of *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007), or the other cases cited in Google's Motion holding that tolling is unavailable when, as here, the government and private complaints alleged different exclusionary conduct that allegedly caused harm to different markets.

*Finally*, Yelp's Opposition fails to establish a continuing tying violation based on the algorithm changes alleged in the Amended Complaint. Instead, the only "overt act[s]" that Yelp proffers are ones that Yelp itself describes as the "refine[ment] [of] Google's *self-preferencing conduct*." Opp. at 7 (emphasis added).

Yelp cannot cure either, much less both, of the deficiencies in its tying claims. Google thus respectfully submits that those claims should be dismissed with prejudice.

## ARGUMENT

### I. Yelp Still Fails To Plausibly Plead Coercion.

#### A. Yelp has not plausibly pleaded express coercion.

The Court rejected Yelp's express coercion allegations in its initial complaint—which were based on Google's terms of service—because nothing in those terms expressly "require[s] users to accept the local search results" displayed on Google's SERP. Op. at 27–28. Rather than address the Court's concern or point to any additional provision in the terms that imposes such a requirement, Yelp asserts that its Amended Complaint "clarifie[d] that users must 'accept' and 'consume Google's own local search content and results in the form of the information automatically displayed on the SERP.'" Opp. at 11 (citing Am. Compl. ¶ 156). This "clarifi[cation]" adds no new factual allegations and is not based on any provisions of the terms of service—the "clarifi[cation]" therefore need not be accepted as true. *See* Op. at 10. That is particularly so where, as here, the actual terms of service are of record on this Motion to Dismiss. *Id.* at 2–3; *In re Sentinelone, Inc. Sec. Litig.*, 2024 WL 3297150, at *2 (N.D. Cal. July 2, 2024) ("[T]he Court need not accept as true conclusory allegations that are contradicted by documents referenced in the complaint.").

For the reasons stated in the Court's Opinion (at 27–28) and Google's Motion (at 5–6), Yelp has failed to plead express coercion.

### B. Yelp has not plausibly pleaded implied coercion.

That leaves Yelp's arguments (Opp. at 13–14) for implied coercion; those too fail. To plead implied coercion, Yelp must plead plausible facts that demonstrate that "the percentage of sales that remained open to competitors and were not dominated by the alleged monopolist" was so low as to indicate that the tying and tied products were in fact tied together. Op. at 28 (citing *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 915 (9th Cir. 2008) (indicating 14% was outer limit and citing 10 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶ 1758b at 327 (2d ed. 2004) as "suggesting that a less than 10% proportion of separate sales indicates an illegal tie")); Mot. 7. The allegations in Yelp's Amended Complaint do not suffice.

As Google explained in its Motion, although Yelp conceded in both its initial and Amended Complaints that 70% of clicks on Google Search go to third-party web pages such as Yelp, Compl. ¶ 44; Am. Compl. ¶ 43, Yelp's Amended Complaint seeks to reframe that figure—and thus the percentage of users who allegedly are not "coerced"—as 29%, supposedly to account for searches that result in no clicks to either Google property webpages or third-party webpages, Mot. at 1–2, 6–8. But as Google explained (*id.* at 6–8), even if 29% were a plausible recalculation of the relevant figure, such a percentage of "non-coerced" consumers is still far too high as a matter of law to plausibly plead implied coercion—and Yelp makes no attempt whatsoever to argue otherwise. *See* Opp. at 13–14. And Yelp's Opposition fails to identify any case sustaining a tying claim where such a substantial percentage of consumers of an alleged tying product are *concededly not coerced* to purchase the alleged tied product.

Rather than reckon with these conceded facts, Yelp now abandons the figures in its Complaints and argues that if the Court limits its field of vision to those searches with "local intent," then the coercion percentage is essentially 100%. *See* Opp. at 11–14. Specifically, Yelp argues: "*all* Google general search users must accept Google's local search results *whenever Google detects local intent*." *Id.* at 13 (first emphasis in original; second emphasis added); *see also id.* at 3 (focusing on impact of alleged algorithm change for "searches demonstrating local

1  intent"); *id.* at 4 (complaining that "users who evinced local intent" were coerced by a "'mega-
2  map' of Google's own local search results"); *id.* (arguing that the 29% is conservative if one
3  assumes that only a subset of searches have "*local* search intent" (emphasis in original)).  Yelp
4  does not save its tying claim by reframing the statistics to focus exclusively on searches with
5  "local intent," *id.* at 13–14, for three reasons.

6      *First*, if the claim is only about searches with "local intent," and if, according to
7  allegations that the Court credited on the prior motion (Op. at 22–24), local search is a "separate
8  product" with "separate demand," ECF 30 at 20–21; *see also* Am. Compl. ¶¶ 71, 76–77, 228–29,
9  then there is no pleaded tie at all—Google is simply serving local search results in response to a
10 local search query.  Users searching Google with "local intent" are not plausibly alleged to be
11 consuming Google's *general* search results at all according to Yelp under these circumstances,
12 and therefore there can be no coercion (or tying) at all.

13     *Second*, in arguing that essentially every search on Google with "local intent" results in
14 coercion, Yelp's theory would lead to absurd results.  Yelp's argument is that users necessarily
15 "use" Google's local search content every time it is displayed on Google's SERP, simply
16 because it is there.  Opp. at 13–14 (asserting "all Google general search users must accept
17 Google's local search results whenever Google detects local intent and invariably serves up the
18 local OneBox.").  Put differently, Yelp now appears to be arguing that "the percentage of sales
19 that remained open to competitors," *see* Opp. at 13 (quoting Op. at 28 (citing *Cascade Health*,
20 515 F.3d at 914)) is zero, based solely on the fact that Google displays a Onebox, among other
21 local results, in response to queries with "local intent," *see id.*  But what of the 70% of clicks that
22 are to "non-Google properties" (Op. at 28) such as Yelp?  Are they deemed coerced because of
23 what was displayed on the SERP before they clicked on Yelp?  Rather than engage with the
24 Court's holdings about what Yelp pleaded in regard to users' actual interactions with Google's
25 search results, Yelp would remove any consideration of that question, effectively reading
26 coercion out of the tying analysis entirely.  Yelp is simply doubling down on its argument that
27 consumers are coerced if they must "walk through the store and be exposed to other potential
28 products" after buying something else.  Op. 28 n.10.

1   *Third*, Yelp's Opposition confirms that its argument is that coercion is established merely by the alleged display of Google's local search results above, or more prominently than, Yelp's. Opp at 13-14. That is a claim that Google *preferences* its alleged local search product over Yelp's—not a claim that Google *ties* its local search product to its general search product. And so, unsurprisingly, "self-preferencing" is how Yelp itself summarizes "each algorithm change and SERP redesign" described in its Amended Complaint. *Id.* at 7. Google will dispute Yelp's separate claims of so-called "self-preferencing" at the appropriate time; but the only issue on this Motion is whether those same allegations state a claim for *tying of local to general search results*, and they plainly do not.

The gymnastics Yelp must conduct to try to plead implied coercion confirms that Yelp cannot do so. Yelp's tying claims should be dismissed with prejudice.

## II.     Yelp's Amended Tying Claims Are Time-Barred.

Yelp's tying claims still rely upon Google's 2007 launch of "universal search," when Google allegedly began placing its own local search results above third-party web search results—and, once again by Yelp's own admission, Google's "universal search . . . operates substantially similarly today." Am. Compl. ¶¶ 38–39. In dismissing the tying claim, this Court permitted Yelp to "plead additional exclusionary conduct . . . within the limitations period," but held that the "SERP design complained of by Yelp was introduced in 2007 and thus first accrued into a tying claim (if otherwise viable) when Google acquired monopoly power in 2007 or 2013." Op. at 19, 21.

To address the untimeliness of its tying claim, Yelp argues tolling and continuing violation exceptions to the statute of limitations. Neither has been legally established here. Yelp's Amended Complaint cannot be tolled based on the DOJ's October 20, 2020 Complaint against Google because that Complaint alleges different exclusionary conduct, allegedly causing harm to a different market than the local search services market at issue here. And Yelp's amendments do not allege tying conduct at all, thereby foreclosing any continuing violations exception. Without tolling or a valid continuing violation exception, Yelp's tying claims are still barred by the statute of limitations.

**A.     Yelp has not pleaded a basis to toll the statute of limitations.**

Yelp cannot assert tolling based on the filing of the DOJ Complaint because the two suits allege different exclusionary conduct and harm to different relevant antitrust markets—and Yelp cannot point to any court to have permitted tolling despite that mismatch.  While Yelp argues that "*Novell* is easily distinguished" because "a key element of Yelp's tying claim is Google's market power in the general search services market, the exact market at issue in the DOJ litigation[,]" Opp. at 9, Yelp cannot overcome the fact that its Amended Complaint pleads no exclusionary conduct or harm in the alleged general search services market.  That was precisely why *Novell* did not permit tolling—as is the case here, the private action was based on "conduct [that] was not specifically alleged in the DOJ complaint,"[1] and which pleaded "harm to a market distinct from those specifically at issue in the DOJ complaint."  *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302, 307, 320–21 (4th Cir. 2007).  The same is true here.

It is not enough for Yelp to characterize the general search services market as a so-called "element" of its tying claim.  Opp. at 9.  The same was said of the market for PC operating systems in *Novell*, as the follow-on private plaintiff argued that the "'core elements' of its claims 'echo allegations made throughout the government's complaint.'"  *Novell*, 505 F.3d at 321 (citation omitted).  That was legally insufficient.  In the same way that Novell was outside the PC operating systems market and therefore was pleading harm to a different market, so too here: Yelp is outside the market for general search that it has defined, and it cannot base tolling on the DOJ's lawsuit about general search.

Yelp both misconstrues Google's argument and grossly overstates the similarities between the two complaints.  Google does not posit that "complete overlap" is required to permit tolling, Opp. at 9; the standard is "significant overlap."  *Novell*, 505 F.3d at 320; *see also* Mot. at 10.  Yelp's Amended Complaint does not clear that bar because, as in *Novell*, the two suits allege

---

[1] *Novell*'s rejection of tolling was specific to those counts of Novell's complaint that were based on conduct in an alleged market (for office productivity applications) other than the market (for PC operating systems) that had been the focus of the DOJ's complaint.  Novell separately claimed harm from exclusionary conduct in the PC operating system market, and those counts were instead the subject of a standing challenge, not a challenge under the statute of limitations.  *See* 505 F.3d at 307.

-6-

different exclusionary conduct and harm to different alleged antitrust markets. *Novell*, 505 F.3d at 321. Merely identifying some overlap in alleged conduct is not enough. And here the overlap in alleged conduct is razor thin; the single sentence of the DOJ Complaint quoted in Yelp's Amended Complaint is, if anything, *less* substantial than the two paragraphs of the DOJ complaint that Novell cited in its failed argument for overlap. *See id.* The same result should follow.

While Yelp cites various cases on the policy goals of tolling, none of these cases permitted tolling based on such meager overlap, and none held that tolling applied where the private suit alleged harm to a different market than the market in the government action. For instance, most of Yelp's cited cases (Opp. 8–9) primarily considered whether tolling could be granted as to unnamed defendants. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 336 (1971); *State of N.J. v. Morton Salt Co.*, 387 F.2d 94, 97–98 (3d Cir. 1967); *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 63–64 (1965)); *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 628–30 (S.D.N.Y. 2012). *In re Lower Lake Erie Iron Ore Litigation* is similarly inapplicable—it only addressed whether the government action was to be considered pending, not whether a tolling could run from a government action alleging harm to a different antitrust market. 1987 WL 4775, at *1 (E.D. Pa. Apr. 13, 1987). And while Yelp cites an ABA article for the proposition that "[i]dentity of issues between the two proceedings is not required[,]" the article went on to cite various cases where tolling was permitted precisely because both suits alleged "substantially the same claims." ABA Section of Antitrust Law, *Antitrust Law Developments* 861 (9th ed. 2022). No matter how many times Yelp insists on a "broad interpretation of government tolling" based on "the weight of authority," Opp. at 9, Yelp is unable to point to any case permitting tolling in circumstances analogous to those here, *i.e.*, where the complaints alleged different exclusionary conduct and harm to entirely different antitrust markets, and there existed so little overlap between the complaints' alleged conduct.

Nor do policy considerations underlying tolling, Opp. 8–10, cut in favor of it here. Courts consider the "goals of certainty and predictability in this area, as well as avoidance of the undue prolongation of antitrust proceedings." *Novell*, 505 F.3d at 322 (cleaned up). As the

Case No.5:24-cv-06101-SVK                                Google's Reply Memorandum

Court will recall, Yelp was on notice here of its claims nearly 15 years ago, having participated in a publicized Federal Trade Commission investigation of alleged "self-preferencing" in the early 2010s. *See* Op. 2–3 (taking judicial notice of the existence of materials related to that investigation). "After tarrying with these claims for more than [ten] years, [Yelp] cannot now resurrect stale causes of action, and [Google] is entitled 'to the comfort of repose.'" *Novell*, 505 F.3d at 322–23 (internal citation omitted).

### B. Yelp has not plausibly pleaded a continuing violation.

With respect to Yelp's monopolization and attempted monopolization claims, the Court explained that the acts Yelp alleged in 2007 through 2009 and in 2015 "would make no difference" in evaluating Yelp's claims of exclusionary conduct because even if tolling did apply, these actions occurred four years before the DOJ Complaint was filed. Op. at 12 n.5. Yelp now argues that "[w]ith the benefit of government tolling, the Court could also look" to other allegations in its Amended Complaint to buttress the timeliness of its tying claim, and repeatedly urges the Court to consider all of its allegations "[t]aken together," stretching all the way back to 2007. Opp. at 8, 10, 11. But, for the more recent acts Yelp alleges to constitute continuing violations, they must have each carried forward in some specific way the original unlawful conduct, *i.e.*, the 2007 product design. *See* Mot. at 12–15. If they fail to do so, then even "taking them together" will not suffice for a continuing violation.

As an initial matter, as explained above, Yelp fails to plausibly plead tolling. Nor, in any event, does it succeed in pleading a series of overt acts that perpetuate claims going all the way back to 2007. Google's Motion to Dismiss reviewed each of the alleged continuing violations and explained that none of them constitutes a tie of local search results to general search results—as opposed merely to changes to algorithms and elements of the SERP display. Mot. at 12–15. For instance, many of the alleged acts were changes to how Google displayed local search results in response to queries with local intent. *See* Mot. at 13–15 (citing Am. Compl. ¶¶ 131–33, 136-38). By definition, those do not plead a "tie" to general search whatsoever—the user enters a local query and Google returns local search results.

Yelp's other allegations are similarly unrelated to tying conduct, instead describing Google's changes to improve search quality by taking the user's location and distance into account when serving results or suppressing certain "doorway pages" that provide a list of search results which all lead to the same site, thereby frustrating the user. *See* Am. Compl. ¶¶ 129, 131.[2] The same holds true for more recent allegations of a May 2024 change to provide "AI-generated summaries . . . at the top [of the SERP] for many local queries," *id.* ¶ 138. Those do not purport to plead a continuing violation *of tying*, either; on their face, they relate only to "local queries," and do not further cement any alleged tie to general search results.

Yelp did not meaningfully respond to this portion of Google's Motion to Dismiss. Instead, it simply says that "Google apparently misreads Yelp's tying claim, which is based on Google 'designing its SERP so that users are forced to consume Google's local search content and results and directed more broadly towards its own additional, and inferior, local search vertical content and away from its competitors.'" Opp. at 7 (quoting Am. Compl. ¶ 230). If that is all that Yelp contends remains of its tying claim, then it has no tying claim at all: by Yelp's own allegations, the described conduct does not involve a tie to general search results of any kind. What it purports to involve is self-preferencing of Google's local search results over links to Yelp and other websites in response to queries with local search intent. As if to confirm as much, Yelp concedes that "each algorithm change and SERP redesign" in its Amended Complaint merely "modified and refined Google's self-preferencing conduct." Opp. at 7.

Yelp relies on the Court's observation that "'small actions' that fine-tune the original violation and acts taken to enforce a pre-existing contract all count as 'overt acts that restart[] the statute of limitations.'" Opp. at 7 (quoting Op. at 19). But Yelp misapplies the Court's conclusion here. The Court made clear that this principle was specific to conspiracy cases where the parties "meet to fine-tune their cartel agreement," and that Yelp's reliance on contract and conspiracy cases to support its continuing violations arguments was inapt. *See* Op. at 19, 21 (citation omitted) (explaining that Yelp's citations involved overt acts "taken to enforce a [pre-

---

[2] *See* Am. Compl. at note 62, citing *An update on doorway pages*, Google Search Central Blog (Mar. 16, 2015), *available at* https://developers.google.com/search/blog/2015/03/an-update-on-doorway-pages.

1 existing] contract," making the facts "meaningfully different" from Yelp's allegations). And
2 indeed, as Yelp apparently would have it, any algorithm change that impacts local search results
3 in any manner would constitute a continuing violation of tying, without regard to whether the
4 change actually related to the alleged tying at all. *See, e.g.*, Am. Compl. ¶ 136 (alleging that
5 Google's "Bedlam" update "shifted Google local search rankings significantly," without any
6 allegation about how this update impacted Yelp or how it could possibly be tied to general
7 search); Opp. at 11. Given Google's constant efforts to improve the quality of its search results,
8 such a meaningless standard would put Google in the untenable position of having to perpetually
9 freeze its technology in 2007 in order to avoid restarting a statute of limitations.

In an attempt to sidestep these deficiencies, Yelp repeatedly argues that the Court "credited" the allegation of a 2015 algorithm change as "changed conduct" in its Motion to Dismiss Order. *See* Opp. at 6; *see also* Opp. at 7 (claiming that "the Court already found [the 2015 allegation] indicative of changed conduct supporting application of the continuing violations doctrine."). That language appeared in the Court's order, but so did the Court's clarification that it "need not decide whether . . . [the] *2015 algorithm change* [is] the exclusionary conduct alleged by Yelp." Op. at 12 (emphasis added). In any event, now Yelp has amended allegations about the previously unidentified "2015 algorithm change," and those allegations—about so-called "doorway pages" noted above—have nothing to do with a tie of local to general search results, either. *See* Mot. at 13.

Yelp's continuing violation allegations ultimately fail for reasons similar to its implied coercion theory: Yelp relies on allegations that do not relate to tying, but rather, by Yelp's own admission, to so-called "self-preferencing." Opp. at 7. Even had Yelp sufficiently pleaded implied coercion, the claims are untimely and should be dismissed with prejudice on that ground, too.

### C.  For the same reasons, Yelp's requests for equitable relief based on tying allegations are time-barred.

Yelp does not dispute that its equitable claims fall with its legal claims. As the Court previously noted, Yelp's request for equitable relief must be barred by the doctrine of laches

1  insofar as the request relates to Yelp's tying claims, which are barred by the statute of
2  limitations.  Op. at 10–11; *see also* Mot. at 15–16.

### CONCLUSION

For the foregoing reasons, and the reasons stated in Google's Motion, Yelp's tying claim (Count IV), and its monopolization claims (Counts I–III) and California's Unfair Competition Law claim (Count V) that rely on that tying claim, should be dismissed with prejudice.

DATED: July 2, 2025

By: */s/ John E. Schmidtlein*
John E. Schmidtlein
Benjamin M. Greenblum
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com

Amit Gressel
WILSON SONSINI GOODRICH & ROSATI P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105-1126
Tel: 415-947-2087
agressel@wsgr.com

Franklin M. Rubinstein (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI P.C.
1700 K Street NW
Washington, DC 20006
Tel: 202-973-8800
frubinstein@wsgr.com

*Attorneys for Defendant Google LLC*