UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELP INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>        Defendant. | Case No. 24-cv-06101-SVK<br><br>**ORDER DENYING DEFENDANT'S PARTIAL MOTION TO DISMISS**<br><br>Re: Dkt. No. 53 |

On April 22, 2025, the Court granted in part and denied in part Defendant Google LLC's ("Google") motion to dismiss Yelp Inc.'s ("Yelp's") antitrust claims in this action. Dkt. 47 ("Prior Order"). In relevant part, the Court dismissed Yelp's tying claim (Count IV) with leave to amend, "both as time barred as pleaded and as failing to state a claim." *Id.* at 33. Yelp filed its first amended complaint on May 14, 2025 which, among other things, amended Yelp's tying claim. Dkt. 50 ("FAC"), ¶¶ 225-36; *see also, generally*, *id.* at ¶¶ 1-190 (amended general allegations). Before the Court is Google's Partial Motion to Dismiss the FAC, which seeks dismissal of Yelp's tying claim as re-alleged. Dkt. 53 (the "Motion"). Yelp opposes the Motion. Dkt. 54. The Court finds the Motion suitable for determination without oral argument. Civ. L.R. 7-1(b). Having reviewed the FAC, the Parties' briefs, the relevant law and the record in this action, the Court **DENIES** Google's Motion to Dismiss.

**I.      BACKGROUND**

The factual background of this dispute, taking Yelp's allegations as true, is as described in the Court's Prior Order. *See* Dkt. 47 at 4-9. In sum, Yelp brings antitrust claims alleging that Google has violated Section 2 of the Sherman Act. *See, generally*, FAC. Yelp alleges that Google's 2007 redesign of its search engine results page ("SERP") and certain actions relating thereto are anticompetitive and unlawful in monopolizing or attempting to monopolize markets

related to local search results. *Id.* Three alleged markets remain relevant in Yelp's FAC: general search services, local search services and local search advertising. Dkt. 47 at 5; FAC, ¶¶ 11-13, Market Allegations §§ I-III (respectively). The Court uses the terms "general search services," "local search services," "horizontal search services," "vertical search services" and "specialized vertical providers" ("SVPs") as explained in the Prior Order. *See* Dkt. 47 at 4; *see also* FAC, ¶¶ 1, 7, 22, 37, 39, 46 (substantively unchanged from paragraphs 1, 7, 23, 38, 40, 46 of the original complaint (Dkt. 1), respectively).

The Motion concerns only one of Yelp's claims: that "Google uses its monopoly power in general search services (*i.e.*, the tying product) to compel users to use Google's own local search product (*i.e.*, the tied product) … by designing its SERP so that users are forced to consume Google's local search content and results…." FAC, ¶ 230; *see, generally*, *id.* at Count IV. Yelp's general factual allegations, including in the Introduction, Jurisdiction and Venue, Parties and "Google's History and the Development of Internet Search" sections, as well as paragraphs relating to the alleged anticompetitive conduct and the relevant markets, are similar as amended to the allegations of the original complaint. *Compare, generally* Dkt. 1 *with* FAC. However, as relevant to Yelp's tying claims, there are three key additions.

First, Yelp recounts the same early history of Google's search services—and alleged anticompetitive conduct—from the early 2000s through 2014. *Compare* Dkt. 1, ¶¶ 39-45, 115-51 *with* FAC, ¶¶ 37-45. However, Yelp expands upon one detail of the alleged anticompetitive conduct: the presence of "zero-click searches" in the general and local search services markets. FAC, ¶¶ 43-44. A "zero-click search" occurs when a user inputs a search, sees Google's OneBox at the top of the SERP and looks at it to identify a local business to contact or patronize, thus ending their search "without clicking on anything or scrolling down to Google's organic search results." *Id.* Yelp alleges that, with such searches, "Google is no longer serving as the 'gateway' to the internet," but is instead "furnish[ing] its own content elevated over all vertical search competitors, without sending a click anywhere, not even to its own platforms." FAC, ¶ 43. Yelp additionally alleges statistics regarding how often Google's general-search OneBox is used compared to local-search organic results. *Id. See also, generally*, FAC, ¶ 44.

1    Second, also related to Yelp's allegations of anticompetitive conduct, Yelp alleges
2 additional details regarding Google's post-2014 conduct. *Compare* Dkt. 1, ¶¶ 115-28, 129-51 *with*
3 FAC, ¶¶ 115-28, 142-66 (substantively identical) *and* Dkt. 1, ¶¶ 129-51 *with* FAC, ¶¶ 129-41
4 (expanded allegations regarding alleged algorithm changes).

**2014 – Pigeon:**  The FAC added allegations relating to Google's 2014 introduction of its "Pigeon" search algorithm update, which allegedly "changed the SERP to more prominently feature and integrate Google's own local search content" and introduced scraping from local businesses to include their "information at the top of the SERP" thereby "creating more zero-click searches."  FAC, ¶¶ 129-30.

**2015 – Doorway Pages:**  Yelp added details to its allegation of a 2015 algorithm "adjust[ment]" (*see* Dkt. 1, ¶ 128) called "doorway pages," explaining that this update "deprioritized sites like Yelp that link to other businesses."  FAC, ¶ 131.

**2016-2017 – Possum:**  Yelp added allegations regarding an August 2016 update to the SERP allegedly called "Possum," which replaced Google's "7-pack" of OneBox results with "a 3-pack local listing format" which was allegedly more likely to be displayed as the #1 result (*i.e.*, at the top of the SERP), pushing "local search providers like Yelp … down the SERP for 93% of queries with local-search intent."  FAC, ¶¶ 132-33.  Yelp alleges that Google "rolled out the Possum update slowly, completing its deployment by 2017."  FAC, ¶ 132.

**2017 – Additional Scraping:**  Yelp added allegations that in 2017, Google engaged in a new scraping process that "pulled images from Yelp[]" for use in its "own local search content."  FAC, ¶¶ 134-35.

**2019 – Bedlam:**  Yelp added allegations that, in 2019, "Google implemented the 'Bedlam' update, which … shifted Google local search rankings significantly after Google introduced neural matching (connecting words to broader concepts)."  FAC, ¶ 136.

**2021 Unnamed Algorithm Change and SERP Redesign:**  Yelp added allegations that, in 2021, Google introduced another algorithm change and SERP redesign "focused on local search,"  wherein Google "moved its local search and map content to the top

3

of the SERP" and increased it in size and prominence. FAC, ¶ 137. In particular, Yelp alleges that this change and inclusion of the map content was "designed to avoid any additional scrolling through to organic search results." *Id.*; *see also*, Figures 6-7 (showing pre- and post-map SERP layouts).

**2024 – AI Overviews:** Finally, Yelp alleges that in May 2024, Google launched its "AI Overviews," whereby "AI-generated summaries now appear at the top for many local queries," thus "cutting traffic to SVPs even further." FAC, ¶ 138.

While explaining that these changes are "just a few of the significant changes" Google has made, Yelp alleges that, by some estimates, Google has made about 35,000 changes to its search from 2009-2023. FAC, ¶ 139.

Third and finally, as relevant to the Motion, Yelp newly alleges that *United States et al. v. Google LLC*, No. 1:20-cv-03010 (filed Oct. 20, 2020) tolled the statute of limitations for Yelp's claims starting from October 20, 2020. FAC, ¶¶ 171-74.

Google now moves to dismiss Yelp's tying claim, Count IV, as well as "inasmuch of Counts I–III and V [as] rely on that tying claim." Dkt. 53 at 2.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, a court may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). Courts generally "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, a court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Furthermore, Plaintiffs "generally need not plead around affirmative defenses." *Ploof v. Arizona*, No. 22-15061, 2023 WL 2929314, at *1 (9th Cir. Apr. 13, 2023).

4

### III. DISCUSSION

Google challenges Yelp's tying claim on two grounds: (1) after amendment, Yelp still fails to plausibly plead coercion and (2) the tying claim remains time-barred. *See* Dkt. 53 at 7-8. The Court addresses each argument in turn.

#### A. Yelp's Amended Complaint Sufficiently Alleges Coercion

To state a claim for tying in violation of the Sherman Act, Yelp must allege: (1) "that the defendant tied together the sale of two distinct products or services;" (2) "that the defendant possesses enough economic power in the tying product market to coerce its customers into purchasing the tied product;" and (3) "that the tying arrangement affects a 'not insubstantial volume of commerce' in the tied product market." *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016); *Cascade Health Sols. v. PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008). "[C]oercion is often the touchstone issue in assessing a claim of illegal tying." *Cascade Health*, 515 F.3d at (9th Cir. 2008); *see also Paladin Assocs. Inc. v. Mont. Power Co.*, 328 F.3d 1145, 1159 (9th Cir. 2003) ("Essential to the second element of a tying claim is proof that the seller coerced a buyer to purchase," or, in this case, accept, "the tied product."). Coercion may generally be express or implied: "an express refusal to sell the tying product without the tied product obviously constitutes coercion," but "tying conditions need not be spelled out in express contractual terms to fall within the Sherman Act's prohibitions." *Dream Big*, 2022 WL 16579322, at *4 (citing *Datagate, Inc. v. Hewlett-Packard Co.*, 60 F.3d 1421, 1426 (9th Cir. 1995) and *Aerotec*, 836 F.3d at 1179). "[C]oercion may be implied from a showing that an appreciable number of buyers have accepted burdensome terms, such as a tie-in." *Cascade Health*, 515 F.3d at 914. Yelp's original complaint failed to plausibly allege either express or implied coercion, and Google argues that nothing in Yelp's FAC changes that result. Dkt. 53 at 10-15.

##### 1. Yelp's FAC Sets Forth a New Theory that Users Consume Local Search Results via Google's OneBox During Zero-Click Searches

The contours of the Court's analysis, remain much the same as in its Prior Order. That is, the "express coercion" inquiry focuses on Google's Terms of Service (Dkt. 24-6, "Google's ToS," which is incorporated in Yelp's FAC as it was in its original complaint) and whether users are

5

required to accept Google's local search results. Dkt. 47 at 27-28. Meanwhile, the "implied coercion" inquiry focuses on whether "an appreciable number of buyers" have accepted Google's local search results when seeking general search services. Dkt. 47 at 28 (relying on *Cascade Health*, 515 F.3d at 914). Yelp has not pointed to any new provision or different version of Google's ToS, nor has Yelp fundamentally changed the alleged statistics. *See* FAC, ¶¶ 43-44 (statistics), 155-57 (Google's ToS).

Rather, what has changed is Yelp's theory of the (tying) case: Yelp's FAC adds allegations relating to zero-click searches. *See* FAC, ¶¶ 43-44, 155-57. These allegations change, according to Yelp, when the local search results (the product) are provided; Yelp argues that, according to its new allegations, local search results are not just provided when a user clicks on a link but are provided up-front "by design" in Google's OneBox. FAC, ¶¶ 43, 157. This alleged "fact" more closely resembles a legal argument, and Google correctly points out that the Court need not accept Yelp's "clarification" of its legal theory as true. Dkt. 55; *E.g.*, *Wilson v. Merritt*, No. 22-cv-00455-JLT, 2023 WL 8088792, at *3 (E.D. Cal. Nov. 21, 2023) ("Nor is the Court required to accept Plaintiff's legal theories or conclusions."); *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (courts need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations."). Nonetheless, neither can the Court simply discount Yelp's refined legal theory; it must examine whether the theory of the case is a cognizable and, if so, supported by plausibly factual allegations. *Cf. Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1093 (9th Cir. 2017) ("A dismissal under rule 12(b)(6) may be based on **either** a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." (Cleaned up) (emphasis added)).

There is nothing inherently incognizable about a tying theory wherein the tied product (here, alleged to be Google's local search results) is delivered automatically upon use of the tying product (here, alleged to be Google's general search). The Court touched upon this issue in its Prior Order when it determined that Yelp had plausibly alleged two distinct products and that tying claims may reach "free" services markets with monetization structures such as those here. *See* Dkt. 47 at 22-26. Furthermore, Yelp's theory—although a theory—is supported by factual

6

allegations that the Court *does* take as true. FAC, ¶ 43 (*e.g.*, "58.5% of all Google searches in the United States result in either no further action … or a second Google search.") Putting the pieces together, the Court finds that Yelp's refined theory that users are served local search results directly in Google's OneBox and not only when they click on, *e.g.*, Google Maps links, is cognizable.[1] Accordingly, the Court proceeds to re-examine Yelp's allegations of express and implied coercion under such a legal theory.

### 2. Yelp Has Sufficiently Pleaded Express Coercion

Yelp alleges that, based on Google's ToS, "users are prohibited from modifying 'any part of [Google's] services or software.'" FAC, ¶ 155 (quoting Google's ToS). A reasonable inference therefrom—drawn in Yelp's favor at the pleading stage—is that this means users are prohibited from, among other things, tampering with the results displayed to remove the OneBox (or, for that matter, AI Overviews) that Yelp alleges are part of Google's SERP. Google does not dispute this. *See* Dkt. 53 at 11-12; Dkt. 55 at 5. Yelp also now alleges that "58.5% of all Google searches in the United States result in either no further action … or a second Google search," *i.e.*, result in zero-click searches. FAC, ¶ 43. It is reasonable to infer that at least some appreciable number of such users do not engage further with the contents of the SERP because they have had their need satisfied by Google's OneBox or, as Yelp puts it, "they have already consumed Google's local search content *by design*." FAC, ¶ 157.[2] "It is true that the court need not … make unwarranted deductions or unreasonable inferences. But so long as the plaintiff alleges facts to support a theory that is not facially implausible, the court's skepticism is best reserved for later stages of the proceedings when the plaintiff's case can be rejected on evidentiary grounds." *In re Gilead Scis.*, 536 F.3d at 1057 (9th Cir. 2008). Accordingly, the Court finds that Yelp has sufficiently pleaded that users of Google are expressly coerced into consuming local search content via the OneBox, even if some users later go on to click other links.

---

[1] The Court makes no judgment as to the merits of such a theory or what effect proceeding via this narrower set of users (*i.e.*, those who perform zero-click searches rather than all Google search users) might have on other issues in the tying analysis.

[2] Of course, an equally reasonable inference is that users who do not perform further searches have grown frustrated and *given up* on using Google for their query. But, at the pleading stage, competing inferences must be drawn in the plaintiff's favor.

7

### 3. Yelp Has Not Sufficiently Pleaded Implied Coercion

As Google points out, "Yelp continues to plead in its Amended Complaint that at least 70% of clicks" from Google's general search go to non-Google properties. Dkt. 53 at 12 (citing FAC, ¶ 43). Based on its zero-click-search allegations, however, Yelp alleges when "clicks" and "zero-click searches" are considered together, "only 29% of all Google *searches* in the United States result in a user click to unpaid, organic search results, while the other 71% … result in no further action; a second Google search; a click to a Google property; or a click to a paid Google ad." FAC, ¶ 43. The Parties argue about the propriety of Yelp's math. *Compare* Dkt. 53 at 12-14 *with* Dkt. 54 at 17-18. However, even taking Yelp's arguments as a given and taking the 29% number as the operative number, the Court does not find this to be "a trivial proportion of separate sales" as required by *Cascade Health*. *See* 515 F.3d at 915 (finding that where "only four [customers,] or about 14%," made purchases from competitors, this "may indicate some degree of coercion) (citing, *inter alia*, 10 Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law*, ¶ 1758b at 327 (2d ed. 2004) as "suggesting that a less than 10% proportion of separate sales indicates an illegal tie."). Accordingly, Yelp has not sufficiently pleaded implied coercion.

### B. Yelp's Complaint Is Not Time-Barred at the Pleading Stage

As the Court explained in its Prior Order, the statute of limitations for Yelp's claims (both legal and equitable) is four years. Dkt. 47 at 10-12 (citing *SaurikIT, LLC v. Apple Inc.*, No. 4:20-cv-08733-YGR, 2022 WL 1768845, at *4 (N.D. Cal. May 26, 2022)). The statute of limitations began to run when Google allegedly performed a qualifying "act," *i.e.*, alleged exclusionary conduct coupled with alleged market power. *Id.* (citing *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 198 (1997) (Scalia, J., concurring in part) and *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997)). For Yelp's tying claim, the relevant market power is "monopoly power in the tying market for general search services." *Id.* at 18. Yelp alleges that Google had a 68% share of the general search services market in 2007, with an increase to 77% in 2013. FAC, ¶ 60 and Figures 2-3. Yelp also alleges that Google's exclusionary conduct began with its 2007 SERP redesign. *Id.*, ¶ 118. As the Court noted in its Prior Order, 2013 "is well outside the four-

8

year statute of limitations period." Thus, Yelp must plausibly allege that an exception applies.[3]

As explained in the Background section, above, Yelp alleges facts in support of two exceptions: tolling and continuing violation. *See, supra*, § I. Google argues that the facts alleged do not support either exception. Dkt. 53 at 15-22. The Court addresses each of them in turn.

### 1. Yelp Has Shown Tolling of its Tying Claim Under Section 5(i)

Section 5(i) of the Clayton Act suspends "the running of the statute of limitations" for any "action arising under [the antitrust laws, except for 15 U.S.C. § 15a,] and based in whole or in part on any matter complained of" in a United States civil or criminal antitrust proceeding. 15 U.S.C. § 16(i). The statute of limitations is tolled for the pendency of the government action and for one year thereafter. *Id.* The language "based in whole or in part on any matter complained of" means that "the matters complained of in the government suit [must] bear a real relation to the private plaintiff's claim for relief." *Leh v. Gen. Petroleum Corp.*, 382 U.S. 54, 59 (1965). Courts have considered various factors "in determining whether a real relation exists," including "[a] substantial identity of actors, … similarity of proof, means of carrying out the conspiracy, and subject matter." *Charley's Tour*, 618 F. Supp. at 86. This determination ordinarily "must be limited to a comparison of the two complaints on their face." *Chipanno v. Champion Int'l Corp.*, 702 F.2d 827, 832 (9th Cir. 1983).

Here, Yelp alleges tolling on the basis of the Government's suit in *United States et al. v. Google LLC*, No. 1:20-cv-03010 (filed Oct. 20, 2020). FAC, ¶¶ 171-74. The following features are apparent from comparing Yelp's FAC with the Government's complaint. First, Google is the only accused defendant in both cases. *Compare* FAC, ¶ 22 *with U.S. v. Google*, Dkt. 1 ("DOJ

---

[3] The statute of limitations is an affirmative defense, and it is Google's burden at the outset to show that Yelp's claims are "barred by the applicable statute of limitations … [as] apparent on the face of the complaint." Google has met this burden with regard to the tying claim as the Court explained previously. Dkt. 47 at 13-14, 18-19. Thereafter, the burden of plausibly alleging facts in support of the exceptions returns to Yelp. *See Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1067 (N.D. Cal. 2016) ("'The plaintiff bears the burden of showing that the two suits are based in whole or in part' on the same matter," (quoting *Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Haw. 1985) (applying the rule of the Sixth Circuit in the absence of Ninth Circuit authority))); *Hawthorne Hangar Operations, L.P. v. Hawthorne Airport, LLC*, No. 21-55542, 2022 WL 3102452, at *2 (9th Cir. Aug. 4, 2022) ("The party seeking relief under the [continuing violations] doctrine bears the burden of satisfying [its] elements.").

Compl."), ¶ 18.  However, the Government's case focused on Google's agreements with other actors not at issue here, including alleging:  distribution agreements with Apple, Inc. relating to Apple mobile devices;  distribution agreements with various manufacturers and distributors of Android devices;  "anti-forking" agreements with the distributors of its Android ecosystem;  pre-installation agreements with the manufacturers and distributors of Android devices;  and revenue sharing agreements with Android manufacturers and carriers.  *See* DOJ Compl., ¶¶ 118-59.  Next, the markets at issue in the cases overlap but are not identical:  Yelp identifies general search services, local search services and local search advertising as the relevant markets, (FAC, ¶¶ 11-13, Market Allegations §§ I-III (respectively)), while the Government focused its case on general search services, "search advertising" without a qualifier and "general search text advertising" in particular.  DOJ Compl., §§ IV.A-B.  Finally, with regard to the tying claims in each suit (the only claims at issue in the Motion):  Yelp's claim focuses on Google's unilateral conduct in tying (allegedly expressly, via Google's ToS) its local search options to its general search results, (FAC, ¶¶ 43-44, 155-57, 225-36), while the Government's entire theory of anticompetitive conduct in *U.S. v. Google* was premised on a tying theory based on alleged "agreements to lock up" both mobile- and browser-based distribution of search via the distribution, anti-forking, pre-installation, and revenue-sharing agreements noted above, (DOJ Compl., § V, ¶¶ 111-65).

        The Parties each cite various cases in support of their positions, but the focus of their dispute turns to an examination of *Novell, Inc. v. Microsoft Corp.*, 505 F.3d 302 (4th Cir. 2007).  *See* Dkt. 53 at 16-17;  Dkt. 54 at 12-14;  Dkt. 55 at 9-11.  *Novell* was a follow-on suit by a private plaintiff against Microsoft, following the Government's action against Microsoft in *U.S. v. Microsoft*.  *Novell*, 505 F.3d at 306 ("The government litigation in *Microsoft*[, 253 F.3d 34 (D.C. Cir. 2001) (en banc),] forms the basis of Microsoft's statute-of-limitations challenge to two of Novell's claims, as discussed below.").  The court in *Novell* ultimately declined to find standing, because "[t]he DOJ complaint only expressly allege[d] harm to the markets for PC operating systems and for Internet browsers," while "Novell[] alleg[ed] harm to the office-productivity-applications market" and thus its allegations "overlap[ped] little with the subject matter of the DOJ complaint." *Novell*, 505 F.3d at 321.  The Parties are right to focus on *Novell* as relevant, given its

procedural posture is similar to this case and its technological context is analogous. *See, e.g.*, Dkt. 47 at 26 (Prior Order explaining that *U.S. v. Microsoft* was an instructive example of "a tying arrangement between two products that were bundled together where" one was purchased and the other may have been entirely free). Moreover, as the Parties agree, Section 5(i) does not require "complete identity of the means, objectives, or statutory violations in the public and private lawsuits" but requires a "significant overlap." *Novell*, 505 F.3d at 320. They merely disagree as to the persuasive effect of *Novell* and whether there is "significant overlap" here.

   Comparing Yelp's allegations to those of the DOJ Complaint, there is certainly some (but not complete) overlap. Critically, two of the three antitrust markets are different (search advertising without any qualifier[4] and general search text advertising), but one market is overlapping (general search services). *Compare* FAC, ¶¶ 11-13 and §§ I-III *with* DOJ Compl., §§ IV.A-B. This is not quite as far afield as *Novell*, however, where *none* of the antitrust markets overlapped, and Yelp argues that the general search services market is "the exact market at issue in the DOJ litigation" and thus supports tolling. *See* Dkt. 54 at 13. Google argues that this is insufficient because although general search services market may be an "element" of Yelp's tying claim, it is not the market to which *harm* is pleaded. Dkt. 55 at 9. Google's distinction is not meaningless, as some of the "similarity of proof [and] means of carrying out the conspiracy," (*see Charley's Tour*, 618 F. Supp. at 86) might be different: The "conspiracy" at issue here is merely Google's alleged internal tying of local search to general search and will presumably turn on internal documents and technical details of Google's algorithms, while the conspiracy at issue in *U.S. v. Google* depended on the exclusionary agreements. On the other hand, Yelp—just like the Government in Google—will need to prove Google's monopoly power in general search services. *That* proof will presumably be identical or highly similar to the proof in *U.S. v. Google*.

   On balance, although this is a close case, the Court concludes that Yelp has shown a real relation between its case and the Government's case – namely, an identical antitrust market that

---

[4] Neither side has argued that the Government's assertion of "search advertising" broadly encompassed "local search advertising" and thus, although such a reading might be plausible on the fact of the two complaints, the Court declines to so find at this time.

serves as the basis, if not the alleged harmed market, for Yelp's tying claim. The Court is persuaded by higher court guidance that "Congress has expressed its belief that private antitrust litigation is one of the surest weapons for effective enforcement of the antitrust laws," and this "Congressional policy suggest[s] most strongly that the tolling provision, if of doubtful meaning, should be interpreted in a way which will permit a determination on their merits of private claims in this area." *State of N.J. v. Morton Salt Co.*, 387 F.2d 94, 97 (3d Cir. 1967) (citing *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311 (1965)). Moreover, permitting Yelp to take the fruits of the Government suit (proof of monopoly in the general search services market) and use it as an element in Yelp's suit (market power in the tying product market) is in line with the Supreme Court's guidance that Congressional tolling policy is furthered "by permitting private litigants to await the outcome of Government suits and use the benefits accruing therefrom" for their own suits. *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 401 U.S. 321, 336 (1971).

Accordingly, the Court Yelp has adequately pleaded tolling for its tying claim, which may thus be based on exclusionary acts accruing no earlier than four years before the filing of *U.S. v. Google*, *i.e.*, no earlier than October 20, 2016. Because Yelp's tying claim originates from the alleged 2007 SERP redesign and alleged 2013 accrual of monopoly power, however, it remains time-barred unless the continuing violations exception applies to bridge the gap.

### 2.     Yelp Has Sufficiently Pleaded a Continuing Violation

The continuing violations doctrine is "an exception to th[e four-year] time limit" of the statute of limitations. *Samsung Elecs. Co. v. Panasonic Corp.*, 747 F.3d 1199, 1202 (9th Cir. 2014). To state a continuing violation of the antitrust laws:

> a plaintiff must allege that a defendant completed an overt act during the limitations period that meets two criteria: 1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on the plaintiff.

*Id.* The Court's Prior Order found that Yelp's bare-bones allegations that Google's "conduct has worsened" and arguments that Google had "tweaked its algorithms" and engaged in other "fine-tuning," "refinements" and "progression" were insufficient. Dkt. 47 at 20. "To allow Yelp to

12

state a continuing violation on the [alleged] facts—that every time a user uses Google to search, a new violation occurs—would effectively swallow the statute of limitations rule." *Id.* at 21.

These principles remain compelling, and the Court discounts Yelp's nonspecific allegations as to the "approximately 35,000 changes" it alleges Google made to its search from 2009-2023. FAC, ¶ 139. However, Yelp's FAC adds specific allegations as to seven other actions Google has allegedly taken that it contends meet the continuing violation exception. *See, supra*, § 1 (citing FAC, ¶¶ 129-38); Dkt. 54 at 6-8, 10. These seven actions are the implementation of Pigeon (2014 algorithm update), Doorway Pages (2015 algorithm update), Possum (2016-2017 SERP design update), additional scraping (2017), Bedlam (2019 algorithm update), an unnamed 2021 update (both algorithm change and SERP update) and AI Overviews (2024, both algorithm change and SERP update). *See id.* Google contends that none of these alleged updates/actions are overt acts relating to Yelp's *tying* claim; that is, they are not alleged to "increase[] the degree to which users" were "coerced" into using Google's local search results. Dkt. 53 at 18-21.

The Court need not opine on Yelp's allegations as to Pigeon or Doorway Pages, because even assuming these updates are overt acts satisfying the continuing violation doctrine, they occurred prior to October 20, 2016 and thus are outside the limitations period. *See, supra*, § III.B.1. The Court begins by addressing Possum.

Possum. Yelp alleges that Google made its Possum update in August 2016, but that it "rolled out the Possum update slowly, completing its deployment by 2017." FAC, ¶ 132. On a motion to dismiss, the Court takes this allegation as true and assumes that Possum could thus be within the tolled limitations period. Google criticizes that while Possum might be "an allegation of prioritization of Google's *local* results over Yelp's," as relevant to Yelp's other claims, "it does not plausibly allege a *tie* between *general* and local results" and so cannot form a continuing violation of the tying claim. *See* Dkt. 53 at 19-20. The Court is not so persuaded at the pleading stage. Yelp's tying claim is premised on the tying of Google's local search services to its general search services and the use of Google's market power in general search services to coerce its customers, via Google's ToS, to accept its local search services via the mandatory display of the OneBox. *See* Dkt. 47 at 22-26; *supra*, § III.A.2. Thus, Yelp's allegation that Google changed the

13

design of its OneBox (from a "7-pack" to a "3-pack") to make it more effective at creating zero-click searches is plausible and related to tying. *See* FAC, ¶¶ 132-33. Based on Yelp's allegations, this SERP redesign is a "new and independent act" that inflicts "new and accumulating injury" on Yelp. *Samsung*, 747 F.3d at 1202; *see* FAC, ¶¶ 132-33 (*e.g.*, "Per a study of search traffic, … [the] new local listing format in the #1 rank position 93% of the time – a HUGE increase from the 25% of time that the old 7 pack used to show in the #1 position." (Emphasis removed)).

That Yelp plausibly alleges a continuing violation via the Possum update is alone sufficient to plead a continuing violation. However, two of the other later developments identified by Yelp are sufficiently pleaded to form an independent basis for a continuing violation.

2021 SERP Redesign and Algorithm Update. The 2021 SERP redesign and algorithm change, including in particular Google's introduction of the alleged "mega-map," is sufficient to plead a continuing violation for the same reasons as stated with regard to Possum, above.

2024 AI Overviews. Google's alleged 2024 introduction of AI Overviews is also sufficient to plead a continuing violation. Yelp's allegations of express coercion, as the Court found, are based upon the Google ToS prohibition that users "may not … modify … any part of [Google's] services or software." *See* FAC, ¶ 155. Critically, these allegations are just as applicable to the AI Overviews as to the OneBox: The Court may reasonably infer that Yelp alleges users are also required to accept the AI Overviews (just like the OneBox). The addition of AI Overviews thus pushes this case closer to *Hennegan* and *Samsung*, and away from *SauriKIT*, because Google is now taking actions to *expand* its pre-existing contract, not merely providing the same product in an unchanged manner. *Compare Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299 *and Samsung*, 747 F.3d at 1204 *with SaurikIT, LLC v. Apple, Inc.*, No. 22-16527, 2023 WL 8946200, at *1 (9th Cir. Dec. 28, 2023) (in *Hennegan*, "acts [were] taken to enforce a [pre-existing] contract" and in *Samsung*, defendants "adopted an anticompetitive contract which expanded the scope of the alleged anticompetitive conspiracy" while in *SaurikIT* Apple merely sold additional devices under a "unchanged warranty agreements.").

Finally, for completeness, the Court notes that two of Yelp's allegations are insufficiently pleaded and do not state a continuing violation. As to the 2017 Additional Scraping, (*see* FAC, ¶

14

134), unlike with Possum, Google is correct that there are no allegations as to how this impacted Yelp's tying claim. For example, there are no allegations as to any change in Google's OneBox, any change in user behavior or any new, accumulating injury. *See id.* As to the 2019 Bedlam update, Yelp's allegations essentially boil down to algorithm-tweaking that reaffirms Google's (alleged) prior acts. *See* FAC, ¶ 136. As pleaded, neither of these allegations are sufficient.

Accordingly, because Yelp has plausibly alleged a continuing violation via overt acts in 2016-2017 (Possum), 2021 (unnamed SERP update) and 2024 (AI Overviews), its tying claim is not barred by the statute of limitations. Google's motion to dismiss is **DENIED** on this ground.

## IV.  CONCLUSION

For the forgoing reasons, the Court finds that Yelp has plausibly alleged express coercion via Google's ToS, Yelp has shown tolling of its tying claim to October 20, 2020 based on the Government's suit in *U.S. v. Google* and Yelp has alleged a continuing violation via certain, specific algorithm and SERP changes it Google undertook.

Google's answer is due **no later than November 12, 2025**. The Parties shall appear for an initial case management conference on **December 9, 2025**.

**SO ORDERED.**

Dated: October 22, 2025

SUSAN VAN KEULEN
United States Magistrate Judge