Sathya S. Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: sgosselin@hausfeld.com
Email: sbojedla@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

(*additional counsel listed on signature page*)

John E. Schmidtlein, SBN 163520
Benjamin M. Greenblum (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
Email: bgreenblum@wc.com

*Attorneys for Defendant Google LLC*

(*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| YELP INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Case No. 5:24-cv-06101-SVK<br><br>**JOINT STATEMENT RE ESI ORDER**<br><br>Hon. Magistrate Judge Susan van Keulen |

Plaintiff Yelp Inc. and Defendant Google LLC respectfully submit the following joint statement seeking the Court's assistance in resolving a dispute over the terms of an appropriate order for the discovery and production of electronically stored information ("ESI Order") in this action.

**Case Deadlines**

The initial case management conference is set for December 9, 2025. No case schedule has been ordered, so there is no date set yet for the close of fact discovery.

**Summary of Issues in Dispute**

The Parties have met and conferred by videoconference multiple times, and the sole dispute remaining is over the treatment of non-responsive company-internal documents hyperlinked in produced emails. Yelp's proposal is to treat hyperlinked documents as email attachments and produce them as family members to the emails in which they are linked, although Yelp has agreed that the parties can generally produce current versions of the hyperlinked documents rather than contemporaneous versions (subject to the retention of other rights in the Proposed Joint ESI Protocol § 7(f)). Google's proposal is that the parties produce responsive, nonprivileged documents that are hyperlinked in produced emails, but since hyperlinks are distinct from attachments, Google does not agree to producing non-responsive hyperlinked documents. Attached hereto as Exhibit A is a proposed ESI order that highlights the areas in § 7(f) where the parties disagree and states their respective proposals.

**Yelp's Position:** Hyperlinked documents—often the modern equivalent of email attachments—are as critical to assessing a communication as the parent email itself. The production of company-internal hyperlinked documents is especially important here given Google employees' use of GSuite (e.g., Google docs, Google sheets, Google slides) to conduct much of the business at issue: Google uses (and used) hyperlinks *as a matter of course* as a replacement for traditional email attachments. Indeed, GSuite was invented by Google. Yet Google refuses to produce hyperlinked documents with responsive parent emails as a matter of course, instead proposing to review links separately for relevance. Google's proposal risks severing essential background from responsive communications and creating needless discovery delays, and its proposal should be rejected.[1]

---

[1] Yelp also uses GSuite and is offering to treat hyperlinks as attachments; it intends to produce all

It is well established that attachments need not be separately reviewed for responsiveness. "Well settled authorities from this Circuit and beyond" require that, if a party produces responsive emails, it "must also produce any linked attachments, notwithstanding its contentions that those attachments maybe irrelevant." *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, 2020 WL 13311682, at *5 (C.D. Cal. July 17, 2020) (cleaned up). In *Symettrica*, for example, the court rejected a party's argument that it was entitled to withhold certain email attachments because they were "wholly irrelevant to the claims and defenses at issue." *Id*. As the court reasoned, the "scope of discovery is broader than admissibility for trial", and, to the extent certain attachments "are indeed wholly irrelevant to the [] determination, such information can properly be excluded from trial" later. *Id*. The requirement to produce attachments with parent emails exists for good reason: The completeness principle favors production of the full communication unit so long as "some portion" is responsive. *Karnoski v. Trump*, 2020 WL 2736961, at *1 (W.D. Wash. Mar. 4, 2020) ("The Federal Rules of Evidence favor the *complete* production of non-privileged evidence if some portion of the evidence is deemed responsive.") (citing Fed. R. Evid. 106 (emphasis in original)). Attachments must be produced along with parent emails, because context is critical.  *Cf. Families for Freedom v. U.S. Customs & Border Prot*., 2011 WL 4599592, at *5 (S.D.N.Y Sept. 30, 2011) ("[A]ttachments can only be fully understood and evaluated when read in the context of the emails to which they are attached. That is the way they were sent and … also the way in which they should be produced.").

Modern attachments, including in the form of hyperlinked documents (which are GSuite's default, in lieu of attachments), are no different. Courts routinely treat hyperlinked documents as part of the same communication and require production (where feasible) with the parent email as part of a single "document or message unit," *Symettrica*, 2020 WL 13311682, at *5—without further inquiry into whether the hyperlinked documents are themselves relevant. *See, e.g.*, *In re Uber Techs., Inc.*, *Passenger Sexual Assault Litig.*, 2024 WL 1772832, at *2, *6 (N.D. Cal. Apr. 23, 2024) (hyperlink in email "may reflect a logical single communication"); *see also In re Uber Techs., Inc.,*

---

current versions of company-internal hyperlinks where another responsive family member exists, subject to Google doing the same.

*Passenger Sexual Assault Litig.*, 2025 WL 678543, at *1 (N.D. Cal. Mar. 3, 2025) ("for purposes of the ESI protocol in this litigation," a hyperlinked document "is akin to a traditional email attachment"); *Shenwick v. Twitter, Inc*., 2018 WL 5735176, at *1 (N.D. Cal. Sept. 17, 2018) ("Plaintiffs have a right to determine if an electronic message refers to a document, then Plaintiffs should be able to access that document").

Google's cited cases are largely inapposite because they deal with technical feasibility of producing hyperlinked attachments, which Google concedes is not an issue here. *See In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023) (tools plaintiffs suggest to extract hyperlinks "have no or very limited utility in Meta's data environments or systems"); *In re Insulin Pricing Litig.*, 2024 WL 2808083, at *8 (D.N.J. May 28, 2024) (same because the "tools are either not feasible whatsoever or unduly burdensome to apply to their respective data environments"). In *In re Google Generative AI Copyright Litig.*, 23-cv-3440-EKL-SVK (N.D. Cal. Apr. 3, 2025), ECF 117-1 at 2-3, the court issued its ruling without explanation, and Google had represented there were technological limitations. The final case that Google cites is *Nichols v. Noom Inc.*, 2021 WL 948646, at *4 (S.D.N.Y. Mar. 11, 2021), but the concern in *Nichols* that hyperlinks "may or may not be necessary to the [email] communication" (and Google's concern that "a person can easily include dozens of links in one email") is overblown here, where Yelp is requesting company-internal hyperlinked documents rather than all hyperlinks, including those to the worldwide web.

Here, Google identifies no significant additional burden in producing company-internal hyperlinked documents alongside responsive emails. Nor can it—even under Google's proposal, the parties must review emails for responsiveness regardless, and Yelp has agreed to accept hyperlinked documents in their current form (with the ability to request contemporaneous versions), minimizing burden. Indeed, the greater burden as to attorney review time would be to withhold those hyperlinks, because the producing party would need to evaluate each hyperlinked document, one by one, to ascertain the party's position on responsiveness—causing needless delay in discovery and potentially miring the parties and the Court in repetitive disputes over the scope of responsiveness. This Court should therefore require the parties to produce emails and hyperlinks together—as one

- 3 -

message unit—if *either* is responsive, without conducting a separate review into the responsiveness of the hyperlinked documents.

**Google's Position:** The parties' dispute over hyperlinked documents concerns whether the parties should be required to produce *non-responsive* documents that are hyperlinked in an email that is produced in this litigation.  Because hyperlinked documents are not attachments to the emails in which the hyperlinks appear, non-responsive documents are not relevant to the claims and defenses in this action, and requiring parties to produce non-responsive documents would be disproportionate to the needs of this action, Google respectfully requests that this Court adopt Google's proposed ESI language as it pertains to this issue.

As set forth in Section 7(f) of Google's proposed ESI language, Google has agreed to collect, review, and produce documents that are hyperlinked in produced emails where the hyperlinked document is responsive and not privileged.[2]  Yelp seeks to require Google to also produce hyperlinked documents that are irrelevant to the parties' claims and defenses, which would require Google to undergo the burden of reviewing non-responsive documents for privilege and processing them for production, notwithstanding the distinctions between hyperlinks and attachments.  *See infra*.  Yelp largely overlooks these burdens.  And the weight of authority does not support Yelp's demand.  *See* The Sedona Conference, *Commentary on Discovery of Collaboration Platforms Data*, 26 SEDONA CONF. J. 627, 653 (forthcoming 2025) ("Hyperlinked content may not always be independently relevant to the issues. Thus, requests for 'all' hyperlinked content should be avoided and should be tailored to obtaining information relevant and proportional to the matter.").

Rule 26 of the Federal Rules of Civil Procedure expressly limits the scope of discovery to matters that are non-privileged, "relevant to any party's claim or defense[,] and proportional to the needs of the case."  *In re Social Media Adolescent Addiction/Personal Injury Prods. Liab. Litig.*, 2024 WL 1786293, at *2 (N.D. Cal. Feb. 20, 2024) (quoting Fed. R. Civ. P. 26(b)(1)).  Requiring the production of hyperlinked documents regardless of responsiveness would not fall within that scope, nor would it be a productive use of discovery resources.  *See Nichols v. Noom Inc.*, 2021 WL

---

[2] The agreed-upon ESI language specifies that the hyperlinked document must be able to be collected based on a reasonable search and using the parties' existing tools capable of performing an automated search for the linked content.

- 4 -

948646, at *4 (S.D.N.Y. Mar. 11, 2021) ("Parties should not demand forms of production … for which they have no practical use or that do not materially aid in the discovery process." (citing The Sedona Principles, Third Edition p. 173)).

Contrary to Yelp's argument, hyperlinked documents *are not attachments* to the emails in which the hyperlinks appear, they are not part of an email's "family" in the way that attachments are, and non-responsive hyperlinked documents need not be produced to render a produced email complete. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 2023 WL 4361131, at *1 (N.D. Cal. June 2, 2023) ("[T]he ESI protocol should make clear that hyperlinked documents are not treated as conventional attachments for purposes of preserving a 'family' relationship in production."); *In re Insulin Pricing Litig.*, 2024 WL 2808083, at *7 (D.N.J. May 28, 2024) ("hyperlinks are not the same as traditional attachments"); *Nichols*, 2021 WL 948646, at *4 ("the Court does not agree that a hyperlinked document is an attachment"); *see also In re Google Generative AI Copyright Litig.*, 23-cv-3440-EKL-SVK (N.D. Cal. Apr. 3, 2025), ECF 117-1 at 2-3 (rejecting plaintiff's proposal for the automatic production of a current version of a hyperlinked file "without regard for date or other context" as inconsistent with Federal Rules 1, 26, and 34).

As the Southern District of New York aptly observed:  On the one hand, "[w]hen a person creates a document or email with attachments, the person is providing the attachment as a necessary part of the communication." *Nichols*, 2021 WL 948646, at *4.  On the other hand, "[w]hen a person creates a document or email with a hyperlink, the hyperlinked document/information may or may not be necessary to the communication." *Id.*  Indeed, given the nature of hyperlinks, a person can easily include dozens of links in one email.  Hyperlinked documents also may be more voluminous than attachments, as they are not subject to size restrictions that may apply to attachments.  And while an attachment is "frozen" at the time it is sent, the same is not true of hyperlinked content. *See In re Uber Techs., Inc., Passenger Sexual Assault Litig,*, 2024 WL 1772832, *1 (N.D. Cal. Apr. 23, 2024) (cited by Yelp).  Rather, hyperlinked documents may continue to be edited after the email is sent, such that the collected version of the hyperlinked document may no longer match the version that existed (potentially years earlier) when the hyperlink was shared. *See id.*

The evidentiary rule of completeness thus does not require comprehensive production of

non-responsive hyperlinked documents; Federal Rule of Evidence 106 "applies only where the omitted portion of a statement is 'necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion'"—a standard that would not apply to non-responsive hyperlinked documents. *U.S. Sec. Holdings, Inc. v. Andrews*, 2021 WL 6882436, at *4 (C.D. Cal. Dec. 24, 2021) (citation omitted). Here, as in *Nichols*, "there has been no showing by Plaintiff[] that [it] actually need[s] to link to or even care about all of the hyperlinked documents," and thus requiring the wholesale production of non-responsive hyperlinked documents would contravene the relevance and proportionality limits set forth in Rule 26(b)(1). 2021 WL 948646, at *3-4.

Yelp nonetheless argues that this Court should "require the parties to produce emails and hyperlinks together—as one message unit—if *either* is responsive, without conducting a separate review into the responsiveness of the hyperlinked documents." But this argument introduces confusion, as requiring Google to produce emails and hyperlinks together if **either** is responsive (*i.e.*, if the email **or the hyperlink** is responsive) reflects a misunderstanding of law (*supra*), the agreed-upon ESI language, and the parties' technical capabilities. The agreed-upon language in **§ 7(f)(a-c)** addresses the production of hyperlinked documents "linked in a produced email file"— *i.e.*, an email that is responsive and not privileged. This is technically feasible (if the document is in the parties' possession, custody, or control); although the email and the hyperlink are not in the same container as an email and an attachment would be, the email includes a hyperlink (or multiple), which may point to a document. The currently-existing tools in use by Google do not work in the other direction (starting with responsive Google Workspace[3] documents, and identifying emails, whether responsive or not, that may have hyperlinked to those documents)—as the documents do not contain hyperlinks to the emails, and do not exist in the same container as the emails. This only serves to underscore the difference between email attachments (which are technologically part of the email communication) and hyperlinks (which are not).

The cases Yelp cites further reinforce the difference between email attachments and hyperlinks. In *Shenwick v. Twitter*, for example, the court limited the number of hyperlinked

---

[3] Google Workspace was formerly known as G Suite.

documents Twitter would be required to produce, having recognized the technological differences between hyperlinks and attachments. 2018 WL 5735176, at *2 (N.D. Cal. Sept. 17, 2018). So too did the court in *In re Uber Technologies, Inc., Passenger Sexual Assault Litigation*. 2024 WL 1772832, *4 (N.D. Cal. Apr. 23, 2024). The remainder of Yelp's citations are cases in which courts addressed emails and attachments. *See, e.g.*, *Karnoski v. Trump*, 2020 WL 2736961, at *1 (W.D. Wash. Mar. 4, 2020) (concerning the production of email attachments); *Families for Freedom v. U.S. Customs & Border Prot.*, 2011 WL 4599592, at *5 (S.D.N.Y Sept. 30, 2011) (concerning the production of emails with their attachments). For example, in *Symettrica Entertainment, Ltd. v. UMG Recordings, Inc.*, the defendants argued that the plaintiffs failed to fulfill their obligation to produce certain documents as previously ordered, because the plaintiffs had omitted attachments to emails, and the emails also contained references to password-protected internet videos unavailable to the plaintiffs. 2020 WL 13311682, at *2, 5 (C.D. Cal. 2020). The court ordered the defendants to "produce responsive emails with the related attachments," but did not specifically address discovery issues relating to hyperlinks. The court instead relied on *Pom Wonderful LLC v. Coca-Cola Co.*, 2009 WL 10655335, at *3 (C.D. Cal. Nov. 30, 2009) for the proposition that "an email and its attachment comprise 'one document or message unit.'" 2020 WL 13311682, at *5-6. District Judge Schofield, when considering in *Nichols* the same issue presented here, recognized that *Pom Wonderful LLC* and similar cases did not support the plaintiffs' position "because they dealt with attachments." *Nichols v. Noom Inc.*, 2021 WL 12307293, at *2 (S.D.N.Y. Apr. 30, 2021).

For these reasons, Google respectfully requests that the Court accept Google's proposal.

Respectfully submitted,

DATED: November 25, 2025

By: */s/ Sathya S. Gosselin*
Sathya Gosselin (SBN 269171)
Swathi Bojedla (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel: (202) 540-7200

By: */s/ John E. Schmidtlein*
John E. Schmidtlein
Benjamin M. Greenblum (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: 202-434-5000

- 7 -

Fax: (202) 540-7201
sgosselin@hausfeld.com
sbojedla@hausfeld.com

Yixi (Cecilia) Cheng (SBN 325216)
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
ccheng@hausfeld.com

Joanne Bui (SBN 340378)
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980
jbui@hausfeld.com

*Counsel for Yelp Inc.*

jschmidtlein@wc.com
bgreenblum@wc.com

Amit Gressel
**WILSON SONSINI GOODRICH & ROSATI P.C.**
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Tel: 415-947-2087
agressel@wsgr.com

Franklin M. Rubinstein (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI P.C.**
1700 K Street NW, 5th Floor
Washington, DC 20006
Tel: 202-973-8800
frubinstein@wsgr.com

*Attorneys for Defendant Google LLC*

- 8 -