# Exhibit A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELP INC.,<br><br>           Plaintiff,<br><br>    v.<br><br>GOOGLE LLC,<br><br>           Defendant. | Case No. 24-cv-06101-SVK<br><br>PROPOSED STIPULATED ORDER REGARDING SEARCH AND PRODUCTION OF ELECTRONICALLY STORED INFORMATION |

1. **PURPOSE**

This Order will govern discovery of electronically stored information ("ESI") in this case as a supplement to the Federal Rules of Civil Procedure, this Court's Guidelines for the Discovery of Electronically Stored Information, and any other applicable orders and rules.

2. **COOPERATION**

The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's Guidelines for the Discovery of ESI.

3. **PROPORTIONALITY**

The proportionality standard set forth in Fed. R. Civ. P. 26(b)(1)[1] should be applied to the discovery plan and its elements, including the preservation, collection, search, review, and production of ESI.

4. **LIAISON**

The parties have identified liaisons to each other who are and will be knowledgeable about and responsible for discussing their respective ESI. Each e-discovery liaison will be, or have access to those who are, knowledgeable about the technical aspects of e-discovery, including the location, nature, accessibility, format, collection, search methodologies, and production of ESI in this matter. The parties will rely on the liaisons, as needed, to confer about ESI and to help resolve disputes without court intervention.

5. **PRESERVATION**

The parties agree to discuss their preservation obligations as to particular categories of ESI and needs and agree that preservation of potentially relevant ESI will be reasonable and proportionate. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

---

[1] Information can originate in any form, including ESI and paper, and is not limited to information created or stored electronically.

  a) Only ESI created or received between January 2007 and the conclusion of the litigation will be preserved.  The parties reserve the right to meet and confer in good faith if a party believes that certain relevant documents may exist only in either a broader or narrower date range;

  b) The data sources that are not reasonably accessible because of undue burden or cost pursuant to Fed. R. Civ. P. 26(b)(2)(B) and ESI from these sources will be preserved pursuant to normal business retention, but not searched, reviewed, or produced:

    1. backup systems and/or tapes used for disaster recovery; and

    2. systems no longer in use that cannot be accessed.

  c) Among the sources of data the parties agree are not reasonably accessible or not proportional to the needs of the case, the parties agree not to preserve, search, review, or produce the following:

    1. voice messages;

    2. information from handsets, mobile devices, personal digital assistants, and tablets, provided, however, that if a party learns or is otherwise aware that there likely is responsive information in these sources possessed by agreed-upon or Court-ordered document custodians that is not duplicative of information that resides in another reasonably accessible data source or sources, that party will take steps to preserve the non-duplicative responsive information, and further, for the avoidance of doubt, the parties agree to preserve, search, review and produce information from applications used for business purposes by agreed-upon document custodians that are likely to contain non-duplicative responsive information, regardless of the device;

    3. system created temporary or draft versions of documents and emails that are automatically stored and purged;

    4. deleted, slack, fragmented, or other data accessible only by forensics;

5. random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;
6. on-line access data such as temporary internet files, history, cache, cookies, and the like;
7. dynamic fields of databases or log files that are not retained in the usual course of business; and
8. data in metadata fields that are frequently updated automatically, such as last opened dates.

**6. SEARCH**

a) The parties agree that in responding to an initial Fed. R. Civ. P. 34 request, or earlier if appropriate, they will meet and confer in order to identify ESI that is subject to production in discovery.

b) The parties recognize that a variety of search tools and methodologies, including but not limited to technology assisted review ("TAR") tools, exist. Any party may elect to use TAR to exclude documents from review, provided, however, that the party shall use TAR 2.0 (also known as "continuous active learning" or CAL) and no party may use TAR 1.0 (or "simple active learning"). A party using TAR to exclude documents from review for production will inform the other party and meet and confer on an agreed-upon TAR protocol before TAR is utilized. No party may use TAR to exclude documents from review without written agreement of the receiving party or an order of the Court.

c) Within 14 days of agreement on scope of production, the Party responding to requests for the production of documents (the "Responding Party") shall share with the Party that served the requests (the "Requesting Party"): (i) an initial custodian proposal, including job titles, time of employment, and a brief description of their job responsibilities, and (ii) what non-custodial sources, including other data sources, they intend to search for responsive information, provided it is feasible and efficient to do so. If search strings will be used, the Responding Party will have an additional 14 days to provide an initial search string proposal, accompanied by

unique hit counts for each search string and an overall unique hit count across all proposed terms.

The Requesting Party will have 14 days from receipt of the Responding Party's proposal to propose additional individual custodians, non-custodial sources, or search strings for inclusion in the responding party's searches. Upon request, the responding party will also meet and confer regarding its proposed search strings and the additional search strings or sources proposed by the requesting party. The responding party will consider such additions in good faith, being guided by relevance, burden, and proportionality considerations, and will provide unique hit counts for any additional requested search strings for which it claims burden.

If necessary, the parties may bring disputes that they cannot cooperatively resolve to this Court for resolution, consistent with the requirements of this Court's standing order. The parties shall make all reasonable attempts to resolve their disputes without Court intervention and are discouraged from bringing numerous or factually unsubstantiated disputes to the Court. The Court shall consider contested requests for custodians and search strings, upon showing a distinct need based on the size, complexity, and issues of this specific case and the specific party.

The parties will use their best efforts during the search parameter negotiations described above to identify search terms, custodians, and non-custodial sources that result in a reasonable, proportionate collection and review consistent with the Federal Rules. The parties further agree, however, to meet and confer in good faith as needed if a party believes that there is good cause to supplement the search parameters. The proposing party will promptly raise any such requests to supplement the search parameters, and will endeavor to do so in a way that does not conflict with the discovery schedule. The producing party will promptly produce search term hit reports, and the parties will meet and confer concerning the supplemental search term proposal. If the parties cannot reach agreement on the requesting party's supplemental search term proposal, they will promptly raise the dispute with the Court.

d) Nothing in this ESI Protocol is intended to relieve any party from its obligations under the Federal Rules of Civil Procedure to conduct a reasonable inquiry to identify and

5

produce responsive documents. An agreed-upon or Court ordered search protocol as described above may be used to satisfy a producing party's obligation for searches.

        d)        Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Additional culling of file types based on file header information may include, but are not limited to: Application Package File, Backup Files, Batch Files, Binary Disc Image, C++ File Formats, Cascading Style Sheet, Configuration File, Database File, Dictionary Files, Dynamic Link Library, Event Log Files, Executable Files, Hypertext Cascading Stylesheet, Java Archive Files, JavaScript files, JavaScript Source Code and Class Files, Macintosh Resource Fork Files, Package Manager Files, Program Files, Program Installers, Python Script Files, Shell Script Files, System or Temporary Files, Thumbnail Cache Files, Troff Files, TrueType Font Files, Windows Cabinet File, Windows Command Files, Windows FileShortcut, Windows Help Files, Windows Metafiles and Enhanced Metafiles, Windows Spool Files, Windows System File.

       **7.**        **PRODUCTION FORMATS**

        a)        Appendix A sets forth technical specifications that the parties propose to govern the form of production of documents in this litigation, absent agreement by the parties or order by the Court.

        b)        Among other things, the proposed technical specifications incorporate the directive of Fed. R. Civ. P. 34(b)(2)(E)(iii) and provide that a party need not produce ESI in more than one form, unless otherwise agreed to in limited circumstances (as contemplated in the technical specifications).

        c)        The parties agree to produce documents in file formats as set forth in Appendix A. If particular documents warrant a different format, the parties will cooperate to arrange for the mutually acceptable production of such documents. The parties agree not to degrade the searchability of documents as part of the document production process. The parties agree to meet

and confer in good faith to address any issues that may arise in this regard, and to seek judicial intervention only if their efforts to resolve the issues on an informal basis are unsuccessful.

d) **De-duplication**: The parties will make reasonable efforts to de-duplicate ESI documents globally through MD5 Hash, SourceHash, or comparable industry standard methods and enter all unique names in the ALL CUSTODIAN metadata field prior to production. The parties will meet and confer about whether additional methods of de-duplication across various sets of documents will reduce both parties' burden to review and produce data. Notwithstanding the foregoing, attachments to emails shall never be eliminated from the parent email.

e) A party may de-duplicate responsive ESI across custodians through MD5 hash, SourceHash or comparable industry standard methods. The parties retain the right to make reasonable requests for production of earlier-in-thread versions of any last-in-thread, redacted documents that are produced. A party may also de-duplicate email threads and attachments as follows: In an email thread, only the most evolved responsive email in a thread will be produced. Where an earlier-in-thread email has a responsive attachment not contained within the most evolved responsive email, the most evolved earlier-in-thread email containing the attachment will also be produced along with its attachment.

f) The parties nonetheless agree to collect, review, and produce hyperlinked content if it (a) is within the parties' possession, custody, or control; (b) is linked in a produced email file that meets the collection and search criteria for this action; (c) is a document file (i.e., Google Doc, Google Sheet, Google Slides, PDF, Microsoft Word, Microsoft Excel, or Microsoft PowerPoint) which is able to be collected based on a reasonable search and using an existing tool capable of performing an automated search for the linked content; (d) **[Google: is responsive and not privileged] [Yelp: is not privileged]**; and (e) is not otherwise subject to any limitation in the ESI Protocol.  The parties further agree to investigate, collect, and produce responsive and non-privileged documents contained in up to 100 hyperlinks which are identified by the requesting party in good faith as being potentially responsive.  If certain of the up-to-100 hyperlinks do not yield a document for production, the parties agree to investigate additional

7

hyperlinks, with a limit of 100 hyperlinked documents produced. For hyperlinked documents, the version collected will be the one that exists at the time of collection, but the receiving party retains all rights to request a contemporaneous version of the document and the producing party retains all rights to object.

      g)      If a party is producing SMS, internet-based message, or instant message conversations (including but not limited to texts from platforms such as iMessage, Google Chat, Slack, Jabber, and WhatsApp), such messaging should be produced in a format such that sufficient context for the responsive portion of the message thread is produced, consistent with the standard processing methods for such documents. The parties will meet and confer if additional context is necessary for particular documents.

      **8.      DOCUMENTS PROTECTED FROM DISCOVERY**

      a)      Nothing in this Agreement shall be interpreted to require disclosure of irrelevant information or relevant information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity provided, however, that no redactions shall be made based on the basis of relevance as a matter of course except as outlined in Section 11 of the Appendix. The parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI.

      b)      If a party withholds information that is responsive to a discovery request, and is otherwise discoverable under the Federal Rules of Civil Procedure, by claiming that it is privileged or protected from discovery under the attorney work product doctrine or any other protective doctrine (including, but not limited to, privacy rights), that party shall prepare a privilege log (Fed. R. Civ. P. 26(b)(5)) setting forth the privilege relied upon and including the following objective metadata (to the extent it exists):

- A unique privilege log identifier (for wholly withheld documents) or Beginning Bates Number (for redacted documents);
- All Custodians
- Email Subject

8

- Author
- From
- To
- CC
- BCC
- Date Sent
- Date Created or Modified
- Doc Type
- Title
- File extension
- Page Count
- Attachment indicators (e.g., begattach and endattach)
- Redacted Indicator
- Privilege Type

The privilege log shall also include a brief description of the basis for the claim of privilege, and shall denote any attorneys with an asterisk.

For documents where objective metadata does not include (1) any date information; and/or (2) any author or sender information, a Party must manually populate such information on its privilege log unless such information is not reasonably discernible from the document.

With respect to the "Email Subject" or "Title" field, the producing Party may substitute a description of the document where the contents of these fields reveal privileged information. In the privilege log(s), the producing Party shall identify each instance in which it has modified the content of the "Email Subject" or "Title" field.

c) Communications involving outside counsel that post-date the filing of the complaint need not be placed on a privilege log.

d) For emails that are fully withheld, the producing Party must log each email as a separate log entry using available metadata. That is, for each email, the producing party shall

9

provide the metadata for the top-most email, and the producing party shall include on the log entries for each responsive email that exists as a separate document in the review population, along with the available metadata as described above.  As an alternative, consistent with existing technological capabilities that do not require manual logging of lower emails on a chain, the producing Party may include a field in the log that identifies the withheld document as a thread and also provides detail about any other individuals participating in emails within the thread.

   e) If a responsive document has non-privileged family members, only the privileged family member should be withheld from production.  Where this occurs, the producing Party should include a TIFF placeholder slipsheet with language clearly indicating that the document was withheld for privilege for the privileged family members and produce all non-privileged family members.

   f) Each member of a document family that is withheld or redacted on the grounds of privilege or work product shall be individually logged in succession following the redacted or withheld parent document with the family relationship identified.

   g) Following the receipt of a privilege/redaction log, a requesting Party may identify in writing (by Bates/unique identification number), the particular documents that it believes require further explanation of the basis for the claim of privilege.  The producing Party shall endeavor to respond to such a request within 14 days.  If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.

   **9.** **REPRODUCTION OF ESI PRODUCED IN PRIOR LITIGATION**

   To the extent that a producing party reproduces in their entirety productions made in any other litigation, including in *United States, et al. v. Google*, *LLC*, No. 20-cv-3010 (D.D.C.), the producing party may elect to make those productions in the instant action in the same manner as was required under the operative ESI protocol in the prior action. Prior to making a production under this Paragraph 9, the producing party shall inform the receiving party of the prior litigation in which the production was made and disclose the Bates numbers for the production as it was

made in the prior litigation. The parties shall meet and confer on the necessity and format of additional, case-specific Bates numbering under Paragraph 9 before production.

10. **MODIFICATION**

This Stipulated Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. Any such modified Stipulated Order will be titled sequentially as follows, "First Modified Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation," and each modified Stipulated Order will supersede the previous Stipulated Order.

**APPENDIX A**

**PRODUCTION FORMAT AND METADATA**

1.  **Production Components.** Productions shall include, single page TIFFs, Text Files, an ASCII delimited metadata file (.dat format) and an image load file (.opt format as specified in paragraph 2 below) that can be loaded into commercially acceptable production software (e.g., Relativity).

2.  **Image Load File** shall contain the following comma-delimited fields: BEGBATES, VOLUME, IMAGE FILE PATH, DOCUMENT BREAK, FOLDER BREAK, BOX BREAK, PAGE COUNT.

3.  **Metadata Fields and Metadata File.**[2] Each of the metadata and coding fields set forth below that can be extracted shall be produced for each document. The parties are not obligated to populate manually any of the fields below if such fields cannot be extracted from a document, with the exception of the following: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. The metadata file shall be delimited according to the following characters:
    - Delimiter = ¶ (ASCII:020)
    - Text-Qualifier = þ (ASCII:254)
    - New Line = ® (ASCII:174)
    - Multi-value delimiter = ; (ASCII Code 059)

For practical reasons, certain metadata fields, including LINKID, may need to be provided subsequent to the production in a .csv overlay file.

| Field Name | Field Description |
| --- | --- |
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |

---

[2] The parties reserve the right to request additional metadata fields as discovery progresses.

| Field Name | Field Description |
|---|---|
| ALL CUSTODIANS | Includes the Individual (Custodian) from whom the documents originated. |
| HASH | MD5 Hash Value |
| EMAIL SUBJECT | Subject line of email |
| TITLE | Any value populated in the Title field of the document properties |
| DATESENT | Date and time email was sent (format: MM/DD/YYYY HH:MM) |
| DATERECEIVED | Date Received & Time (format: MM/DD/YYYY HH:MM) |
| TO | All recipients that were included on the "To" line of message |
| FROM | The name and email address of the sender of message |
| CC | All recipients that were included on the "CC" line of the message |
| BCC | All recipients that were included on the "BCC" line of message |
| ITEM TYPE or DOCUMENT TYPE | Identifies whether the file is an email, attachment to the email or loose edoc |
| TITLE | Any value populated in the Title field of the document properties |
| AUTHOR | Any value populated in the Author or Owner field of the document properties |
| CONFIDENTIALITY | Identifies the confidential designation as applied in accordance with protective order on file in this Action |

| Field Name | Field Description |
|---|---|
| PAGECOUNT | The number of pages of the Document, excluding the pages of documents in the same family |
| FAMILYID | Unique identifier from email threading algorithm to denote emails from a single thread and all attachments |
| LINKID | Unique identifier for email files to denote produced content linked therein |
| FILENAME | Original file name |
| FILEPATH | Original file path to the file or e-mailbox folder structure |
| FILEEXTENSION | Indicates file extension of source native file (e.g., .msg, .doc, .xls, etc.) |
| MESSAGE ID | The Unique Identifier assigned by a program to a Message/Communication |
| PRODUCTION VOLUME | Name of the production volume |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| DATECREATED | Date the document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| NATIVELINK | Native File Link (Native Files only) |
| TEXTLINK | Link to text files |
| PRODVOL | Production volume |

| Field Name | Field Description |
|---|---|
| REDACTED | Indicator for documents with redactions |

4. **Processing.** ESI items shall be processed in a manner that preserves the source native file and all of the above-referenced metadata without modification, including their existing time, date and time-zone metadata consistent with the requirements provided in this Order. ESI items shall be produced with all of the metadata and coding fields set forth above.

    a) Time Zone. ESI items shall be processed so as to preserve and display the date/time shown in the document. ESI items shall be processed to reflect the date and time standardized to a single time zone for all productions by a party, that time zone shall be Universal Coordinated Time (UTC), and shall be consistent across each party's productions. The parties understand and acknowledge that such standardization affects only metadata values and does not affect, among other things, dates and times that are hardcoded text within a file. Dates and times that are hard-coded text within a file (for example, in an e-mail thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced in accordance with the formats set forth in this Protocol.

    b) Hidden Content. ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes, comments, and other rich data (including, but not limited to strikethrough text, etc.) as displayed in the document to the extent reasonably and technically possible.

5. **Email Families.** Parent-child relationships (the association between an attachment and its parent email, which are referred to as "families") that have been maintained in the ordinary course of business must be preserved. The producing party will make reasonable efforts to produce responsive families together unless one or more members of the family are privileged, and in that case, the family will be Bates numbered with a placeholder for the withheld privileged document and the removed document will be logged on a privilege log, as outlined in Paragraph 8(e).

6. **Hard Copy Documents.** Documents that exist only in hard copy format shall be scanned and produced as TIFFs. Unless excepted below, documents that exist as ESI shall be converted and produced as TIFFs. Unless excepted below, single page Group IV TIFFs should be provided, at least 300 dots per inch (dpi) for all documents. Each TIFF image shall be named

according to a unique corresponding Bates number associated with the document. Each image shall be branded according to the Bates number and the agreed upon confidentiality designation. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). TIFFs shall show all text and images that would be visible to a user of the hard copy documents. Hard copy documents shall be produced with an accompanying metadata load file as forth above.

    a) <u>Unitization of Paper Documents</u>: Paper documents should be logically unitized for production. Therefore, when scanning or producing paper documents, documents should be scanned as they are kept in the regular course of business, distinct documents shall not be merged into a single file or database record, and distinct documents shall not be split into multiple files or database records. The parties will make their best efforts to unitize documents correctly.

    b) <u>File/Binder Structures (Parent-Child Unitization)</u>: Where multiple documents were organized into groups, such as folders, clipped bundles and binders, each distinct document shall be unitized, but maintained together in a parent-child relationship. The parties will make their best efforts to unitize parent-child groups correctly.

    c) <u>Identification</u>: Where a document or a document group – such as folder, clipped bundle, or binder – has an identification spine, "Post-It Note" or any other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

    d) <u>Custodian Identification</u>: The parties will utilize best efforts to ensure that paper records for a particular custodian, which are included in a single production, are produced in consecutive Bates stamp order.

**7. Text Files.** A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF filename. A commercially acceptable technology for optical character recognition "OCR" shall be used for all scanned, hard copy documents. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents. All documents shall be produced with a link in the TextLink field.

**8. Image Load Files / Data Load Files.** Each TIFF in a production must be referenced in the corresponding image load file. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production. The total number of pages referenced in a production's image load file should match the total number of TIFF files in the production. The total number of documents in a production should match the total number of records in the data load file.

9. **Bates Numbering.** All documents must be endorsed with sequential Bates numbers on the lower right-hand corner of all images, with any claimed confidentiality status as per the Stipulated Protective Order in the lower left-hand corner. The Bates Numbering and the confidentiality status will be applied in a manner that does not obliterate, conceal, obscure, or interfere with any information from the source document. Each document should be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant length of eight numeric digits (including 0-padding) across the entire production; (3) contain only alphanumeric characters and hyphens (no other special characters or embedded spaces); and (4) be sequential within a given document.

10. **Confidentiality Designation.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Stipulated Protective Order in this matter. Each responsive document produced in native format will have its confidentiality designation identified in the filename of the native file.

11. **Redaction of Information.** If documents are produced containing redacted information, an electronic copy of the original, unredacted data shall be securely preserved in such a manner so as to preserve without modification, alteration or addition the content of such data including any metadata therein. Nothing in this paragraph abridges a producing party's right and/or obligation to redact sensitive personal information that is not relevant to the case, including, but not limited to, sensitive health information, social security numbers, bank information, dates of birth, etc. If any documents are redacted as outlined above, the producing party shall produce a log identifying all documents with such redactions (by bates number) and the basis for redaction (e.g., sensitive health information, etc.; confidential new product or service; or by agreement).

12. **Color.** The parties agree to produce documents in color.

13. **Native Files.** The following types of files shall be produced in native format unless a file is being produced in redacted form:

    a. all media files whether audio or video,

    b. Microsoft access or other database files, and

    c. spreadsheets (e.g., MS Excel or .csv files, Google Sheets, or an acceptable equivalent for Google Sheets).

The Parties recognize that certain types of documents, such as word processing, presentation, or PDF documents that include comments, notes, or track changes, may appear differently in TIFF format than in native format. The Parties agree to use their best efforts to ensure that these documents, when produced in TIFF format, include all comments, notes, and track changes in

readable format, and will meet and confer in good faith if readability issues arise with particular documents.

A file produced in native format shall be named for its assigned Bates number. A placeholder TIFF image (slipsheet) named for the Bates number shall be produced with the native file. The slipsheet will include the Bates number, any confidentiality designation and the language "Produced in Native Format." TIFF images need not be produced unless the files have been redacted, in which instance such files shall be produced in TIFF with OCR Text Files. If good cause exists to request production of files, other than those specifically set forth above, in native format, the party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced shall be produced with a link in the NativeLink field, along with extracted text and applicable metadata fields set forth in Appendix A. If a file has been redacted, TIFF images and OCR text of the redacted document will suffice in lieu of a native file and extracted text.

**14.    Tools for Native Redaction**. The parties agree that they may use tools that allow for native redaction of spreadsheets where possible to avoid additional expense.

**15.    Proprietary Files.** To the extent a response to discovery requires production of ESI accessible only through proprietary software, the parties should continue to preserve each version of such information. The parties shall meet and confer to finalize the appropriate production format.

**16.    Database Records and Structured Data.** "Structured Data" means data that resides in a fixed field within a record or file, or stored in a structured format, such as databases (such as Oracle, SQL, Access) or data sets, according to specific form and content rules as defined by each field of the database. If ESI responsive to discovery requests is located in Structured Data sources, the parties will meet and confer as needed to resolve any issues regarding the production format of such responsive Structured Data.

**17.    Manner of Production.** All productions must be made by secure file transfer to agreed-upon email addresses. In the event the producing party deems it is not practical to upload a voluminous production (e.g., a production exceeding 20GB) to a secure file transfer site, it shall be sent to the receiving party by overnight mail on external hard drives, readily accessible computer(s) or other electronic media ("Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "VOL001," "VOL002"), as well as the volume of the material in that production (e.g. "-001," "-002"). Each production shall be accompanied by a cover letter that identifies: (1) the producing party's name; (2) the production date; (3) the Bates Number range of the materials contained on the Production Media; and (4) the set(s) of requests for production for which the documents are being produced.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: _____    _____
                                  Counsel for Plaintiff

Dated: _____    _____
                                  Counsel for Defendant

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated: _____    _____
                                  United States Magistrate Judge