Sathya S. Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: sgosselin@hausfeld.com
Email: sbojedla@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

(*additional counsel listed on signature page*)

John E. Schmidtlein, SBN 163520
Benjamin M. Greenblum (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
Email: bgreenblum@wc.com

*Attorneys for Defendant Google LLC*

(*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| YELP INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE LLC, <br><br> Defendant. | Case No. 5:24-cv-06101-SVK <br><br> **JOINT STATEMENT RE PROTECTIVE ORDER** <br><br> Hon. Magistrate Judge Susan van Keulen |

1    Plaintiff Yelp Inc. and Defendant Google LLC respectfully submit the following joint
2 statement seeking the Court's assistance in resolving certain disputes over the terms of an
3 appropriate protective order to govern discovery in this action.

**Relevant Case Deadlines and Summary of Issues in Dispute**

The initial case management conference is set for December 9, 2025. No case schedule has been ordered, so there is no date set yet for the close of fact discovery. The parties have conferred extensively regarding the terms of the protective order ("PO") that we respectfully submit should govern in this case. While the parties agree on most of the provisions, the parties seek the Court's guidance on: (1) whether in-house counsel can access other parties' Highly Confidential Information ("HCI") and attend other parties' depositions; (2) whether party's officers, directors, and employees can access other parties' Confidential Information ("CI"); and (3) whether a party can rely on a clawed back document in challenging a privilege assertion over it. Attached hereto as Exhibit A is a proposed PO that highlights areas where the parties disagree and states their respective proposals. A redlined version of Plaintiff's proposed PO reflecting changes from this district's Stipulated Protective Order for Standard Litigation is attached as Exhibit B, and a redlined version of Defendant's proposal reflecting changes from the Model Stipulated Protective Order for Litigation Involving Patents, Highly Sensitive Confidential Information and/or Trade Secrets ("HCI Model PO") is attached as Exhibit C.

**Yelp's proposed compromises**: **(1)** Two designated in-house counsel (who each provides an affidavit affirming that he does not have responsibility or authority for competitive decisionmaking and agrees to be bound by the PO) may access HCI; **(2)** a party's employees who have signed the agreement to be bound by the PO may access CI where reasonably necessary, and **(3)** where warranted, a party may submit documents that have been clawed back by the other party (without any further review) for this Court's *in camera* review to challenge a claim of privilege.

**Google's proposed compromises**: **(1)** in-house counsel can access another party's HCI upon a showing of particularized need that outweighs the risk of prejudice to the producing party, but may not attend depositions of other parties, Ex. A §§ 2.8, 5.2(b), 7.3, 8; **(2)** up to two in-house counsel can access another party's CI where reasonably necessary, Ex. A § 7.2(b); and **(3)** a party

challenging a privilege assertion over clawed back materials must rely on the privilege log descriptions, not the clawed back materials themselves, Ex. A § 12.

1. **Whether In-House Counsel Can Access Other Parties' Highly Confidential Information ("HCI") and Attend Other Parties' Depositions.**

**Yelp's Position**: In-house counsel must access information designated "Highly Confidential" to participate meaningfully in litigation and make important litigation decisions. Yelp accordingly proposes that up to two in-house counsel (Aaron Schur and James Daire), who agree to abide by the PO, be permitted to access HCI. Neither is a competitive decisionmaker, but Google claims each should be denied access because neither can disavow having *any* involvement *whatsoever* in competitive decisionmaking. But Google's position would mean that any smaller company (Yelp has 15 in-house counsel; Google has 900)[1] would be significantly impaired in litigation against bigger ones, which necessarily have more specialization and added insulation between their legal and business departments. Google's position is also wrong under the case law; deviates from this district's model PO without cause; and impairs Yelp's ability to litigate this case.

*First*, in balancing the risk of inadvertent disclosure against the risk of impairing a party's ability to press its claims, courts in the Ninth Circuit distinguish between in-house counsel who are competitive decisionmakers and those who are not—denying access only if in-house counsel *are competitive decisionmakers themselves,* such as by having responsibility or authority for such decisionmaking or by supervising a business unit. Courts routinely permit in-house counsel who are not competitive decisionmakers to access sensitive information, including in competitor cases. *See Melaleuca, Inc. v. Lucrazon Glob., Inc*, 2014 WL 12697357, at *3-4 (D. Idaho Aug. 7, 2014) (granting access where counsel "maintains that he has no authority to make final business decisions" and does not "supervise" any business departments); *Alza Corp. v. Impax Lab'ys, Inc.*, 2004 WL 7339748 (*Alza*), at *3 (N.D. Cal. June 21, 2004) (similar); *Qualcomm Inc. v. Broadcom Corp.*, 2006 WL 8455373, at *3 (S.D. Cal. Apr. 7, 2006) (similar); *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 389820, at *4 (S.D. Cal. Feb. 4, 2021) (similar); *Anova Applied Elecs., Inc. v. Precision Appliance Tech., Inc.*, 2022 WL 17338875, at *3 (W.D. Wash. Nov. 30, 2022) (similar).

---

[1] Mary O'Carroll & Sarah Kimbro, *Legal Operations at Google*, LEGAL INFORMATICS, 501 (Katz, Dolin, and Bommarito eds., Cambridge Univ. Press 2021).

Critically, not every person whose role touches competitive decisionmaking is denied access. "An attorney who provides legal advice *incidental* to business transactions, or negotiating or reviewing contracts, is not involved in the competitive decisionmaking of the company." *Aristocrat Techs. v. Int'l Game Tech*, 2007 WL 9747649, at *4-5 (N.D. Cal. Feb. 1, 2007) (emphasis added). Contrary to Google's argument, then, in-house counsel can be "involved" in competitive decisionmaking on the edges and still be granted access. Google's few cases to the contrary are out of circuit or determined only after the court offered or provided an evidentiary hearing.

Mr. Daire and Mr. Schur are not competitive decisionmakers. As Yelp's Director of Legal, Mr. Daire focuses on litigation, including matters related to First Amendment rights, Section 230 of the Communications Decency Act, and the Sherman Antitrust Act. He is occasionally asked for his views on a product feature or to review contracts, but he does not have responsibility or authority for negotiating contracts (apart from litigation settlements), developing or approving products or product features or any other responsibility that could be deemed competitive decisionmaking. Nor does he work in or supervise any of Yelp's business units.[2] Aaron Schur is Yelp's General Counsel, overseeing Yelp's legal and regulatory affairs, and supervising government relations and user operations. User operations at Yelp is a team responsible for content moderation, combating fraud, and auditing internal compliance with a variety of laws and company policies, which does not engage in competitive decisionmaking. Mr. Schur has a background in litigation, and prior to becoming General Counsel was primarily responsible for litigation matters at Yelp.[3]

Yelp's position is only strengthened by this district's Model Stipulated PO, which allows in-house counsel to access all types of confidential information where reasonably necessary. N.D. Cal. Model Stipulated PO ¶ 7.3(b).[4] Collectively, Mr. Schur and Mr. Daire have over 40 years'

---

[2] That litigation counsel "may occasionally report to a variety of individuals within [a company]'s senior management" is insufficient to "rise to the level of competitive decisionmaking." *Qualcomm*, 2006 WL 8455373, at *3. In fact, "attempt[s] to deny [such] access to confidential business information would defeat the very purpose of [their] role." *Id*.

[3] This Court's standing order prohibits additional exhibits, but Yelp respectfully requests leave to submit detailed declarations from Mr. Daire and Mr. Schur about their roles, if helpful.

[4] This Court's HCI Model PO likewise permits, in certain circumstances, in-house counsel to access information deemed "HIGHLY CONFIDENTIAL–ATTORNEYS' EYES ONLY." HCI Model PO, ¶ 2.4. Disclosure should be reasonably necessary; counsel needs to sign the agreement to be bound; and counsel should not have "involvement in competitive decision-making," which refers to "competitive decision-making *responsibilities*." *Id.* ¶¶ 7.2–7.4, n.8 (emphasis added).

experience being governed by protective orders in this district and have never violated one, making Google's concern that Yelp might make business use of HCI, in violation of the parties' PO, speculative and unfounded. Because Mr. Schur and Mr. Daire intend to heed their nondisclosure obligations under the PO here, there is no reason to deviate from the model. *MMCA Grp., Ltd. v. Hewlett-Packard Co.*, 2009 WL 595537, at *1 (N.D. Cal. Mar. 5, 2009); *Alza*, at *2.

Yelp's remote work environment further mitigates any risk of inadvertent disclosure. Mr. Schur and Mr. Daire each work almost exclusively from home, with no other Yelp employees present. Yelp intends to use an e-discovery platform entirely external to Yelp's systems to electronically maintain productions from Google. Mr. Daire and Mr. Schur will use their Yelp-issued password-protected laptops to log into the platform, and each is willing, if need be, to sign an affidavit that he will not print any discovery materials Google designates "Highly Confidential."

***Second***, the unlikely risk of inadvertent disclosure of Google materials must be balanced against Yelp's ability to press this case. Mr. Schur and Mr. Daire have each been closely involved in this action since its inception, with each contributing to filings. They not only direct and supervise outside counsel, but also select and work with outside experts—all of which will become overly burdensome if they do not have access to the same material. They also provide critical specialized knowledge, including on Yelp's history, Yelp's disputes related to local-search and local-search-advertising services, and Yelp's goals and strategy preferences, which courts weigh in favor of access. *See Alza*, at *2. Mr. Daire is also a counsel of record in the case.

Google's proposal that Yelp submit requests to Google for consent whenever it wishes to disclose HCI to in-house counsel (or to go repeatedly to this Court) is untenable.[5] It forces Yelp to reveal to its adversary what information outside counsel considers useful, giving Google enormous advantage and encroaching on outside counsel's ability to consult on legal strategy with their client. Yelp's proposal thus strikes the proper balance between Google's (minimal) risk of disclosure and Yelp's (significant) risk of impaired prosecution.

**Google's Position**: This is a case involving competitors who each will produce a significant

---

[5] If this Court agrees with Google's proposal rather than Yelp's, Yelp reserves the option for in-house counsel to join for depositions and step out as needed if HCI is discussed. Google's proposal is too severe; even courtrooms are sealed for certain parts of proceedings.

amount of competitively and commercially sensitive information bearing directly on the areas in which they compete, and who will seek similar discovery from third-party competitors. Already, Yelp seeks production of Google's highly sensitive search ranking methods and data, research and innovations in serving local information and advertising needs, and strategies to differentiate its products and services. Yelp's proposal to allow its general counsel and director of litigation—both of whom are involved in competitive decision-making—presumptive access to HCI and the ability to attend all depositions of Google employees and third parties is against the weight of authority and risks competitive harm to Google and third parties.

**Yelp's "Responsible For" Standard is Contrary to the HCI Model PO and the Law.** The HCI Model PO prohibits in-house counsel from accessing HCI unless they have "*no involvement* in competitive decision-making." HCI Model PO at 10 (emphasis added). The model's "involved in" standard is backed by significant precedent. Under the Ninth Circuit's *Brown Bag* test, the risk of inadvertent disclosure or unauthorized use of the producing party's sensitive information is weighed against prejudice to the requesting party's ability to litigate. 960 F.2d 1465, 1470 (9th Cir. 1992). Applying this test, courts have repeatedly held that where the HCI recipient is a competitor's in-house counsel who is "involved in" competitive decision-making, the risk of disclosure or unauthorized use far outweighs prejudice to the requesting party. *Id.*[6] Here too, the parties (and relevant third parties) are competitors who will have to produce significant volumes of competitively sensitive HCI, and the proposed HCI recipients are counsel "involved in" competitive decisions, a "crucial" factor weighing against access. *Brown Bag*, 960 F.2d at 1470. Under these circumstances, in-house counsel should not have presumptive access to opposing- or third-party HCI. Rather, under Google's compromise proposal, if the receiving party has a particularized need to show in-house counsel specific HCI, they may do so by consent or with this Court's permission.

As courts recognize, HCI access risks putting counsel in the "untenable position" of having to refuse legal advice on business matters or risk revealing HCI. *Id.* at 1471. Thus, "it [is not] enough to say that competitive business decisions *per-se* are not made by in-house counsel, but by

---

[6] *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528-32 (N.D. Cal. 2000); *Pinterest, Inc. v. Pintrips, Inc.*, 2014 WL 5364263, at *3 (N.D. Cal. Oct. 21, 2014); *Seal Shield, LLC v. Otter Prods.*, 2014 WL 12160746, at *2-*3 (S.D. Cal. Feb. 7, 2014).

others." *Silversun Indus., Inc. v. PPG Indus., Inc.*, 296 F. Supp. 3d 936, 941 (N.D. Ill. 2017). Rather, HCI access is prohibited even where counsel merely "advi[ses]" business teams. *Intel*, 198 F.R.D. at 530; *see also Pinterest*, 2014 WL 5364263, at *3 (same). None of Yelp's authorities holds otherwise: all made the same inquiry into whether counsel was "involved in"—not responsible for—competitive decision-making. *E.g.*, *MMCA*, 2009 WL 595537, at *1. And in each case, (a) the moving party did not challenge whether counsel was involved in competitive decision-making; (b) the party seeking access averred that its counsel was "not involved in" competitive decision-making (something Yelp refuses to do here); or (3) the Court *denied* HCI access to in-house counsel.[7]

Rather than justify a departure from the HCI Model PO and the above precedent, Yelp argues that the Model Protective Order for Standard Litigation, which allows in-house counsel to access CI but has no HCI provision, is "presumptively reasonable." But the case Yelp cites for that (mistaken) proposition considered the HCI Model PO, not the standard model, *ESC-Toy*, 2022 WL 1714627, at *1, and in any event, the dispute here concerns access to HCI, not CI. Alternatively, Yelp claims the HCI Model PO *does* support a "responsible for" standard because it states that in-house counsel may need to disclose "later-arising competitive decision-making responsibilities." HCI Model PO n. 8. But Yelp omits the model's stated reason for such a disclosure: "to determine if [counsel] ... may become *involved[] in* any competitive decision-making." *Id.* § 7.4(a)(1).

Yelp's request to allow its General Counsel, Aaron Schur, and its Director of Legal, James Daire, to access to *all* produced HCI only underscores why a "responsible for" standard should be rejected. Mr. Schur's public job description highlights his work "helping shape and frame innovative product offerings," "partner[ing] with product and engineering on Yelp's evolution," "intellectual property strategy," and "change management."[8] Similarly, Mr. Daire concededly consults with business personnel on product features and contracts. It defies reason to suggest these counsel can presumptively access Google's HCI simply because they do not *personally* make

---

[7] *See Alza Corp.*, 2004 WL 7339748, at *3 (no challenge to involvement); *MedImpact*, 2021 WL 389820, at *3 (declaration denying "involve[ment]"), *Anova*, 2022 WL 17338875, at *2 (same), *Melaleuca*, 2014 WL 12697357, at *4 (same), *Aristocrat Techs.*, 2007 WL 9747649, at *5 (same), *Matsushita*, 929 F.2d at 1579–80 (same); *MMCA*, 2009 WL 595537, at *2 (denying HCI access to counsel involved in competitive decisions); *Qualcomm*, 2006 WL 8455373, at *3 (same).
[8] LinkedIn, Aaron Schur, https://www.linkedin.com/in/aaron-schur.

business decisions, which are in any event the domain of business people, not attorneys.[9]

Finally, Yelp gets no help from assurances that counsel will abide by this PO, work remotely, and not print HCI. None provides assurance that counsel can "lock-up trade secrets in [their] mind[s]" when consulting with business teams. *Intel*, 198 F.R.D. at 531-32.

**Yelp has not established prejudice from non-disclosure.** Google's proposal permits HCI access by consent or by Court order upon a showing of "particularized need." Ex. A § 8. While Yelp claims this is unfair to "smaller compan[ies]," the burden to show "particularized need" applies equally to Google. And while Yelp claims that requesting access could reveal "what information outside counsel considers useful," that too applies equally to Google (and is true of all discovery requests). Moreover, Yelp has identified no Google or third-party HCI that *requires* review by Messrs. Schur and Daire in addition to Yelp's highly competent outside counsel and experts.

**For the same reasons, in-house counsel should not be able to attend depositions of other parties' employees.** Yelp asserts that in-house counsel should be allowed to attend depositions and "step out" as necessary during discussions of HCI. But HCI can be elicited even during questioning on non-HCI materials, and Yelp's proposal would be highly disruptive and would unnecessarily prolong depositions. Moreover, Yelp has given no reason why in-house counsel could not simply review any portions of deposition transcripts not designed as highly confidential.

**2. Whether a Party's Officers, Directors, and Employees Can Access Other Parties' Confidential Information ("CI").**

**Yelp's Position**: Employees for whom disclosure is reasonably necessary for this litigation should have access to CI (but not HCI). This would enable, *e.g.*, data engineers to review portions of an opposing expert's opinion; business principals to evaluate at least some of the nonpublic evidence; and witnesses to prepare for depositions and trial. Yelp's compromise position is even more restrictive than what's in the Model PO, ¶ 7.3(b), which allows access to *all* types of confidential documents for employees where reasonably necessary. Courts in the Ninth Circuit agree that "institutional and other specialized knowledge" among employees, which abounds here given the

---

[9] Even if the Court adopts Yelp's proposal, its vague and unsworn descriptors of counsel's roles is not "adequate information to enable … counsel-by-counsel, fact-specific analysis" of their relation to competitive decisions. *Newmark Realty Cap., Inc. v. BGC Partners, Inc.*, 2017 WL 2591842, at *3 (N.D. Cal. June 15, 2017). Should the Court consider whether to grant them HCI access under an approved PO, Google reserves the right to seek discovery into their roles.

technical subject matter, "is sufficient to show a compelling need for access to confidential information that outweighs the risk of inadvertent disclosure." *Javo Beverage Co. v. Cal. Extraction Ventures*, 2020 WL 2062146, at *4 (S.D. Cal. Apr. 29, 2020) (collecting cases).

Google's claim that Yelp may receive an unfair advantage in seeking information is misleading. Google not only ignores that the PO expressly prevents the parties from any business use, but also ignores that HCI and CI from an older time period will necessarily be more stale and less sensitive, minimizing Google's concerns. Moreover, requiring only two in-house counsel—who are not technical experts—be permitted to review all documents concerning Google's search engine functionality, quality improvements, or other technical issues, as Google suggests, would significantly impair Yelp's ability to press its claims.

**Google's Position**: Google proposes that access to opposing-party and third-party CI be limited to two designated in-house counsel. Ex. A § 7.2(b). While the HCI Model PO allows disclosure to "officers, directors, and employees," § 7.2(b), Google submits that under the *Brown Bag* test, a more restrictive approach is warranted here to protect Google and third parties.

Cases applying *Brown Bag* recognize that where a competitor seeks confidential material, "[t]he risk of inadvertent disclosure" is "heighten[ed]." *Seal Shield*, 2014 WL 12160746, at *2. Here, Yelp alleges that for nearly 20 years, it has directly competed with Google in nearly every aspect of its business, including over user traffic, the quality and number of local reviews, the quality and accuracy of business information, the relevance of search results, the value provided to local advertisers, and the ad dollars that advertisers spend. Am. Compl. ("AC") ¶¶ 41, 117-19, 165. Yelp's discovery requests seek CI related to each of these areas, including user volumes, "search engine functionality" documents, competitive analyses, and quality improvement strategies. *E.g.*, Yelp's RFP Nos. 5, 8, 13, 20(A)-(B), 22, 25. Yelp's market allegations will also require extensive inquiry into similar CI from non-party competitors. AC ¶¶ 69-80. If Yelp could disclose this CI to officers and directors, who "are by their nature, competitive decision makers," *United States v. Manpow, L.L.C.*, 2023 WL 4291806, at *3 (C.D. Cal. May 31, 2023), it could "gain an [unfair] advantage" in designing and promoting products to compete against Google and third parties. *See CytoSport, Inc. v. Vital Pharms., Inc.*, 2010 WL 1904840, at *4 (E.D. Cal. May 10, 2010).

Yelp cites *Javo Beverage* as holding that any "employee" with "institutional and specialized knowledge" can access CI. 2020 WL 2062146, at *2-4. But that case addressed the entirely different question of whether *outside counsel*, not current employees, could access HCI. *Id.* at *1. In any event, Yelp does not identify any prejudice that would result from review of Google and third-party CI by its in-house counsel, outside counsel, and retained experts, rather than its non-attorney employees. The risk of disclosure of Google and non-party CI far outweighs any prejudice to Yelp.

**3.    Whether a Party Can Rely on a Clawed Back Document in Challenging a Privilege Assertion Over it.**

**Yelp's Position**: Consistent with the Model PO, Yelp's proposal allows a receiving party to submit clawed-back documents for *in camera* review as part of a privilege challenge, while imposing safeguards (including properly sequestering the documents and not analyzing or referring to contents). There is no compelling reason to deviate from the model here—especially where "the practice of requiring parties who seek to avoid disclosure of documents to make the documents available for *in camera* inspection is well established in the federal courts." *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 2025 WL 1292655, at *2 (N.D. Cal. May 5, 2025) (quoting *United States v. Zolin*, 491 U.S. 554, 569 (1989)) (cleaned up). Yelp's proposal is further necessary given Google's history of overreach in asserting privilege, which led Judge Donato to find that Google engaged in an "astonishing abuse of the attorney-client privilege designation to suppress discovery," *In re Google Play Store Antitrust Litig.*, 2024 WL 3302068, at *14 (N.D. Cal. July 3, 2024), and which led Judge Mehta to designate tens of thousands of documents not privileged after finding Google employees "assiduously" included lawyers on any emails "dealing with a sensitive issue," *U.S. v. Google*, 20-cv-3715 (D.D.C. Aug. 5, 2024), ECF 1033 at 273-74.

Google claims that parties should not be able to submit clawed-back documents for *in camera* review as necessary to protect privilege. But "*in camera* review does not destroy the privileged nature of the contested communications." *Id.* (cleaned up). Yelp's proposed safeguards adequately addresses Google's concerns, and there is no reason to deprive the receiving party of the document(s) itself, properly sequestered, for the limited purpose of challenging privilege.[10]

---

[10] Contrary to Google's claim, Yelp does not intend to rely on content gleaned only from the clawed-back materials to challenge a privilege assertion.

- 9 -

**Google's Position**: Google proposes that a party challenging a privilege claim over a clawed back document be limited to the information provided about the document in a privilege log, just as it would if the document had not been produced, rather than allowing for further use, review, and submission of the document for purposes of a privilege challenge. Ex. A § 12. This is consistent with the HCI Model PO, which allows a "restriction against 'presenting'" clawed back documents in a privilege challenge, *see* § 13 n.20, and prior rulings in this district that such documents "are not [to be] used by the receiving party in challenging confidentiality." *Hubbard v. Google LLC*, C.A. No. 5:19-cv-7016-SVK (N.D. Cal.), ECF No. 207. This ensures that the recipient has no "leg up" in a privilege challenge, but is instead in the same position it would be absent production.

Allowing Yelp to "submit clawed-back documents for *in camera* review" would give it an advantage that the law does not afford. To be clear, Google does not dispute that Yelp can ask the Court to exercise its discretion in granting *in camera* review of clawed back documents. *See* Rule 26(b)(5)(B) (parties "may present" documents for in camera review). However, as Yelp's own cases state, Yelp must first provide "a factual basis adequate to support a good faith belief … that the materials at issue are being improperly withheld[.]" *Social Media*, 2025 WL 1292655, at *2 (*quoting Zolin*, 491 U.S. at 572). And as the Ninth Circuit has held, that threshold showing must be "based on evidence other than the potentially privileged materials themselves[.]" *United States v. Christensen*, 828 F.3d 763, 799 (9th Cir. 2016). Yelp's proposal would circumvent this requirement.

Yelp's proposal would also frustrate Congress's stated purpose for Rule 502(d), which is to eliminate "the need for exhaustive … privilege reviews, while still preserving [the] right to assert the privilege to preclude use … of information disclosed." Fed. R. Evid. 502, Add. to Advisory Comm. Notes, subdiv. (d). Applying this principle, courts in this district have repeatedly held that a party receiving privileged material "must make its challenge based on the producing party's description of the document and the basis for the claim of privilege." *E.g. In re Google RTB Consumer Priv. Litig.*, 2022 WL 1316586, at *2 (N.D. Cal. May 3, 2022).

Finally, Yelp's proposal risks violations of the professional ethics rules, which prohibit viewing privileged documents more than what is necessary to determine privilege. *Id.* at *4; *see also U.S. EEOC v. GW Univ.*, 502 F. Supp. 3d 62, 73-74 (D.D.C. 2020); State Bar of California R. 4.4.

|   |   |
|---|---|
| | Respectfully submitted, |

DATED: November 25, 2025

By: */s/ Sathya S. Gosselin*
Sathya Gosselin (SBN 269171)
Swathi Bojedla (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Tel: (202) 540-7200
Fax: (202) 540-7201
sgosselin@hausfeld.com
sbojedla@hausfeld.com

Yixi (Cecilia) Cheng (SBN 325216)
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
ccheng@hausfeld.com

Joanne Bui (SBN 340378)
**HAUSFELD LLP**
580 California Street, 12th Floor
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 633-4980
jbui@hausfeld.com

*Counsel for Yelp Inc.*

By:  */s/ John E. Schmidtlein*
John E. Schmidtlein
Benjamin M. Greenblum (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
bgreenblum@wc.com

Amit Gressel
**WILSON SONSINI GOODRICH & ROSATI P**
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Tel: 415-947-2087
agressel@wsgr.com

Franklin M. Rubinstein (*pro hac vice*)
**WILSON SONSINI GOODRICH & ROSATI P**
1700 K Street NW, 5th Floor
Washington, DC 20006
Tel: 202-973-8800
frubinstein@wsgr.com

*Attorneys for Defendant Google LLC*