Sathya Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
Ian Engdahl (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:  sgosselin@hausfeld.com
        sbojedla@hausfeld.com
        iengdahl@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

[*Additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| YELP INC.,<br><br>Plaintiff,<br><br>v.<br><br>GOOGLE LLC,<br><br>Defendant. | Case No. 5:24-cv-06101-SVK<br><br>**PLAINTIFF YELP'S MOTION FOR ISSUE PRECLUSION AND PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: June 9, 2026<br>Time: 10 a.m.<br>Place: Courtroom 6, 4th Floor<br>Judge: Magistrate Judge Susan van Keulen |

## NOTICE OF MOTION AND
## MOTION FOR ISSUE PRECLUSION AND PARTIAL SUMMARY JUDGMENT

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Please take notice that at 10:00am on June 9, 2026, or as soon thereafter as the matter may be heard by the Court, at the courtroom of Magistrate Judge Susan van Keulen, Courtroom 6, 4th Floor, United States District Court, 280 South 1st Street, San Jose, CA 95113, Plaintiff Yelp Inc. will and hereby does move the Court, pursuant to Rules 56(a) and (g) of the Federal Rules of Civil Procedure, for an order granting motion for partial summary judgment.

Yelp Inc.'s motion is based upon this Notice of Motion and the Memorandum of Points and Authorities that follows, the pleadings and other papers on file in this action, any reply papers that may be filed, and on the arguments of counsel.

Yelp recognizes that this Court's standing order specifies that "[u]nless otherwise permitted by the Court, only one Motion for Summary Judgment, Partial Summary Judgment, or Summary Adjudication may be filed by each party." Because Yelp's partial summary-judgment motion concerns a threshold legal question and does not seek full adjudication of the merits, Yelp aims to assist in streamlining the case rather than multiplying the chance for dispositive proceedings. In seeking a limited determination that can narrow the scope of remaining issues, Yelp respectfully requests to preserve its ability to file one further Motion for Summary Judgment, Partial Summary Judgment, or Summary Adjudication by August 26, 2027, *see* Dkt. 71, without seeking authorization from this Court.

## STATEMENT OF ISSUES TO BE DECIDED

Yelp respectfully requests that the Court grant this motion for partial summary judgment and preclude Google from relitigating issues already adjudicated by Judge Mehta in *United States v. Google*, Case Nos. 20-cv-3010, 20-cv-3715 (D.D.C.).

DATED: April 15, 2026

By: */s/ Sathya Gosselin*
Sathya Gosselin, SBN 269171

- i -

Swathi Bojedla (*pro hac vice*)
Ian Engdahl (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:  sgosselin@hausfeld.com
           sbojedla@hausfeld.com
           iengdahl@hausfeld.com

Yixi (Cecilia) Cheng, SBN 325216
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, New York 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
Email:  ccheng@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

**INTRODUCTION** ........................................................................................................................ 1

**BACKGROUND** ......................................................................................................................... 3

    I.    *United States v. Google* ............................................................................................ 3

    II.   *Yelp v. Google* ......................................................................................................... 4

**LEGAL STANDARD** ................................................................................................................. 5

**ARGUMENT** ............................................................................................................................. 7

    I.    Issue Preclusion is Designed for Cases Like This ....................................................... 7

    II.   The Issues Satisfy All Requirements for Preclusion in the Ninth Circuit. ................... 9

        A.    The Issues are Identical. .................................................................................... 9

        B.    These Issues Were Actually Litigated and Decided in The Prior Proceeding ..................... 15

        C.    Google Had a Full and Fair Opportunity to Litigate These Issues. ..................... 15

        D.    These Issues Were Necessary to Decide the Merits .............................................. 17

**CONCLUSION** ....................................................................................................................... 18

YELP'S MOTION FOR ISSUE PRECLUSION AND PARTIAL SUMMARY JUDGMENT
5:24-cv-06101-SVK

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Am. Express Anti-Steering Rules Antitrust Litig.*,
No. 08-cv-2315, 2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) .................................................14

*B&B Hardware, Inc. v. Hargis Indus., Inc.*,
575 U.S. 138 (2015) ...............................................................................................................6, 13

*Clements v. Airport Auth. of Washoe Cnty.*,
69 F.3d 321 (9th Cir. 1995) ..........................................................................................................7

*Collins v. D.R. Horton, Inc.*,
505 F.3d 874 (9th Cir. 2007) ........................................................................................................6

*Discover Fin. Servs. v. Visa U.S.A. Inc.*,
598 F. Supp. 2d 394 (S.D.N.Y. 2008) ...............................................................................2, 7, 9

*GAF Corp. v. Eastman Kodak Co.*,
519 F. Supp. 1203 (S.D.N.Y. 1981) .............................................................................................7

*In re Google Digital Advertising Antitrust Litig.*,
No. 21-cv-3446, 2025 WL 3012840 (S.D.N.Y. Oct. 27, 2025), Dkt. 1219 .....................*passim*

*Hawkins v. Risley*,
984 F.2d 321 (9th Cir. 1993) ........................................................................................................6

*Hilson v. Lopez*,
No. 12-cv-06016, 2014 WL 4380674 (N.D. Cal. Sept. 4, 2014) .................................................6

*Howard v. City of Coos Bay*,
871 F.3d 1032 (9th Cir. 2017) ......................................................................................................6

*Janjua v. Neufeld*,
933 F.3d 1061 (9th Cir. 2019) ....................................................................................................15

*Kremer v. Chem. Constr. Corp.*,
456 U.S. 461 (1982) ....................................................................................................................15

*Love v. Villacana*,
73 F.4th 751 (9th Cir. 2023) ........................................................................................................6

*Maciel v. Comm'r*,
489 F.3d 1018 (9th Cir. 2007) ....................................................................................................15

*Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*,
381 U.S. 311 (1965) ......................................................................................................................8

*Montana v. United States*,
  440 U.S. 147 (1979) ...................................................................................................... 1, 6, 9

*In re Namenda Direct Purchaser Antitrust Litig.*,
  No. 15-cv-7488, 2017 WL 4358244 (S.D.N.Y. May 23, 2017)........................................ 2, 7, 8

*Oyeniran v. Holder*,
  672 F.3d 800 (9th Cir. 2012), *as amended* (May 3, 2012) ........................................................ 6

*Parklane Hosiery Co. v. Shore*,
  439 U.S. 322 (1979) .......................................................................................................... 6, 16

*Resol. Tr. Corp. v. Keating*,
  186 F.3d 1110 (9th Cir. 1999) ................................................................................................ 17

*Sec. & Exch. Comm'n v. Stein*,
  906 F.3d 823 (9th Cir. 2018) ......................................................................................... 6, 9, 14

*Taylor v. Sturgell*,
  553 U.S. 880 (2008) ................................................................................................................ 5

*United States v. Google*,
  747 F. Supp. 3d 1 (D.D.C. 2024)...................................................................................*passim*

*United States v. Google*,
  803 F. Supp. 3d 18 (D.D.C. 2025).................................................................................*passim*

*United States v. Google*
  No. 23-cv-108, 778 F. Supp. 3d 797 (E.D. Va. Apr. 17, 2025) ................................................ 2

*United States v. Google*,
  Nos. 20-cv-3010, 20-cv-3715 (APM) (D.D.C.) ..............................................................*passim*

*Univac Dental Co. v. Dentsply Int'l*,
  702 F. Supp. 2d 465 (M.D. Pa. 2010)........................................................................... 2, 7, 8, 9

*Westwood Lumber Co. v. Weyerhaeuser Co.*,
  No. CV 03-551 PA, 2003 WL 24892052 (D. Or. Dec. 29, 2003)............................................. 8

**Statutes**

15 U.S.C. § 16 ................................................................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 52 ........................................................................................................................ 15

H.R. Rep. No. 96-874, 96th Cong., 2d Sess. (1980) ..................................................................... 7

Restatement (Second) of Judgments § 27 ......................................................................... 10, 15, 17

**INTRODUCTION**

Once a court makes a final determination, a party cannot revive the same dispute in successive litigation. This longstanding doctrine of issue preclusion mitigates "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

This case presents a textbook application. Under well-settled preclusion principles, Yelp moves to prevent Google from relitigating issues resolved by Judge Mehta after years of litigation culminating with a nine-week bench trial in *United States v. Google*, Case Nos. 20-cv-3010, 20-cv-3715 (APM) (D.D.C.).[1] In August 2024, after careful consideration of the evidence and testimony before him, Judge Mehta found that (1) "general search services is a relevant product market and alternative sources for query information, like SVPs [specialized vertical providers] and social media sites, are not adequate substitutes"; (2) "search advertising" is also a relevant product market; and (3) "Google has monopoly power in the general search services market." *United States v. Google*, 747 F. Supp. 3d 1, 109-10, 117, 124-25 (D.D.C. 2024) (*Google Search*). Judge Mehta reaffirmed his conclusions at the remedies stage last fall, observing that "Google is still the dominant firm in the relevant product markets. No existing rival has wrested market share from Google. And no new competitor has entered the market." *United States v. Google*, 803 F. Supp. 3d 18, 36 (D.D.C. 2025) (*Google Search (Remedies)*).

Yelp raises the same allegations here: General search services in the United States is a relevant antitrust market, as is search advertising, and Google has monopoly power in the market for general search services. Am. Compl. ¶¶ 46-58, 89-109, 59-68. And this Court has already highlighted the potential for preclusive effect of the *United States v. Google* decision—characterizing the intersecting issues (and proof) of the market for general search services, and Google's monopoly power within that market, as presumably "identical" across actions. Dkt. 58 (Order Denying Defs' Partial Mot. to Dismiss) at 11.

---

[1] Google has confirmed that it intends to reprise the issues identified in this motion absent issue preclusion.

Supreme Court and Ninth Circuit precedent compel issue preclusion: (1) The issues are substantively identical in both proceedings; (2) they were actually litigated and decided before Judge Mehta; (3) Google had a full and fair opportunity to litigate them in the prior proceeding; and (4) these issues were necessary for Judge Mehta to decide the merits. Applying issue preclusion here aligns with congressional and court guidance favoring preclusion from government-brought antitrust cases—and doing so in this instance is routine, necessary to safeguard party and Court resources, and fair to Google.

In granting issue preclusion, this Court would also be in good company. Judge Castel (Southern District of New York) recently granted partial summary judgment to private competitor-plaintiffs in nearly identical circumstances (i.e., where plaintiffs alleged unlawful monopolization of advertising technologies by Google), *see In re Google Digital Advertising Antitrust Litig.*, No. 21-cv-3446, 2025 WL 3012840 (S.D.N.Y. Oct. 27, 2025), Dkt. 1219—barring Google from relitigating issues of market definition and monopoly power already resolved by Judge Brinkema (Eastern District of Virginia) in 2025 after a lengthy bench trial in *United States v. Google* (Case No. 23-cv-108 (LMB/JFA), 778 F. Supp. 3d 797 (E.D. Va. Apr. 17, 2025)), a second government action. In so holding, Judge Castel made clear that applying issue preclusion is fair to Google, explaining that "[i]ssue preclusion in a private civil action based upon the outcome of a DOJ enforcement action is neither exotic nor unforeseeable." *In re Google Digital Advertising*, 2025 WL 3012840, at *17. That decision accords with various other antitrust cases nationwide that have granted issue preclusion on questions of market definition and monopoly power resolved in an earlier action. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, No. 15-cv-7488, 2017 WL 4358244, at *13-16 (S.D.N.Y. May 23, 2017); *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 401 (S.D.N.Y. 2008); *Univac Dental Co. v. Dentsply Int'l*, 702 F. Supp. 2d 465, 491-98 (M.D. Pa. 2010). Under these circumstances, no meaningful question exists as to whether preclusion is warranted; indeed, this is precisely the kind of case for which issue preclusion was designed.

## BACKGROUND

### I.     *United States v. Google*

In August 2024, after concluding a months-long bench trial featuring dozens of live witnesses and experts, over 3,500 exhibits, and the same counsel for Google here, Judge Mehta issued 187 pages of findings of fact and conclusions of law. His central conclusion? "Google is a monopolist, and it has acted as one to maintain its monopoly. It has violated Section 2 of the Sherman Act." *Google Search*, 747 F. Supp. 3d at 32. We focus here on three key intermediate holdings.

*First*, general search services is a relevant antitrust market. As Judge Mehta held, "the evidence at trial established that general search services," which users rely on to find responsive information on any topic on the internet by entering keyword queries in a general search engine, "is a relevant product market and alternative sources for query information, like SVPs and social media sites, are not adequate substitutes." *Id*. at 109-10. In reaching this conclusion, Judge Mehta examined the peculiar characteristics and uses of general search engines, which differ from SVP "walled gardens" that are specialized to a particular subject matter, call on "structured data available only on that particular platform," and cannot be used "to navigate beyond the platform." *Id*. at 110 (identifying Yelp as an example of an SVP specializing in local businesses). Judge Mehta also considered the industry and public recognition that attends general search services, including Google's own recognition of "general search services as a distinct product and separate market," tracking its market share relative to other general search engines. *Id*. at 112-13. Additionally, general search services, and the engines behind them, require unique production facilities such that other digital platforms could not shift resources to compete as a general search engine, including for noncommercial, commercial, and navigational queries. *Id*. at 113. Judge Mehta also held that the relevant geographic market is the United States. *Id*. at 107 ("All parties agree that the relevant geographic market is the United States."); *see also Google Search (Remedies)*, 803 F. Supp. 3d at 40 n.1.

*Second*, Google has monopoly power in general search services. Google's "dominant market share fortified by barriers to entry . . . easily establishe[d] Google's monopoly power" (the power to control prices or exclude competition) in general search services, dating back decades. *Id*. at 118.

- 3 -

Based on a comprehensive evidentiary record, Judge Mehta found that, "[s]ince at least 2009," Google has enjoyed a dominant market share of "over-80%" of the market for general search services, as measured by query volume. *Id*. at 119. And high capital costs, Google's control of key distribution channels, brand recognition, and scale ("the volume and availability of user interaction data") present "significant barriers that protect Google's market dominance in general search." *Id*. at 119-122.

*Third*, search advertising is a relevant antitrust product market in the United States. As Judge Mehta held, this market includes all advertisements served in response to a query, distinguishable from other forms of digital advertising (such as non-search social media ads or display ads) by the "unique level of real-time, expressed intent discernable from a user's query." *Id*. at 125. Here, too, Judge Mehta supported his determination with the peculiar characteristics and uses of search advertising (coupled with distinct prices for search advertising); advertisers' recognition of search advertising as a distinct product market; and the absence of significant substitution. *Id*. at 125-131.

Judge Mehta reaffirmed these conclusions in his opinion on remedies for Google's antitrust violations in September 2025: "Google is still the dominant firm in the relevant product markets. No existing rival has wrested market share from Google. And no new competitor has entered the market." *Google Search (Remedies)*, 803 F. Supp. 3d at 36.

## II.    *Yelp v. Google*

Yelp filed this action in August 2024, within weeks of Judge Mehta's liability determination in *United States v. Google*. Mirroring Judge Mehta's conclusions, Yelp alleges in its complaint that general search services in the United States is a relevant antitrust market (¶¶ 46-58) and Google has monopoly power in the general search services market in the United States (¶¶ 59-68). Yelp also alleges that local search advertising in the United States is a relevant product market, wholly contained within the broader search advertising market found by Judge Mehta (¶¶ 89-109).

This Court recognized the prospect of issue preclusion right away. In April 2025, in granting in part and denying in part Google's first motion to dismiss, this Court noted Yelp's position that many of its allegations were already "adjudicated" in *United States v. Google*. But it did not decide at the time "what preclusive effect, if any, the *United States v. Google* decision has in this case because, at

the pleading stage, the Court must take Yelp's allegations of fact as true." Dkt. 47 (Order Granting in Part and Denying in Part Mot. to Dismiss), at 18 n.7; *see also id.* at 9 (taking "judicial notice *sua sponte* of an additional fact: that on October 20, 2020, the Department of Justice filed a Complaint against Google for violation of Section 2 of the Sherman Act in the markets for general search services, among other markets") (citing *Google Search*, 20-cv-3010-APM, Dkt. 1 at 2).

In October 2025, in denying Google's second motion to dismiss, this Court again recognized the overlap between the two cases, this time holding that Section 5(i) of the Clayton Act suspended the running of the statute of limitations from October 20, 2020 onward because Yelp's action is "based in whole or in part on any matter complained of" in *United States v. Google*. As this Court reasoned, "there is certainly some (but not complete) overlap," including with respect to the shared antitrust market for general search services. "Yelp—just like the Government in *Google*—will need to prove Google's monopoly power in general search services. *That* proof will presumably be *identical* or highly similar to the proof in *U.S. v. Google.*" Dkt. 58 (Order Denying Defs' Partial Mot. to Dismiss) at 11 (emphasis added). Ultimately, this Court concluded "that Yelp has shown a real relation between its case and the Government's case—namely, an *identical* antitrust market that serves as the basis, if not the alleged harmed market, for Yelp's tying claim [and all other Yelp claims; Google only challenged Yelp's tying claim]." *Id*. at 11-12 (emphasis added). "[P]ermitting Yelp to take the fruits of the Government suit (proof of monopoly in the general search services market) and use it as an element in Yelp's suit (market power in the tying product market) is in line with the Supreme Court's guidance that Congressional tolling policy is furthered 'by permitting private litigants to await the outcome of Government suits and use the benefits accruing therefrom' for their own suits." *Id*. at 12 (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc*., 401 U.S. 321, 336 (1971)).

## LEGAL STANDARD

Issue preclusion, or collateral estoppel, prevents "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if the issue recurs in the context of a different claim brought by a different party. *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-749 (2001)); *Sec. & Exch.*

- 5 -

*Comm'n v. Stein*, 906 F.3d 823, 828 (9th Cir. 2018). After all, "once an issue has been resolved in a prior proceeding, there is no further fact-finding function to be performed." *Hilson v. Lopez*, No. 12-cv-06016, 2014 WL 4380674, at *2 (N.D. Cal. Sept. 4, 2014) (citation omitted).

Issue preclusion has four elements: "(1) the issue at stake was identical in both proceedings; (2) the issue was actually litigated and decided in the prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and (4) the issue was necessary to decide the merits." *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th Cir. 2012), *as amended* (May 3, 2012); *see also Howard v. City of Coos Bay*, 871 F.3d 1032, 1041 (9th Cir. 2017). Notably, federal courts do not require perfect overlap between the issues in the first and second litigation, which need only be "in substance the same as those resolved" in the first litigation. *Montana*, 440 U.S. at 155; *Howard*, 871 F.3d at 1041. Where the elements are met, issue preclusion is appropriate so long as its application would not be unfair to the opposing party. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979) (considering fairness in addition to elements of issue preclusion).

In evaluating issue preclusion, the second court does not sit in review of the first court's determinations, however sound or flawed. *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 157 (2015) ("The fact that the [first tribunal] may have erred . . . does not prevent preclusion."); *Love v. Villacana*, 73 F.4th 751, 754 (9th Cir. 2023) ("a final judgment is afforded preclusive effect even if erroneous"). Nor does a pending appeal thwart issue preclusion, as "the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided." *Hawkins v. Risley*, 984 F.2d 321, 324 (9th Cir. 1993); *see also Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882-83 (9th Cir. 2007) ("We have held that a final judgment retains its collateral estoppel effect, if any, while pending appeal," because "the benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal of that judgment.").

Partial summary judgment is the typical and appropriate vehicle for issue preclusion. Federal Rules of Civil Procedure 56(a) and 56(g) authorize summary judgment on "parts" of claims or defenses and entry of "an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Courts often employ Rule 56 to prevent an antitrust defendant from

- 6 -

revisiting, in a second matter, key facts, elements of antitrust liability, and defenses determined in an earlier action. *E.g.*, *In re Google Digital Advertising*, 2025 WL 3012840, at \*14, 17-18 (S.D.N.Y. Oct. 27, 2025); *Namenda*, 2017 WL 4358244, at \*13-16; *Discover*, 598 F. Supp. 2d at 401; *Univac Dental*, 702 F. Supp. 2d at 491-98.

<strong>ARGUMENT</strong>

Yelp seeks issue preclusion on three key determinations by Judge Mehta: (1) the existence of a general search services market in the United States, separate and distinct from the market(s) for specialized vertical providers (SVPs); (2) Google has long-standing monopoly power in this general search services market, and (3) the existence of a broader search advertising market (within which is a submarket for local search advertising, one of the markets alleged in this case).

**I.      Issue Preclusion is Designed for Cases Like This.**

Issue preclusion is particularly appropriate in the wake of government antitrust actions. In such cases, precluding parties from contesting matters that they have had a full and fair opportunity to litigate serves the core purposes of preclusion doctrine, which "encompasses vindication of both public and private interests. The private values protected include shielding litigants from the burden of re-litigating identical issues with the same party, and vindicating private parties' interest in repose. The public interests served include avoiding inconsistent results and preserving judicial economy." *Clements v. Airport Auth. of Washoe Cnty.*, 69 F.3d 321, 330 (9th Cir. 1995). As Wright and Miller put it, "obvious gains result from closing off repetitive trials." § 4416 Issue Preclusion in General, 18 Fed. Prac. & Proc. Juris. § 4416 (3d ed.).

These gains are especially obvious in complex antitrust cases, which can be time-consuming, expensive, and demand substantial judicial and party resources. Section 5(a) of the Clayton Act thus encourages applying issue preclusion in private antitrust cases that follow from government actions "to eliminate wasteful retrying of issues and reduce the costs of complex antitrust litigation to the courts and parties." H.R. Rep. No. 96-874, 96th Cong., 2d Sess. at 3 (1980); *see* 15 U.S.C. § 16(a); *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1211 (S.D.N.Y. 1981). Heeding this instruction, courts "often apply issue preclusion in antitrust cases" even against defendants' predictable arguments

- 7 -

that relevant markets are "dynamic" and "ever-changing." *Westwood Lumber Co. v. Weyerhaeuser Co.*, No. CV 03-551 PA, 2003 WL 24892052, at *3 (D. Or. Dec. 29, 2003) (unpub.).

Principles of issue preclusion "apply with *particular* force to a case such as this, where many of the questions raised in this private antitrust action arise out of the precise business practices which have been thoroughly, comprehensively and fairly litigated in the prior case brought by the United States. In such instances, the use of the offensive issue preclusion doctrine to resolve fully litigated issues as a matter of law has been expressly endorsed by the courts." *Univac Dental*, 702 F. Supp. 2d at 491 (emphasis added and citations omitted) (adopting report and recommendation).

This Court, too, has recognized the congressional and judicial policy favoring private litigants "await[ing] the outcome of Government suits and us[ing] the benefits accruing therefrom for their own suits." Dkt. 58 (Order Denying Partial Mot. to Dismiss) at 12 (cleaned up). As the Supreme Court has explained, the purpose of Section 5(a) of the Clayton Act is precisely to "minimize the burdens of litigation for injured private suitors by making available to them all matters previously established by the Government in antitrust actions' and to permit them 'as large an advantage as the estoppel doctrine would afford had the Government brought suit.'" *Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co.*, 381 U.S. 311, 317 (1965); *id.* (explaining it is "plain that in [Clayton Act section] 5(b) Congress meant to assist private litigants in utilizing any benefits they might cull from government antitrust actions").

Where the government has obtained an antitrust judgment, courts have not hesitated to apply issue preclusion. Based on a government-brought prior action in the Eastern District of Virginia, for example, Judge Castel recently held that "Google is precluded from relitigating" particular findings from the government-brought action, including "the existence of separate and distinct markets for publisher ad servers and ad exchanges" and that "Google has engaged in . . . anticompetitive conduct which supports the [plaintiff-competitors'] claim that it willfully acquired and maintained its monopoly power in the ad server and ad exchange markets." *In re Google Digital Advertising*, 2025 WL 3012840, at *17-18. Judge Castel's decision joins other federal courts that have granted issue preclusion on market definition and monopoly power. *See, e.g.*, *Namenda*, 2017 WL 4358244, at *10,

- 8 -

16 (defendant estopped from relitigating market definition and monopoly power); *Discover*, 598 F. Supp. 2d at 401 (same); *Univac Dental*, 702 F. Supp. 2d at 491-98 (same).

In applying the doctrine, Judge Castel emphasized that Google had every conceivable incentive to defend the prior case (as here) and in fact did so—producing and subpoenaing millions of documents, examining witnesses (including Yelp witnesses), and litigating through a full trial and post-trial proceedings in a suit that had "massively high stakes for Google." *In re Google Digital Advertising*, 2025 WL 3012840, at *16. In these circumstances, there was nothing unfair or remarkable about holding Google to the results of that litigation. To the contrary, "the risk of issue preclusion was apparent." *Id*. After all, "[i]ssue preclusion in a private civil action based upon the outcome of a DOJ enforcement action is neither exotic nor unforeseeable," but a routine feature of antitrust enforcement. *Id.* at *17 (explaining that Congress amended Section 5(a) of the Clayton Act to "make it plain that the doctrine of issue preclusion was available based on the outcome of a DOJ enforcement action").

Applying preclusion here would likewise advance the key purposes of preclusion doctrine while imposing no unfairness on Google—a sophisticated party that is no stranger to antitrust cases—which already litigated and lost on the same issues in a years-long, DOJ-led action in federal court. Where Google had ample opportunity to contest the same questions (and did so vigorously), fairness requires finality.

## II.     The Issues Satisfy All Requirements for Preclusion in the Ninth Circuit.

The Ninth Circuit's elements of issue preclusion are satisfied for each issue on which Yelp seeks preclusion: (1) The issues are identical and (2) actually litigated and decided. (3) Google had a full and fair opportunity—with the same counsel and with every incentive—to litigate the first time, and (4) the issues were necessarily decided by Judge Mehta.

### A.  The Issues are Identical.

All three issues on which Yelp seeks preclusion are identical across both cases. Courts in the Ninth Circuit look broadly to four factors from the Restatement in assessing whether the issues "are in substance the same," *Montana*, 440 U.S. at 155; *Stein*, 906 F.3d at 829:

- 9 -

(1) Is there a substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first?

(2) Does the new evidence or argument involve the application of the same rule of law as that involved in the prior proceeding?

(3) Could pretrial preparation and discovery related to the matter presented in the first action reasonably be expected to have embraced the matter sought to be presented in the second?

(4) How closely related are the claims involved in the two proceedings?

Although the Restatement factors "are not applied mechanistically," *id*., each confirms the suitability of issue preclusion here. Both actions pose the same questions, under the same body of federal law, proceeding in sister federal courts. *See also* Restatement (Second) of Judgments § 27 cmt. c (Am. Law Inst. 1982) (emphasizing the desire to prevent repetitious litigation of essentially the same dispute).

**Substantial overlap.** As to the first factor, the evidence and arguments from Judge Mehta's courtroom would repeat themselves here. The parties would invariably call on many of the same documents and much of the same testimony, rehashing debates among fact witnesses and experts that Judge Mehta resolved, all with significant costs for the parties and this Court. Indeed, Yelp was subject to discovery—producing documents and witnesses for depositions—in the case before Judge Mehta. *E.g.*, *Google Search*, 747 F. Supp. 3d at 191. Yelp's amended complaint confirms the overlap, drawing on trial exhibits, trial testimony, and Judge Mehta's determinations to support allegations concerning these relevant markets and Google's monopoly power. *See, e.g.*, Am. Compl. ¶¶ 6, 10, 15, 46-49, 51, 59, 63-65, 68, 77, 90-92, 97-100, 103, 171-74.

The same is true for arguments already made and rejected. Absent issue preclusion, the parties would once again litigate whether general search services constitute a distinct antitrust market from specialized search services and whether Google holds monopoly power within general search services. Google pressed—and lost—these very arguments after a full trial. Before Judge Mehta, Google urged a broadened market definition that included SVPs and social media as competitive substitutes for its general search engine. *Google Search*, 747 F. Supp. 3d at 113. Google argued that users can and do

- 10 -

turn to these services instead of general search, and that such competition defeats any claim of a distinct market or durable market power. Judge Mehta rejected Google's position, holding that "alternative sources for query information, like SVPs and social media sites, are not adequate substitutes." *Id.* at 110. As Judge Mehta emphasized, "[u]nlike those other products, GSEs [general search engines] are a gateway to the World Wide Web," which—unlike the "walled gardens" of SVPs and social media sites—is "not constrained by subject matter, inventory, or query type." *Id*. An SVP is not reasonably interchangeable with a GSE for the "same purposes," and "[t]he fact that users 'cross-query' does not require all online query sources be lumped together in the same market." *Id*. at 114. Judge Mehta then concluded that Google possesses monopoly power in general search, supported by persistent market share, substantial barriers to entry, and the reinforcing effects of Google's defaults. *Id*. at 117-124.

If these issues are reopened, this litigation would retrace the same ground, involving dueling expert analyses on substitutability, renewed efforts to sweep SVPs or social media into the same market as general search services, and extended disputes over user behavior and switching frictions. The parties would rebuild an evidentiary record on questions that Judge Mehta already tested and resolved.

The same reasoning is true of any purported technological changes. For example, Google may contend that the emergence of AI-driven search tools like ChatGPT or Claude has reshaped the competitive landscape since the liability trial. But Judge Mehta already considered this possibility. At the remedies stage in September 2025—well after these tools gained public prominence—Judge Mehta reaffirmed that Google remains the dominant firm in the relevant product markets, without any meaningful rival. *Google Search (Remedies)*, 803 F. Supp. 3d at 36. Any supposed transformation Google may invoke has already been weighed and found wanting by the very court that tried the case.

So too for the advertising services market. Absent issue preclusion, the parties would engage in disputes about the existence of an advertising services market (within which exists a submarket for local search advertising). But Google already litigated—and lost—whether search advertising is a relevant market. In the prior action, Google argued that there is no distinct market for search advertising, claiming instead that advertisers can substitute broadly across channels (including social media, display, and other digital formats) and that any alleged search advertising market is artificially

- 11 -

narrow. *Google Search*, 747 F. Supp. 3d at 125. Judge Mehta rejected those arguments, finding that search advertising constitutes a distinct antitrust market characterized by unique functionality, intent-driven user demand, and limited substitutability with other forms of advertising. *Id*. at 125-132. If issue preclusion were not granted, the same playbook would repeat, requiring this Court to consider competing models on substitutability, renewed debates over competition across different advertising channels, disputes over user behavior, and the creation of yet another evidentiary record on whether advertisers meaningfully view non-search channels as substitutes. Issue preclusion exists precisely to prevent this kind of waste.

To be sure, Yelp will still need to establish the market for *local search* advertising "wholly contained within the broader search advertising market." Am. Compl. ¶ 90. But Judge Mehta's finding of a search advertising market, distinct from non-search advertising, is part of the foundation. Through this motion, Yelp seeks to preclude Google only from reopening any debate over whether "the *Brown Shoe* factors counsel in favor of finding a relevant market for search advertising" (one generated in response to a query and signaling user intent with immediacy), *Google Search*, 747 F. Supp. 3d at 132, which is a steppingstone for Yelp's proof of a submarket contained within it and bearing many of the same features. Am. Compl. ¶¶ 89-109. To the extent Google wants to revisit "that it competes within a broader market for digital advertising" ("all forms," "search ads and other ad types"), *Google Search*, 747 F. Supp. 3d at 125, that question should now be closed.

Of course, although issue preclusion streamlines this case, it does not resolve it. Yelp will still need to prove other elements of its claims, including the existence of markets for local search services and local search advertising, as well as Google's market power within those markets. These open questions mitigate any concern about applying preclusion too broadly—even if courts readily apply issue preclusion to meet all key elements of liability where appropriate. *See, e.g.*, *In re Google Digital Advertising*, 2025 WL 3012840, at *17-18 (holding Google is precluded from relitigating market definition, monopoly power, and that "Google has engaged in . . . anticompetitive conduct"—leaving the parties to litigate antitrust injury and damages).

**Same rule of law.** As for whether this case and the prior action before Judge Mehta apply the same rule of law, there is no daylight either. Both cases proceed in federal court under Section 2 of the Sherman Act. The same law applies on market definition and monopoly power, drawing from the same Supreme Court and circuit precedents governing substitution (or reasonable interchangeability) and the assessment of durable market power—standards that do not vary by plaintiff. Minor differences in how courts articulate those principles do not defeat preclusion where, as here, courts are applying the same legal standards to the same economic questions. This presents a unique kinship that has prompted numerous other federal courts to apply issue preclusion on questions of market definition and monopoly power, as described above.

It is of no moment that Judge Mehta sits in the District Court for the District of Columbia rather than in the Northern District of California. The "Supreme Court has cautioned" that "issue preclusion may not be defeated based on the different manner of application of a single federal statutory standard." *In re Google Digital Advertising*, 2025 WL 3012840, at *11-12 (citing *B&B Hardware*, 575 U.S. at 154). Google tried to argue before Judge Castel, for example, that the prior court "followed Fourth Circuit standards that would not apply under the law of the Second Circuit," but Judge Castel rejected the argument: "[D]istrict courts in the Second and Fourth Circuits apply the same statutory standards, sections 1 and 2 of the Sherman Act, and the same controlling Supreme Court precedents. That the statutory standards are applied 'differently' does not foreclose issue preclusion." *Id*. (citing *B&B Hardware*, 575 U.S. at 154). If federal law "provides a single standard," as in the case of defining markets and assessing monopoly power for Section 2 of the Sherman Act, "parties cannot escape preclusion simply by litigating anew in tribunals that apply that one standard differently. A contrary rule would encourage the very evils that issue preclusion helps to prevent." *B&B Hardware*, 575 U.S. at 154.

**Discovery in the prior action.** Pretrial preparation and discovery related to *United States v. Google* could "reasonably be expected" to have embraced the overlapping issues presented in Yelp's case. Judge Mehta's determinations of market definition and Google's monopoly power are not limited to any particular theory of harm litigated in *United States v. Google* and has equal application here.

- 13 -

*Google Search*, 747 F. Supp. 3d at 109-124 (analyzing market definition and monopoly power independently and specifically differentiating between general search services and SVPs). And Google had every incentive (and ample opportunity) to discover evidence to support its preferred findings on market definition and monopoly power. "Given the nearly complete overlap of facts [in relevant part], there is no issue of significance presented by the [government's] action that could be expected to fall outside pretrial preparation and discovery" related to Yelp's case. *Stein*, 906 F.3d at 830.

**Close relationship of the claims.** Finally, the claims are closely related. Both cases proceed under Section 2 of the Sherman Act and arise (in substantial part) from the same set of facts. Both concern Google's anticompetitive conduct in the United States during an overlapping time period (2009 onward, e.g.). Both touch on or overlap with the same relevant markets. Both have been litigated in tandem for the last two years. And both aim to curb Google's unlawful monopoly abuses, which have harmed competition.

Of course, the "specific legal claims asserted in the second action need not be identical to those asserted in the prior action for collateral estoppel to apply." *In re: Am. Express Anti-Steering Rules Antitrust Litig.*, No. 08-cv-2315, 2016 WL 748089, at *4 (E.D.N.Y. Jan. 7, 2016) (citing *Parklane Hosiery*, 439 U.S. at 326 n.5). What is critical is that, as here, the questions that courts would use to determine market definition and monopoly power are essentially the same. For example, as described above, Judge Mehta expressly distinguished SVPs from general search providers as part of his findings of fact and conclusions of law. *Google Search*, 747 F. Supp. 3d at 58-61, 110-16. Absent issue preclusion, this Court would be answering the same questions on substitution, competitive constraints, and market power that Judge Mehta already analyzed. The relevant market realities—particularly the interaction and relationship between specialized vertical providers and general search—have already been fully litigated and resolved. Judge Mehta's issue determinations thus satisfy part of Yelp's proof of an antitrust violation here, obviating the need to establish, a second time, two relevant markets and Google's monopoly power in general search services.

**B. These Issues Were Actually Litigated and Decided in The Prior Proceeding.**

The issues on which Yelp seeks preclusion were actually litigated in *United States v. Google* and decided by Judge Mehta—at length. "[A]n issue is actually litigated when an issue is raised, contested, and submitted for determination." *Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019); *see also* Restatement (Second) of Judgments § 27, cmt. (d) (1982).

Cases tried to a judge present little ambiguity because "express findings of fact and conclusions of law often show clearly what has been—and what has not been—decided." § 4420 Issue Preclusion—Actually Decided, 18 Fed. Prac. & Proc. Juris. § 4420 (3d ed.). Where the prior action resulted in a judge issuing detailed findings of fact and conclusions of law after full presentation of the evidence, these findings reflect the court's role as factfinder.[2] *See In re Google Digital Advertising*, 2025 WL 3012840, at *6-7.

There can be no question whether these issues were raised, contested, and submitted for determination or whether Judge Mehta resolved them (in great detail) in the prior proceeding. These issues were at the heart of the government's case, and Google fought them mightily; they were the subject of extensive briefing, expert analysis, direct and cross examination, *Daubert* scrutiny, and testing at trial. Once submitted for determination, Judge Mehta devoted dozens of pages to "find the facts specially and state [his] conclusions of law separately," Fed. R. Civ. P. 52(a), wrestling with the evidence before him (and Google's counterarguments). The "first fact finder's deliberation and judgment" are on full display. *In re Google Digital Advertising*, 2025 WL 3012840, at *6-7.

**C. Google Had a Full and Fair Opportunity to Litigate These Issues.**

Google also had a full and fair opportunity to litigate the issues before Judge Mehta, in a procedurally and substantively fair forum. This element asks "if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 481 (1982); *see Maciel v. Comm'r*, 489 F.3d 1018, 1023 (9th Cir. 2007).

---

[2] At the other end of the spectrum are murkier situations in which, *e.g.*, an issue was litigated but *not* decided; an issue was never explicitly raised and contested; or a jury's general verdict masks the particular issues resolved. *See Janjua v. Neufeld*, 933 F.3d 1061, 1066 (9th Cir. 2019); *In re Google Digital Advertising*, 2025 WL 3012840, at *6-7; § 4420 Issue Preclusion—Actually Decided, 18 Fed. Prac. & Proc. Juris. § 4420 (3d ed.).

There is no cause for doubt here. As with the issue-preclusion example before Judge Castel, "Google had the powerful incentive to defend the claims brought by the DOJ and the state attorneys general. It vigorously defended the claims in a forum that afforded it the full panoply of rights a party would expect in a proceeding in any United States District Court under the Federal Rules of Civil Procedure, Federal Rules of Evidence, Title 28 (Judiciary and Judicial Procedure) and custom and usage in federal courts." *In re Google Digital Advertising*, 2025 WL 3012840, at *4 ("the Court is able to comfortably dispose of the issue"). This is not, for example, a situation in which Google did not defend itself vigorously in the first action or lacked incentive to do so, where procedural opportunities might differ across actions, or where inconsistent judgments lie. *See Parklane*, 439 U.S. at 330-31.

The prior proceeding featured robust adversarial testing. Judge Mehta's opening summary in the opinion attests to the scope, procedural opportunities, and fairness of the prior proceedings:

> Discovery began in December 2020 and concluded in March 2023. Millions of pages exchanged hands, Google produced petabytes of data, and the parties deposed dozens of witnesses, including high-ranking executives at some of the world's largest technology companies. The court held a nine-week bench trial starting in September 2023. It heard from dozens of live witnesses, including multiple experts, and admitted over 3,500 exhibits. After receiving extensive post-trial submissions, the court held closing arguments over two days in early May 2024.

*Google Search*, 747 F. Supp. 3d at 32; *see also Google Search (Remedies)*, 803 F. Supp. 3d at 40 ("After receiving testimony from dozens of witnesses; reviewing thousands of pages of exhibits and deposition designations; considering the parties' post-trial briefs, proposed findings of fact, and proposed conclusions of law; and hearing from the parties at closing arguments over two days, the court issued its liability findings"). The remedies proceedings were extensive as well. *Google Search (Remedies)*, 803 F. Supp. 3d at 41-42 (describing a remedial phase that began "with entry of a scheduling order that set aside approximately six months for discovery to be followed by a three-week evidentiary hearing. . . . The evidentiary hearing ran from April 22, 2025, to May 9, 2025. Each side presented hundreds of exhibits, . . . and the court heard from nearly 50 witnesses via live testimony and deposition designations . . . . Following the evidentiary presentation, the parties made extensive

- 16 -

post-hearing submissions, including proposed findings of fact and conclusions of law and replies in support.").

Based on this immense evidentiary record, Judge Mehta carefully considered—and rejected, at length—Google's arguments (and interpretations of evidence) against any findings that there is a relevant product market for general search services; Google has monopoly power in that market; and there is a relevant product market for search advertising. *Google Search*, 747 F. Supp. 3d at 113-17 (evaluating and rejecting Google's proposed query-response market), 122-24 (considering Google's counterarguments to monopoly power), 124-30 (finding a relevant market for search advertising and deeming Google's counterarguments and legal authorities unpersuasive).

Unusually, too, for issue-preclusion purposes, the very same counsel represented Google in *United States v. Google* and do so again in this case. Counsel have never suggested, to Yelp's knowledge, that Judge Mehta deprived Google of a full and fair opportunity to litigate these core issues. Nor could they. If this circumstance—a hard-fought antitrust case spanning five years and featuring a massive discovery record, months of trial and post-trial proceedings, and hundreds of pages of findings of fact and conclusions of law in federal court—were somehow *not* a full and fair opportunity to litigate the issues, nothing would ever be. Issue preclusion would be a nullity.

### D. These Issues Were Necessary to Decide the Merits.

The three issues on which Yelp seeks preclusion were also necessary for Judge Mehta to decide the merits. Preclusion attaches only "to determinations that were necessary to support the court's judgment in the first action." *Resol. Tr. Corp. v. Keating*, 186 F.3d 1110, 1115 (9th Cir. 1999) (citing *Segal v. Am. Tel. & Tel. Co., Inc.,* 606 F.2d 842, 845 n. 2 (9th Cir.1979)); *see also* Restatement (Second) of Judgments § 27, Comment *h* (1980). Preclusion does not attach to dicta or issues "merely incidental" to the first judgment. § 4421 Issue Preclusion—Necessarily Decided, 18 Fed. Prac. & Proc. Juris. § 4421 (3d ed.).

Here, each disputed issue yielded an unambiguous holding that Judge Mehta had to analyze as part of the legal framework en route to his conclusion that Google had violated Section 2 of the Sherman Act. *See, e.g.*, *Google Search*, 747 F. Supp. 3d at 106-107 (describing legal framework of

- 17 -

Section 2 of the Sherman Act, which requires proof of the element of "monopoly power in the relevant market"). Judge Mehta's exhaustive analyses, explicit conclusions, and meticulousness at every step make clear that these parts of his liability ruling were not "merely incidental," lacking in "sufficient care," or unnecessary. These hotly disputed issues of market definition and monopoly power were elements of Section 2—at the heart of the bench trial and plainly necessary to support the court's judgment.

As in the recent instructive example before Judge Castel, this Court need not "parse the possible paths that the factfinder *may* have taken in an effort determine which facts were actually and necessarily decided. Judge [Mehta's] findings of fact and conclusions of law are precise and concise." *In re Google Digital Advertising*, 2025 WL 3012840, at *7 (emphasis and alteration added).

**CONCLUSION**

For all these reasons, Yelp respectfully requests that the Court grant this motion for partial summary judgment and preclude Google from relitigating issues already adjudicated by Judge Mehta in *United States v. Google*.

DATED: April 15, 2026

By: */s/ Sathya Gosselin*
Sathya Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
Ian Engdahl (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: sgosselin@hausfeld.com
        sbojedla@hausfeld.com
        iengdahl@hausfeld.com

Yixi (Cecilia) Cheng, SBN 325216
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, New York 10004
Telephone: (646) 357-1100

- 18 -

Facsimile: (212) 202-4322
Email:  ccheng@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

- 19 -