John E. Schmidtlein, SBN 163520
Colette T. Connor (*pro hac vice*)
Gloria Maier (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
        cconnor@wc.com
        gmaier@wc.com

*Attorneys for Defendant Google LLC*

(*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| YELP INC.,<br><br>               Plaintiff,<br><br>               v.<br><br>GOOGLE LLC,<br><br>               Defendant. | Case No. 5:24-cv-06101-SVK<br><br>**DEFENDANT GOOGLE LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR ISSUE PRECLUSION AND PARTIAL SUMMARY JUDGMENT**<br><br>Date:     June 9, 2026<br>Time:    10 a.m.<br>Place:   Courtroom 6, 4th Floor<br>Judge:  Magistrate Judge Susan van Keulen |

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF THE ISSUES .......................................................... 1

BACKGROUND ................................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT ......................................................................................................................... 6

I.      The *U.S. v. Google* "General Search Services" Findings Are Not
        Binding Here Because the Alleged Products and Theories of Harm Are
        Different. ................................................................................................................. 6

        A.      Yelp's Tying Theory Directly Conflicts with the *U.S. v. Google*
                Market Definition .................................................................................... 8

        B.      Yelp's Tying Theory Mandates a *De Novo* Determination of
                Monopoly Power ..................................................................................... 10

II.     The *U.S. v. Google* "Search Advertising" Findings Are Not Binding
        Here. ....................................................................................................................... 11

        A.      The Search Advertising Market Finding Was Not Necessary to
                the Court's Holding ................................................................................ 12

        B.      The Issues Are Not Identical Because the Markets Are
                Different. ................................................................................................ 14

III.    The Court Should Deny Issue Preclusion for Additional, Independent
        Reasons. ................................................................................................................. 16

        A.      Applying the *U.S. v. Google* Findings Here Would Be Unfair
                Given that Yelp's Theories Conflict with Judge Mehta's
                Market-Definition and Market-Power Rulings. ...................................... 16

        B.      Yelp Cannot Obtain Issue Preclusion for the Full Time Period at
                Issue, and So Any Minimal Efficiency Gain Is Outweighed by
                the High Likelihood of Jury Confusion and Prejudice. .......................... 18

        C.      Yelp's Motion Is Premature Given Google's Pending Appeal ................... 21

        D.      The Absence of a Jury Trial in *U.S. v. Google* Weighs Against
                Applying Issue Preclusion Here ............................................................... 22

CONCLUSION .................................................................................................................... 23

## TABLE OF AUTHORITIES

### CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171 (9th Cir. 2016) ....................................9

*Allen-Myland, Inc. v. International Business Machines Corp.*, 33 F.3d 194 (3d Cir. 1994).........16

*Argus Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589 (S.D.N.Y. 1982) ........................................14

*Bies v. Bagley*, 519 F.3d 324 (6th Cir. 2008)..............................................................................13

*Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313 (1971) ..............................4

*Bobby v. Bies*, 556 U.S. 825 (2009).................................................................................1, 13, 14

*Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84
    (D. Haw. 1985) .........................................................................................................................5

*Clark v. Bear Sterns & Co.*, 966 F.2d 1318 (9th Cir. 1992)......................................................4, 12, 14

*Comes v. Microsoft Corp.*, 709 N.W.2d 114 (Iowa 2006).............................................................22

*Discover Fin. Servs. v. Visa U.S.A. Inc.*, 2008 WL 11516437 (S.D.N.Y. Oct. 1, 2008)...............19

*Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394 (S.D.N.Y. 2008)......................5, 22

*Fed. Trade Comm'n v. Meta Platforms, Inc.*, 811 F. Supp. 3d 67 (D.D.C. 2025)........................20

*GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203 (S.D.N.Y. 1981).......................................6

*Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014 (C.D. Cal. 2009)................................18, 23

*Helena World Chronicles v. Google*, 2026 WL 787882 (D.D.C. Mar. 20, 2026).........................9

*In re: Am. Express Anti-Steering Rules Antitrust Litig.*, 2016 WL 748089
    (E.D.N.Y. Jan. 7, 2016) ..........................................................................................................22

*In re Blue Cross Blue Shield Antitrust Litig. (MDL No. 2406)*, 2018 WL 1796257
    (N.D. Ala. Apr. 16, 2018) .......................................................................................................17

*In re Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840
    (S.D.N.Y. Oct. 27, 2025) ................................................................................................5, 14, 22

*In re Google Play Store Antitrust Litig.*, 147 F.4th 917 (9th Cir. 2025)........................................7

*In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F. Supp. 2d 239 (D. Me. 2010) .............23

*In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322 (4th Cir. 2004) ............................................4

*In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4358244 (S.D.N.Y. May 23, 2017) ..............................................................................................................................5, 23

*Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449 (1st Cir. 1963) .....................19

*Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118 (D.C. Cir. 1984) ........................1

*King Drug Co. of Florence v. Abbott Lab'ys*, 2022 WL 866681 (E.D. Pa. Mar. 23, 2022)..........14

*Montana v. United States*, 440 U.S. 147 (1979) ..............................................................................4

*Morelock Enters., Inc. v. Weyerhaeuser Co.*, 2005 WL 4158121 (D. Or. Jan. 6, 2005)...............17

*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 553 F. Supp. 962 (N.D. Ill. 1982) ..............................................................................................................................19

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)...............................................................4, 23

*Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024 (9th Cir. 2001) ....................................15, 18, 19

*Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009 (N.D. Cal. 2012) ..........................17, 23

*Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578 (N.D. Cal. 2020) ..................................................7

*Teradata Corp. v. SAP SE*, 124 F.4th 555 (9th Cir. 2024) ...............................................................7

*Tripati v. Henman*, 857 F.2d 1366 (9th Cir. 1988)........................................................................22

*U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589 (1st Cir. 1993) ....................................7

*United States v. Arpaio*, 951 F.3d 1001 (9th Cir. 2020) ...............................................................13

*United States v. Google*, 20-cv-3010, 20-cv-3715 (D.D.C.)................................................. *passim*

*United States v. Google*, 747 F. Supp. 3d 1 (D.D.C. 2024) ..................................................... *passim*

*United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) ...........................................14

*United States v. Google LLC*, 803 F. Supp. 3d 18 (D.D.C. 2025).....................................2, 10, 20

*Univac Dental Co. v. Dentsply Int'l*, 702 F. Supp. 2d 465 (M.D. Pa. 2010) .............................6, 23

*Visa U.S.A. Inc. v. First Data Corp.*, 369 F. Supp. 2d 1121 (N.D. Cal. 2005)...................... *passim*

*Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 1119822 (D. Or. May 19, 2004)...........19

*Westwood Lumber Co. v. Weyerhaeuser Co.*, 2003 WL 24892052 (D. Or. Dec. 29, 2003) ...........5

*Whelan v. Abell*, 953 F.2d 663 (D.C. Cir. 1992)....................................................................18, 23

GOOGLE'S OPPOSITION TO YELP'S MOTION FOR ISSUE PRECLUSION
Case No. 5:24-cv-06101-SVK

## OTHER AUTHORITIES

15 U.S.C. § 2 ..................................................................................................................13

15 U.S.C. § 16(a) ...............................................................................................................5

H.R. Rep. No. 96-874, 96th Cong., 2d Sess. (1980) .........................................................5

Restatement (Second) of Judgments § 27 .....................................................................8, 15

Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4421 (3d ed.) .......................................14

**INTRODUCTION AND STATEMENT OF THE ISSUES**

Courts caution that offensive non-mutual issue preclusion is a "detailed, difficult, and potentially dangerous" doctrine. *Jack Faucett Assocs., Inc. v. Am. Tel. & Tel. Co.*, 744 F.2d 118, 124 (D.C. Cir. 1984). Yelp's motion breezes past the critical legal details and runs headfirst into the dangers. Because the issues in this case are fundamentally distinct from those in *United States v. Google*, 20-cv-3010, 20-cv-3715 (D.D.C.) ("*U.S. v. Google*"), that court's findings have no application here. The Court should deny Yelp's motion in its entirety.

Judge Mehta's finding of monopoly power in a "general search services" market carries no preclusive effect here because there is no common identity of issues. Although Yelp has described its alleged "general search services" market by restating portions of Judge Mehta's liability opinion, Mot. at 10, no amount of selective copying can obscure the fact that Yelp has defined this market in a fundamentally different manner. Judge Mehta treated Google Search as an integrated product capable of answering all queries, including local queries, whereas Yelp's tying claim is predicated on the notion that Google offers a "general search" product separately from a "local search" product. Yelp's reliance on a product market definition never adopted by Judge Mehta (among other differences) necessitates a *de novo* determination of Yelp's alleged general search services market.

Judge Mehta's "search advertising" relevant market finding likewise has no preclusive effect here. Because Google defeated the "search advertising" monopoly claim in *U.S. v. Google*, the court's market determination was neither "necessary" nor "essential" to the final judgment. *Bobby v. Bies*, 556 U.S. 825, 829, 835 (2009). Moreover, Yelp cannot use that relevant market as a "steppingstone" to establish a "local search advertising" market. Mot. at 12. A market allegedly "wholly contained" within a broader market, Mot. at 12, is not "identical" for purposes of issue preclusion. *Visa U.S.A. Inc. v. First Data Corp.*, 369 F. Supp. 2d 1121, 1124–25 (N.D. Cal. 2005).

Alternatively, the Court should exercise its discretion to deny Yelp's motion. Given that Yelp seeks damages through trial in 2028 as well as injunctive relief, Yelp must prove the existence of a "general search services" relevant market (and Google's market power therein) for the years following the *U.S. v. Google* trial. The parties must also still litigate the existence of a "local

-1-

search advertising" market (and Google's market power, if any, therein).  As such, any supposed efficiency gains from granting Yelp's motion would be minimal, and even those gains are entirely contingent on the outcome of Google's pending appeal: a reversal would nullify any preclusive effect and require the Court to reopen discovery.  Finally, in this private action for treble damages, Google is entitled to have these central issues decided by a jury rather than through the findings of a prior bench trial.

## BACKGROUND

*U.S. v. Google.*  The primary issue in *U.S. v. Google* was whether Google's distribution agreements with mobile phone manufacturers, wireless carriers, and browser developers "reasonably appear[ed] capable of making a significant contribution to maintaining monopoly power" in alleged markets for "general search services," "search advertising," and "general search text advertising."  *United States v. Google*, 747 F. Supp. 3d 1, 32–33, 153 (D.D.C. 2024) (cleaned up) ("*Search Liability*").  The evidentiary record in that case was largely set by 2022, with fact discovery ending that spring and expert discovery that fall.  *U.S. v. Google*, ECF 108-1 (Feb. 3, 2021).  The case proceeded to a bench trial in fall 2023.  The following year, Judge Mehta issued an opinion holding, among other things, that:

> (1) [T]here are relevant product markets for general search services and general search text ads; (2) Google has monopoly power in those markets; (3) Google's distribution agreements are exclusive and have anticompetitive effects; and (4) Google has not offered valid procompetitive justifications for those agreements.

*Search Liability*, 747 F. Supp. 3d at 32–33.  While Judge Mehta defined a relevant market for "search advertising," he held that Google did not have monopoly power in that market.  *Id.* at 132, 136.

The parties then litigated and proceeded to trial on the question of the appropriate injunctive relief.  In contrast to the court's narrow focus on traditional search engines during the liability phase, Judge Mehta concluded in his 2025 remedies opinion that the remedial decree should encompass search-focused GenAI technologies and companies.  *United States v. Google*, 803 F. Supp. 3d 18, 91 (D.D.C. 2025) ("*Search Remedies*").  Judge Mehta noted that those GenAI products, which did not exist at the time discovery closed in 2022, are actively "shifting the

competitive landscape" and serve as "a potential threat to Google's dominance in the market for general search services." *Id.*

Google has appealed the final judgment in *U.S. v. Google*. *United States v. Google*, No. 26-5023 (D.C. Cir. 2026). Google's opening brief is due May 22, 2026, and all briefing on Google's appeal will be completed by September 29, 2026.

***Yelp v. Google.*** Yelp filed its Complaint in August 2024, ECF 1, and its Amended Complaint ("AC") in May 2025, ECF 50. Following the Court's denial of Google's partial motion to dismiss in October 2025, ECF 58, the parties commenced discovery, which is still in its early stages: fact discovery is scheduled to conclude in December 2026, and expert discovery is scheduled to conclude in June 2027. Trial is currently scheduled for May 2028. Although discovery remains ongoing, it is clear that Yelp's claims involve conduct, markets, and legal theories fundamentally distinct from those that formed the basis of Judge Mehta's liability determinations in *U.S. v. Google*. Specifically, while the *U.S. v. Google* findings concerned the legality of Google's distribution agreements and competition among general search engines ("GSEs"),[1] Yelp alleges that Google engages in tying arrangements and self-preferencing that harms competition among specialized vertical providers ("SVPs")[2] and other participants in the alleged "local search services" and "local search advertising" markets. *See* AC ¶ 232 (alleging that Google's alleged tying had a "substantial effect on commerce in the tied market for local search services"); *id.* ¶ 195 (alleging Google's conduct "harm[ed] competition in the market for local search services"); *id.* ¶ 219 (alleging that Google's conduct "harm[ed] competition in the market for local search advertising"). Yelp purports to adopt the "general search services" market from *U.S. v. Google*, but as detailed *infra*, the similarity is superficial. Yelp's tying theory relies on a distinction between Google's "general search product" and its "local search product" that directly conflicts with the market definition recognized by Judge Mehta.

---

[1] "A GSE is software that produces links to websites and other relevant information in response to a user query." *Search Liability*, 747 F. Supp. 3d at 35.

[2] SVPs are "are platforms that respond to queries centered on a particular subject matter." *Search Liability*, 747 F. Supp. 3d at 58.

-3-

Yelp's claims also involve a different time period than was at issue in *U.S. v. Google*. The claims in *U.S. v. Google* involved only injunctive relief, and thus only required a determination of the relevant markets and Google's market power as of the time of the trial in 2023, whereas Yelp seeks damages for a period extending from 2016 to the time of trial no earlier than 2028.

**LEGAL STANDARD**

A party moving for issue preclusion has the burden to demonstrate: "(1) the issue at stake [is] identical to the one alleged in the prior litigation; (2) the issue [was] actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation [was] a critical and necessary part of the judgment in the earlier action." *Clark v. Bear Sterns & Co.*, 966 F.2d 1318, 1320 (9th Cir. 1992). Where, like here, a party seeks offensive non-mutual issue preclusion, these factors are "applied strictly," and the failure to meet any factor requires denial of issue preclusion. *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326-27 (4th Cir. 2004). Yelp notes that there need not be "perfect overlap between the issues in the first and second litigation," Mot. at 6; however, the issue *on which a party seeks preclusion* must be "in substance the same," *Montana v. United States*, 440 U.S. 147, 155 (1979). In other words, the "question expressly and definitely presented in this suit [must be] the same as that definitely and actually litigated and adjudged" in the prior suit. *Id.* (citation omitted); *Visa*, 369 F. Supp. 2d at 1123 ("[I]t is not sufficient that an issue is 'factually similar' to the one in an earlier case"; "the issues must be *identical* and involve the same facts and surrounding context." (citation omitted)).

Even where the required elements are satisfied, a court retains "broad discretion to determine when [offensive non-mutual issue preclusion] should be applied." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–32 (1979). And a court "should not" exercise that discretion if "the application . . . would [] be unfair to a defendant." *Id.*; *see also Blonder-Tongue Lab'ys, Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 334 (1971) ("In the end, decision will necessarily rest on the trial courts' sense of justice and equity.").

Yelp's attempt to claim a special status for "government antitrust actions" finds no support in the law. Mot. at 7. As the decisions cited by Yelp confirm, the "[a]pplication of the doctrine is not a matter of right," but is instead contingent on the plaintiff satisfying the legal standard.

*Westwood Lumber Co. v. Weyerhaeuser Co.*, 2003 WL 24892052, at *1 (D. Or. Dec. 29, 2003); *see also Discover Fin. Servs. v. Visa U.S.A. Inc.*, 598 F. Supp. 2d 394, 398 (S.D.N.Y. 2008) ("Despite the economies achieved by use of collateral estoppel, it is not to be mechanically applied, for it is capable of producing extraordinarily harsh and unfair results.").  And while Yelp cites Section 5(a) of the Clayton Act as purportedly "encourag[ing]" the application of issue preclusion in private antitrust suits, Mot. at 7, Section 5(a) does not "limit[] or expand[] the standards that a court applies in determining whether collateral estoppel is appropriate under the common law." H.R. Rep. No. 96-874, 96th Cong., 2d Sess. at *6 (1980).  Nor can Yelp find support in this Court's recognition of a Congressional policy favoring tolling.  ECF 58 at 12 (cited in Mot. at 5, 8).  The burden Yelp carries at summary judgment is far more exacting than the one it faced at the pleading stage.  Offensive issue preclusion involves a different legal standard—requiring a much greater showing of identicality—than merely asserting tolling is warranted on the face of the complaint. *Charley's Tour & Transp., Inc. v. Interisland Resorts, Ltd.*, 618 F. Supp. 84, 86 (D. Haw. 1985) (holding that a determination of whether tolling applies "may only be determined by comparing the two complaints on their face") (citation omitted).

For these reasons, courts cannot mechanically apply issue preclusion to market definition and monopoly power determinations reached in prior government enforcement actions.  Yelp's cited cases do not hold otherwise:  in those cases, the court held the issues to be "identical" to the government action only after concluding that the private plaintiffs challenged the same conduct at issue in the prior markets. *Discover Fin. Servs.*, 598 F. Supp. 2d at 400 (granting issue preclusion where plaintiff "challenge[d] the same conduct challenged by the DOJ," in the same markets); *In re Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840, at *9 (S.D.N.Y. Oct. 27, 2025) (holding private plaintiffs alleged the same "anticompetitive conduct that [the court] found to be anticompetitive" in the related government enforcement matter); *In re Namenda Direct Purchaser Antitrust Litig.*, 2017 WL 4358244, at *9–10 (S.D.N.Y. May 23, 2017) (holding direct purchasers alleged harm resulting from the same "actions . . . at issue in the prior [enforcement] litigation"); *Univac Dental Co. v. Dentsply Int'l*, 702 F. Supp. 2d 465, 491–98 (M.D. Pa. 2010) (holding that "the questions presented in this lawsuit regarding [defendant's] possession and use of monopoly

-5-

power are the same as the issues involved in the prior [government] antitrust action"); *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1211 (S.D.N.Y. 1981) (holding that issue preclusion was appropriate as to market-definition and market-power issues where the plaintiff challenged the same conduct). As explained further, *infra*, Yelp is on fundamentally different footing than the plaintiffs in these cases, because Yelp challenges different conduct, in different markets, on the basis of different theories of harm than were at issue in *U.S. v. Google*.

## ARGUMENT

**I.     The *U.S. v. Google* "General Search Services" Findings Are Not Binding Here Because the Alleged Products and Theories of Harm Are Different.**

The Court should deny Yelp's request for issue preclusion regarding (1) "the existence of a general search services market in the United States, separate and distinct from the market(s) for specialized vertical providers," and (2) Google's purported "long-standing monopoly power in this general search services market." Mot. at 7. Yelp's contention that it has alleged an "identical" general search engine market to that at issue in *U.S. v. Google*, Mot. at 9, does not withstand scrutiny. Yelp's proposed "general search services" market relies on a fundamentally different definition of "general search services" than that adopted in *U.S. v. Google*. Unlike in *U.S. v. Google*, Yelp alleges that "general search services" and "local search services" are "separate and distinct markets, ***with separate and distinct products and services***," AC ¶ 228 (emphasis added), and claims that Google has harmed competition in a "local search services" market by tying its "local search product" to its "general search product," *id.* ¶¶ 225–36. In *U.S. v. Google*, Judge Mehta recognized that local search and other forms of vertical search were encompassed within (not distinct from) "general search services," and assessed whether Google's search distribution agreements harmed competition in a "general search services" market that included searches for local businesses and services.

In evaluating whether a plaintiff alleges an identical market (and by extension, identical market power), courts look beyond a party's description of the market to evaluate whether the underlying facts and "surrounding context" are the same. *Visa*, 369 F. Supp. 2d at 1123 (citation omitted). That is because relevant markets are defined in reference to the alleged relevant facts

-6-

and theories of harm.  *Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 616 (N.D. Cal. 2020) ("[W]hat the appropriate product market is depends on what anticompetitive harm is being claimed."); *Teradata Corp. v. SAP SE*, 124 F.4th 555, 570 (9th Cir. 2024), cert. denied, 146 S. Ct. 118 (2025) ("[M]arket definition must be relevant to the theory of harm at issue[.]" (cleaned up)); *U.S. Healthcare, Inc. v. Healthsource, Inc.*, 986 F.2d 589, 598 (1st Cir. 1993) ("[T]he nature of the claim can affect the proper market definition[.]").  Where a litigant alleges "meaningfully different commercial realities and theories of harm," questions regarding market definition and market power are "*not* 'identical' for the purposes of issue preclusion."  *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 935–36 (9th Cir. 2025) (emphasis added) (holding that issue preclusion was not warranted as to the market definition in Epic's parallel litigation against Apple because the Apple litigation involved "separate and distinct" "market realities and theories of anticompetitive harm"); *see also Visa*, 369 F. Supp. 2d at 1125–26 (markets that concerned different products and exclusionary rules were not "identical" for issue preclusion purposes).

Yelp ignores this central inquiry, arguing only that "Judge Mehta's determinations of market definition and Google's monopoly power are not limited to any particular theory of harm litigated in *United States v. Google*." Mot. at 13.  But that misses the point:  market definition and monopoly power assessments are conducted in the context of the specific claims and theories of harm.  Here, Yelp is claiming harm to an entirely different set of competitors (local SVPs, rather than GSEs), based on entirely different conduct (self-preferencing and tying, rather than distribution agreements), grounded in a product definition at odds with the general search services market defined by Judge Mehta.  Yelp cites no authority permitting issue preclusion under these circumstances.

Yelp's reliance on the Restatement (Second) of Judgments' factors for assessing identicality is unavailing.  Mot. at 9–14.  As explained *infra*, Yelp's tying theory (1) is incompatible with Judge Mehta's finding of a general search services market, and (2) similarly conflicts with Judge Mehta's assessment of market power.  These differences mean that Yelp cannot establish "substantial overlap between the evidence or argument" regarding the alleged relevant market and Google's market power therein, that the "pretrial preparation and discovery"

-7-

regarding Yelp's alleged relevant market would be the same, or that the claims are sufficiently "closely related," as required under the Restatement factors.  Restatement (Second) of Judgments § 27 cmt. c (Am. Law Inst. 1982).

### A.     Yelp's Tying Theory Directly Conflicts with the *U.S. v. Google* Market Definition.

Yelp cannot square its tying theory with the general search services market that was alleged by the Plaintiffs in *U.S. v. Google* and recognized by Judge Mehta, for at least two reasons.

***First,*** whereas Judge Mehta considered "general search" results to encompass ***all*** results provided by GSEs in response to ***all*** types of queries (including local queries), *Search Liability*, 747 F. Supp. 3d at 111–12, Yelp claims that "general search" and "local search" are two "distinct products," and that Google's "general search product" does not provide responses to local search queries. AC ¶ 70 (alleging that "general search" does "not offer[]" results for local services, including "user-generated reviews and verified information about th[ose] service[s]"); *see also id.* ¶ 230 (alleging that local search results are provided by Google's "local-search product," not its "general search product").  Judge Mehta's findings make clear that the "general search service" provided by GSEs includes answers to all categories of queries, including for local search results, and encompasses the entire search results page, including those portions of the page comprising "vertical offering[s]":

- "A GSE attempts to answer all queries by 'provid[ing] search results that are relevant to those queries.'" *Search Liability*, 747 F. Supp. 3d at 38.

- "A GSE can supply information from a broad variety of sources, covering nearly any topic." *Id.* at 39.

- "Most SERPs contain some mixture of advertisements, organic links, and vertical offerings." *Id.* at 41.

- "A vertical offering is a category of specialized information that is accessible to users without leaving the SERP.  Examples of verticals include information about flights, hotels, and restaurants." *Id.* at 42.

Yelp's theory of harm cannot be reconciled with Judge Mehta's reasoning because Yelp theorizes that Google offers a "general search product" that is ***separate*** from its "local search

-8-
GOOGLE'S OPPOSITION TO YELP'S MOTION FOR ISSUE PRECLUSION
Case No. 5:24-cv-06101-SVK

product," and that Google has tied the two in order to monopolize the local search market. AC ¶ 230. Yelp's separation of "general search" and "local search" is by necessity, as a tying claim requires proof of two distinct products. *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016). Yet by alleging two "distinct" products, Yelp takes the position that "general search" *excludes* vertical search functions like "local search." AC ¶ 228 ("The general search services market and the local search services market are separate and distinct markets, with separate and distinct products and services."). The evidence Yelp presents in support of its tying theory will thus differ meaningfully from the evidence presented in *U.S. v. Google*.

Judge Mehta's recent decision in *Helena World Chronicles v. Google*, 2026 WL 787882, at *13 & n.5 (D.D.C. Mar. 20, 2026), confirms that Yelp's theory of harm cannot be reconciled with the findings in *U.S. v. Google*. There, the plaintiff alleged that Google had tied a "type of search result" (Google's "AI Overview" unit) to "Google Search." *Id.* at *13. Judge Mehta dismissed the claim on the ground that "AI Overviews [are] an integrated feature of Search," and thus not a separate product from Google Search. *Id.* Citing to the findings of fact in *U.S. v. Google*, Judge Mehta further observed that Google Search encompasses all manner of result types, including "organic links, ads, vertical offerings, and AI Overviews":

> Even measured against legal standards, Google Search and AI Overviews are not separate products. To constitute two separate products, there must be sufficient consumer demand so that it is efficient for a firm to provide the products separately. . . . The inquiry turns not on the functional relation between them, but rather on the character of the demand for the two items. . . . In response to a given user query, Google's SERPs may deliver many types of results, including organic links, ads, vertical offerings, and AI Overviews. . . . It is hard to imagine consumer demand for one type of Google's search results as separate from consumer demand for Google Search as a whole; demand for Google Search is inclusive of the demand for AI Overviews and any other item on Google's SERPs. . . . If AI Overviews is a separate product from Google Search, then so is potentially every other type of search result Google delivers. Plaintiffs do little more than make the conclusory assertion that AI Overviews is a separate product from Google Search.

*Id.* at n.5 (cleaned up) (citing *Search Liability*, 747 F. Supp. 3d at 41–42 ¶¶ 41–45; *id.* at 52 ¶ 101; *Search Remedies*, 803 F. Supp. 3d at 45–47 ¶¶ 6–11). Yelp may disagree with Judge Mehta's definition of general search engines as constituting a single, unified product capable of answering

-9-

all manner of consumer demand for information, but it may not do so while simultaneously availing itself of rulings predicated on that definition.

*Second,* Yelp's allegation that Google's "local search service" competes directly with local SVPs contradicts Judge Mehta's finding that GSEs and SVPs are not substitutes but instead complementary services. *Search Liability*, 747 F. Supp. 3d at 115–16. In *U.S. v. Google*, Google sought to establish that any product market including GSEs must also include SVPs because users regularly substitute between the two. Judge Mehta rejected Google's argument. *Id.* at 115. While acknowledging that "SVPs can and do compete with GSEs for certain types of queries," Judge Mehta held that "Google and SVPs are complementary goods" rather than substitutes, and thus do not belong in the same product market. *Id.* at 60, 116.

Yelp, by contrast, posits that Google's "local search service" and Yelp *are* substitutes that "compete nationwide for customers." AC ¶ 80. Indeed, a core factual premise of Yelp's claims is that Google is "diverting traffic away from [] rivals [like Yelp] and toward Google's own inferior local search product." *Id.* ¶ 4. This theory undermines Judge Mehta's conclusion that GSEs— which in the court's view *includes* their "local search" function—and SVPs are mere complements, not substitutes. *Search Liability*, 747 F. Supp. 3d at 61. Any evidence Yelp submits regarding its substitutability with Google's "local search" could thus materially alter the calculus as to whether GSEs and SVPs belong in the same market. Again, Yelp is free to contend that Google offers a distinct "local search" product that is substitutable with local SVPs, but it cannot do so while benefitting from a decision at odds with that argument.

### B. Yelp's Tying Theory Mandates a *De Novo* Determination of Monopoly Power.

Because Yelp's relevant market theory conflicts with the "general search services market" defined in *U.S. v. Google*, it follows that Yelp also cannot invoke issue preclusion with regards to monopoly power in that market.

*First*, Yelp's theory undermines a central premise behind Judge Mehta's holding that Google possessed monopoly power, namely that, "*[m]easured by query volume*, Google enjoys an 89.2% share of the market for general search services, which increases to 94.9% on mobile

-10-

devices." *Search Liability*, 747 F. Supp. 3d at 119 (emphasis added). Yelp's definition of "general search" would require reassessment of Google's purported share of that market, as Judge Mehta's finding was predicated on an analysis of *all* types of queries, including vertical queries like local queries. *Id.* at 38, 119. Under Yelp's theory, however, general search would exclude vertical query categories such as local search; Yelp alleges that local search alone "accounts for roughly a third of all desktop search volume and over half of mobile search on Google." AC ¶ 8. For that reason, Yelp's theory would significantly alter the evidence presented regarding Google's market share in any general search services market.

*Second*, Yelp's separate products theory would require reassessment of Judge Mehta's conclusion that Google had the "the ability to degrade product quality without concern of losing consumers," another core justification for the court's finding of monopoly power. *Search Liability*, 747 F. Supp. 3d at 118. This finding was based on "quality degradation studies" conducted by Google that, according to Judge Mehta, showed that a reduction in "search quality" by Google "would not result in a significant loss of revenues." *Id.* at 57. However, there is no indication in Judge Mehta's findings that these studies were limited to the types of queries Yelp considers to be "general search" (i.e., searches that are not within a specific vertical), thus diminishing their evidentiary value in assessing whether Google can degrade its "general search service" product (as defined by Yelp) without a resulting loss of consumers or revenue.

## II.    The *U.S. v. Google* "Search Advertising" Findings Are Not Binding Here.

Judge Mehta's "search advertising" market findings are ineligible for issue preclusion for at least two independent reasons. *First*, because Judge Mehta ultimately ruled in Google's favor on the search advertising claim, the court's recognition of a relevant market for search advertising was not critical or necessary to its judgment. *Second*, the relevant market on which Judge Mehta made findings is not identical to any at issue in this litigation. Whether the *U.S. v. Google* "search advertising" market was properly defined for purposes of assessing the plaintiffs' claim that Google monopolized *that* market is irrelevant to Yelp's claim, for attempted monopolization of a "local search advertising market." Here, Yelp alleges that what it terms "local search advertising" has unique characteristics:

-11-

Local search advertising has peculiar characteristics and uses. Local search advertising allows advertisers to respond to user queries for specific types of businesses (e.g., restaurants or gyms), types of professionals and services (e.g., accountants, electricians, or auto repair), or locations for activities (e.g., parks or beaches) within a geographic area (e.g., a city, a neighborhood, or a zip code) relevant to the consumer. Because local search advertising responds to narrower and deeper user queries, and takes place on platforms that specialize in and provide in-depth information about local businesses and services, it uniquely reaches users with a high and specific commercial intent. In contrast, general search advertising responds to a wide breadth of queries and therefore is not as effective in reaching users with a high purchase intent.

AC ¶ 102. An important question in this litigation will be whether other forms of advertising, including what Yelp calls "general search" advertising, serve as effective substitutes for what Yelp defines as "local search" advertising. Judge Mehta's findings do not address that question (nor was that question litigated in *U.S. v. Google*), and Google is entitled to contest that issue here.

### A. The Search Advertising Market Finding Was Not Necessary to the Court's Holding.

Yelp's attempt to benefit from preclusion with respect to Judge Mehta's "search advertising" market must fail because Yelp cannot establish the third element of issue preclusion— that the determination of the issue be a "critical and necessary part of the judgment[.]" *Clark*, 966 F.2d at 1320. Judge Mehta ruled against the government on the claim involving an alleged "search advertising" market (Count II, for "maintaining monopoly of search advertising in violation of Sherman Act § 2"). *Search Liability*, 747 F. Supp. 3d at 188; *U.S. v. Google*, ECF 94 at 55 (Jan. 15, 2021). And although his judgment in favor of Google was premised upon a lack of monopoly power in a search advertising market, he noted that such a market was "underinclusive." *Search Liability*, 747 F. Supp. 3d at 132–33. Meanwhile, the advertising market for which Judge Mehta did find a Section 2 violation—"general search text advertising"—expressly *excludes* advertisements offered by SVPs like Yelp. *Id.* at 136–38 ("[T]ext ads are unique to GSE SERPs."). Under these circumstances, Yelp cannot possibly ask this Court to bar Google from contesting the existence of a search advertising market here, where Yelp alleges an even narrower market (local search advertising) than the one Judge Mehta recognized as being underinclusive.

-12-

GOOGLE'S OPPOSITION TO YELP'S MOTION FOR ISSUE PRECLUSION
Case No. 5:24-cv-06101-SVK

A unanimous Supreme Court in *Bobby v. Bies* confirmed that findings that do not support an actual judgment are not eligible for issue preclusion in a later case.  556 U.S. 825, 829, 835 (2009).  As the *Bobby* court put it, "[i]ssue preclusion . . . does not transform final judgment losers, in civil or criminal proceedings, into partially prevailing parties." *Id.* at 829.  Yelp therefore cannot transform the government's loss on a search advertising claim into a partial victory via issue preclusion, regardless of whether Judge Mehta "had to analyze" a search advertising market in order to find Google did not possess monopoly power therein. *See id.*; Mot. at 17.  Indeed, the *Bobby* court rejected that exact argument: there, the Supreme Court denied issue preclusion on a mental incapacity finding because it "cut against" the judgment, notwithstanding that prior courts had made that finding pursuant to a "mandatory duty" to weigh aggravating and mitigating circumstances.  *Bobby*, 556 U.S. at 835 (holding that a "determination ranks as necessary or essential only when the final outcome hinges on it").  That the prior appellate court had made "rigorous" and "sweeping" determinations that were "a necessary first step" of its analysis did not substitute for the necessity requirement. *See Bies v. Bagley*, 519 F.3d 324, 336–37 (6th Cir. 2008), *rev'd and remanded*, 556 U.S. 825 (2009).

Consistent with *Bobby v. Bies*, lower courts routinely deny issue preclusion where the issue did not result in a judgment against the defendant in the prior case. *See United States v. Arpaio*, 951 F.3d 1001, 1007 (9th Cir. 2020) (findings that "cut against [the judgment]" are "quintessentially the kinds of rulings not eligible for issue-preclusion treatment" (quoting *Bobby*, 556 U.S. at 835)); *King Drug Co. of Florence v. Abbott Lab'ys*, 2022 WL 866681, at *4 (E.D. Pa. Mar. 23, 2022) ("Thus, based on the Supreme Court's decision in *Bobby* and the Second Restatement, issue preclusion prevents a defendant from relitigating an issue only when there is a valid and final judgment against that defendant predicated on that issue."); *Argus Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589, 603 (S.D.N.Y. 1982) (denying issue preclusion on market definition and market power findings as "clearly not necessary and essential" to prior judgment in defendant's favor as to that claim); Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4421 (3d ed.) (cited in Mot. at 17) ("[F]indings that are contrary to the judgment in the sense that, standing alone, they would conduce to an opposite judgment . . . have long been accepted as paradigms of the

unnecessary conclusions that are not preclusive in later litigation."). *In re Google Digital Advertising* does not aid Yelp on this point, as there the plaintiffs did not request, and the court did not consider, preclusion on the "advertiser ad network" claim on which Google prevailed in the government action. *See* 2025 WL 3012840, at *3 & n.3; *United States v. Google LLC*, 778 F. Supp. 3d 797, 873 (E.D. Va. 2025) ("Count III (monopolization of the advertiser ad network market) will be dismissed[.]").

### B.  The Issues Are Not Identical Because the Markets Are Different.

Yelp also cannot establish the first element of issue preclusion, that "the issue at stake [is] identical to the one alleged in the prior litigation." *Clark*, 966 F.2d at 1320.

The search advertising market alleged in *U.S. v. Google* is not identical to any element of any claim asserted by Yelp. Rather, Yelp theorizes that its alleged local search advertising market is "wholly contained" within the search advertising market recognized by Judge Mehta in *U.S. v. Google* and "bear[s] many of the same features" as that search advertising market. Mot. at 12. From that premise, Yelp argues that preclusion would give it a "steppingstone for Yelp's proof of a submarket" for local search advertising. *Id.*[3] That is legally insufficient to invoke issue preclusion.

The *Visa* court rejected the "steppingstone" approach Yelp advances here. There, the movants sought to establish a relevant market via issue preclusion, arguing "it can derive" from a broader relevant market two narrower relevant markets based on "core functions" that the narrower markets allegedly shared with the broader market. *Visa*, 369 F. Supp. 2d at 124–25. The court denied issue preclusion, reasoning that it "was unable to determine from the record before it" whether the alleged relevant markets "could be carved out" from the broader market. *Id.* at 1125. In addition to denying preclusion based on that "failure of proof," the court noted movants offered no authority "that collateral estoppel is appropriate where the antitrust markets are 'parallel' but not identical, or where a party seeks to establish a general product market *and then carve out the relevant market* from that general market." *Id.* (emphasis added). Just as "[r]unners are not

---

[3] Yelp does not allege a broader search advertising market as an *alternative* market definition underlying its claims.

permitted to begin marathons at mile 20," the court concluded, litigants are not "allowed to invoke" issue preclusion "where the issues are parallel to findings in previous cases to ease their burden at trial." *Id.* at 1126; *see also Pool Water Prods. v. Olin Corp.*, 258 F.3d 1024, 1032 (9th Cir. 2001) (denying issue preclusion where plaintiffs' market definition differed from the markets in the preceding government action).

Here, Judge Mehta did not make any findings regarding "local" search advertising, or acknowledge any "features" shared between an alleged search advertising market and a local search advertising market. The only discussion of "local ads" in Judge Mehta's opinion occurs in the context of describing the types of advertisements that appear on general search engines. *Search Liability*, 747 F. Supp. 3d at 63 (including "local ads" in a listing of "[o]ther types of ads that appear on" general search engines).

Contrary to Yelp's argument, there is no "substantial overlap between the evidence or argument to be advanced in the second proceeding and that advanced in the first"; "pretrial preparation and discovery related to the matter presented in the first action [was not] reasonably [] expected to have embraced the matter sought to presented in the second," and the claims involved "in the two proceedings" are not closely related. Restatement (Second) of Judgments § 27 cmt. c (Am. Law Inst. 1982) (cited in Mot. at 9–10). Whether offline advertising and forms of digital advertising beyond search advertising (such as advertising on social media and third-party websites and mobile apps) function as effective substitutes when it comes to advertising by *local* businesses and services is a different question than whether those forms of advertising function as effective substitutes across *all* categories of products and services (as was at issue in *U.S. v. Google*). And it is far from certain that the court would have reached the same conclusion had the inquiry been focused specifically on local search advertising and what local businesses view as substitutes. Indeed, Judge Mehta recognized that the effectiveness of advertising on social media as a substitute for search advertising varies across query categories. *Search Liability*, 747 F. Supp. 3d at 128 ("To be sure, there are some products for which social media ads are particularly effective at driving conversions (e.g., cosmetics and apparel), but there are large categories of products and services for which social media advertising is far less compelling (e.g., financial services).").

-15-

Limiting Google's ability to challenge Yelp's proposed market at this early stage would materially hamstring Google's defense.  Yelp's own investor presentations reporting "local advertising" revenue in the United States *include* "traditional" (offline) advertising, as well as forms of digital media beyond search advertising.  Ex. A, Investor Presentation, Feb. 2022 at 13 (available at https://s24.q4cdn.com/521204325/files/doc_presentations/Yelp-Investor-Presentation-Feb-2022.pdf) (describing "U.S. local advertising spend" as $147 billion in 2021, divided between traditional media ($73 billion) and digital advertising ($74 billion)).  Yet Yelp's proposed relevant market *excludes* much of that "local advertising" spend, including many of the ad types that Yelp itself offers.  *Id.* at 15 (identifying 19 ad products).  Google should be entitled to introduce evidence that advertising products that Yelp carves out of its proposed market for purposes of this lawsuit (but includes in its own business documents) serve as reasonable substitutes for one another.  That Yelp styles its proposed "local search advertising" market as a "submarket," Mot. at 7, does not justify a different result and serves only to confuse the inquiry.  *See Allen-Myland, Inc. v. International Business Machines Corp.*, 33 F.3d 194 (3d Cir. 1994) ("The use of the term "submarket" is somewhat confusing, and tends to obscure the true inquiry[.]").

### III.    The Court Should Deny Issue Preclusion for Additional, Independent Reasons.

Where a party seeks offensive non-mutual issue preclusion, the "traditional elements are necessary but not sufficient, because the use of offensive non-mutual issue preclusion raises additional policy concerns."  *Pooshs v. Philip Morris USA, Inc.*, 904 F. Supp. 2d 1009, 1034 (N.D. Cal. 2012).  Indeed, courts need not even reach the traditional elements if "equitable considerations decisively weigh against [a] motion for collateral estoppel."  *In re Blue Cross Blue Shield Antitrust Litig. (MDL No. 2406)*, 2018 WL 1796257, at *3–5 (N.D. Ala. Apr. 16, 2018).  Here, equitable considerations are an independent reason to deny Yelp's motion.

#### A.    Applying the *U.S. v. Google* Findings Here Would Be Unfair Given that Yelp's Theories Conflict with Judge Mehta's Market-Definition and Market-Power Rulings.

It would be inequitable to allow Yelp to benefit from the prior ruling while simultaneously advancing new market definitions that Google has no chance to rebut.  With respect to the "general

-16-

search services" market, Yelp asks the Court to bind Google to a market definition that presupposes a single, unified product, while simultaneously allowing Yelp to proceed on a claim that rejects that factual premise. *Supra* Part I.A. With respect to the "search advertising" market, Yelp asks the Court to ignore Judge Mehta's recognition that social media advertising could constitute a substitute for search advertising in certain categories of query categories. *Supra* Part II.B. Where, as here, there is "tension between the Plaintiffs' theory in this case versus the theories successfully argued by the plaintiffs in the earlier [] cases," it would be "inequitable" to grant issue preclusion as to those earlier theories. *Morelock Enters., Inc. v. Weyerhaeuser Co.*, 2005 WL 4158121, at *3 (D. Or. Jan. 6, 2005).

The *Morelock* decision is instructive. There, like here, the plaintiff sought issue preclusion as to the defendant's monopoly power in Market A, even though the plaintiff had not alleged that it suffered harm in Market A. *Id.* at *2 ("Plaintiffs are not sawmills competing with Weyerhaeuser[.]"). And there, like here, the plaintiff intended to use that ruling to support a distinct theory of harm in Market B. *Id.* ("Plaintiff's claim alleges Weyerhaeuser's misuse of its control of sawlogs only as a means to monopolize the market for alder lumber." (citation omitted)). Because the Plaintiff had alleged "seemingly contrast[ing]" facts in support of its theory of harm as to Market B, the court concluded that it would be unfair to "let the [] Plaintiffs do so, while benefitting from the preclusive effect of the verdict in those earlier cases." *Id.* at *3. In so ruling, the court recognized that granting issue preclusion under these circumstances "would permit the [p]laintiffs to bootstrap a potentially inconsistent theory on top of the earlier verdicts." *Id.*

That is exactly what Yelp wants to achieve here: to benefit from the *U.S. v. Google* rulings while simultaneously advancing theories that are inconsistent with those same rulings. *Supra* Parts I.A & II.B. Yelp's proposed order highlights the inherent prejudice that follows from its request. ECF 91-1. By strategically omitting findings identified above—which demonstrate that the *U.S. v. Google* markets are fundamentally different from the markets alleged by Yelp—Yelp presents a misleading record.

Not only would this be inequitable, it also risks significant juror confusion because the evidentiary record would contain inconsistent and conflicting theories of market definition,

-17-

monopoly power, and anticompetitive harm. For instance, Yelp will be required to present evidence that "[t]he general search services market and the local search services market are separate and distinct markets, with separate and distinct products and services," AC ¶ 228, evidence that cannot be reconciled with the "general search services" market defined by Judge Mehta. Jurors should not be forced to navigate these inconsistencies.

Yelp's sweeping proposed order, wherein Yelp seeks findings "including but not limited to" its own excerpts, ECF 91-1, at 1, would only add to the confusion. A vague request of this nature is fatal to Yelp's motion. *Pool Water Prods.*, 258 F.3d at 1033 ("Neither the district court nor the defendant is required to engage in a 'hunt and peck' exercise to ferret out potentially relevant and necessary findings."); *Grisham v. Philip Morris, Inc.*, 670 F. Supp. 2d 1014, 1031 (C.D. Cal. 2009) (moving party bears burden to identify specific facts and establish they meet every legal requirement for preclusive effect).

**B.     Yelp Cannot Obtain Issue Preclusion for the Full Time Period at Issue, and So Any Minimal Efficiency Gain Is Outweighed by the High Likelihood of Jury Confusion and Prejudice.**

Courts reject issue preclusion where "there would be minimal efficiency gains and a substantial likelihood of jury confusion and prejudice." *Grisham*, 670 F. Supp. 2d at 1037; *see also Whelan v. Abell*, 953 F.2d 663, 669 (D.C. Cir. 1992) (declining to apply issue preclusion where the lower court assessed "the prospect of skewing or distorting the jury's judgment" and preclusion "might have given [plaintiffs] a head start larger than warranted in the jury's deliberations"); *Discover Fin. Servs. v. Visa U.S.A. Inc.*, 2008 WL 11516437, at *2 (S.D.N.Y. Oct. 1, 2008) (reversing a preclusion ruling on reconsideration because "the possibility of juror confusion outweigh[ed] any interest one could gain from the collateral estoppel ruling"). Here, there would only be minimal efficiency gains because market definition and market power in Yelp's alleged general search services relevant market and its alleged local advertising relevant market will be a key focus of discovery and trial regardless of how the Court resolves this motion. The significant risk of jury confusion and prejudice outweighs any potential benefit.

As Yelp acknowledges, Mot. at 12, even were the Court to grant its motion as to a "search advertising" market, Yelp will still need to prove that *local* search advertising is a relevant market

-18-

and that Google has a "dangerous probability" of achieving monopoly power in that market. In addition, as to both the *U.S. v. Google* general search services and search advertising markets, Yelp cannot extend Judge Mehta's findings beyond the time of the liability trial in fall 2023. Contrary to Yelp's argument that issue preclusion could somehow apply for the entire time period at issue here, relevant market and monopoly power questions are not identical where different time periods are at issue. *Pool Water Prods.*, 258 F.3d at 1032 (denying preclusion where "the time period at issue here is different from the period at issue in the [prior] proceeding"); *Int'l Shoe Mach. Corp. v. United Shoe Mach. Corp.*, 315 F.2d 449, 456 (1st Cir. 1963) (noting findings "plainly c[an] not reflect a competitive situation subsequent to [the date evidence closed], else they would be grounded on speculation and not evidence" and denying estoppel on decree and findings in government antitrust case where plaintiff alleged antitrust violations occurring after the close of evidence); *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 553 F. Supp. 962, 966 (N.D. Ill. 1982) (holding that "[b]ecause [the prior case's] findings relevant here are focused on the 1970–71 period, any collateral estoppel effect must be so limited"); *Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 1119822, at *5 (D. Or. May 19, 2004) (applying issue preclusion as to antitrust claims decided in 2001, but holding that plaintiff would nonetheless have to "prove all elements of its monopolization claim for 2002"); *see also Fed. Trade Comm'n v. Meta Platforms, Inc.*, 811 F. Supp. 3d 67, 97 (D.D.C. 2025) (declining to find a relevant market for personal social networking as of 2025 even though such apps "may have been a market unto themselves when the FTC filed this case in 2020").

Judge Mehta's comment in his 2025 remedies decision that Google "is still the dominant firm in the relevant product markets" does not rescue Yelp from its burden of proof. Mot. at 4, 11. Yelp omits the very next sentences from Judge Mehta's opinion: "But artificial intelligence technologies, particularly generative AI ("GenAI"), may yet prove to be game changers. Today, tens of millions of people use GenAI chatbots, like ChatGPT, Perplexity, and Claude, to gather information that they previously sought through internet search. These GenAI chatbots are not yet close to replacing GSEs, but the industry expects that developers will continue to add features to GenAI products to perform more like GSEs." *Search Remedies*, 803 F. Supp. 3d at 36.

GOOGLE'S OPPOSITION TO YELP'S MOTION FOR ISSUE PRECLUSION
Case No. 5:24-cv-06101-SVK

Because Yelp seeks damages from 2016 through 2028 as well as injunctive relief, Yelp will need to prove a "general search services" relevant market and Google's monopoly power therein as of trial in 2028. Given the "shifting[] competitive landscape" now being transformed by generative AI, *id.* at 91, the jury will have to grapple with whether there is a relevant "general search" market and whether any such market must also include chatbots and other generative AI products, a category which was in embryonic form at the time of Judge Mehta's liability decision in *U.S. v. Google*. As the below chronology reflects, GenAI chatbots were not even launched when discovery closed in *U.S. v. Google*, and all signs point to this pace of change only continuing to accelerate between today and trial scheduled for two years from now.

| DATE | RELEVANT EVENT | SOURCE |
|---|---|---|
| May 2022 | Fact discovery closes in *U.S. v. Google* | *U.S. v. Google*, ECF No. 263 (Dec. 6, 2021) |
| November 2022 | Expert discovery closes in *U.S. v. Google* | *U.S. v. Google*, ECF No. 263 (Dec. 6, 2021) |
| November 2022 | ChatGPT launches to general public | Ex. B, *Introducing ChatGPT*, https://openai.com/index/chatgpt/ |
| March 2023 | Anthropic launches Claude to general public | Ex. C, *Introducing Claude*, https://www.anthropic.com/news/introducing-claude |
| September – November 2023 | Liability trial in *U.S. v. Google* | *U.S. v. Google*, Minute Entry (Nov. 16, 2023) |
| February 2024 | Yelp adds ChatGPT to competitor list in its Form 10-K | Ex. D, Excerpt of Yelp Inc.'s Form 10-K, https://www.yelp-ir.com/financials/sec-filings/sec-filings-details/default.aspx?FilingId=17314731 |
| October 2024 | ChatGPT "search" launches | Ex. E, *Introducing ChatGPT Search*, https://openai.com/index/introducing-chatgpt-search/ |
| April – May 2025 | Remedies trial in *U.S. v. Google* | *U.S. v. Google*, Minute Entry (May 9, 2025) |

GOOGLE'S OPPOSITION TO YELP'S MOTION FOR ISSUE PRECLUSION
Case No. 5:24-cv-06101-SVK

| May 2025 | Anthropic launches Claude capabilities for web search | Ex. F, *Introducing web search on the Anthropic API*, https://claude.com/blog/web-search-api |
| February 2026 | OpenAI announces more than 900 million weekly active users for ChatGPT | Ex. G, *Scaling AI for everyone*, https://openai.com/index/scaling-ai-for-everyone/ |
| April 2026 | Yelp launches AI-powered chatbot; cites survey that "[m]ore than half of respondents (57%) use AI tools to find local businesses at least once a month" | Ex, H, *Americans Use AI But Don't Trust It. That's a Problem Worth Solving.*, https://blog.yelp.com/news/americans-use-ai-but-dont-trust-it-thats-a-problem-worth-solving/. |
| May 2028 | Trial date in *Yelp v. Google* | *Yelp Inc. v. Google LLC*, ECF No. 73 (Dec. 11, 2025) |

Given the jury will have to decide whether general search services is a relevant market and whether Google had monopoly power in that market between 2023 and 2028, issue preclusion will not meaningfully preserve the parties' or the Court's resources.  Moreover, preclusion would mislead the jury.  The jury would be instructed about relevant market and market power for only part of the relevant time period, but simultaneously need to reach its own independent conclusions for the rest of the period at issue.  As explained above, *supra* Parts I.A & III.B, the jury would also face the daunting task of navigating inconsistent and conflicting theories of market definition, monopoly power, and harm.  *See Comes v. Microsoft Corp.*, 709 N.W.2d 114, 120 (Iowa 2006) ("[A] long list of isolated findings could confuse or mislead the jury.").  Antitrust trials are already complex enough; preclusion under these circumstances would make it all but impossible for a jury to render a fair and error-free judgment.

### C.    Yelp's Motion Is Premature Given Google's Pending Appeal.

The Court should also deny Yelp's motion because Google has appealed the final judgment in *U.S. v. Google*.  Although "a final judgment retains all of its res judicata consequences pending decision of the appeal," *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988) (citation omitted), it "would be unfair" under the present circumstances to give "preclusive effect to such a significant set of antitrust issues during the pendency of a merits appeal of the first-decided action," *In re:*

-21-

*Am. Express Anti-Steering Rules Antitrust Litig.*, 2016 WL 748089, at *6 (E.D.N.Y. Jan. 7, 2016) (denying motion to apply issue preclusion "with leave to renew the application following the Second Circuit's decision in the Government Action"). For all of the reasons above, issue preclusion should not apply here regardless of the outcome of the appeal. But granting Yelp's request now risks having to reopen discovery: if Google prevails in its appeal, there can be no preclusion, and any avoided discovery would have to be conducted. In light of the fact that the parties must take much of this discovery now anyway, the efficient and practical solution is to proceed through full discovery now, rather than piecemeal.

None of Yelp's exemplar cases supports its request for a ruling on preclusion while an appeal is pending, and the parties are still in the midst of discovery. In those follow-on litigations, the moving party sought issue preclusion only after the close of discovery in the later case, *In re Google Digital Advertising*, 2025 WL 3012840, at *2, or after the resolution of the appeal in the prior case, *see Discover Fin. Servs.*, 598 F. Supp. 2d at 397 (issue preclusion sought after the appellate court ruled); *Namenda*, 2017 WL 4358244, at *8 (same); *Univac Dental Co.*, 702 F. Supp. 2d at 475–76 (same).

### D. The Absence of a Jury Trial in *U.S. v. Google* Weighs Against Applying Issue Preclusion Here.

Issue preclusion also would be unfair because Google had no right to a jury trial in *U.S. v. Google* whereas Yelp has demanded a jury trial. While *Parklane* does not bar courts from giving preclusive effect to bench trial findings in a later jury trial, "the better view of *Parklane* is that courts . . . may consider the absence of a jury trial as a *non-dispositive* factor when balancing the equities of issue preclusion." *Grisham*, 670 F. Supp. 2d at 1037. Many courts, including in this District, have declined to apply issue preclusion where, as here, the decision in an earlier government enforcement action "was reached through a bench trial" while the defendant is "entitled to a jury trial in the pending action." *In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F. Supp. 2d 239, 251 (D. Me. 2010); *see Pooshs*, 904 F. Supp. 2d at 1034 (refusing to give "preclusive effect to findings" from a bench trial in a government enforcement action that "provided only equitable relief"); *Grisham*, 670 F. Supp. 2d at 1037 ("The Court is wary of

-22-

depriving Defendants of their Seventh Amendment interest in having a jury decide the factual basis for Plaintiff's claim."); *Whelan*, 953 F.2d at 669 (D.C. Cir. 1992) (declining to preclude litigation of issues purportedly determined in an earlier bench trial where the plaintiff in the second case demanded a jury trial).  The Court should exercise its discretion to deny issue preclusion so as to preserve Google's Seventh Amendment right to a jury trial in this matter.

## CONCLUSION

For the foregoing reasons, Google respectfully requests that the Court deny Yelp's Motion for Issue Preclusion and Partial Summary Judgment.

DATED: May 13, 2026

By: */s/ John E. Schmidtlein*
John E. Schmidtlein
Colette T. Connor (*pro hac vice*)
Gloria Maier (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Tel: 202-434-5000
jschmidtlein@wc.com
cconnor@wc.com
gmaier@wc.com

Amit Gressel
WILSON SONSINI GOODRICH & ROSATI P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105-1126
Tel: 415-947-2087
agressel@wsgr.com

Franklin M. Rubinstein (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI P.C.
1700 K Street NW
Washington, DC 20006
Tel: 202-973-8800
frubinstein@wsgr.com

*Attorneys for Defendant Google LLC*

GOOGLE'S OPPOSITION TO YELP'S MOTION FOR ISSUE PRECLUSION
Case No. 5:24-cv-06101-SVK