Sathya Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
Ian Engdahl (*pro hac vice*)
Jeremy Silas (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:  sgosselin@hausfeld.com
    sbojedla@hausfeld.com
    iengdahl@hausfeld.com
    jsilas@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

[*Additional counsel listed on signature page*]

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| YELP INC., | Case No. 5:24-cv-06101-SVK |
| Plaintiff, | **PLAINTIFF YELP'S REPLY IN SUPPORT OF ITS MOTION FOR ISSUE PRECLUSION AND PARTIAL SUMMARY JUDGMENT** |
| v. | |
| GOOGLE LLC, | Date: June 9, 2026 |
| Defendant. | Time: 10 a.m. |
| | Place: Courtroom 6, 4th Floor |
| | Judge: Magistrate Judge Susan van Keulen |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 1

 I. The General Search Services Market Is Identical. ..................................................... 1

 II. Google's Monopoly Power in General Search Services Is Identical. ...................................... 5

 III. Judge Mehta's Search Advertising Market Determination Was Necessary to Decide the Merits. .......................................................................................................................... 6

 IV. The Search Advertising Market is Identical Across Actions. ................................................ 10

 V. Google's Speculation About Future Market Changes Does Not Undermine Preclusion for the Period Judge Mehta Already Adjudicated. .................................................................... 12

 VI. A Pending Appeal Does Not Hinder Issue Preclusion. ............................................................. 13

 VII. The Seventh Amendment Poses No Barrier Here. ................................................................... 15

CONCLUSION ..................................................................................................................... 16

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AIA Am., Inc. v. Eli Lilly & Co.*,
  695 F. App'x 573 (Fed. Cir. 2017) ........................................................................................ 14

*Alzheimer's Inst. of Am. v. Eli Lilly & Co.*,
  128 F. Supp. 3d 1249 (N.D. Cal. 2015) ................................................................................. 13

*Argus Inc. v. Eastman Kodak Co.*,
  552 F. Supp. 589 (S.D.N.Y. 1982) ......................................................................................... 9

*Bobby v. Bies*,
  556 U.S. 825 (2009) ................................................................................................................ 7

*Collins v. D.R. Horton, Inc.*,
  505 F.3d 874 (9th Cir. 2007) ................................................................................................. 13

*Droplets, Inc. v. Yahoo! Inc.*,
  2019 WL 5781915 (N.D. Cal. Oct. 15, 2019) ......................................................................... 9

*Epic Games, Inc. v. Apple Inc.*,
  559 F. Supp. 3d 898 (N.D. Cal. 2021) ..................................................................................... 8

*Epic Games, Inc. v. Apple, Inc.*,
  67 F.4th 946 (9th Cir. 2023) .................................................................................................... 4

*Epic Games Inc. v. Google*,
  No. 3:20-cv-05671-JD (N.D. Cal.) ........................................................................................ 11

*GAF Corp. v. Eastman Kodak Co.*,
  519 F. Supp. 1203 (S.D.N.Y. 1981) .................................................................................. 8, 12

*In re Google Digital Advert. Antitrust Litig.*,
  2025 WL 3012840 (S.D.N.Y. Oct. 27, 2025) .................................................... 8, 11, 12, 14, 15

*In re Google Play Store Antitrust Litig.*,
  147 F.4th 917 (9th Cir. 2025) .............................................................................................. 5, 8

*In re Google Play Store Antitrust Litigation*,
  No. 3:21-md-02981 (N.D. Cal.) ............................................................................................... 5

*Grisham v. Philip Morris, Inc.*,
  670 F. Supp. 2d 1014 (C.D. Cal. 2009) ................................................................................. 15

YELP'S REPLY IN SUPPORT OF ITS MOTION FOR ISSUE
PRECLUSION AND PARTIAL SUMMARY JUDGMENT

5:24-cv-06101-SVK

*Helena World Chronicle v. Google,*
   2026 WL 787882 (D.D.C. Mar. 20, 2026) ................................................................................2

*International Shoe Machine Corp. v. United Shoe Machinery Corp.,*
   315 F.2d 449 (1st Cir. 1963) ...................................................................................................13

*King Drug Co. of Florence v. Abbott Lab'ys,*
   2022 WL 866681 (E.D. Pa. Mar. 23, 2022) ..............................................................................9

*KlausTech LLC v. Google LLC,*
   2021 WL 5414328 (N.D. Cal. Mar. 9, 2021) .......................................................................9, 10

*In re Light Cigarettes Marketing Sales Practices Litigation,*
   691 F. Supp. 2d 239 (D. Me. 2010)..........................................................................................15

*McNeil v. National Football League,*
   790 F. Supp. 871 (D. Minn. 1992) .............................................................................................8

*Morelock Enterprises, Inc. v. Weyerhaeuser Co.,*
   2005 WL 4158121 (D. Or. Jan. 6, 2005).....................................................................................5

*Murray v. Alaska Airlines, Inc.,*
   400 F. App'x 233 (9th Cir. 2010)..............................................................................................15

*Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.,*
   553 F. Supp. 962 (N.D. Ill. 1982).......................................................................................12, 13

*Pool Water Products v. Olin Corp.,*
   258 F.3d 1024 (9th Cir. 2001).............................................................................................10, 13

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.,*
   751 F. Supp. 3d 381 (D. Del. 2024) ...........................................................................................3

*Tripati v. Henman,*
   857 F.2d 1366 (9th Cir. 1988)...................................................................................................14

*U.S. v. Microsoft Corp.,*
   253 F.3d 34 (D.C. Cir. 2001).................................................................................................3, 4

*United States v. Arpaio,*
   951 F.3d 1001 (9th Cir. 2020)................................................................................................7, 9

*United States v. Cathcart,*
   2008 WL 4279716 (N.D. Cal. Sept. 12, 2008).........................................................................15

*United States v. Google LLC,*
   687 F. Supp. 3d 48 (D.D.C. 2023)..............................................................................................4

YELP'S REPLY IN SUPPORT OF ITS MOTION FOR ISSUE
PRECLUSION AND PARTIAL SUMMARY JUDGMENT

5:24-cv-06101-SVK

*United States v. Google LLC,*
    747 F. Supp. 3d 1 (D.D.C. 2024).................................................................. 1, 3, 6, 10, 12, 14

*United States v. Johnson,*
    256 F.3d 895 (9th Cir. 2001) ........................................................................................ 7, 9

*United States v. Philip Morris USA Inc.,*
    449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part, vacated in part,* 566 F.3d 1095
    (D.C. Cir. 2009) .............................................................................................................. 15

*Washington Alder LLC v. Weyerhaeuser Co.,*
    2004 WL 1119822 (D. Or. May 19, 2004) ................................................................... 13

*Westwood Lumber Co. v. Weyerhaeuser Co.,*
    2003 WL 24892052 (D. Or. Dec. 29, 2003) ................................................................. 13

**INTRODUCTION**

This remains a textbook application of issue preclusion. Judge Mehta resolved the questions of market definition and monopoly power after exhaustive proceedings—years of discovery, a nine-week bench trial, and hundreds of pages of findings. Nothing in Google's opposition changes the calculus. Instead, it fabricates tension between Judge Mehta's conclusions and Yelp's allegations; misconstrues Ninth Circuit caselaw on the tenets of issue preclusion; and insists, preposterously, that it would be more efficient to relitigate the pillars of *U.S. v. Google* again here (months after final judgment) than to respect Judge Mehta's careful determinations after years of litigation and trial. Along the way, Google quietly concedes that these issues were actually litigated and determined, Google had a full and fair opportunity to litigate these issues, and at least two out of the three issues were necessary to decide the merits. Notably, too, Google barely mentions its recent issue-preclusion loss under nearly identical circumstances before Judge Castel—or engages with this Court's recognition of an overlapping, "identical" antitrust market and the strong congressional intent encouraging "Yelp to take the fruits of the Government suit (proof of monopoly in the general search services market) and use it as an element in Yelp's suit (market power in the tying product market)." Order on Mot. to Dismiss at 11-12, Dkt. 58. This Court should not hesitate to grant issue preclusion.

**ARGUMENT**

**I.    The General Search Services Market Is Identical.**

Judge Mehta's market definition could not be clearer: "general search services is a relevant product market and alternative sources for query information, like SVPs and social media sites, are not adequate substitutes." *United States v. Google LLC*, 747 F. Supp. 3d 1, 109-110 (D.D.C. 2024) ("*Search*"). That is the same market Yelp alleges, and it is the same market this Court has already recognized as identical across both cases. Google does not and cannot identify any difference in how Yelp defines general search services. Instead, Google rewrites Judge Mehta's conclusions of law to suggest that Judge Mehta somehow *included* in the market for general search services "local search and [all] other forms of vertical search." Opp. at 6. Google confuses Judge Mehta's observations about what is indisputably found on the SERP—a "mixture of advertisements, organic links, and vertical

- 1 -

offerings," *id*. at 41—with Judge Mehta's more specific relevant market: again, "general search services is a relevant product market and alternative sources for query information, like SVPs and social media sites, are not adequate substitutes." *Id.* at 109-10 ("Unlike [SVPs and social media sites], GSEs are a gateway to the World Wide Web."). "The product delivered to consumers on a GSE differs significantly from what is produced by an SVP. When a user enters a query into Google or Bing, the result is a search engine results page, or SERP, which contains organic links that enable the user to navigate to other websites." *Id.* at 110. Consistent with this market delineation and contrary to Google's proposal, "SVPs do not view themselves as competing with *general search*, although they may compete with GSEs' *vertical offerings*." *Id*. at 61 (emphases added).

Google overreaches in its interpretation of Judge Mehta's relevant market as somehow "constituting a single, unified product capable of answering all manner of consumer demand for information." Opp. at 9-10. Google lost that fight at trial. *Id*. at 113-17 (rejecting Google's proposed relevant market in which market actors, including SVPs, compete "whenever a person seeks information online," for any purpose). Judge Mehta never held that vertical offerings appearing on the SERP compete in the general search services market, *id.* at 114, and rightly so. Google's contrary "unified product" position would immunize tying whenever a monopolist adds the tied product into the interface through which the tying product is delivered (*i.e*., the SERP).

This Court has likewise confirmed that the general search services market alleged by Yelp and proven in *Search* are one and the same, an "overlapping . . . identical antitrust market that serves as the basis, if not the alleged harmed market, for Yelp's tying claim." Order on Mot. to Dismiss at 11-12, Dkt. 58. In doing so, this Court has encouraged "Yelp to take the fruits of the Government suit (proof of monopoly in the general search services market) and use it as an element in Yelp's suit (market power in the tying product market)" given the Supreme Court's guidance on tolling. *Id*. at 12.

*Helena World Chronicle v. Google*, 2026 WL 787882, at *13 & n.5 (D.D.C. Mar. 20, 2026), which did not analyze consumer demand for vertical offerings, sheds no new light on this analysis. At the pleading stage, and unlike here, the *Helena World Chronicle* plaintiffs' allegations pointed to "AI Overviews as an integrated feature of Search," *id*. at *13, and Judge Mehta held the plaintiffs had not

- 2 -

adequately alleged separate products, with separate demand, for tying purposes—identifying only allegations of overall demand for Google's search features. *Id*. ("What Plaintiffs describe is not the buying of two separate products, but rather a single exchange"). Those unique pleading deficiencies cannot transform Judge Mehta's findings of fact and conclusions of law elsewhere, especially as this Court has already held that Yelp has adequately alleged separate demand. Order on Mot. to Dismiss at 22-24, Dkt. 47; *see also* Pl's Opp. Mot. to Dismiss at 20-21, Dkt. 30.

Google's arguments about "complementary goods" also ignores context and the boundaries of Judge Mehta's relevant-market analysis in *Search*. In observing that "GSEs and SVPs are complementary goods," Judge Mehta was evaluating (and *rejecting*) "Google's contention that users view the two as true substitutes" *for general search services*. *Search*, 747 F. Supp. 3d at 60, 115-16. Judge Mehta did not hold that Google can *never* compete with SVPs outside of the general search services market. Rather, Judge Mehta recognized that "SVPs can and do compete with GSEs for certain types of queries," as a "supplement" to the general search services market, *id*. at 116, which is entirely consistent with Yelp's allegations of a separate local search services market. Judge Mehta was concerned with the use at hand: "The fact that GSEs may compete for travel queries against Booking.com, shopping queries against Amazon, and *local queries against Yelp* does not mean that firms that specialize in certain verticals belong in the same [general search services] product market as GSEs." *Id.* at 114 (emphasis added); *see also id.* at 61 ("SVPs do not view themselves as competing with general search, although they may compete with GSEs' vertical offerings.").

Google's real quarrel with issue preclusion is not about market definition, but whether general search and local search can be separate products for tying purposes. *See* Opp. at 8-9. The separate-products question is different from market definition, as Google has conceded. Google's Mot. to Dismiss at 16, Dkt. 24; *see also U.S. v. Microsoft Corp*., 253 F.3d 34, 96 (D.C. Cir. 2001); *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc*., 751 F. Supp. 3d 381, 386 (D. Del. 2024). And, even on its own terms, Google's argument that there can be no separate products because general search results "encompass all results . . . including for local search results," Opp. at 8, merely reprises an argument this Court already rejected—and for good reason. Order on Mot. to Dismiss at 23, Dkt. 47; *see also*

- 3 -

Pl's Opp. Mot. to Dismiss at 20-21, Dkt. 30. As this Court recognized, whether there are separate products does not turn on whether *Google* chooses to offer them separately; it turns on the objective consumer-demand test, which asks whether there is "sufficient consumer demand so that it is efficient for a firm to provide the products separately." *Id.* at 23 (citing *Epic Games, Inc. v. Apple, Inc.*, 67 F.4th 946, 995 (9th Cir. 2023)) (internal quotation omitted).

Google's contrary view is circular: Google claims there can be no tie because the products are not separate, and they are not separate because Google offers them together. If a firm could defeat a tying claim by asserting there is just one unified product, the separate-products test would vanish. The Ninth Circuit has rejected this approach, explaining in *Epic Games v. Apple* that the district court erred in concluding that in-app payment processing "was not separate from app distribution" merely because the feature was "'integrated into . . . iOS devices,'" as the Supreme Court "expressly rejects an approach to the separate-products inquiry based on the 'functional relation' between two purported products." 67 F.4th 946, 996 (9th Cir. 2023); *see also Microsoft,* 253 F.3d at 85-95 (applying separate-products test to Microsoft's claim that Windows and its browser is "an integrated physical product"). To use another example, just because a car manufacturer sells cars with tires does not mean tires could never be distinct products belonging to a separate product market.

As this Court has recognized, Yelp has sufficiently alleged distinct products, Order on Mot. to Dismiss at 22-24, Dkt. 47, consistent with Judge Mehta's liability determinations and even his earlier opinion on summary judgment in *Search*. In the lead up to trial, *e.g.*, Judge Mehta recognized as "largely undisputed" that SVPs like Yelp "provide search results in a limited number of commercial segments that serve a common group of customers," differentiated from general search engines by their "much narrower commercial focus." *United States v. Google LLC*, 687 F. Supp. 3d 48, 61 (D.D.C. 2023). Judge Mehta further documented that Google built separate "universals" for local services, hotels, and flights, distinct from Google's organic search results. *Id.* at 62 (noting that "SVPs cannot appear in results in the free listings in Google's hotel universal, flights universal, or in the local universal triggered by searches for nearby businesses"). Google's own conduct thus recognizes local

- 4 -

search as a distinct product, further complementing the separate consumer-demand allegations here that were absent in *Helena World Chronicle*.

Google has identified no reason Yelp's tying theory requires a different market definition, and its cited cases only emphasize this failure. In *In re Google Play Store Antitrust Litig.*, 147 F.4th 917, 935-36 (9th Cir. 2025), for example, the plaintiff's theory of harm turned on whether developers are locked into an ecosystem. Whether an ecosystem is "open distribution" (in Google's case) or a "walled garden" (in Apple's case) bore directly on market definition, leading the Ninth Circuit to deny issue preclusion on market definition in a case about one ecosystem based on a case about another. Google identifies no comparable difference here. Nor do its other cases, distinguishable on their facts, hold that a different theory of competitive harm forecloses preclusion on market definition. *Visa v. First Data Corp* simply found the proposed markets too vague to assess preclusion, 369 F. Supp. 2d 1121, 1125 (N.D. Cal. 2005); and *Morelock Enterprises, Inc. v. Weyerhaeuser Co.*, 2005 WL 4158121, at *3 (D. Or. Jan. 6, 2005), denied preclusion on market definition where time savings in retrying the issue were "minimal" and denied preclusion on anticompetitive harm where there was a true incompatibility in the theories (*i.e.*, allegations of harm from high prices compared to declining or flat prices in the prior case). As Google has admitted elsewhere in the Ninth Circuit, "preclusion does not require that *all* issues in a case be the same"; "[c]ourts approach the 'same issue' analysis *practically*, examining whether a party has raised the same arguments, evaluated under the same legal standard, and whether the earlier case would 'reasonably be expected to have embraced' the same issues." Reply in Support of Google's Renewed Mot. for JMOL at 1, *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981, Dkt. 945 (N.D. Cal.) (internal quotations omitted) (emphasis added).

Ultimately, the question in both these cases is the same: whether SVPs are reasonably interchangeable with, or constrain, general search engines. And Judge Mehta already answered that question. Google lost.

## II.    Google's Monopoly Power in General Search Services Is Identical.

Judge Mehta measured monopoly power by total query volume—all queries entered into a general search engine, regardless of user intent. *Search*, 747 F. Supp. 3d at 119. Yelp's complaint

- 5 -

alleges the same measure. Am. Compl. ¶¶ 63-65. A local-intent query entered on Google.com is indisputably a query in the general search services market; what makes it *also* relevant to the tied product and market is that Google exploits its dominance in general search to artificially elevate its own local-search results in response (in addition to displaying general search results). In this way, "local search . . . accounts for roughly a third of all desktop search volume and over half of mobile search on Google." *Id*. ¶ 8.

Google's opposing monopoly-power argument depends on a false premise: that recognizing local search as a separate *product* (for tying purposes) requires excising local-intent queries from the general-search *market share* calculation. Google's theory would require this Court to pretend that users searching for "plumber near me" on Google.com are not using general search services. Judge Mehta found otherwise.

Our cars-and-tires analogy is again instructive. In a tying case involving cars and tires, for example, no one would ignore cars sold with tires when measuring shares in a car market, nor ignore tires supplied through those sales when measuring shares in a tire market. So too here. A local-intent query on Google.com contributes to Google's power in both markets without collapsing distinct products into one.

Correcting for Google's misunderstanding of "the types of queries Yelp considers to be 'general search,'" Opp. at 11, Google's argument about product-quality degradation unravels. Yelp has never suggested Judge Mehta's findings about quality degradation were confined to some subset of general-search queries; Yelp's allegations make clear that those findings were applicable to general search services *in toto*, inclusive of general searches with local intent. Am. Compl. ¶ 53 (discussing Google's own studies of "general search quality reductions").

**III.    Judge Mehta's Search Advertising Market Determination Was Necessary to Decide the Merits.**

The Ninth Circuit standard is clear: "necessarily decided . . . means only that the court undeniably decided the issue, not that it was unavoidable for it to do so." *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (per curiam) (citing *United States v. Weems*, 49 F.3d 528, 532 (9th

- 6 -

Cir. 1995)). Judge Mehta undeniably decided that search advertising is a relevant antitrust market—devoting pages of analysis to the question after full briefing, expert testimony, and adversarial testing.

Brushing aside Ninth Circuit jurisprudence, Google proposes a radical addition to the issue-preclusion analysis: that the issue was necessary to decide the merits *and* its determination compelled an adverse judgment against the party later opposing issue preclusion. Opp. at 11, 12 (recasting the test as whether the *issue* was "Necessary to the Court's [ultimate] *Holding*"). In Google's view, an intermediate issue determination can never be a "partial victory" for purposes of issue preclusion unless it dictated the larger judgment (prompting a complete victory). But that is not the test in this Circuit, nor is it the holding of *Bobby v. Bies*, 556 U.S. 825 (2009).

*Bies* addressed whether a criminal defendant was a "*partially* prevailing part[y]" entitled to issue preclusion. *Id*. at 829. In conducting that analysis, the Court broke no new ground in emphasizing that "[a] determination ranks as necessary or essential only when the final outcome hinges on it"—*i.e.*, the issue must be necessary to decide the merits and cannot be merely incidental to or at odds with the judgment. *Id*. at 835 (citing Wright and Miller). And in *Bies*, the trial court's finding of mental retardation, a mitigating factor outweighed by the aggravating circumstances of his crime, "cut against" the judgment and death sentence imposed and was not in any way "necessary to the bottom-line judgment." *Id*. at 835-36 ("determinations of his mental capacity were not necessary to the ultimate imposition of the death penalty"); *see also United States v. Arpaio*, 951 F.3d 1001, 1007 (9th Cir. 2020) (findings of fact and conclusions of law underlying criminal conviction were not necessary for, and "cut against" the dismissal with prejudice required by later presidential pardon).

Our situation is very different. Judge Mehta's determination of a relevant market for search ads did not "cut against" the resulting judgment nor was it incidental; it was a critical first step in the Section 2 analysis and necessary to the bottom line. The final outcome concerning Google's monopoly power in that market unquestionably "hinged" on the relevant-market analysis that preceded it. Tellingly, Google never explains how Judge Mehta's relevant-market analysis, standing alone, could point toward, or "conduce to," a different judgment (or cut against the existing one), which was the central concern of *Bies*. *See* Opp. at 13.

- 7 -

Consistent with *Bies* and Yelp's request here, federal courts have applied issue preclusion to relevant-market determinations where the prior plaintiff did not achieve total success on the merits. *See, e.g.*, *McNeil v. National Football League*, 790 F. Supp. 871, 891 (D. Minn. 1992) (applying collateral estoppel because "resolution of the relevant market issue was essential" to a prior antitrust action under Section 2 that nevertheless culminated in a judgment for the defendants); *GAF Corp. v. Eastman Kodak Co.*, 519 F. Supp. 1203, 1213 (S.D.N.Y. 1981) (relevant-market determination was necessary and essential to the judgment regardless of the defendant's ultimate victory under Section 2). As *GAF* explains, "in order to determine whether a defendant engaged in conduct violative of [Section] 2, a court must first determine the relevant market and the existence of monopoly power. Only then can the court determine whether or not the defendant abused its monopoly power." *GAF*, 519 F. Supp. at 1213. Because a court "ha[s] to reach the question[] of market definition" to evaluate the remaining elements, market definition is necessary and essential to the resulting judgment—no matter the victor. *Id.*; *see also In re Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840, at *4 (S.D.N.Y. Oct. 27, 2025) (citing with approval this holding from *GAF*).

Remarkably, Google has *adopted* the essential teaching of cases like *GAF* and *McNeil* and advanced the same position as Yelp in other antitrust litigation in the Northern District of California. In *Epic Games Inc. v. Google*, No. 3:20-cv-05671-JD (N.D. Cal.), Google insisted that the court's relevant-market findings from *Epic Games, Inc. v. Apple Inc.*, 559 F. Supp. 3d 898, 921 (N.D. Cal. 2021), which advanced Epic's order of proof and enabled an evaluation of monopoly power, warranted issue preclusion *even though defendant Apple ultimately prevailed on that claim based on monopoly power*. In Google's own words, "[t]he *market definition* and market share figures were necessary to and a critical factor in the court's ultimate judgment that Apple was not liable." Google's Renewed Mot. for JMOL at 3, *Epic Games Inc. v. Google*, No. 3:20-cv-05671-JD (N.D. Cal. Feb. 1, 2024), Dkt. 642 (emphasis added) (citing *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 (2018) ("courts usually cannot properly apply the rule of reason without an accurate definition of the relevant market")). *See also In re Google Play Store*, 147 F.4th at 937 (denying issue preclusion on unrelated grounds). Google cannot have it both ways.

- 8 -

Google's only contrary authority on market definition, *Argus Inc. v. Eastman Kodak Co.*, 552 F. Supp. 589, 603 (S.D.N.Y. 1982), incorrectly demands that adjudication of the issue "dictate" the judgment, a requirement found nowhere in Ninth Circuit caselaw. Quite the opposite: "[W]here the court heard evidence and argument from both parties, and specifically ruled on the issue, a party may not escape the ruling's binding effect on the ground that it was not logically essential to the court's ultimate determination." *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001); *see also Droplets, Inc. v. Yahoo! Inc.*, 2019 WL 5781915, at *4 (N.D. Cal. Oct. 15, 2019) ("For purposes of issue preclusion, 'necessarily decided . . . means only that the court undeniably decided the issue' in the previous proceedings.") (quoting *Johnson*). For the same reason, the Ninth Circuit has not interpreted *Bies* to prevent "a defendant from relitigating an issue only when there is a valid and final judgment against that defendant predicated on that issue," *King Drug Co. of Florence v. Abbott Lab'ys*, 2022 WL 866681, at *4 (E.D. Pa. Mar. 23, 2022), as Google would have it. *See Arpaio*, 951 F.3d at 1007 (focusing instead on whether findings cut against or played any role in the eventual judgment: "The final judgment entered in this case was a dismissal with prejudice, and the district court's findings of fact and conclusions of law played no role in that dismissal").

Google has also lost this argument in the Northern District of California, in a different context. In *KlausTech LLC v. Google LLC*, 2021 WL 5414328, at *1 (N.D. Cal. Mar. 9, 2021), Google sought to challenge a patent's validity even though "this *exact* issue between these *exact* parties was decided by this *exact* Court in previous litigation." Google took the position that the antecedent issue of patent validity (on which Klaustech had prevailed) was not "necessary" to the earlier ultimate judgment of non-infringement (on which Google had prevailed). Judge White rejected this argument in full, drawing on the Ninth Circuit's guidance:

> "Necessarily decided" in this context means "only that the court undeniably decided the issue." *U.S. v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001). Where the court "heard evidence and argument from both parties, and specifically ruled on the issue," the requirement is satisfied. *Id.* (quoting *U.S. v. Weems*, 49 F.3d 528, 532 (9th Cir. 1995)). Here, the parties fully briefed the Section 101 motion, and the Court gave a reasoned and final resolution to their dispute. . . . The decision was not "made casually" or "in passing." *Johnson*, 256 F.3d at 915.

- 9 -

*KlausTech*, 2021 WL 5414328, at *1. In so ruling, and as relevant here, Judge White observed that Google's "out-of-circuit cases . . . do[] not overcome the binding authority set out here," as "the Ninth Circuit standard differs from the standard applied by other circuits." *Id*. at *1 & n.3.

Nor is issue preclusion foreclosed merely because Judge Mehta corrected the proposed search advertising market for "underinclusive[ness]," to include missing Amazon "product page[s]." *Search*, 747 F. Supp. 3d at 132. As Judge Mehta held, this under-inclusivity was "not fatal to defining a relevant market for search ads," *id*. at 133, and issue preclusion here can accommodate that correction in any event.

**IV.    The Search Advertising Market is Identical Across Actions.**

Yelp seeks preclusion on the exact same search advertising market that Judge Mehta found— not a different one, not a narrower one, and not a "parallel" one. Judge Mehta held that search advertising constitutes a relevant antitrust market, characterized by "the unique level of real-time, expressed intent discernable from a user's query" and limited substitutability with non-search advertising. *Search*, 747 F. Supp. 3d at 125. Yelp alleges the same market, defined by the same features, governed by the same legal standard. Am. Compl. ¶¶ 89-109. That Yelp *also* alleges a local search advertising submarket—on which it does not seek preclusion—does not transform the broader market into a different issue.

Google's mistaken argument that the markets are not "in substance the same" rests on two readily distinguishable cases, *Visa U.S.A. Inc*, 369 F. Supp. 2d at 1125, and *Pool Water Products v. Olin Corp.*, 258 F.3d 1024, 1032 (9th Cir. 2001). Each involved requests for preclusion of *different* "parallel" relevant markets from the one litigated in the earlier action. Here, Yelp seeks "to preclude Google only from reopening any debate over whether 'the *Brown Shoe* factors counsel in favor of finding a relevant market for search advertising' (one generated in response to a query and signaling user intent with immediacy)," the very same market that Judge Mehta found. *See* Pl.'s Mot. for Issue Preclusion at 12, Dkt. 91. Google's invocation of *Visa U.S.A.* and *Pool Water Products* is a red herring.

Failing that, Google suggests the search advertising market proven in *U.S. v. Google* is "irrelevant" in this action and cannot create efficiencies, Opp. at 11, which disregards Yelp's detailed

- 10 -

allegations concerning the search advertising market and local search advertising submarket and their shared features—and the utility of issue preclusion here. Each market encompasses advertising generated in response to a user's search query, which presents a uniquely strong signal of a consumer's intent to purchase a good or service that is missing from non-search advertising. Am. Compl. ¶¶ 30, 91-93, 102, 161, 177. That signal drives conversions to a sale or, for some goods or services, a new account or enrollment. *Id.* ¶¶ 30, 91-93, 102. Google's Chief Economist emphasized the distinction in trial testimony: "search ads help *satisfy* demand, while brand advertising helps to *create* demand." *Id*. ¶ 97. Google hopes to resurrect its previously unsuccessful arguments that there is no such distinction, in any search advertising market, and *all* forms of digital (and apparently offline) advertising are substitutes that identify and respond to user intent as effectively as search ads. But that would re-open an important and time-consuming question already answered by Judge Mehta, as to whether search advertising broadly is itself a market. Waste of that sort is precisely what issue preclusion aims to prevent.

Judge Castel's recent issue-preclusion decision is again instructive. There, Judge Castel granted issue preclusion on market-definition grounds to Advertiser plaintiffs who alleged the same ad exchange market proven before Judge Brinkema, even though the Advertisers also alleged "two markets that were not at issue in the E.D. Va. Action," on which they did not seek issue preclusion. *In re Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840, at *10. Their allegations of two other related markets were no impediment to issue preclusion, as "[t]he Advertisers' allegation of the existence of a separate worldwide market for ad exchanges [wa]s substantially identical to the finding of such a market in the E.D. Va. Action." *Id.* at *11.

Finally, Yelp's 2022 investor presentation, which *distinguishes* between "Digital Media" and "Traditional Media" forms of local advertising and references colloquially a "large and growing market," does not change the issue-preclusion analysis as to the search advertising market. Google is free to press its defenses to the local search advertising market alleged and probe Yelp's understanding of the spheres of competition, but Google may not cast aside the general search advertising market (and its features) found by Judge Mehta by, *e.g.*, denying user queries *ever* provide a uniquely strong

- 11 -

signal of consumer intent or arguing "that it competes within a broader market for digital advertising ("all forms," "search ads and other ad types")." *Search*, 747 F. Supp. 3d at 125-27.

### V. Google's Speculation About Future Market Changes Does Not Undermine Preclusion for the Period Judge Mehta Already Adjudicated.

Issue preclusion here would substantially streamline discovery and trial. *Search* was among the most extensive antitrust proceedings in recent history—years of discovery, a nine-week bench trial, and exhaustive issue determinations reaffirmed at the remedies stage. Yelp seeks preclusive effect for a limited subset of those findings, enabling the parties, this Court, and the jury to focus on the remaining disputed elements rather than wastefully relitigating issues already taken to judgment. *See Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840, at *16 ("[a]pplication of issue preclusion will foster efficiency, not jury confusion"). Google has it backwards in suggesting relitigation would be more efficient, and its assertion that the general search services market "will be a key focus of discovery and trial," Opp. at 18, ignores the relief Yelp seeks and underscores the need for it.

Google does not dispute that issue preclusion should apply, at a minimum, through the beginning of trial before Judge Mehta in 2023. But that was hardly the last word. Judge Mehta issued his liability determinations in August 2024, shortly after closing arguments; reaffirmed those findings during the remedies phase in October 2025; and entered final judgment only months ago, receiving evidence throughout this process. Consistent with this timeline, Judge Mehta wrote in the present tense at each juncture and never backdated his conclusions to 2023. The relevant period for preclusion purposes is the whole period adjudicated in the prior action. *See Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 553 F. Supp. 962, 966 (N.D. Ill. 1982) (noting preclusive effect should be time period "focused on" by the prior litigation); *see also GAF Corp.,* 519 F. Supp. at 1214 (finding that a "slightly different time period covered by the evidence in this case would not likely cause a jury to find different market definitions or reach different conclusions as to Kodak's market power"); *Westwood Lumber Co. v. Weyerhaeuser Co.*, 2003 WL 24892052, at *3 (D. Or. Dec. 29, 2003) (giving market definition preclusive effect and rejecting an argument of "ever-changing" markets, which would require, if "taken literally," the jury "to make a separate finding as to the relevant market for

- 12 -

each year, or perhaps each month or even week"). Google's reliance on dicta about potential *future* market developments does not undermine the finality of Judge Mehta's findings concerning market definition and monopoly power from 2009 through at least the entry of final judgment in December 2025. *See Search (Final Judgment)*, 2025 WL 3496448 (D.D.C. Dec. 5, 2025).

Google also presupposes that Yelp will necessarily seek damages through the time of trial, but Yelp has not yet defined its ultimate damages window, Google's conduct could conceivably change, and discovery and expert analysis will shape Yelp's damages calculations and the remedies sought. In any event, the authorities Google cites reinforce Yelp's position. Those courts declined private plaintiffs the benefit of an earlier judgment only where their case involved materially different markets or materially different time periods from the earlier adjudication, unlike here. *See Pool Water Prods.*, 258 F.3d at 1032 (rejecting request premised on different markets and a different time period); *International Shoe Machine Corp. v. United Shoe Machinery Corp.*, 315 F.2d 449, 454-56 (1st Cir. 1963) (rejecting request for two different time periods).[1] By contrast, where the relevant market conditions and time periods substantially overlap, courts routinely apply preclusion to the whole period adjudicated in the prior action. *See Oberweis Dairy*, 553 F. Supp. at 966; *Washington Alder LLC v. Weyerhaeuser Co.*, 2004 WL 1119822, at *5 (D. Or. May 19, 2004).

Speculation about what the market *may* look like years from now is no basis to deny preclusive effect to findings of fact and conclusions of law spanning 2009 through the entry of final judgment in December 2025. There is nothing inefficient in closing the book on those disputes.

## VI.    A Pending Appeal Does Not Hinder Issue Preclusion.

In this Circuit "a final judgment retains its collateral estoppel effect, if any, while pending appeal." *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 882 (9th Cir. 2007) (citing *Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988)); *Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, 128 F. Supp. 3d 1249, 1255 (N.D. Cal. 2015) ("that Plaintiff might appeal the [prior] court's decision does not affect whether

---

[1] The court in *International Shoe* stressed that "[t]here [was] no contention that any evidence touching on the environmental and competitive context of the shoe industry came to the court's attention in the interim period between the close of evidence and the announcement of findings." 315 F.2d at 456. Here, by contrast, Judge Mehta continued to receive evidence *for years*. *See* Section V.

- 13 -

collateral estoppel applies"), aff'd sub nom. *AIA Am., Inc. v. Eli Lilly & Co.*, 695 F. App'x 573 (Fed. Cir. 2017). That Ninth Circuit rule is sound, recognizing that the "benefits of giving a judgment preclusive effect pending appeal outweigh any risks of a later reversal." *Id.* at 883 (citation omitted).

Google concedes as much but nevertheless asks this Court to disregard the Ninth Circuit and impose the very inefficiencies issue preclusion seeks to prevent. Google's purported "efficient and practical solution," Opp. 22, would require the parties to recreate, from the ground up, the enormous discovery record developed in *Search*, a proceeding in which "[m]illions of pages exchanged hands, Google produced petabytes of data, and the parties deposed dozens of witnesses, including high-ranking executives at some of the world's largest technology companies." *Search*, 747 F. Supp. 3d at 32. Doing so would squander judicial and party resources alike, compelling duplicative litigation on a massive scale for no legitimate purpose. The Ninth Circuit has expressly rejected such outcomes as "absurd." *Tripati*, 857 F.2d at 1367.

Google's proposed approach is also impractical. Yelp's motion could remain in indefinite limbo while Google pursues what will almost certainly be years of appellate proceedings, including en banc efforts and Supreme Court entreaties. Issue preclusion would be shelved at the first moment it became available (because of Judge Mehta's recent judgment), and for years to come, because of appeals. That approach would gut settled Ninth Circuit doctrine and favor gamesmanship and delay over fairness and finality.

Finally, Google argues a position untethered to precedent: that issue preclusion can never apply where the prior judgment is on appeal and discovery in the second action is underway (*i.e.*, maximizing efficiency). Neither this Circuit nor Judge Castel has endorsed any such limitation. To the contrary, Judge Castel held that issue preclusion applied against Google *notwithstanding the pendency of an appeal*. *Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840, at *6 & n.7 ("[d]espite the manifest risks of resting preclusion on a judgment that is being appealed, the alternative of retrying the common claims, defenses, or issues is even worse") (quoting 18A Wright, Miller & Cooper, Federal Practice & Procedure & Proc. § 4433 (3d ed. 2021). The Court should reject Google's attempt to create a new exception to settled preclusion principles, especially where its proposal would multiply inefficiency.

- 14 -

**VII.    The Seventh Amendment Poses No Barrier Here.**

The Seventh Amendment does not bar issue preclusion. *See Murray v. Alaska Airlines, Inc.*, 400 F. App'x 233, 235 (9th Cir. 2010) ("As a general matter, the Seventh Amendment does not bar application of the collateral estoppel doctrine.") (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 337 (1979)); *United States v. Cathcart*, 2008 WL 4279716, at *1-2 (N.D. Cal. Sept. 12, 2008) (rejecting argument that issue preclusion arising from a bench trial violated the non-movant's Seventh Amendment rights). Google is quite familiar with this principle. Indeed, Judge Castel recently held that "[a]s a matter of Seventh Amendment law, issue preclusion may apply even if the first proceeding was tried without a jury and the parties to the subsequent proceedings are otherwise entitled to a jury." *In re Google Digital Advert. Antitrust Litig.*, 2025 WL 3012840, at *3 (internal citations omitted).

Google's contrary argument here fails. Even accepting Google's premise that Seventh Amendment concerns may, in some circumstances, constitute a "non-dispositive factor" for issue preclusion, those concerns are absent here. The out-of-circuit authorities that Google cites arose from the government's civil RICO action against the tobacco industry. *See United States v. Philip Morris USA Inc.*, 449 F. Supp. 2d 1 (D.D.C. 2006), *aff'd in part, vacated in part*, 566 F.3d 1095 (D.C. Cir. 2009). Those courts declined to apply preclusion based on a constellation of unique concerns, including inconsistent prior judgments and issues that were truly unnecessary to the prior judgment. *See Pooshs v. Philip Morris USA*, Inc., 904 F. Supp. 2d 1009, 1034 (N.D. Cal. 2012); *In re Light Cigarettes Marketing Sales Practices Litigation*, 691 F. Supp. 2d 239, 250-51 (D. Me. 2010); *Grisham v. Philip Morris*, *Inc*., 670 F. Supp. 2d 1014, 1032-37 (C.D. Cal. 2009). In particular, those courts were troubled by the prospect that findings from a prior bench trial would effectively dictate punitive damages determinations before a subsequent jury. *See Pooshs*, 904 F. Supp. 2d at 1034; *In re Light Cigarettes*, 691 F. Supp. 2d at 251; *Grisham*, 670 F. Supp. 2d at 1036-37. This case presents no such risk.

**CONCLUSION**

For all these reasons, this Court should grant Yelp's motion for issue preclusion.

YELP'S REPLY IN SUPPORT OF ITS MOTION FOR ISSUE
PRECLUSION AND PARTIAL SUMMARY JUDGMENT

5:24-cv-06101-SVK

DATED: May 27, 2026

By: /s/ Sathya Gosselin
Sathya Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
Ian Engdahl (*pro hac vice*)
Jeremy Silas (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:  sgosselin@hausfeld.com
sbojedla@hausfeld.com
iengdahl@hausfeld.com
jsilas@hausfeld.com

Yixi (Cecilia) Cheng, SBN 325216
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, New York 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
Email:  ccheng@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

- 16 -