Sathya S. Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
Ian Engdahl (*pro hac vice*)
**HAUSFELD LLP**
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone:  (202) 540-7200
Facsimile:  (202) 540-7201
Email:  sgosselin@hausfeld.com
        sbojedla@hausfeld.com
        iengdahl@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

(*additional counsel listed on signature page*)

John E. Schmidtlein, SBN 163520
Colette T. Connor (*pro hac vice*)
Gloria Maier (*pro hac vice*)
**WILLIAMS & CONNOLLY LLP**
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
Email:  jschmidtlein@wc.com
        cconnor@wc.com
        gmaier@wc.com

*Attorneys for Defendant Google LLC*

(*additional counsel listed on signature page*)

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **YELP INC.,**<br><br>　　　　　　　Plaintiff,<br>　　　　v.<br><br>**GOOGLE LLC,**<br><br>　　　　　　　Defendant. | Case No. 5:24-cv-06101-SVK<br><br>**JOINT STATEMENT RE YELP'S REQUESTS FOR PRODUCTION OF EXPERT MATERIALS**<br><br>Hon. Magistrate Judge Susan van Keulen |

Plaintiff Yelp Inc. and Defendant Google LLC respectfully submit the following joint statement seeking the Court's assistance in resolving disputes over Google's objections to providing documents responsive to certain Requests for Production ("RFPs") issued by Yelp.

**Case Deadlines**: Pursuant to the Court's Corrected Scheduling Order, Dkt. 73, the completion of document production date is July 1, 2026, and the close of fact discovery is December 18, 2026.

**Summary of Issues in Dispute**: Yelp seeks to compel Google to produce certain materials responsive to RFP Nos. 1–4 in Yelp's Second Set of RFPs, which request a subset of the record from *United States v. Google*, Nos. 20-cv-3010, 20-cv-3715 (D.D.C.) (*Search*). RFP Nos. 1–4 seek: (1) expert reports and related backup materials; (2) structured data productions; (3) transcripts of expert depositions and trial testimony and related exhibits; and (4) expert demonstratives.[1] For purposes of compromise only as described in Exhibit A, Yelp will hold RFP No. 2 in abeyance if Google promptly produces responsive materials for the other RFPs. The parties met and conferred and are at an impasse.

**Yelp's Position:** Google should be required to produce all the requested materials without further relevance redactions. The materials are directly relevant to numerous contested issues from the relevant time period, including Google's conduct related to its search engine results page (SERP), the effect of that conduct on Yelp and other specialized vertical providers (SVPs), Google's relationships with SVPs, market definition, Google's market power, Google's click and query data, and more. There is very little burden on Google, because the materials have been produced in other cases or otherwise exist in easily produceable form. Courts regularly order productions of expert materials from related cases, and two courts did so recently in analogous suits against Google.

**Relevance.** Yelp knows the requested expert materials contain directly relevant information because Judge Mehta's opinions in *Search* extensively cited those materials in ruling on issues central to this case. Indeed, the State AGs' case in *Search* involved issues that have striking parallels with this one. As Judge Mehta described, "Google has harmed SVPs, the Attorneys General allege, *by [] limiting the visibility of SVPs on Google's Search Engine Results Page.*" *Search*, 687 F. Supp. 3d 48, 54

---

[1] Yelp has confirmed the U.S. Department of Justice and the State of Colorado Attorney General's Office take no position on these requests.

- 1 -

(D.D.C. 2023) (emphasis added). Yelp is just such a harmed SVP. The state AGs' case involved how "SVPs cannot appear in results in the free listings . . . *in the local universal* triggered by searches for nearby businesses" and cannot "appear prominently in the tile of local services ads on Google's SERP." *Id*. at 62 (emphasis added and internal quotations omitted). Judge Mehta therefore discussed at length Google's use of self-preferencing on its SERP to limit the visibility of SVPs like Yelp, *see id.* at 54-62, and even noted the centrality of expert opinions on the matter, *id.* at 80. As another example, experts for both Google and DOJ debated the appropriate relevant markets and Google's monopoly power, drawing on a rich (mostly sealed) record. Judge Mehta relied on these experts for his findings on market definition and market power, *Search*, 747 F. Supp. 3d at 40-41, 111-15, and cited them specifically in rejecting Google's view that "local SVPs, like . . . Yelp" are in the same general search market as Google. *Id.* at 60, 113-116. These are just a few of several issues central to this case. *See id.* at 34-61, 107-142 (citing expert materials throughout Findings of Fact and Conclusions of Law regarding general search services, SVPs, market definition, monopoly power, and more). In addition, the business records and facts relied upon (and positions taken) by Google, its experts, and their adversaries all bear on key issues. These materials are also independently relevant because Yelp is entitled to know if Google or its experts have previously taken inconsistent positions.

Google has accordingly lost similar discovery fights. In recent private litigation challenging Google's conduct in the advertising markets, for example, Judge Castel (in the *Ad Tech* case Google cites below) ordered Google to produce all expert reports and backup data from the prior government case. *In re Google Digital Advertising Antitrust Litigation*, 21-mc-3010 (S.D.N.Y. Jan. 3, 2025), Dkt. 899 (Pretrial Order No. 16), at 5. And in *Crowell v. Google*, 25-cv-02775 (N.D. Cal. April 15, 2026), Dkt. 93, the court ordered production of *all* expert reports and transcripts (depositions and trial) from *Search*, which is a broader set than the tailored subset Yelp now seeks. *See* Exhibit A.

The requested structured data is also critical to understanding the expert analyses, and Google essentially admits, *see supra* at 9-10, that the backup data from these reports are relevant and proportional. There is no reason to deny Yelp the complete set of data where they are already packaged—especially where the experts' backup materials could be the only realistic means of obtaining key data. Despite its litigation-hold obligations starting no later than October 2020 when

- 2 -

*Search* began, Google has told Yelp it no longer maintains usable query-level data from portions of the relevant time period in the ordinary course, and that earlier data would be extremely difficult to use. The historical query-level data now exists in usable form *only because* of the experts' work in *Search*, making their production here one of the only feasible approaches for Yelp to obtain these data.

Nor is Google's proposal to produce only the expert reports tenable. Yelp seeks materials beyond the expert reports because the contextual information is necessary to understand or replicate the experts' analyses; to test modeling choices; to appreciate the judgment and assumptions embedded in the experts' work; and to confidently consider those frameworks against the overlapping issues in this case. Courts thus routinely order production of more than the reports. *Insignia Systems, Inc. v. News America Marketing In-Store, Inc.*, 661 F.Supp.2d 1039, 1075 (D. Minn., 2009) (ordering production of a "back-up data file" on which the expert relied in prior litigation); *Realtek Semiconductor Co. v. LSI Co.*, 2014 WL 4365114, at *1, 3 (N.D. Cal., 2014) (ordering non-party to produce all documents "relied on or referenced in any way" in expert reports in prior litigation).

Google effectively concedes relevance by claiming some of the materials provide a "preview" of Google's defenses. But Google cannot have it both ways: If the prior materials are so revealing, they are discoverable. And it is no unfair advantage for Yelp to get what Google *already has* (especially as Google has not asserted work-product protection); rather, consistent with the aims of discovery, it evens the playing field between the parties. Google's offer to produce certain redacted reports (and its claim that some of the materials are already public) is also at odds with its concerns of a "sneak peek," and, in any case, such concerns do not affect Google's production of backup data. This supposed concern is thus not a valid reason to withhold the requested materials. In fact, courts have held that plaintiffs *must* request prior expert reports in fact discovery—before expert discovery. *ParkerVision, Inc. v. Qualcomm Inc.*, 2013 WL 3771226, at *5 (M.D. Fla. July 17, 2013) (explaining "[t]he instant Motion to Compel [previous expert reports and transcripts] should have been filed prior to the close of the fact discovery period"); *Colonial BancGroup Inc. v. PriceWaterhouseCoopers LLP*, 2016 WL 9687001, at *2 (M.D. Ala. Jan. 22, 2016) (rejecting argument that discovery of expert testimony from prior litigation should be limited to expert discovery); *see also Finjan, Inc. v. Zscaler, Inc.*, 2019 WL 1543514, at *3 (N.D. Cal. Apr. 9, 2019) (ordering production of expert reports from prior litigation

- 3 -

during fact discovery); *Finjan, Inc. v. Qualys Inc.*, 2020 WL 4923964, at *3 (N.D. Cal. Aug. 21, 2020) (same); *Acosta v. Nuzon Corp.*, 2017 WL 8231048, at *5 (C.D. Cal. Oct. 18, 2017) (same); *Whitaker v. ELC Beauty LLC*, 2020 WL 5834293, at *2-3 (C.D. Cal. Aug. 20, 2020) (same). There is also no concern of "piggy backing," p. 7 below, as Yelp's experts are going to conduct their own analyses. The scope of discovery is broad, however, and, as courts ordering expert productions recognize, these materials provide a trove of other relevant contemporaneous documents and analysis.

Google has offered to produce portions of certain expert reports, but its proposal includes only portions that *it* unilaterally deems relevant to Yelp's case. This compromise should be rejected, because it will take more time; create further disputes over what is withheld; and put Yelp at a significant information disadvantage to Google, which will have the entire record. Google's statement below illustrates precisely these dangers; Google proposes to exclude materials in its proposed expert reports on, e.g., the self-preferencing conduct in the State AGs' case and on the markets for general search advertising, *see* pp. 7-8 below. Google unilaterally asserts that these issues are "different" and hence these topics are irrelevant, p. 7-8 below. But Yelp has every right to seek these materials and squarely maintains that they are relevant and discoverable in this case. Indeed, for these reasons, courts have repeatedly rejected requests to redact for relevance within otherwise relevant and responsive materials. *See Gibson v. Credit Suisse AG*, 2016 WL 11546364, at *3-4 (D. Idaho Jan. 8, 2016) (compelling production of all expert reports as "[i]t is not for either party to unilaterally determine what is relevant and what is irrelevant for the purposes of discovery"); *Paulsen v. Case Corp.*, 168 F.R.D. 285, 288-89 (C.D. Cal. 1996) (ordering production of expert reports pertaining to products other than the one directly at issue); *see also Bartholomew v. Avalon Capital Group*, 278 F.R.D. 441, 451 & n.8 (D. Minn. 2011) (relevance "[r]edaction is an inappropriate tool," as "[i]t is a rare document that contains only relevant information"); *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 2009 WL 1026013, at *1 (S.D.N.Y. Apr. 8, 2009) (relevance redactions are "unwise," "breed[ing] suspicions" and depriving context). And neither court to consider this issue recently permitted Google to redact expert materials for relevance. *In re Google Digital Advertising Antitrust Litigation*, 21-mc-3010 (S.D.N.Y. Jan. 3, 2025), Dkt. 899 at 5; *Crowell*, 25-cv-02775 (N.D. Cal. Apr. 15, 2026), Dkt. 93.

**Burden.** Google's burden arguments cannot withstand scrutiny. The requested materials exist in easily produceable format, and Google has recently been ordered to produce a broader set of these materials in similar cases. Google's arguments are particularly inapt here where Google effectively seeks to impose additional burdens *on itself* through relevance redactions. As described above, allowing Google to redact for relevance is improper and would make it harder for Yelp to understand the unredacted portions, inviting further disputes that increase burden on all parties.

Nor should the Court credit Google's burden objections as to data production. Yelp has trimmed its requests to seek materials from only about half of the experts (based on Google's representations of the subject matters covered, as Yelp does not have access to this information), limiting burden. And Yelp already offered as consistent with Exhibit A to hold in abeyance RFP No. 2 (seeking all structured data exchanged in *Search*) if Google produces the other requested information, including the expert backup materials from *Search*. Google mentions the large volume of data involved, but it has already collected and prepared report-ready datasets and code needed to replicate the experts' analyses. The only burden is reproducing these materials under this Court's PO.

Finally, Yelp already agreed, for now, to accept redactions of third-party information where necessary to avoid disputes about third-party confidentiality. Google can thus either implement the targeted redactions Yelp is willing to accept while the parties evaluate further, or Google can provide notice and an opportunity to object to those third parties (as set forth in the *Search* protective order). *Search*, Dkt. 84, at ¶ 7. This is likely to result in little burden because in *Crowell*, where this process was followed after Google was ordered to produce these materials, very few, if any, third parties objected. *See* 25-cv-02775 (N.D. Cal. April 2, 2026), Dkt. 92 at 5. But without notifying any third parties, Google cannot plausibly insist that (likely unnecessary) redactions are burdensome, especially where two courts have already ordered production of analogous materials, *see In re Google Digital Advertising Antitrust Litigation*, 21-mc-3010 (S.D.N.Y. Jan. 3, 2025), Dkt. 899 at 5; *Crowell*, 25-cv-02775 (N.D. Cal. April 15, 2026), Dkt. 93, and this Court has already entered a robust PO, Dkt. 82, strictly limiting the use of sensitive business information. Nor can Google shift to Yelp its own burden of obtaining third-party permission, which is nowhere in the Federal Rules.

JOINT STATEMENT RE YELP'S REQUESTS FOR PRODUCTION
5:24-cv-06101-SVK

**Google's Position:** The Court should deny Yelp's request for expert materials from *United States v. Google* ("*U.S. v. Google*") and *Colorado v. Google*. Yelp already may access the trial testimony in that case, and in any event, Yelp's experts must perform their own independent analyses. Even so, Google has offered a reasonable compromise by agreeing to produce the expert reports regarding the general search services and search advertising markets alleged in these two cases. Yelp demands *all* expert materials for seven experts, including "backup" analyses, so that it may "replicate the experts' analyses" and "test modeling choices." *Supra* at 3. But the caselaw does not countenance this bypassing of independent expert preparation. Reproducing backup materials also imposes an undue burden because of the effort that would be entailed in attempting to segregate confidential third-party data.

**RFP 1: Expert Reports.** Expert reports are disclosure documents, not evidence. To the extent Yelp contends that the *U.S. v. Google* and *Colorado v. Google* expert opinions bear on its claims, the experts' trial testimony is on PACER, and trial demonstratives and exhibits are on the DOJ's website.

But Yelp claims to need the experts' analyses beyond those presented at trial. While Google disagrees that Yelp has any valid need for the underlying reports, Google has agreed as a compromise to produce the portions of the reports related to the relevant markets for general search services and search advertising as defined and litigated in *U.S. v. Google* and *Colorado v. Google*. Specifically, Google has offered to produce (1) the portions of the Mark Israel (Google), Michael Whinston (DOJ Plaintiffs), and Jonathan Baker (Colorado Plaintiffs) reports addressing the DOJ and Colorado Plaintiffs' general search services market and monopoly power allegations and the DOJ Plaintiffs' search advertising market allegations; and (2) the reports of Randolph Bucklin (Google) and Kinshuk Jerath (DOJ Plaintiffs), who opined on digital advertising. Google's compromise addresses the relevant market theories that Yelp contends overlap with its claimed relevant markets here,[2] while carving out the expert opinions regarding the conduct at issue in *U.S. v. Google* and *Colorado v. Google*—given that Yelp alleges different conduct—and other alleged markets.

---

[2] It remains Google's position that the relevant market questions in *U.S. v. Google* are fundamentally different from the issues in this case, as set forth in Google's brief in opposition to Yelp's motion for issue preclusion (*see* ECF 95) and argued at the hearing held June 9, 2026.

Yelp objects to Google's offer on the grounds that the redactions would be based on Google's unilateral review. But discovery necessarily entails a party's unilateral review (Yelp is presently reviewing its own documents "unilaterally" in response to Google's RFPs)—and in any case Yelp will receive each report's table of contents. Courts discourage overbroad "piggyback" discovery requests of this sort, and require that the moving party "demonstrate that the information he seeks is relevant to his claims in this case." *Racing Optics v. Aevoe Corp.*, 2016 WL 4059358, at *1 (D. Nev. July 28, 2016) (denying request for documents, deposition transcripts, and exhibits from prior litigation); *Allele Biotechnology & Pharms., Inc. v. Pfizer, Inc.*, 2021 WL 4168175, at *1–2 (S.D. Cal. Sept. 13, 2021) (denying request for documents, expert reports, and deposition transcripts from a different case); *UnitedHealthCare Servs., Inc. v. Team Health Holdings, Inc.*, 2025 WL 3240962, at *10 (E.D. Tenn. May 16, 2025) (denying request for expert reports from prior litigation).

Yelp does not argue that the challenged distribution agreements and Google's "SA360" product are relevant, but contends that the failed "self-preferencing" theory pursued in *Colorado v. Google* is relevant. Specifically, Yelp argues that it is entitled to the "self-preferencing" expert opinions, because it has also brought a "self-preferencing" claim. But the *Colorado v. Google* self-preferencing claim was dismissed at summary judgment. It was also very different in kind: it focused on Google's policies regarding the inclusion of SVP content in Google's vertical search units,[3] whereas Yelp alleges that Google has rigged its search algorithms to favor its local units over Yelp webpages.

Yelp ignores these substantial differences, contending that *Colorado v. Google* "involved issues that have striking parallels" with its claims. But that argument only highlights the flaw in Yelp's request: to the extent the expert analyses do overlap, forcing Google to disclose the Plaintiffs' self-preferencing opinions from *Colorado v. Google* would give Yelp an improper shortcut. As the *United States v. Google LLC* ("*Ad Tech*") court explained, plaintiffs must "do their own work, honestly, and come up with their own opinions independent of what the DOJ experts do." No. 1:23-cv-00108, Dkt.

---

[3] The Colorado Plaintiffs challenged "Google's imposition of 'visibility restrictions on SVPs' in certain commercial segments"; "[f]or example, 'SVPs cannot appear in results in the free listings in Google's hotel universal, flights universal, or in the local universal triggered by searches for nearby businesses' and 'cannot purchase ads in their own name' or 'appear prominently in the tile of local services ads on Google's SERP.'" *U.S. v. Google*, 687 F. Supp. 3d 48, 62 (D.D.C. 2023).

- 7 -

516 at 25:14-20 (E.D. Va. Jan. 26, 2024); *see also id.* at 30:2-7 (wanting "someone to lead you the way in doing what you need to do on an independent basis" not a valid basis).  For that reason, the *Ad Tech* court denied private plaintiffs' request for the DOJ's expert reports in a parallel antitrust action involving the same alleged conduct and a number of the same relevant markets at issue in the DOJ case.  *Id.* at 30:19-23.  Similarly, the *Natixis Fin. Prods. LLC v. Bank of America* court denied plaintiff's request for expert reports in related actions because it would allow the plaintiff "to bypass preparation of its own expert reports."  2016 WL 7165981, at *5 (S.D.N.Y. Dec. 7, 2016).  And in *Tremblay v. OpenAI, Inc.*, the defendant sought expert reports from a prior case, arguing—much like Yelp—that the reports were relevant to "critical aspects of Plaintiffs' theories."  2025 WL 635335, at *5 (N.D. Cal. Feb. 27, 2025).  The court denied the request: even "assuming *arguendo*" that movant "was correct about the supposedly overwhelming factual and legal overlap," "the compelled production of [prior] expert witness documents" "would either be duplicative of the expert witness documents to be generated in this case [or] merely offer [movant] differing sets of expert opinions by the experts in this case versus those in [the prior case]."  *Id.* at *4–5.

Similarly, to the extent that Google's defenses here overlap with those advanced in the report of Google's *Colorado v. Google* expert Professor Elzinga, Yelp would get a premature preview of Google's defenses.  Because Google won summary judgment on the Colorado Plaintiffs' self-preferencing claim, Professor Elzinga did not testify at trial, and his opinions are not public.  Courts "recognize[] that allowing one party to view the opposing party's expert reports before having to submit its own opening reports would afford that party an unfair advantage." *Natixis*, 2016 WL 7165981, at *4 (denying plaintiff an "advance copy" of defendant's expert reports served in other matter); *Spectrum Pharms., Inc. v. Sandoz Inc.*, 2014 WL 3000130, at *1-2 (D. Nev. July 1, 2014) (similar).  Yelp's inapposite authorities did not permit such gamesmanship: in each case, the movant sought (a) prior expert reports *after* the parties began exchanging expert reports, preventing "freeriding" or taking "a tactical sneak peek" at reports from related cases, *In re Google Digital Advertising*, 21-md-3010, Dkt. 899, at 2, 5; *Gibson*, 2016 WL 11546364, at *1; *Finjan*, 2019 WL 1543514, Dkts. 98, 100; (b) prior expert reports from experts appearing in *both* cases, unlike here, *Insignia*, 661 F. Supp. 2d at 1075; *ParkerVision*, 2013 WL 3771226, at *1-2; *Finjan*, 2020 WL

- 8 -

4923964, at *3; *Acosta*, 2017 WL 8231048, at *5; *Whitaker*, 2020 WL 5834293, at *2; (c) prior deposition transcripts of defendant's experts without reports and data, *Colonial BancGroup Inc.*, 2016 WL 9687001, at *2; (d) a non-party's expert materials relied on, *Realtek*, 2014 WL 4365114, at *1; or (e) non-expert materials, *Paulsen*, 168 F.R.D. at 289; *Bartholomew*, 278 F.R.D. at 451-52; *In re State St. Bank & Tr. Co.*, 2009 WL 1026013, at *2.  And in *Crowell*, the plaintiffs challenged the same distribution agreements as those at issue in *U.S. v. Google*, and an identical general search services market, unlike here where Yelp asserts distinct conduct and different markets, including a different general search services market.  25-cv-02775, Dkt. 80 at ¶¶ 266-89.

**RFP 1: Expert "Backup" Materials.**  Yelp's request for experts' backup materials is overbroad, highly burdensome, and prejudicial.  First, Yelp wrongly contends that expert "backup" materials from *U.S. v. Google* is "one of the only feasible approaches for Yelp to obtain" Google's "historical query-level data" in "usable form."  *Supra* at 3.  Google has confirmed to Yelp that it still has the raw query-level data files produced in *U.S. v. Google*, and that it would produce from that data if responsive to Yelp's requests.  That raw data is not replicated in the "backup" materials.  Rather, the "backup" materials comprise certain smaller datasets relied on by the experts, as well as modified or "intermediate" datasets and output files that analyze raw data.  *See U.S. v. Google*, 1:20-cv-03010, Dkt. 85 ¶ 24.

Second, producing modified or "intermediate" datasets in these experts' backup files is uniquely burdensome in that they often analyze Google data together with third-party data, in a single file.  Reproducing these materials would require either (1) disentangling these datasets to exclude third-party data or (2) seeking and obtaining the consent of each of the third parties whose confidential documents and data are in scope.  *See U.S. v. Google*, 1:20-cv-03010, Dkt. 98 at ¶¶ 7-8 (D.D.C. Jan. 21, 2021) (setting forth process for notification to affected non-parties upon receipt of a "valid discovery request" seeking information designated as Confidential or Highly Confidential by the non-party).  For example, Dr. Israel's backup files for each of his three reports contain many intermediate datasets and output files that combine hundreds of data sources, including from Google and third parties.  Dr. Israel's team estimates that it would take at least three weeks to review the code for these analyses to determine which files include third-party data, and additional time to exclude third-party

- 9 -

data. And excluding these datasets renders what's left disconnected with the opinions in the reports. It is thus unsurprising that even where Google was ordered to produce the *U.S. v. Google* expert reports, the court did not order expert report "backups and schedules." *Crowell*, 25-cv-02775, Dkts. 92-93. And Yelp's cases are inapposite. *Insignia* involved a request for backup files and relied-upon materials that *the party's disclosed expert* used in prior litigation, 661 F. Supp. 2d at 1075; *Realtek* did not involve backup data, 2014 WL 4365114, at *1.

The burden on Google also is not proportional to the needs of the case. Much of the underlying data used for expert analyses has no bearing here, and Yelp's experts cannot merely coopt other experts' analyses. To the extent Yelp seeks the third parties' produced data, Google has agreed to provide Yelp with their counsel contact information, and to reproduce to Yelp any documents or data for which Yelp obtains the third party's consent. *See SSL Servs., LLC v. Citrix Sys., Inc.*, 2010 WL 547478, at *3 (E.D. Tex. Feb. 10, 2010) (refusing request for expert reports where movant "already has the relevant underlying data"); *see also Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("The plaintiffs' counsel must do their own work and request the information they seek directly."). Google's proposal lets Yelp focus on the third parties it believes are relevant here, rather than force Google to contact all 124 of them. Yelp notes that in *Crowell* third parties have largely consented to data reproductions, but unlike there (a class action), the third parties here include many Yelp competitors.

**RFP 3 & 4: Expert Transcripts and Exhibits.** The experts' trial testimony is on PACER, and hundreds of trial exhibits are on the DOJ website. The primary additive information Yelp seeks is a preview of expert deposition strategy, which is not a legitimate basis for discovery, especially given the irrelevance of much of the requested material. *See Oklahoma, ex rel. Edmondson v. Tyson Foods, Inc.*, 2006 WL 2862216, at *1–3 (N.D. Okla. Oct. 4, 2006) (denying request for deposition transcripts and other materials where cases entailed different expert witnesses and broader claims than prior litigation).

The trial demonstratives used with DOJ Plaintiffs' experts are available on the DOJ website. For the remainder, Google has agreed to provide the demonstratives corresponding to the expert reports that Google has agreed to produce (with redactions for third-party sealed information).

- 10 -

DATED: June 12, 2026

By:  /s/ *Sathya S. Gosselin*
Sathya S. Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
Ian Engdahl (*pro hac vice*)
Jeremy Silas (*pro hac vice)*
HAUSFELD LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone:  (202) 540-7200
Facsimile:  (202) 540-7201
Email:  sgosselin@hausfeld.com
           sbojedla@hausfeld.com
           iengdahl@hausfeld.com
           jsilas@hausfeld.com

Yixi (Cecilia) Cheng, SBN 325216
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
Telephone:  (646) 357-1100
Facsimile:  (212) 202-4322
Email:  ccheng@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

By:  /s/ *John E. Schmidtlein*
John E. Schmidtlein, SBN 163520
Colette T. Connor (*pro hac vice*)
Gloria Maier (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone:  (202) 434-5000
Facsimile:  (202) 434-5029
Email:  jschmidtlein@wc.com
           cconnor@wc.com
           gmaier@wc.com

Amit Gressel
WILSON SONSINI GOODRICH & ROSATI P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105-1126
Telephone: 415-947-2087
Email:  agressel@wsgr.com

Franklin M. Rubinstein (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI P.C.
1700 K Street NW
Washington, DC 20006
Telephone: 202-973-8800
Email:  frubinstein@wsgr.com

*Attorneys for Defendant Google LLC*

- 11 -