Sathya S. Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
HAUSFELD LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: sgosselin@hausfeld.com
sbojedla@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

(*additional counsel listed on signature page*)

John E. Schmidtlein, SBN 163520
Colette T. Connor (*pro hac vice)*
Gloria Maier (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
cconnor@wc.com
gmaier@wc.com

*Attorneys for Defendant Google LLC*

(*additional counsel listed on signature page*)

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

**YELP INC.,**

Plaintiff,

v.

**GOOGLE LLC,**

Defendant.

Case No. 5:24-cv-06101-SVK

**JOINT CASE MANAGEMENT STATEMENT**

Date: October 15, 2026
Time: 9:30 am
Place: Zoom
Judge: Magistrate Judge Susan van Keulen

In response to the Court's docket Order dated September 17, 2026 (ECF No. 120), Yelp Inc. ("Yelp") and Google LLC ("Google," and together with Yelp, the "Parties"), have met and conferred and hereby submit this Joint Case Management Statement.

## I. SCHEDULING

This Court entered the Corrected Order Following Case Management Conference; Setting Case Schedule on December 11, 2025 (ECF No. 73). The Parties then filed a Proposed Stipulated Order Setting Further Case Schedule on June 22, 2026 (ECF No. 108), which this Court entered on June 22, 2026 (ECF No. 110). The Parties again filed a Proposed Stipulated Order Modifying Discovery Deadline on September 8, 2026 (ECF No. 118), which this Court entered on September 10, 2026 (ECF No. 119). The operative case schedule is included in the following table:

| Deadline | Date |
|---|---|
| Substantial completion deadline for party document production (requests received on or after May 29, 2026 excluded) | Complete |
| Further case management conference | October 15, 2026 |
| Completion of other party document/data production | October 28, 2026 |
| Close of Fact Discovery | February 26, 2027 |
| Opening expert reports due – i.e., for issues on which a party bears the burden of proof | April 30, 2027 |
| Deadline to complete ADR | June 9, 2027 |
| Rebuttal expert reports due – i.e., for issues on which a party does not bear the burden of proof | July 1, 2027 |
| Reply expert reports due – permitted only where responding to new expert opinions or analysis disclosed in the rebuttal expert reports | August 13, 2027 |
| Close of expert discovery | September 17, 2027 |
| Dispositive Motions and *Daubert* Briefs | November 17, 2027 |
| Oppositions to dispositive and *Daubert* motions | January 14, 2028 |
| Replies re dispositive and *Daubert* motions | February 14, 2028 |
| Dispositive motion hearing | March 28, 2028 |
| Pretrial Conference | August 24, 2028<br><br>Deadlines under Civil Pretrial Standing Order:<br><br>Deadline to meet and confer re |

| | |
|---|---|
| | Pretrial Filings: July 24, 2028<br><br>Joint Pretrial Statement and motions *in limine* due: August 3, 2028<br><br>Oppositions to motions *in limine* due: August 10 , 2028 |
| Trial | September 11, 2028 |

## II. JURISDICTION AND SERVICE

The Parties agree that this Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1337, and 1367, and the Clayton Act, 15 U.S.C. §§ 4, 15, and 26. There are no issues pending regarding personal jurisdiction or venue, and no parties remain to be served.

## III. FACTS

**<u>Yelp's Statement</u>.**

Yelp is a specialized vertical provider ("SVP") connecting consumers with local businesses through local search. Through significant investment, creative branding, and a focus on community, Yelp became a leader in the local-search market, besting earlier entrants. Compl., ECF No. 50 (Am. Compl.), ¶ 116, Fig. 5. Google operates a general search engine ("GSE") that, as Judge Mehta (D.D.C.) found, dominates the general search services market with nearly 90% market share as a result of Google's unlawful exclusionary conduct. *Id.* ¶ 6. As this Court explained in its first motion-to-dismiss order, "[t]oday, Google 'is the first place that most users turn to when they have an inquiry, effectively serving as the 'gateway' to the internet.'" Order on Motion to Dismiss (ECF No. 47) (First MTD Order) at 4. With roughly 9 billion searches performed each day, Google has tremendous influence on what consumers are exposed to online. Am. Compl. ¶¶ 6, 83, 176. But, rather than directing consumers to the best results, Google uses its monopoly in general search services to suppress competition in related markets. *Id.* ¶¶ 11-13.

"This case is about two players in search-related markets," and, in particular, the local search and local-search advertising markets. First MTD Order at 4. Instead of providing "organic" search results (i.e., those deemed to be the highest quality by Google's algorithms) in response to local-search queries, Google unlawfully preferences its own content on its search engine results page ("SERP")—steering traffic, views, and clicks away from Google's rivals and toward Google's products. Google does so by altering the SERP to give its own content prominence and pushing organic results further from users' view. Indeed, SERP placement is critical to whether a consumer will even see a search result, Am. Compl. ¶ 32; consumers overwhelmingly focus on the top of the results page—with the first-ranked result getting 31% of clicks while positions six to ten get only 3.73% *combined*, *id*. Results with elements such as images, maps, or product information attract even more attention—leading users to pay less attention to organic results, even if they are superior. *Id.* ¶ 40.

***Google's Conduct.*** In the late 2000s, recognizing competitive threats from SVPs such as Yelp, Google developed its own vertical platforms in travel and shopping, which it displayed via tabs at the top of the SERP—but these verticals garnered limited interest. *Id.* ¶ 37. Google therefore created the "OneBox," which placed its own vertical search results prominently above organic results on the SERP. Google's OneBox combines key elements that draw the consumer's attention away from organic search and toward Google's inferior vertical products: (1) they are placed at the top of the SERP, effectively preventing consumers from scrolling further, and (2) they include graphics, maps, and other elements not available to Google's competitors. *Id.* ¶¶ 38-40.

In 2007, Google deployed OneBox as part of its launch of "universal search," *id.* ¶ 38. Google displayed its OneBox for queries related to Google's own vertical *or* where the top organic result is a competitor's vertical. *Id.* ¶ 39. As this Court described, "in 2009, faced with continued pressure to create a viable local search product and with limited success with Google Maps at the time, Google launched a new in-house vertical known as 'Google Places.'" First MTD Order at 7 (cleaned up). But, after attempting unsuccessfully to acquire Yelp, *id.* ¶¶ 119, and lacking critical mass for Google Places, Google began misappropriating content from rivals (including Yelp) and

self-preferencing around 2010. Am. Compl. ¶¶ 122-24. The Federal Trade Commission investigated Google's conduct and found in 2012 that, "unlike Google's vertical competitors, who expend considerable resources on optimizing their websites in order to rank highly on Google's SERP, Google does not expend the time and resources to optimize its own vertical properties; it simply places them on the SERP." *Id.* ¶ 126 (cleaned up).

Google continued refining its anticompetitive conduct: altering its algorithms to reduce competitor traffic (causing Yelp's first traffic decline in 2015), *id.* ¶ 131; redesigning OneBox from a 7-pack to a 3-pack in 2016 (pushing down rivals for 93% of queries with local-search intent), *id.* ¶ 132; introducing a "mega-map" in 2021 that further pushed down organic results, *id.* ¶ 137; and launching AI Overviews in 2024, *id.* ¶ 138—each of which further reduced visibility and traffic for competitors like Yelp.

Users of Google's GSE are compelled to accept the SERP as Google has designed it (i.e., with Google's OneBox); they cannot modify the SERP pursuant to Google's Terms of Service and are hence "expressly coerced into consuming [Google's] local search content via the OneBox, even if some users later go on to click other links." Order Denying Partial Motion to Dismiss, ECF No. 58 (MTD Order) at 7; Am. Compl. ¶¶ 155, 230.

***Harm to Competition***. Google's conduct harms competition by preventing rivals from achieving scale. *Id.* ¶ 159. SVPs depend heavily on Google for traffic and exposure, and over 70% of Yelp's U.S. web traffic came via Google in 2012-2019. *Id.* ¶ 168. SVPs rely upon this traffic for network effects; more content attracts more users and advertisers, which allows SVPs to improve quality and better monetize. *Id.* ¶ 159. Moreover, "zero-click searches" (where users act on the OneBox without clicking further or scrolling to organic results, *id.* ¶¶ 43-44, 84) deprive rivals of visits entirely. That is, as this Court put it in denying Google's partial motion to dismiss, with zero-click searches (which comprise 58.5% of Google searches in the U.S.), "[i]t is reasonable to infer that at least some appreciable number of such users do not engage further with the contents of the SERP because they have had their need satisfied by Google's OneBox"—i.e., users consume Google's local-search content by design. MTD Order at 7; Am. Compl. ¶¶ 43, 157.

By stemming the flow of traffic to its rivals, Google unlawfully builds market share and discourages investment by competitors who can rival Google. *Id.* ¶ 158-59.[1] Google's conduct thus creates a moat around its local-search product and raises the cost for rivals to operate, as many SVPs like Yelp depend on Google for traffic to their sites and are forced to purchase advertising from Google to reach consumers. *Id.* ¶¶ 169. This further entrenches Google's inferior local-search product—which features results that are on average shorter, more prone to error, less subject to quality control, and less likely to result in consumer engagement—harming consumers through degraded quality. Self-preferencing also increases Google's share of users and ad revenue while allowing it to raise prices without fear of losing advertisers, *id.* ¶ 113. Google's conduct thus ultimately harms competition, advertisers, consumers, and SVPs like Yelp who rely on advertising dollars to invest in producing a high-quality product. *Id.* ¶ 165-66, 169.

**Google's Statement.**

***Google's Innovations.*** Google has innovated relentlessly over the past two decades to bring users high quality, relevant, and useful search results and ads, in service of its mission to "organize the world's information and make it universally accessible and useful." One of Google's key quality innovations has been introducing specialized results that appear on Google's search engine results page, where relevant to the user's query. These units provide users with information relevant to their query, beyond the weblinks and ads on the rest of the SERP.

Google first began providing specialized "local" results in March 2004, prior to Yelp's founding later that year. Google continued to innovate and improve its results, and introduced the local universal unit in 2007. Before Google's introduction of specialized local results, if a Google user was interested in finding a restaurant in San Francisco, the user would only see ads or links to other websites with information about restaurants in San Francisco or individual links to the hundreds of San Francisco restaurants. Google designed and engineered the local unit to include functionality allowing the user to enter only a keyword and a location like "pizza san francisco" to

[1] Google continues to maintain its monopoly power in the general search services market, creating exclusive distribution channels that solidifies its control over traffic to Yelp and other SVPs. *Id.* ¶ 64.

view results including local pizza restaurants with accompanying information. In its current form, it may provide users with results from up to three local entities, along with information about those entities that Google deems most pertinent to users' information needs, such as images, ratings, addresses, and descriptions or key attributes, with options to click to view more places and to view more information.

Google's search results—for "local" queries or otherwise—are not "inferior" by any measure. Google competes on the merits with procompetitive innovations and investments that benefit consumers and advertisers. Its many innovations and substantial investments also benefit specialized vertical providers such as Yelp, further spurring vigorous competition among providers of information (whether specialized or otherwise).

***Yelp's Challenge to Google's Product Design.*** Yelp would prefer Google to design its search results pages differently; in particular, Yelp would prefer that links to its webpages show more prominently, regardless of their relevance or usefulness to Google's users. Yelp's attack on Google's product design decisions and innovations is legally and factually unfounded. Yelp has, for over a decade, been peddling the same claims it asserts here to antitrust authorities around the world, including the FTC, which investigated (at Yelp's urging) this very same product design. Despite Yelp's complaints, the FTC did not sue Google on the basis of its product innovation. According to a memorandum Yelp incorporates into its Amended Complaint and describes as having been written by FTC staff, the FTC staff did "not recommend that the Commission proceed on [a] cause of action . . . premised on anticompetitive product design." ECF No. 24-3 at ii. The memo concluded that "Google's efficiency justifications are strong." *Id.* Among the reasons for that recommendation were that "[p]roduct design change is an area of conduct where courts do not tend to strictly scrutinize asserted procompetitive justifications," *id.* at 81; "it seems clear that [u]niversal [s]earch is a useful improvement to the product," *id.*; and some courts have read Supreme Court authority to hold "that Google is privileged in blocking rivals from its search platform unless its conduct falls into one of several specific exceptions referenced in *Trinko* (e.g., where there is an affirmative voluntary prior course of dealing)." *Id.* at 84-85. In 2013, the FTC closed its investigation of

Google's business practices. Compl. ¶ 127. Notably, these claims were not advanced as part of the United States Department of Justice lawsuit that Yelp cites.

***Intense Competition.*** As Yelp acknowledges in its 10-K, the markets in which it competes are "rapidly evolving and intensely competitive," and it expects "competition to intensify further in the future with the emergence of new technologies and market entrants." Yelp, Form 10-K (2024) at 10-11. Yelp describes its competitors as "companies that help businesses . . . connect and engage with consumers," including: "online search engines and directories, including those incorporating AI technologies"; "traditional, offline business guides and directories"; "online and offline providers of consumer ratings, reviews, and referrals . . . as well as social media platforms and features where consumers are increasingly searching for and posting information about local businesses"; "providers of online marketing and tools for managing and optimizing advertising campaigns"; "food ordering and delivery services that also offer online advertising"; "providers of various forms of traditional offline advertising"; "restaurant reservation and seating tools . . . as well as food ordering and delivery services"; and "home and/or local services-related platforms and offerings." *Id.* Yelp's 10-K specifically names as exemplar competitors OpenAI, TripAdvisor, TikTok, Reddit, Instagram, DoorDash, OpenTable, Resy, Angi, and Thumbtack, in addition to Google. Yet in alleging its relevant markets for purposes of this case, Yelp carves a far narrower definition, naming only itself and Google as "prominent" providers of "local search services" and "local search advertising."

For these and other reasons, Google disputes that it monopolized or attempted to monopolize the alleged markets or otherwise violated the antitrust laws through the conduct alleged in Yelp's Amended Complaint.

## IV. PRINCIPAL LEGAL ISSUES DISPUTED BY THE PARTIES.

**Yelp's Statement.** At this time, Yelp anticipates that the following issues will be disputed:

- Whether Google's conduct in the local search services market as alleged in the complaint violates Section 2 of the Sherman Act, 15 U.S.C. § 2. (*See* Compl. at Counts I, II, and IV);
- Whether Google's conduct in the local search advertising market as alleged in the complaint violates Section 2 of the Sherman Act, 15 U.S.C. § 2. (*See* Compl. at Count III);

- Whether Google has monopoly power and/or market power in the local search services market and market power in the local search advertising market;
- Whether Google's conduct as alleged in the complaint violates California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*. (*See* Compl. at Count V);
- Whether Yelp and/or competition has been harmed by Google's anticompetitive conduct;
- Whether Yelp is entitled to damages and in what amount; and
- Whether Yelp is entitled to injunctive relief and in what form.

**Google's Statement.** In addition to the legal issues identified by Yelp, Google anticipates that the following legal issues will be disputed:

- Whether Yelp's alleged markets are cognizable relevant antitrust markets;
- Whether a "product design" or "product redesign" that benefits users constitutes exclusionary conduct under the antitrust laws;
- Whether Google had a procompetitive rationale for the conduct Yelp alleges in support of its monopolization and attempted monopolization claims, and whether the conduct Yelp alleges constitutes bona fide competitive activity;
- Whether Yelp has identified distinct tying and tied products as required for its tying claim, and whether Yelp has otherwise proven that Google used market power to "coerce" users of one product to consume a separate product in a separate market, such that a "not insubstantial volume of commerce" was affected;
- Whether the harm Yelp alleged is of the type the antitrust laws were designed to prevent;
- Whether Yelp has proven that its alleged injuries are attributable to anticompetitive conduct by Google, or whether Yelp's injuries are attributable to other causes such as Yelp's own business failings;
- Whether Yelp has sustained any cognizable damages, and, if so, whether Yelp has failed to mitigate those damages;
- Whether the relief sought by Yelp would be contrary to the public interest, harm consumers, or is otherwise inequitable, impractical, and unworkable;

- Whether Yelp's claims are barred because they seek to restrain or enjoin conduct that is protected under the First Amendment;
- Whether Yelp's claims are barred by the statute of limitations and/or the doctrines of laches, waiver, and/or estoppel; and
- Whether Yelp is entitled to any injunctive relief.

## V. MOTIONS

There have been two rounds of motion-to-dismiss briefing. On April 22, 2025, the Court issued its Order Granting in part and Denying in part Google's first Motion to Dismiss, allowing Yelp to amend its complaint (ECF Nos. 47, 48). After Yelp filed an amended complaint, Google filed a second Partial Motion to Dismiss Amended Complaint (ECF No. 53). On October 22, 2025, the Court issued its Order Denying Google's Partial Motion to Dismiss (ECF 58).

There have also been three recent motions. The Parties filed a Joint Statement re Google's Requests for Production on April 8, 2026 (ECF No. 89). On April 22, 2026, this Court granted Google's motion in part and denied it in part (ECF No. 94). On April 15, 2026, Yelp moved for Issue Preclusion and Partial Summary Judgment based on rulings and findings from Judge Mehta in *United States v. Google*, Case Nos. 20-cv-3010, 20-cv-3715 (D.D.C.) (ECF No. 91). This Court heard oral argument on the motion on June 9, 2026, and granted Yelp's motion in part and denied it in part on June 30, 2026 (ECF No. 114). Finally, the Parties submitted a Joint Statement re Yelp's Requests for Production of Expert Materials on June 12, 2026 (ECF No. 107). This Court denied Yelp's Motion without prejudice on June 25, 2026 (ECF No. 112). The Parties are likely to raise certain discovery disputes with the Court prior to the upcoming case management conference. The Parties may raise additional discovery disputes concerning their respective document requests and structured data productions in the coming weeks.

## VI. AMENDMENT OF PLEADINGS

At this time, Yelp does not anticipate seeking any amendments to its complaint, but reserves the right to do so as discovery unfolds or as otherwise permitted by the Court.

## VII. EVIDENCE PRESERVATION

The Parties submitted a Proposed Stipulated Order Regarding Search and Production of Electronically Stored Information on January 7, 2026 (ECF No. 81). This Court entered the Stipulated Order Regarding Search and Production of Electronically Stored Information on January 8, 2026 (ECF No. 83).

The Parties certify that they have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines").

## VIII. DISCLOSURES

The Parties exchanged the information required by Fed. R. Civ. P. 26(a)(1) on November 19, 2024, pursuant to the Court's Order Setting Initial Case Management Conference and ADR Deadlines (ECF No. 9).

## IX. DISCOVERY

### A. Discovery Propounded to Date.

The Parties have each served several sets of Request for Production—Google has served four sets of Requests for Production, and Yelp has served three sets of Requests for Production. The Parties engaged in numerous rounds of meet and confers over the course of the last several months and completed agreed-upon document discovery on September 9, 2026. The Parties continue to discuss outstanding document production and structured data issues.

The Parties have also issued several subpoenas for third-party discovery. The Parties have each issued subpoenas to TikTok USDS Joint Venture LLC, Reddit, Inc., Microsoft Corporation, Yahoo Inc., Open AI Global, LLC, Perplexity AI, Inc., Anthropic PBC, and Apple Inc. Google has separately issued subpoenas to Dr. Michael Luca and Meta Platforms, Inc. Yelp has separately issued a subpoena to TripAdvisor LLC. The Parties continue to exchange document productions responsive to these subpoenas.

**B. Scope of Anticipated Discovery.**

**<u>Yelp's Statement</u>.**

Yelp has sought discovery regarding, among other things: (1) Google's policies and practices for the placement of Google's local search results on the SERP, (2) Google's policies and practices for the placement of links to other local search SVPs on the SERP, (3) the relevant markets described in the Complaint and Google's power in those markets, including any barriers to entry, (4) the effects of Google's policies and practices on competition in the relevant markets described in the Complaint, and (5) any purported procompetitive justifications for Google's conduct. Yelp has also sought Google's productions from *United States et al. v. Google LLC*, No. 20-cv-3010 (APM)) (D.D.C.), in which certain identical overlapping issues were litigated, some of which with preclusive effect here. *Yelp Inc. v. Google LLC*, No. 24-CV-06101-SVK, 2026 WL 1883619 (N.D. Cal. June 30, 2026).

Yelp has also sought discovery from non-parties.

**<u>Google's Statement</u>.**

Google has sought discovery from Yelp regarding, among other things: (1) the products and services that Yelp considers to be its competition in the ordinary course of business; (2) the quality of Yelp's services (such as the accuracy, freshness, and breadth of its local business data; user satisfaction with Yelp's user interface and interactive features; the usefulness of Yelp's results and sponsored results; and advertisers' experience using Yelp's ads), including in comparison to Google's services and other competitive services; (3) Yelp's business and product strategies over time, including the extent of innovation in response to changing user demands and its level of investment in its search services and advertising offerings; (4) Yelp's financial performance, business value, and monetization strategies; and (5) Yelp's efforts to acquire and grow its user traffic through different marketing channels, including the extent to which Yelp focused on acquiring free user traffic by appearing in Google's search results. Google also sought Yelp's productions to the FTC in connection with the FTC's 2011-2012 investigation described *supra*.

Google also sought discovery from non-parties, including as to: (1) agreements they have entered into with Yelp with respect to the promotion of Yelp and/or use of Yelp's data; (2) whether

they compete with Google and Yelp; (3) whether the presence of consumer reviews (or lack thereof) determines who they consider to be competitors; (4) their ability to reach users via apps and other means aside from Google's search results page; and (5) in the case of general search engines, whether they have made product design decisions similar to Google with respect to "local" queries and the procompetitive reasons for doing so.

### C. Stipulated E-Discovery Order

The Parties submitted a Proposed Stipulated Order Regarding Search and Production of Electronically Stored Information on January 7, 2026 (ECF No. 81). This Court entered the Stipulated Order Regarding Search and Production of Electronically Stored Information on January 8, 2026 (ECF No. 83).

### D. Current Discovery Disputes

The Parties continue to work on resolving outstanding document production and structured data issues. Should the parties be unable to reach agreement in the coming weeks, they will raise any disputes with the Court. While no discovery disputes have been submitted to the Court as of the date of this Statement, the Parties are likely to raise two discovery disputes in the near future: (1) a discovery dispute relating to Yelp's request for certain query data from Google; and (2) a discovery dispute relating to Google's request for a Yelp document custodian from Yelp's Sales organization.

## X. CLASS ACTIONS

There is no proposed class at issue in this matter.

## XI. RELATED CASES

**Yelp's Statement.**

Yelp's action is based in part on *United States v. Google LLC,* 20-cv-3010 (D.D.C.), which adjudicated Google's unlawful monopolization of general search, and, as this Court found in its Order Denying Google's Partial Motion to Dismiss (ECF No. 58) at 12, tolled Yelp's claims from 2020 onward. This Court also granted in part Yelp's motion for Issue Preclusion and Partial Summary Judgment based on rulings and findings from Judge Mehta in *United States v. Google*,

Case Nos. 20-cv-3010, 20-cv-3715 (D.D.C.) on June 30, 2026. *Yelp Inc. v. Google LLC*, No. 24-CV-06101-SVK, 2026 WL 1883619 (N.D. Cal. June 30, 2026).

**Google's Statement.**

On May 13, 2026, Google filed its Opposition to Plaintiff's Motion for Issue Preclusion and Partial Summary Judgment, disputing the claimed connection between this case and *United States v. Google LLC,* 20-cv-3010 (D.D.C.) given that Yelp's allegations are based on different conduct and harm to different markets (ECF No. 95). On June 30, 2026, the Court issued its ruling on Yelp's motion and concluded, in part, that issue preclusion was inappropriate as to a "search advertising" market. *Yelp Inc. v. Google LLC*, No. 24-CV-06101-SVK, 2026 WL 1883619, at *9-11 (N.D. Cal. June 30, 2026).

**XII. RELIEF**

**Yelp's Statement.**

Yelp seeks all appropriate relief, including that the Court (1) enter judgment in favor of Yelp and against Google; (2) award monetary damages, including treble damages, together with expenses of litigation and costs of this action, including attorneys' fees and expenses; (3) award pre- and post-judgment interest; (4) award restitution; (5) issue an injunction prohibiting Google from continuing to engage in the anticompetitive practices described herein and from engaging in any other practices with the same purpose and effect as the challenged practices; (6) award any other equitable relief necessary to prevent and remedy Google's anticompetitive conduct; (7) award a declaration that the restraints complained of herein are unlawful; and (8) grant such other and further relief as this Court deems just and proper.

Yelp seeks a monetary damages award to the maximum extent authorized by applicable federal and state law. Yelp's calculation of relief is highly dependent on information to be obtained through discovery during the course of this action, and on expert testimony. A computation of damages, therefore, is premature at this point and Yelp has not yet computed the relief claimed in this action.

**<u>Google's Statement</u>.**

Google denies that Yelp is entitled to judgment in its favor on any of its claims, and thus denies that Yelp is entitled to any relief, including the relief described above.

**XIII. SETTLEMENT AND ADR**

The Parties have met and conferred regarding ADR and determined that ADR would likely not assist in resolving the dispute at this time. The Parties will be prepared to further discuss ADR selection and timing with the Court at the case management conference.

Yelp and Google filed ADR Certification forms on November 5, 2024 (ECF No. 26; ECF No. 27), pursuant to the Court's Order Setting Initial Case Management Conference and ADR Deadlines (ECF No. 9).

**XIV. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES**

Yelp and Google have each filed their consent to proceed before a U.S. Magistrate Judge for all purposes in this matter (ECF No. 12; ECF No. 22).

**XV. OTHER REFERENCES**

The Parties agree this case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**XVI. NARROWING OF ISSUES**

At this stage, the Parties do not seek bifurcation of any issues. The Parties further agree that it is too early to identify potential ways to expedite the presentation of evidence at trial, or otherwise narrow the case by agreement.

**XVII. EXPEDITED TRIAL PROCEDURE**

The Parties agree that this case is not suitable for handling under the Expedited Trial Procedure of General Order No. 64.

**XVIII. TRIAL**

**Yelp's Statement.**

Yelp has requested a trial by jury on all causes of action. Yelp anticipates a three-week trial starting on the operative trial start date, *supra* Section XVII (Scheduling).

**Google's Statement.**

Trial in this case is scheduled to begin on September 11, 2028, *supra* Section XVII (Scheduling). Given the uncertainty regarding the scope of conduct that will be at issue at trial, if any, Google is not yet able to determine whether a trial duration of three weeks is appropriate.

**XIX. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS**

Yelp filed its Certificate of Interested Entities or Persons on August 28, 2024 (ECF No. 2). Yelp disclosed that, at the time of filing, it has no parent company, and that the following publicly held corporations own 10% or more of its stock:

1. BlackRock, Inc.
2. The Vanguard Group, Inc

Yelp also disclosed that the following listed persons, associations of persons, firms, partnerships, corporations (including, but not limited to, parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a nonfinancial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1. BlackRock, Inc.
2. The Vanguard Group, Inc.

Google filed its Certificate of Interested Entities or Persons on September 17, 2024 (ECF no. 14). Google disclosed that, at the time of filing, Google is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet Inc., a publicly traded company. No publicly traded company holds more than 10% of Alphabet Inc.'s stock. Google also disclosed that the following listed persons, associations of persons, firms, partnerships, corporations (including parent corporations) or other entities (i) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in the subject matter or in a party that could be substantially affected by the outcome of this proceeding:

1. Google LLC
2. XXVI Holdings Inc., Holding Company of Google LLC

3. Alphabet, Inc., Holding Company of XXVI Holdings Inc

**XX. PROFESSIONAL CONDUCT**

All attorneys of record have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**XXI. OTHER**

The Parties have no other matters to raise with the Court at this time.

DATED: October 6, 2026

By: /s/ *Sathya S. Gosselin*
Sathya S. Gosselin, SBN 269171
Swathi Bojedla (*pro hac vice*)
Dan Walker (*pro hac vice*)
Ian J. Engdahl (*pro hac vice*)
Jeremy B. Silas (*pro hac vice*)
HAUSFELD LLP
1200 17th Street, N.W., Suite 600
Washington, DC 20036
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email: sgosselin@hausfeld.com
sbojedla@hausfeld.com
dwalker@hausfeld.com
iengdahl@hausfeld.com
jsilas@hausfeld.com

Yixi (Cecilia) Cheng, SBN 325216
HAUSFELD LLP
33 Whitehall Street, 14th Floor
New York, New York 10004
Telephone: (646) 357-1100
Facsimile: (212) 202-4322
Email: ccheng@hausfeld.com

*Attorneys for Plaintiff Yelp Inc.*

By: /s/ *John E. Schmidtlein*
John E. Schmidtlein, SBN 163520
Colette T. Connor (*pro hac vice*)
Gloria Maier (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C. 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
Email: jschmidtlein@wc.com
cconnor@wc.com
gmaier@wc.com

Amit Gressel
WILSON SONSINI GOODRICH & ROSATI P.C.
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105-1126
Telephone: 415-947-2087
Email: agressel@wsgr.com

Franklin M. Rubinstein (*pro hac vice*)
WILSON SONSINI GOODRICH & ROSATI P.C.
1700 K Street NW
Washington, DC 20006
Telephone: 202-973-8800
Email: frubinstein@wsgr.com

*Attorneys for Defendant Google LLC*